Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Edward W. Swanson (State Bar No. 159859)
August Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for CVS Pharmacy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CORCORAN, et al., | No. 15-CV-03504-YGR |
| Plaintiffs, | CLASS ACTION |
| v. | **CVS PHARMACY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| CVS HEALTH CORPORATION and CVS PHARMACY, INC., | |
| Defendants. | Date: March 1, 2016<br>Time: 2:00pm<br>Courtroom: 1<br>Judge: Honorable Yvonne Gonzalez Rogers |

1    <u>**NOTICE OF MOTION AND MOTION**</u>

2    **TO:    THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3         PLEASE TAKE NOTICE that on March 1, 2016, at 2:00 p.m., or as soon thereafter as

4    this matter may be heard, in Courtroom 1, 4th Floor, of this Court, located at 1301 Clay Street,

5    Oakland, California, Defendant CVS Pharmacy, Inc. ("CVS") will and hereby does move the

6    Court for an order dismissing Plaintiffs' Second Amended Complaint ("SAC") and each claim

7    therein without leave to amend.

8         This Motion is made pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and

9    12(b)(6) on the grounds that:

10        (a)    the SAC's failure to allege with particularity CVS's alleged fraudulent

11   misrepresentations and how those misrepresentations supposedly caused Plaintiffs' injuries

12   violates Rule 9(b);

13        (b)    the SAC fails to plausibly allege that CVS intended to deceive Plaintiffs or their

14   third-party payors, that the HSP program itself was deceptive, or that CVS's alleged

15   misrepresentation was material to Plaintiffs' purchasing decisions;

16        (c)    the SAC fails to state tort claims for fraud, constructive fraud, and negligent

17   misrepresentation, which are really disguised breach of contract claims barred by principles

18   distinguishing contract violations from torts, such as the Economic Loss Doctrine;

19        (d)    the SAC fails to state a claim for fraud or negligent misrepresentation because

20   CVS did not communicate its alleged misrepresentations—its usual and customary ("U&C")

21   prices—to Plaintiffs;

22        (e)    the SAC fails to state a claim for negligent misrepresentation because Plaintiffs

23   are not within the "limited group of persons" who received the allegedly false U&C prices;

24        (f)    the SAC fails to state a claim for constructive fraud because CVS had no

25   fiduciary, confidential, or special relationship with Plaintiffs;

26        (g)    the SAC fails to state a claim for unjust enrichment because it is duplicative of

27   Plaintiffs' other claims;

28

(h)     the SAC fails to state a claim under the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1 *et seq.*, because Plaintiffs lack standing to bring that claim under Article III of the Constitution;

(i)     the SAC fails to state a claim under the California Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, because Plaintiffs fail to allege that CVS committed one of the 26 unlawful practices enumerated in the statute;

(j)     the SAC fails to state a claim under the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq.*, because (1) the statute expressly bars class actions, *id.* § 10-1-399, and (2) plaintiff Carolyn Caine failed to comply with the statutory notice requirements, and to allege exercising due diligence to discover the alleged falsity of CVS's U&C prices;

(k)     the SAC fails to state a claim under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.*, because Plaintiffs fail to allege that CVS committed any of the practices "specifically enumerated" in Tex. Bus. & Com. Code § 17.46(b) or any "unconscionable action or course of action," *id.* § 17.50(a)(1);

(l)     the SAC fails to state class claims under the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*, because Plaintiffs fail to allege CVS was on notice that its conduct was deceptive or unconscionable at the time it committed the alleged acts; and

(m)     the SAC fails to state a claim under the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*; California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. §28-3901 *et seq.*; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*; Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann., ch. 93A; New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 *et seq.*; New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349 *et seq.*; Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 et seq.; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et*

*seq.*; and Rhode Island Deceptive Trade Practices Act, 6 R.I. Gen. Laws § 13.1-1 *et seq.*, because it fails to allege "deceptive" or "unfair" conduct by CVS.

CVS's Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

Dated: December 4, 2015                    Respectfully submitted,

                                           By: /s/ Grant A. Geyerman
                                           Enu Mainigi (*Pro Hac Vice*)
                                           Luba Shur (*Pro Hac Vice*)
                                           Grant A. Geyerman (*Pro Hac Vice*)
                                           WILLIAMS & CONNOLLY LLP

                                           Edward W. Swanson (State Bar No. 159859)
                                           August Gugelmann (State Bar No. 240544)
                                           SWANSON & McNAMARA LLP

                                           Attorneys for CVS Pharmacy, Inc.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... v

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... xii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 3
I.      Background On Prescription Drugs And Pharmacy Claims ............................................ 3
II.     The Health Savings Pass Program ................................................................................... 4
III.    This Case .......................................................................................................................... 6

ARGUMENT ......................................................................................................................... 7
I.      THE SAC DOES NOT PLEAD PLAINTIFFS' CLAIMS WITH THE
        PARTICULARITY REQUIRED BY RULE 9(B). .................................................................... 7
        A.      Plaintiffs Do Not Allege CVS's Purported Misrepresentations. ........................... 7
        B.      Plaintiffs Do Not Allege How CVS's Supposed Misrepresentations
                Caused Them To Pay Inflated Copayments ......................................................... 9

II.     THE SAC'S FACTUAL ALLEGATIONS DO NOT DEMONSTRATE ANY
        PLAUSIBLE ENTITLEMENT TO RELIEF. ........................................................................ 10
        A.      Plaintiffs' Allegations Do Not Plausibly Demonstrate Intent To Deceive. .......... 11
        B.      Plaintiffs' Allegations Demonstrate The HSP Program Was Not
                Deceptive. ....................................................................................................... 13
        C.      Plaintiffs' Allegation They Will Continue Filling The Same Prescriptions
                At CVS Defeats Any Plausible Claim Of Material Misrepresentation ................ 14

III.    THE COMMON LAW CLAIMS FAIL FOR ADDITIONAL REASONS. ...................... 14
        A.      Plaintiffs' Tort Claims (Counts 1–3) Are Disguised Breach Of Contract
                Claims. ........................................................................................................... 15
        B.      Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail Because
                They Do Not Allege CVS's U&C Prices Were Communicated To
                Plaintiffs (Counts 1 and 3). ............................................................................ 17
        C.      The Negligent Misrepresentation Claim (Count 3) Fails Because Plaintiffs
                Are Not Within The "Limited Group" For Which CVS Reported The
                U&C Price To Adjudicate Pharmacy Claims. ................................................. 18
        D.      The Constructive Fraud Claim (Count 2) Fails Because CVS Had No Duty
                To Disclose Its HSP Price To Plaintiffs, Let Alone Pursuant To A
                Fiduciary, Confidential, Or Special Relationship. ........................................... 19
        E.      The Unjust Enrichment Claim (Count 4) Is Duplicative. .................................. 20

IV.     THE STATUTORY CLAIMS FAIL FOR ADDITIONAL REASONS. ......................... 20
        A.      The Rhode Island Deceptive Trade Practices Act Claim (Count 5) Fails. ........... 20
        B.      The California Legal Remedies Act Claim (Count 7) Fails. ................................ 21
        C.      The Ohio Consumer Sales Practices Act Class Claims (Count 11) Fail ............... 21
        D.      The Texas Deceptive Trade Practices Act Claim (Count 12) Fails. ..................... 22
        E.      The Georgia Fair Business Practices Act Claim (Count 19) Fails ....................... 22
        F.      The Remaining Statutory Claims Fail (Counts 5, 6, 8–11, 13–18) ..................... 23
                1.      "Deceptive" Conduct ......................................................................... 23
                2.      "Unfair" Conduct. ............................................................................. 24

CONCLUSION ..................................................................................................................... 24

CVS PHARMACY, INC.'S NOTICE OF MOT.
AND MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................11, 12, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................11, 12

*Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013)....................................20

*Burton v. Nationstar Mortg. LLC*, 2013 WL 2355524 (E.D. Cal. May 29, 2013) ......................21

*Cruz v. Am. Airlines*, 150 F. Supp. 2d 103 (D.D.C. 2001) ............................................12

*Decker v. GlenFed, Inc.*, 42 F.3d 1541 (9th Cir. 1994)..............................................8, 9

*Elliott v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 1820904 (N.D. Cal. Apr. 30, 2013) ................................................................................................11

*Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014)........................7

*Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947 (N.D. Cal. 2002) ..............................13

*Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015)..............................21

*Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) ................................20

*Hill v. Hoover Co.*, 899 F. Supp. 2d 1259 (N.D. Fla. 2012)......................................23, 24

*Holeman v. Neils*, 803 F. Supp. 237 (D. Ariz. 1992)..................................................20

*In re Actimmune Mktg. Litig.*, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ..............................7

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D. Cal. 2011)..................................................................................20

*In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558 (S.D. Fla. 1993)..................................18

*In re Exodus Commc'ns, Inc. Sec. Litig.*, 2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) ..................................................................................................7

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011)..........................................24

*In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ..................................................................................................21

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 241 F.R.D. 77 (D. Me. 2007) ..................................................................................................22

CVS PHARMACY, INC.'S NOTICE OF MOT.
AND MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

*In re Porsche Cars N. Am., Inc., Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F.
    Supp. 2d 801 (S.D. Ohio 2012)............................................................21

*Ironworkers Local Union No. 68 & Participating Emp'r Health & Welfare Funds*
    *v. Astrazeneca Pharm., LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008)....................14

*Jones v. AIG Risk Mgmt., Inc.*, 726 F. Supp. 2d 1049 (N.D. Cal. 2010) ......................17

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .........................................7

*Lee v. Oregon*, 107 F.3d 1382 (9th Cir. 1997).........................................................20

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47 (1st Cir.) ..................24

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ...........................21

*McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044 (C.D. Cal. 2014)....................24

*Nelsen v. King County*, 895 F.2d 1248 (9th Cir. 1990) ............................................20

*Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137 (N.D. Cal. 2007) ..........13

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014).................................17

*Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013).........21

*Pirozzi v. Apple, Inc.*, 913 F. Supp. 2d 840 (N.D. Cal. 2012)....................................11

*Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009 (N.D. Cal. 2012) ...............17

*Red v. Kraft Foods, Inc.*, 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011).....................14

*RFF Family P'ship, LP v. Link Dev., LLC*, 932 F. Supp. 2d 213 (D. Mass. 2013).......23

*Rodriguez v. U.S. Bank Nat'l Ass'n*, 2012 WL 1996929 (N.D. Cal. June 4, 2012)........9

*Search v. Uber Techs., Inc.*, --- F. Supp.3d ----, 2015 WL 5297508 (D.D.C. Sept.
    10, 2015) ................................................................................23

*Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680 (N.D. Tex. 2006) ...........................22

*Summit Growth Mgmt., LLC v. Marek*, 2012 WL 3886089 (D. Nev. Sept. 6, 2012) ....................9

*Thomas v. Nat'l College of Va.*, 901 F. Supp.2d 1022 (S.D. Ohio 2012)....................23

*Tuan Phan v. Best Foods Int'l Inc.*, 2014 WL 3749988 (N.D. Cal. July 29, 2014) .......9

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir.
    2011) ...............................................................................7

CVS PHARMACY, INC.'S NOTICE OF MOT.
AND MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

*U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, 2008 WL 9878351 (E.D. Va.
Mar. 13, 2008)............................................................................................................10

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*, --- F. Supp. 3d ----, 2015 WL
4577341 (D. Mass. July 29, 2015)............................................................................5, 6

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't,
AFL-CIO*, 770 F.3d 834 (9th Cir. 2014) .......................................................................9

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 38 F. Supp. 3d 398 (S.D.N.Y.
2014) ...............................................................................................................................5

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .........................................7

*Washington v. Baenziger*, 673 F. Supp. 1478 (N.D. Cal. 1987) ........................................8

*Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) ...............................................21

**STATE CASES**

*100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1 (Md. 2013)..............16

*Alvear v. Sandy Springs Toyota, Inc.*, 775 S.E. 2d 172 (Ga. Ct. App. 2015) ...............23

*Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365 (1997)..........................16

*Barmat v. John & Jane Doe Partners A-D*, 747 P.2d 1218 (Ariz. 1987)........................15

*Basile v. H & R Block, Inc.*, 777 A.2d 95 (Pa. Super. Ct. 2001) ...................................19

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270 (Pa. 2005)..............18

*Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992) .......................................................18

*Brazee v. Morris*, 204 P.2d 475 (Ariz. 1949).................................................................19

*Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*, 620 N.Y.S.2d 196 (App.
Div. 1994) ......................................................................................................................16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)................24

*City of Atlanta v. Benator*, 714 S.E.2d 109 (Ga. Ct. App. 2011)..................................16

*Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So.2d 1012 (Fla. 3d DCA 1999) .......15

*Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 932 A.2d 1230 (Pa.
Commw. Ct. 2007)........................................................................................................24

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701 (Ohio 2005)..............16, 17

CVS PHARMACY, INC.'S NOTICE OF MOT.
AND MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

*Cromwell v. Allen*, 151 Ill. App. 404 (Ill. App. Ct. 1909) ..................................................16

*Dean v. Barrett Homes, Inc.*, 8 A.3d 766 (N.J. 2010) ....................................................16

*Delman v. City of Cleveland Heights*, 534 N.E.2d 835 (Ohio 1989).............................................18

*eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002)................................16

*Excavation Techs., Inc. v. Columbia Gas Co.*, 936 A.2d 111 (Pa. Super. Ct. 2007)....................16

*Forish v. Paul*, 2 Pa. D. & C.4th 413 (Ct. Com. Pl., Erie Cty. 1989)............................................19

*G.E. Capital Corp. v. Tartan Fields Golf Club, Ltd.*, 1 N.E.3d 463 (Ohio Ct. App. 2013) ..................................................................................................................................19

*Gaidon v. Guardian Life Ins. Co. of America*, 725 N.E.2d 598 (N.Y. 1999) ..............................23

*Garweth Corp. v. Boston Edison Co.*, 613 N.E.2d 92 (Mass. 1993) ............................................16

*Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d 727 (Ga. 1997) ....................................................................................................................18

*Hawkes v. Lackey*, 93 N.E. 828 (Mass. 1911) ..............................................................................19

*Horizon Grp. of New England, Inc. v. New Jersey Sch. Const. Corp.*, 2011 WL 3687451 (N.J. Super. Ct. App. Div. Aug. 24, 2011)..............................................................16

*Hubbard v. Shankle*, 138 S.W.3d 474 (Tex. App. 2004) ..........................................................19

*Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th 124 (1993).......................................19

*Isbell v. Credit Nation Lending Serv., LLC*, 735 S.E.2d 46 (Ga. Ct. App. 2012)........................23

*Jimenez v. Super. Ct.*, 29 Cal. 4th 473 (2002) ..............................................................................16

*JRS Products, Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168 (2004), *as modified on denial of reh'g* (Feb. 25, 2004)............................................................15

*Kelley v. Carbone*, 837 N.E.2d 438 (Ill. App. Ct. 2005) ..........................................................18

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ......................................20

*Kovac v. Barron*, 6 N.E.3d 819 (Ill. App. Ct. Mar. 7, 2014) ....................................................19

*Kuehn v. Stanley*, 91 P.3d 346 (Ariz. Ct. App. 2004).................................................................17

*LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234 (Tex. 2014) .......................................16

*Larkey v. Health Net Life Ins. Co.*, 2012 WL 2154185 (Ariz. Ct. App. June 14, 2012) .......................................................................................................................................23

CVS PHARMACY, INC.'S NOTICE OF MOT.
AND MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

1    *Long v. Dell., Inc.*, 93 A.3d 988 (R.I. 2014) ..................................................................24

2    *Long v. Humble Oil & Ref. Co.*, 154 S.W.2d 925 (Tex. Civ. App. 1940) ....................16

3    *M & T Bank Corp. v. Gemstone CDO VII, Ltd.*, 891 N.Y.S.2d 578 (App. Div.

4       2009) ...........................................................................................................................19

5    *Marrone v. Philip Morris USA, Inc.*, 850 N.E. 2d 31 (Ohio 2006) ..............................22

6    *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787

7       (Tex. 1999) ..................................................................................................................18

8    *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502 (Md. Ct. Spec. App. 1999) ....................23

9    *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233 (N.Y. 2d Dep't

10      1991) ...........................................................................................................................16

11   *Midtown Chains Hotel Co. v. Merriman*, 48 S.E.2d 831 (Ga. 1948) ...........................19

12   *Mirkin v. Wasserman*, 858 P.2d 568 (Cal. 1993) ........................................................18

13   *Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 325 (Ill.

14      App. Ct. 2004) ............................................................................................................16

15   *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133 (N.J. Super. Ct. 1998)...................19

16   *Nycal Corp. v. KPMG Peat Marwick LLP.*, 688 N.E.2d 1368 (Mass. 1998) ...............18

17   *People Express Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107 (N.J. 1985) ...........18

18   *Premium of Am., LLC v. Sanchez*, 73 A.3d 343 (Md. Ct. Spec. App. 2013) ................18

19   *Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36 (2009) .......................14

20   *Randol Mill Pharmacy v. Miller*, 465 S.W.3d 612 (Tex. 2015) ..................................19

21   *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002)....................23, 24

22   *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) ................................................23

23   *Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 597 N.E.2d 1080 (N.Y.

24      1992) ...........................................................................................................................18

25   *ServiceMaster Co., L.P. v. Martin*, 556 S.E.2d 517 (Ga. 2001) ..................................15

26   *Shaw v. CTVT Motors, Inc.*, 300 P.3d 907 (Ariz. Ct. App. 2013) ...............................16

27   *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306 (Fla. Dist. Ct.

28      App. 2011) ..................................................................................................................18

CVS PHARMACY, INC.'S NOTICE OF MOT.
AND MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

*Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317 (Ariz. Ct. App. 1996) ........................................................................................................................18

*State v. Mark Marks, P.A.*, 698 So. 2d 533 (Fla. 1997) ...........................................19

*Thompson v. UBS Fin. Servs., Inc.*, 115 A.3d 125 (Md. 2015) ...............................19

*Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14 (Ga. 2006) ......................23

*Vagias v. Woodmont Props., L.L.C.*, 894 A.2d 68 (N.J. Super. Ct. App. Div. 2006)...................23

*Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So.2d 1176 (Fla. Dist. Ct. App. 2008) ...............................................................................................16

*Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E. 2d 434 (Ohio 2010) ................................22

*Wilmington Trust Co. v. Clark*, 289 Md. 313 (1981) ...............................................16

*Woodcliff Mgmt., Inc. v. Clark*, 1977 WL 200074 (Ohio Ct. App. Apr. 5, 1977) ........................16

*Younan v. Equifax Inc.*, 111 Cal. App. 3d 498 (1980) ..............................................19

## STATUTES

Ariz. Rev. Stat. Ann. § 44-1522.............................................................................23

Cal. Bus. & Prof. Code § 17200 ............................................................................23

Cal. Civ. Code § 1770 .............................................................................................21

D.C. Code Ann. § 28-3904 .....................................................................................23

D.C. Code Ann. § 28-3905 .....................................................................................20

Fla. Stat. Ann. § 501.204 ........................................................................................23

Fla. Stat. Ann. § 501.211 ........................................................................................20

Ga. Code Ann. § 10-1-399..........................................................................20, 22, 23

Ga. Code Ann. § 23-2-51 ........................................................................................19

815 Ill. Comp. Stat. 510/2 ......................................................................................23

815 Ill. Comp. Stat. 505/10a ..................................................................................20

Mass. Gen. Laws Ann. Chapter 93A, § 2 ..............................................................23

Mass. Gen. Laws Ann. Chapter 93A, § 9 ..............................................................20

Md. Code Ann., Com. Law § 13-301 .....................................................................23

Md. Code Ann., Com. Law § 13-408 .....................................................................20

N.J. Stat. Ann. § 56:8-2 .................................................................................23

N.J. Stat. Ann. § 56:8-19 ...............................................................................20

N.Y. Gen. Bus. Law § 349(a) .........................................................................23

Ohio Rev. Code Ann. § 1345.01 .....................................................................20

Ohio Rev. Code Ann. § 1345.02 .....................................................................23

73 Pa. Cons. Stat. § 201-4.1 ......................................................................20, 23

PSLRA, Pub. L. No. 104-67, 109 Stat. 737 (1995) .........................................8

6 R.I. Gen. Laws § 13.1-1……........................................................................24

6 R.I. Gen. Laws § 13.1-2……........................................................................23

6 R.I. Gen. Laws § 13.1-5.2(a) .......................................................................20

Tex. Bus. & Com. Code § 17.45 .....................................................................22

Tex. Bus. & Com. Code § 17.46…………........................................................22

Tex. Bus. & Com. Code § 17.50 .................................................................20, 22

**OTHER AUTHORITIES**

74 Am. Jur. 2d *Torts* § 24 (2015).................................................................16

Fed. R. Evid. 201 ..............................................................................................5

Fed. R. Civ. P. 8…….......................................................................................20

Fed. R. Civ. P. 9(b) ................................................................................. passim

Fed. R. Civ. P. 12…….......................................................................................6

J.D. Lee & Barry A. Lindahl, 1 *Modern Tort Law: Liability & Litigation* § 2:5 (2d ed. 2015) ...........................................................................................16

Restatement (Second) of Torts § 537..............................................................17

Restatement (Second) of Torts § 552..........................................................18, 19

## **STATEMENT OF ISSUES TO BE DECIDED**

1.  Have Plaintiffs failed to allege with particularity CVS Pharmacy, Inc.'s ("CVS") alleged fraudulent misrepresentations and how those misrepresentations supposedly caused Plaintiffs' injuries, as required by Federal Rule of Civil Procedure 9(b)?

2.  Have Plaintiffs failed to plausibly allege that:

    a.  CVS intended to deceive Plaintiffs or their third-party payors;

    b.  the HSP program itself was deceptive; or that

    c.  CVS's alleged misrepresentation was material to Plaintiffs' purchasing decisions?

3.  Are Plaintiffs' allegations of fraud, constructive fraud, and negligent misrepresentation actually disguised breach of contract claims, such that they are barred by principles distinguishing contract violations from torts?

4.  Does the SAC fail to state a claim for fraud or negligent misrepresentation because CVS did not communicate its alleged misrepresentations to Plaintiffs?

5.  Does the SAC fail to state a claim for negligent misrepresentation because Plaintiffs are not within the "limited group of persons" who received the allegedly false usual and customary ("U&C") prices?

6.  Did CVS have a fiduciary, confidential, or special relationship with Plaintiffs, as required to state a claim for constructive fraud?

7.  Does the SAC fail to state a claim for unjust enrichment because it is duplicative of Plaintiffs' other claims?

8.  Do Plaintiffs lack standing under Article III of the Constitution to bring a claim under the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1 *et seq.*?

9.  Does the SAC fail to state a claim under the California Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, because Plaintiffs fail to allege that CVS committed one of the 26 unlawful practices enumerated in the statute?

10. Does the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-399, permit Plaintiffs to bring a class action against CVS?

11. Does Plaintiff Carolyn Caine fail to state a claim under the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq.* because she failed to (1) comply with the statutory notice requirements, or (2) allege she exercised due diligence to discover the alleged falsity of CVS's U&C prices?

12. Does the SAC fail to state a claim under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.*, because Plaintiffs fail to allege that CVS committed any of the practices "specifically enumerated" in Tex. Bus. & Com. Code § 17.46(b) or any "unconscionable action or course of action," *id.* § 17.50(a)(1)?

13. Does the SAC fail to state a class action claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*, because Plaintiffs fail to allege CVS was on notice that its conduct was deceptive or unconscionable at the time it committed the alleged acts?

14. Does the SAC fail to allege "deceptive" or "unfair" conduct by CVS, as required to state a claim under the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*; California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. §28-3901 *et seq.*; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*; Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann., ch. 93A; New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 *et seq.*; New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349 *et seq.*; Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 et seq.; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*; and Rhode Island Deceptive Trade Practices Act, 6 R.I. Gen. Laws § 13.1-1 *et seq.*?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs, a group of 21 CVS pharmacy customers, allege a consumer "fraud" by CVS that is both implausible and lacks the specificity the Federal Rules require of such claims. Plaintiffs contend that CVS Pharmacy, Inc. ("CVS"), and its parent holding corporation CVS Health Corporation, have perpetrated a fraud for seven years by limiting the pricing benefits of CVS's Health Savings Pass ("HSP") program to customers actually enrolled in that program. That CVS treats customers enrolled in HSP differently from those who are not is hardly surprising or unusual:  only members of Costco, for example, may shop at that store, and only customers enrolled in Amazon's Prime program are entitled to free expedited shipping on Amazon purchases.  Likewise, CVS's HSP program entitles its members to discount pricing for certain generic medicines.   Any CVS customer—including Plaintiffs—can join HSP by completing an enrollment application, agreeing to the program's terms and conditions, and paying an annual membership fee.  Customers who are ***not*** HSP members, and who do not have prescription drug insurance, pay CVS's usual and customary ("U&C") prices for prescriptions.

The U&C price is an industry term meaning the cash price paid by the general public.  A "cash" customer typically means a customer who purchases a drug without using insurance. Plaintiffs allege generally that the pharmacy's U&C price can affect an insurer's calculation of the copayment that a plan beneficiary must pay.  Plaintiffs, who allegedly have prescription drug insurance, claim that CVS caused them to pay "inflated" copayments by reporting to their insurers ("third-party payors") a U&C price reflecting CVS's "retail" price to cash customers, rather than the discounted price reserved for HSP members.  Plaintiffs' claims that they were "defrauded" by the difference between CVS's HSP and U&C pricing fail for multiple reasons.

First, although the entire Second Amended Complaint ("SAC") sounds in fraud, Plaintiffs have not alleged ***facts*** critical to their theory, including (1) the specifics of CVS's alleged fraudulent misrepresentations—what was stated, to whom, and when, about the prices CVS was charging, and why those statements were knowingly false; and (2) any details concerning how Plaintiffs' particular copays were determined, which is critical to demonstrating how CVS's

1   alleged false U&C prices caused Plaintiffs to pay higher copays.  These missing details render

2   the SAC inadequate under Federal Rule of Civil Procedure 9(b).

3       Second, the SAC's allegations do not state a claim because they do not allege any

4   plausible theory of fraud, deception, or other tortious conduct.  Plaintiffs contend that CVS

5   intentionally reported an inaccurate U&C price to their third-party payors, thereby committing

6   several torts and violating 15 state consumer protection laws.  To start, Plaintiffs have not

7   alleged facts to suggest that anyone within CVS believed the HSP price was the U&C price and

8   yet permitted the company to report a price that was knowingly inaccurate.  Thus, even if one

9   assumes the HSP price was the U&C price (which CVS vigorously contests), Plaintiffs'

10  allegations no more suggest CVS **intended** to report inaccurate information than they suggest

11  CVS simply believed its special HSP pricing was reserved for members who had paid the

12  enrollment fee and agreed to the program's terms and conditions.  In addition, Plaintiffs cannot

13  plausibly claim deception here:  the HSP program was publicly known, disclosed in marketing

14  materials, and reported on the Internet.  It is implausible to think that third-party payors were

15  deceived—and intentionally so—when CVS reported a U&C price to payors that, on its face,

16  was **not** the HSP price.  Plaintiffs' claim of intentional fraud is even more implausible because

17  Plaintiffs allege that they intend to continue filling their prescriptions at CVS notwithstanding

18  that they allegedly are being "overcharged."

19      Third, Plaintiffs' claims for fraud, constructive fraud, and negligent misrepresentation are

20  barred because they allege that CVS violated its contractual commitments to Plaintiffs' payors.

21  The law prohibits tort claims for economic damages that arise solely from an alleged breach of a

22  contract.  Yet that is exactly what Plaintiffs are attempting to do:  they are seeking to recover in

23  tort for CVS's alleged non-compliance with (unspecified) contracts between CVS and third-party

24  payors that supposedly limit copayments to an amount no more than the U&C price.  Each of the

25  three claims also fails on its elements, for related reasons.  Plaintiffs cannot recover in fraud for a

26  false statement made to a different party (*i.e.*, the third-party payor) and on which Plaintiffs

27  themselves did not actually rely.  Plaintiffs cannot recover in negligent misrepresentation

28  because they are not within the limited universe of intended recipients of the alleged

1   misrepresentations—the U&C prices reported to third-party payors.   And Plaintiffs cannot
2   recover in constructive fraud because CVS did not owe Plaintiffs any special duty to advise them
3   of the HSP price.

4       Fourth, Plaintiffs' claims under 15 state statutes and for unjust enrichment all fail.   In
5   addition to defects specific to several of the state laws, all of these causes of action require
6   deceptive or wrongful conduct which—for the same reasons described above—does not exist.

7       For these reasons, the Court should dismiss Plaintiffs' SAC with prejudice.

8                           **FACTUAL BACKGROUND**

9       Defendant CVS Pharmacy, Inc. ("CVS") operates one of the largest retail pharmacy
10   chains in the United States.   SAC ¶ 4 (Nov. 3, 2015) [Dkt. No. 49].[1]   In November 2008, CVS
11   introduced its HSP program, which provides special pricing for approximately 400 generic
12   prescription medications ("HSP drugs") to individuals who complete an application, agree to the
13   program's terms and conditions, and pay an annual membership fee.   SAC ¶¶ 59, 61; *id*, Ex. A at
14   3 (referencing "applicable terms of the membership agreement").   Plaintiffs here, 21 CVS
15   pharmacy customers, do not allege that they enrolled in HSP.   Yet they claim CVS "defrauded"
16   them by not reporting to their health insurers the HSP price, which allegedly resulted in Plaintiffs
17   paying higher copayments for HSP drugs covered by their insurance plans.   Plaintiffs cast CVS's
18   policy of limiting HSP pricing to HSP members as various forms of fraud and deceptive conduct
19   in violation of 15 consumer protection statutes.   *Id.* ¶¶ 102–125, 134–260.   For purposes of this
20   motion only, CVS assumes the truth of Plaintiffs' factual allegations, as it must.

21   **I.   Background On Prescription Drugs And Pharmacy Claims.**

22       "About 90% of all United States citizens" are enrolled in insurance plans subsidizing
23   "some or all [of their] medical and pharmaceutical costs."   SAC ¶ 8.   Insurers require their
24   beneficiaries to pay (in addition to premiums) a portion of each prescription in the form of a
25   "copayment[]."   *Id.* ¶ 43.   The formula for apportioning a drug's cost between the insurer (*i.e.*,
26   the "third-party payor," *id.* ¶ 9) and the beneficiary varies by insurance plan.   *See id.* ¶¶ 48, 53,

27   _____
28   [1] Defendant CVS Health Corporation, a holding company and parent entity of CVS Pharmacy,
     Inc., is separately moving to dismiss for lack of personal jurisdiction and failure to state a claim.

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

55.   Unlike insured consumers, individuals without insurance coverage bear the full cost of prescriptions themselves.  *Id.* ¶¶ 8–9.  Plaintiffs describe individuals without insurance as "cash-paying customers."  *Id.* ¶ 12.

CVS pharmacies dispense prescription medicines.  SAC ¶ 6.  When an insured customer fills a prescription at CVS (or any pharmacy), the pharmacist generates a "claim" by transmitting certain patient, prescription, and insurance information electronically to the customer's insurer (or its claims processor).  *Id.* ¶ 47–48.  During this real-time process known as claims "adjudication," *id.* ¶ 48, the insurer responds by (1) confirming the customer is an eligible beneficiary and the drug is a covered benefit; (2) identifying the total amount the pharmacy will receive for dispensing the prescription; and (3) "identify[ing] the copayment amount that the patient must pay to CVS" for the prescription.  *Id.* at ¶¶ 48, 53.  Copayment amounts vary by insurance plan, and Plaintiffs do not allege by what formula, rule, or method their insurers determined their copayments.

The CVS-insurer electronic communications utilize standardized data fields developed by the National Council for Prescription Drug Programs ("NCPDP"), a standard-setting organization for the healthcare industry.  SAC ¶¶ 49, 51.  One data field on NCPDP's standard layout is Field No. 426-DQ, the U&C field.  *Id.* ¶ 52.  According to Plaintiffs, NCPDP defines the U&C price as "the cash price to the general public, which is the amount charged cash customers for the prescription, exclusive of sales tax or other amounts claimed."  *Id.* ¶ 52.  "***In some situations***," Plaintiffs generally allege, "the copayment may only be charged as a percentage of the U&C price."  *Id.* ¶ 55 (emphasis added).  But Plaintiffs do not allege how ***their*** third-party payors determine copayments, or what amounts they (Plaintiffs) actually paid for each prescription.

## II.   The Health Savings Pass Program.

In November 2008, CVS launched HSP, an enrollment-based generic discount program.  SAC ¶ 59.  Although "designed . . . to appeal to price sensitive customers," *id.* ¶ 63, HSP enrollment was (and remains) open to any CVS customer willing to become a member, including individuals with prescription drug insurance.  *Id.* ¶¶ 61 ("open to cash-paying customers"), 80

1   (implicitly acknowledging Plaintiffs were eligible enrollees); Ex. A at 3.   CVS customers

2   carrying insurance may enroll in HSP, although the HSP "[m]embership discount prices cannot

3   be combined with any insurance" on a given purchase.   *Id.*, Ex. A at 3.   To become a member,

4   customers must complete an application, agree to HSP's terms and conditions, and pay an annual

5   enrollment fee ($10 through 2010; $15 since 2011).   *See* SAC ¶ 61, *id.*, Ex. A at 3 ("[E]nroll in-

6   store or online"; "the applicable terms of the membership agreement").   After enrolling, HSP

7   members may purchase a standard 90-day supply of a predefined list of generic medications for a

8   fixed price (*e.g.*, $9.99 through 2010; $11.99 since 2011).   SAC ¶ 61.   For customers who

9   purchase drugs without insurance, and not as part of the HSP program, CVS charges such "cash

10  customers" the pharmacy's "usual and customary charge," *id.* ¶¶ 67, 70—*i.e.*, the "U&C price."

11      No law states that pharmacies must treat as their U&C price the price charged under a

12  fee-based membership drug program.   Indeed, in August 2009, the Department of Health and

13  Human Services, Office of Inspector General ("OIG") reported that the federal agency

14  administering Medicare and Medicaid took no position on the issue:

15          If the pharmacy **charges a fee** to join their discount generic
            program, *[the Center for Medicare & Medicaid Services*
16          *("CMS")] does not have a stated policy as to whether the prices*
            *charged under that program would meet the definition of a usual*
17          *and customary charge to the public*.

18  Declaration of Grant A. Geyerman (Dec. 4, 2015) ("Geyerman Decl."), Ex. 2 at 7 n.26

19  (emphases added).[2]   In other words, OIG reported it was not CMS policy that a pharmacy's

20  membership club price constituted the pharmacy's U&C price.

21      In August 2011, *qui tam* relators filed a lawsuit under the federal False Claims Act

22  ("FCA") and corresponding state statutes alleging that CVS, since 2008, had defrauded the

23  Medicare and Medicaid programs by failing to treat HSP prices as U&C prices.   *See U.S. ex rel.*

24  *Winkelman v. CVS Caremark Corp.*, --- F. Supp. 3d ----, 2015 WL 4577341, at *4 (D. Mass. July

25  29, 2015) (identifying filing date).   The Government declined to intervene in the *Winkelman*

26  _____

27  [2] The Geyerman Declaration is attached to CVS's accompanying Request for Judicial Notice,
    which seeks judicial notice of the OIG Report.   *See* Fed. R. Evid. 201(b)(2); *United States ex rel.*
    *Fox Rx, Inc. v. Omnicare, Inc.*, 38 F. Supp. 3d 398, 406 n.6 (S.D.N.Y. 2014) (taking judicial
28  notice of OIG report on motion to dismiss).

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

action, and on July 29, 2015, the court dismissed that case on CVS's Rule 12 motion under the FCA's "public disclosure bar," which prohibits *qui tam* litigation where the claim's factual premise was public information before the lawsuit was filed. *Winkelman*, 2015 WL 4577341, at *7 ("[T]here was extensive publicity alleging that CVS deprived the government the benefit of its HSP prices."), *id.* at *10 ("[T]he public disclosure provision of the FCA bars this action.").

### III.   This Case.

One day after the court dismissed the *Winkelman* case, Plaintiffs filed this lawsuit. Compl. (July 30, 2015) [Dkt. No. 1] ("Compl."). Originally, seven Plaintiffs from five states brought suit on behalf of themselves and a nationwide putative class of CVS customers. On November 3, 2015, Plaintiffs filed the SAC, the operative pleading here. Compared to the original Complaint, the number of named Plaintiffs has tripled (7 to 21), the number of represented states has more than doubled (5 to 12), and the number of state statutes allegedly violated has nearly doubled (8 to 15). Yet the SAC contains 249 ***fewer*** paragraphs of factual allegations. Plaintiffs' pleading no longer alleges (as the Original and First Amended Complaints did): (1) the specific dates of Plaintiffs' prescriptions, (2) the quantities purchased, (3) the dispensing pharmacies, or (4) the amounts of the allegedly overcharged copayments. *See* Compl. ¶¶ 55–102; Am. Compl. (Oct. 14, 2015) [Dkt. No. 43] ("FAC") ¶¶ 72–669. The SAC tracks the earlier complaints, however, in failing to identify (5) Plaintiffs' health insurers, (6) the formulas or rules by which those insurers calculated Plaintiffs' copayments, and (7) the amount by which Plaintiffs' copayments allegedly would have changed, if any, had CVS reported the HSP price as its U&C price. And, like the earlier complaints, the SAC does not allege that CVS's supposed misrepresentations—the U&C prices—were ever communicated to Plaintiffs, by CVS or by anyone.

The SAC alleges claims for fraud, constructive fraud, negligent misrepresentation, unjust enrichment, and violations of various consumer protection statutes. Plaintiffs seek certification of a nationwide class of CVS customers who (1) purchased HSP-eligible drugs using insurance benefits since November 2008 and (2) paid a copayment greater than either (a) the HSP program price or (b) for customers whose copayments "are calculated as a percentage of the drug price to

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

be paid to CVS," an amount in excess of that percentage multiplied by the HSP price.  SAC ¶ 82.

They also seek, in the alternative, certification of 13 state subclasses.  *Id.*  Plaintiffs request class-

wide monetary and equitable relief, including restitution.  *Id.* at 55–56.

**ARGUMENT**

**I.    THE SAC DOES NOT PLEAD PLAINTIFFS' CLAIMS WITH THE PARTICULARITY REQUIRED BY RULE 9(B).**

"In alleging fraud . . . , a party must state with particularity the circumstances constituting

[the alleged] fraud[.]"  Fed. R. Civ. P. 9(b).  Because Plaintiffs' claims all sound in fraud,[3] they

must all "be accompanied by the who, what, when, where, and how of the misconduct charged."

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted); *see*

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  The

SAC lacks sufficient factual allegations of everything, failing to specify (1) the

misrepresentations CVS supposedly made and the circumstances in which those representations

were made, and (2) how those (unidentified) misrepresentations supposedly resulted in Plaintiffs

being deceived and paying higher copayments.  *In re Exodus Commc'ns, Inc. Sec. Litig.*, 2005

WL 1869289, at *10 n.8 (N.D. Cal. Aug. 5, 2005) ("Rule 9(b) of the Federal Rules of Civil

Procedure requires that plaintiffs . . . specify the alleged fraudulent representations").

**A.    Plaintiffs Do Not Allege CVS's Purported Misrepresentations.**

In its most fundamental failing, the SAC does not allege specifics concerning the

***misrepresentations*** CVS supposedly made during Plaintiffs' prescription purchases.  Plaintiffs

allege CVS "submitted . . . [a] usual and customary price fraudulently inflated above CVS's true

usual and customary price" on claims submitted to their payors, SAC ¶¶ 16–36, but they do not

identify what prices—what dollar amounts—CVS reported during their purchases that, allegedly,

were fraudulent prices.  A complaint that fails to identify the defendant's false statement plainly

---

[3] *See, e.g.*, *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014) (Rule 9(b) applies to negligent misrepresentation); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009) (unjust enrichment), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (consumer protection statutory violations).

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

1    violates Rule 9(b).

2         Furthermore, even had Plaintiffs alleged the U&C prices CVS submitted during their

3    purchases, they have not articulated ***why that the price was false or fraudulent***.  "To allege fraud

4    with particularity, . . . [t]he plaintiff must set forth what is false or misleading about a statement,

5    and why it is false."  *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541,

6    1548 (9th Cir. 1994), *superseded on other grounds by* PSLRA, Pub. L. No. 104-67, 109 Stat. 737

7    (1995).  Plaintiffs allege no facts analyzing CVS's (unidentified) U&C prices and the particulars

8    of Plaintiffs' purchases, claiming merely "CVS is required to charge [Plaintiffs] a copay that

9    does not exceed the usual and customary price."  SAC ¶¶ 16–36.  But that begs the question why

10   CVS's reported price on a particular day was not, in fact, the U&C price for the medicine

11   purchased, in the quantity purchased, on the day of the purchase, at the particular pharmacy.

12   And even if the price was inaccurate, Plaintiffs allege no facts demonstrating that CVS reported

13   that price with ***fraudulent intent***.  Plaintiffs nowhere allege that CVS considered the HSP price

14   to be the U&C price and, nevertheless, reported the "wrong" number.  In short, Plaintiffs simply

15   have not alleged the "circumstances indicating [the] falseness" of CVS's prices.  *In re GlenFed*,

16   42 F.3d at 1548.

17        Underscoring this point, Plaintiffs do not identify with any specificity their purchases in

18   reliance on CVS's supposed misrepresentations.  Plaintiffs do *not* allege the ***names of the drugs***

19   they supposedly purchased, nor the ***dates of the purchases***, nor the ***quantities*** purchased, nor the

20   dispensing ***pharmacies*** involved.  Nor do Plaintiffs even allege the ***copayment paid*** for each at-

21   issue prescription, identifying merely an aggregate "inflated copay[ment]" each Plaintiff

22   allegedly paid (for an unidentified number of prescriptions).  *See, e.g.*, SAC ¶¶ 16 ("overcharged

23   Mr. Corcoran at least $284.79 in inflated copays"), 17 ("overcharged Ms. Gardner at least $12.62

24   in inflated copays").  Although "[t]he principal purpose of pleading in the federal courts is to

25   give the defendant fair notice of the transaction sued upon," Plaintiffs' allegations do not allow

26   CVS to identify those transactions.  *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D.

27

28

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

Cal. 1987); *In re GlenFed*, 42 F.3d at 1548 ("a plaintiff must . . . identify the transaction").[4]

In addition, Plaintiffs remarkably do not even name their **third-party payors**, the entities to whom CVS made its alleged misrepresentations.   Under Plaintiffs' theory, CVS communicated inaccurate U&C prices to Plaintiffs' payors, not to Plaintiffs themselves, SAC ¶¶ 48, 103; those payors then calculated Plaintiffs' copays and instructed CVS what amount to collect, *id.* ¶¶ 48, 53–54.  The payors are thus critical players in Plaintiffs' narrative, yet the SAC erroneously fails to identify "the parties to the misrepresentation." *Edwards*, 356 F.3d at 1066; *Summit Growth Mgmt., LLC v. Marek*, 2012 WL 3886089, at *5 (D. Nev. Sept. 6, 2012) (dismissing complaint alleging defendant "made certain representations to [plaintiff-company] SGM" but failing to specify "to whom [*i.e.*, which employees] these misrepresentations were purportedly made").

Simply put, Plaintiffs' allegations wholly fail to identify CVS's alleged misrepresentations and their surrounding circumstances, leaving unalleged "the basic questions: who, did what, to whom." *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (internal quotation marks omitted). The Court should therefore dismiss Plaintiffs' claims.

### B.     Plaintiffs Do Not Allege How CVS's Supposed Misrepresentations Caused Them To Pay Inflated Copayments.

Because inflated copayments are Plaintiffs' asserted injury, Plaintiffs' failure to plead how their copayments were calculated is an independent failure to plead "who, did what, to whom." *United Bhd. of Carpenters*, 770 F.3d at 842.  The SAC suggests U&C prices may influence copayments in two general respects:  (1) "[i]n **some** situations, the copayment may only be charged as a percentage of the U&C price," and (2) "[**m**]**any** third-party payors . . . forbid CVS from charging plan participants a copayment in excess of the U&C price," meaning U&C provides a ceiling on potential copays.  SAC ¶¶ 55, 66 (emphases added).   But Plaintiffs

---

[4] *See, e.g.*, *Tuan Phan v. Best Foods Int'l Inc.*, 2014 WL 3749988, at *5 (N.D. Cal. July 29, 2014) (dismissing complaint which "only refers generally to 'several' fraudulent transactions during an eight-month period") (citations omitted); *Rodriguez v. U.S. Bank Nat'l Ass'n*, 2012 WL 1996929, at *6 (N.D. Cal. June 4, 2012) (dismissing claim because "complaint contains no specific facts about plaintiff's mortgage transaction . . . or individuals involved").

do not allege these methods apply in every insurance plan, nor that they are the exclusive ways copayments are calculated.  The SAC contains no well-pled allegation that **Plaintiffs' insurers** actually calculated **Plaintiffs' copayments** using these methods, leaving unalleged a critical link to the "logic" of Plaintiffs' case.

Regarding the first method, the SAC nowhere alleges that Plaintiffs' copayments were, in fact, "a percentage of the U&C price."  *Id.* ¶ 55.  Plaintiffs thus provide no basis to infer that had CVS reported lower U&C prices to their insurers, then Plaintiffs' copayments would have declined by a set percentage.

Regarding the second method, each Plaintiff here contends CVS was "required to charge [him or her] a copay that does not exceed the usual and customary price CVS charges for the drug."  *See*, *e.g.*, *id.* ¶¶ 16–36.  Although that allegation implies CVS was contractually prohibited (by a CVS-payor contract) from collecting copayments greater than the U&C price, the SAC does not allege with specificity (or otherwise) any contract, name any insurer with whom CVS contracted, nor attach or quote any contractual provision to that effect.  Simply put, the SAC's vague assertions concerning "require[ments]" on CVS are not adequate to allege how CVS's conduct affected Plaintiffs.  *See, e.g.*, *U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, 2008 WL 9878351, at *1 (E.D. Va. Mar. 13, 2008) ("The Court holds that Godfrey has failed to meet the particularity requirement of Rule 9(b) because he does not possess sufficient substantive knowledge of the terms of the contract to appropriately support an allegation that [defendant] overcharged the [plaintiff].")*, aff'd per curiam*, 360 F. App'x 407 (4th Cir. 2010).  For this independent reason, the SAC should be dismissed under Rule 9(b).

## II.     THE SAC'S FACTUAL ALLEGATIONS DO NOT DEMONSTRATE ANY PLAUSIBLE ENTITLEMENT TO RELIEF.

To the extent the SAC alleges any facts at all in support of Plaintiffs' claims, what emerges from those allegations is only that CVS did not consider its HSP prices within the definition of "usual and customary."  There is no well-pled allegation that CVS deceived Plaintiffs, or anyone else, concerning its interpretation of U&C pricing, or that anyone at CVS "knew" that this interpretation of the U&C definition was (allegedly) "wrong."  In short, the

1    alleged conduct does not add up to fraud or actionable wrongdoing of any kind.

2        "To withstand a motion to dismiss, 'a complaint must contain sufficient factual matter,

3    accepted as true, to state a claim to relief that is plausible on its face.'" *Pirozzi v. Apple, Inc.*,

4    913 F. Supp. 2d 840, 848 (N.D. Cal. 2012) (Gonzalez Rogers, J.) (quoting *Ashcroft v. Iqbal*, 556

5    U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content

6    that allows the court to draw the reasonable inference that the defendant is liable for the

7    misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely

8    consistent with' a defendant's liability, it 'stops short of the line between possibility and

9    plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

10   (2007)).[5] Because Plaintiffs' allegations here do not demonstrate a plausible entitlement to relief

11   on several levels, the entire SAC should be dismissed with prejudice. *Elliott v. Mortg. Elec.*

12   *Registration Sys., Inc.*, 2013 WL 1820904, at *5 (N.D. Cal. Apr. 30, 2013) (Gonzalez Rogers, J.)

13   (dismissing complaint without leave to amend for, *inter alia*, failing to allege a plausible claim).

14        **A.    Plaintiffs' Allegations Do Not Plausibly Demonstrate Intent To Deceive.**

15        Plaintiffs' claims all depend on the contention that (1) CVS reported inaccurate U&C

16   prices that (2) CVS knew were not, in fact, its U&C prices,[6] which (3) deceived Plaintiffs into

17   paying inflated copayments (or deceived their payors into charging same). Citing the NCPDP

18   industry standard, Plaintiffs contend the U&C price is "generally defined as the cash price to the

19   general public" or "the amount charged cash customers for the prescription." SAC ¶ 52.

20   Plaintiffs acknowledge CVS charged cash-paying customers who were ***not*** HSP members a price

21   that was not the HSP price—what Plaintiffs label CVS's "retail price." *Id.* ¶ 67. Plaintiffs

22   nonetheless assert CVS wrongly reported that "retail price" as the U&C price on insured

23

24   [5] *See, e.g.*, *Twombly*, 550 U.S. at 554 ("parallel conduct" insufficient to allege an antitrust
     conspiracy where conduct "just as much in line with a wide swath of rational and competitive

25   business strategy" as with anticompetitive conspiracy); *Iqbal*, 556 U.S. at 682–83 (government
     involvement in setting policy regarding detention of individuals, largely comprised of Arab

26   Muslims, was insufficient to plausibly allege intentional discrimination, where "obvious
     alternative explanation" was non-discriminatory security measures had disparate impact).

27

28   [6] Or, in the case of Plaintiffs' negligent misrepresentation claim, CVS allegedly "negligently"
     reported an inaccurate U&C price.

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

customers' pharmacy claims instead of reporting the HSP price as the U&C price.  This theory does not satisfy the *Twombly-Iqbal* plausibility standard.

Even if reasonable minds could disagree over whether the HSP price constitutes "the cash price to the general public," SAC ¶ 52, Plaintiffs have not alleged facts showing CVS ***intended*** to report a price it ***knew*** was erroneous—*i.e.*, that CVS believed the HSP price was, in fact, its U&C price but nevertheless reported a different price.  Plaintiffs do not identify anyone within CVS (or anywhere) who believed the HSP price was the U&C price.  For example, it names no CVS employees, no internal conversations, no meetings, etc., supporting an inference that CVS designed HSP as part of a "fraudulent and deceptive pricing scheme" to intentionally misreport U&C prices.  *Id.* ¶ 2.  Indeed, Plaintiffs' allegations suggest the opposite:  CVS reported U&C prices consistent with one reasonable interpretation of NCPDP's definition.  NCPDP's definition does not say a pharmacy's membership program price constitutes its "cash price to the general public;" the SAC identifies no other authority supporting that conclusion; and, at the same time, Plaintiffs concede CVS reported as its U&C price the "retail price" charged to some "cash customers" (*i.e.*, those customers not enrolled in HSP).  *Id.* ¶ 67.  Thus, Plaintiffs' allegations no more suggest CVS intentionally (or even "negligently") reported an inaccurate price than they suggest the company considered (and still considers) its "retail price" its "cash price to the general public."

Underscoring this point, the federal agency administering Medicare and Medicaid itself "does not have a stated policy" that a fee-based membership program price "meet[s] the definition of a usual and customary charge to the public."  Geyerman Decl., Ex. 2 at 7 n.26. Indeed, the SAC cites no legal authority stating that a membership program price ***is*** "the cash price to the general public." SAC ¶ 52.  Thus, at best Plaintiffs' allegations raise an interpretive question concerning the definition of usual and customary, but reasonable disputes of law do not amount to fraud, as a matter of law.  *See, e.g.*, *Cruz v. Am. Airlines*, 150 F. Supp. 2d 103, 115 (D.D.C. 2001) ("[I]n light of the unsettled state of the law . . .  [defendant's] statements do not constitute misrepresentations"), *aff'd sub nom*. 356 F.3d 320 (D.C. Cir. 2004).

Further underscoring the implausibility of intentional deceptiveness, Plaintiffs do not

allege their payors considered such an interpretation of NCPDP's definition unreasonable or even incorrect—that is, that payors considered the HSP price "the cash price to the general public."  If one accepts Plaintiffs' premise that U&C prices have financial implications, Plaintiffs' payors have a substantial financial interest in ensuring that CVS reported the lowest U&C price possible, because payors have financial exposure for all prescriptions CVS dispenses for beneficiaries covered by their plans.  SAC ¶ 8.  Given this, the SAC's omission of any allegations that Plaintiffs' payors themselves believed CVS's HSP price was the pharmacy's U&C price further militates against inferring that CVS *intentionally* submitted a price it believed was inaccurate.  *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense.").  Because the SAC's allegations "stop[] short of the line between possibility and plausibility of entitlement to relief," their claims should be dismissed with prejudice.  *Iqbal*, 556 U.S. at 678 (quotations omitted).

### B.     Plaintiffs' Allegations Demonstrate The HSP Program Was Not Deceptive.

The SAC not only lacks any plausible claim that CVS *intended* to deceive anyone, it also does not demonstrate that the HSP program itself was *deceptive* in any way.  Absent deception, Plaintiffs' fraud-based claims and consumer protection statutory claims fail.  *See, e.g.*, *Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 961 (N.D. Cal. 2002) (finding no fraud where plaintiffs could not show defendant believed statement was false or spoke with intent to mislead); *Netbula, LLC v. BindView Dev. Corp.,* 516 F. Supp. 2d 1137, 1154 (N.D. Cal. 2007) (dismissing fraud claim where no evidence defendants "had the requisite scienter or knowledge that either representation was false"); *infra* Part IV.F.

As a threshold matter, on each pharmacy claim submitted for adjudication, CVS provided the payor a dollar amount in the U&C field that, as Plaintiffs admit, plainly was *not* the HSP price.  SAC ¶¶ 52, 70.  Plaintiffs do not begin to explain how payors could therefore be misled to conclude the reported price reflected CVS's special HSP price.   After all, the HSP program was public knowledge.   It was publicized in in-store HSP marketing materials and posted on www.cvs.com/HealthSavingsPass.  *Id.*, Ex. A (referencing website).  Any customer could enroll

in the program, SAC ¶ 61; Plaintiffs do not (and cannot) allege insured customers were prohibited from enrolling. The program was even so popular that prescriptions filled under the program, allegedly, accounted for "most" of CVS's prescriptions to non-insured customers. *Id.* ¶ 68. If, as Plaintiffs say, "the HSP price is CVS's U&C price" because (1) "HSP drug prices [were] available to the general public," *id.*, and (2) the program grew in popularity to the point that HSP transactions comprised over "50 percent" of CVS's prescriptions to non-insured customers, *id.* ¶¶ 14, 68–69, then it is completely implausible to believe sophisticated insurance companies were deceived by information they failed to understand. Simply put, Plaintiffs allege no facts plausibly demonstrating how the HSP program and price were deceptive.

### C. Plaintiffs' Allegation They Will Continue Filling The Same Prescriptions At CVS Defeats Any Plausible Claim Of Material Misrepresentation.

Plaintiffs' basic theory is also implausible because they allege that each of them "anticipates filling future prescriptions for these generic drugs at a CVS pharmacy, and thus faces the prospect of paying additional inflated copays." SAC ¶¶ 16–36. In other words, although Plaintiffs claim now to know of CVS's alleged misconduct, *id*. ¶ 99, they will nevertheless continue filling prescriptions at CVS pharmacies just as they previously have. If, as Plaintiffs claim, they truly were deceived by CVS from HSP's inception seven years ago until their "recent" discovery, *id*., and if the newly "discovered" information really was material to their purchase decisions, it makes no sense that Plaintiffs would continue filling prescriptions at CVS knowing they are being "overcharged."[7]

### III. THE COMMON LAW CLAIMS FAIL FOR ADDITIONAL REASONS.

In addition to their fundamental implausibility and lack of particularity, Plaintiffs'

---

[7] Plaintiffs' allegation also negates, as a matter of law, the causation and/or reliance elements necessary for each of their claims. In consumer fraud cases, when the plaintiff admits she would have purchased the product anyway, courts find causation and reliance lacking, including on motions to dismiss. *See, e.g.*, *Ironworkers Local Union No. 68 & Participating Emp'r Health & Welfare Funds v. Astrazeneca Pharm., LP*, 585 F. Supp. 2d 1339, 1345 (M.D. Fla. 2008) (dismissing claim; "[p]laintiffs' affirmations that they continued to pay for [the drug] even after Defendants' alleged misconduct was uncovered" foreclosed causation); *Red v. Kraft Foods, Inc.*, 2011 WL 4599833, at *12 (C.D. Cal. Sept. 29, 2011) (plaintiff's continued purchase "almost certainly destroy[s]" reliance); *Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 43–44 (2009) (intention to purchase vacation without respect to cost forecloses reliance).

common law claims for fraud, constructive fraud, negligent misrepresentation, and unjust enrichment all fail on their elements.  Plaintiffs' claims turn on CVS's alleged failure to report HSP prices *to Plaintiffs' third-party insurers* as U&C prices.

As a threshold matter, the first three claims erroneously attempt to manufacture torts out of what, in substance, is CVS's alleged breach of a contractual commitment (to parties other than Plaintiffs) not to charge higher than U&C prices.  The law prohibits asserting contract claims as torts.  In addition, (1) the fraud and negligent misrepresentation claims fail because Plaintiffs have not alleged that CVS's alleged misrepresentation (*i.e.*, the reported U&C price) was ever communicated to them as opposed to others, (2) Plaintiffs are not within the class of parties with standing to bring negligent misrepresentation claims; (3) CVS owed Plaintiffs no duty, let alone a fiduciary or other special duty, to advise them about its HSP prices during their purchases, which bars constructive fraud; and (4) the unjust enrichment claim fails for lack of any actionable wrongdoing and because it duplicates Plaintiffs' other claims.

### A.   Plaintiffs' Tort Claims (Counts 1–3) Are Disguised Breach Of Contract Claims.

Plaintiffs supposedly "pa[id] significantly more in copayments" than they should have.  SAC ¶ 9.  That economic injury arose, the argument goes, because CVS reported U&C prices that violated a "require[ment]," *id. at* ¶¶ 16–36, reflected in CVS's contracts with "third-party payors," not to charge insured customers "a copay that . . . exceed[ed] the usual and customary price CVS charges for the prescription drug."  *E.g.*, *id.* ¶¶ 16–36, 65 ("This is clear in contracts, network pharmacy manuals, payor sheets"), 66 ("[T]he third-party payors forbid CVS from charging plan participants a copay in excess of the U&C.").  Plaintiffs are not parties to those CVS-payor contracts; thus Plaintiffs have not sued (and cannot sue) CVS for breach of contract.  Instead, Plaintiffs have framed CVS's alleged contractual non-compliance as various torts.  The law prohibits this, in every jurisdiction relevant to this case.[8]  The long-standing principle that a

---

[8] *See Barmat v. John & Jane Doe Partners A-D*, 747 P.2d 1218, 1222 (Ariz. 1987); *JRS Products, Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183 (2004), *as modified on denial of reh'g* (Feb. 25, 2004); *Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So.2d 1012, 1014 (Fla. 3d DCA 1999); *ServiceMaster Co., L.P. v. Martin*, 556 S.E.2d 517, 523 (Ga. 2001);

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

breach of contract is not a tort is sometimes described as the "Economic Loss Doctrine":

> If tort claims are based on duties that are imposed by contract, then under the economic-loss rule, contract law provides the remedies for economic losses. The economic-loss doctrine forbids a party from suing or recovering in tort for economic or pecuniary losses that arise only from breach of contract or are associated with the contract relationship. In other words, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach-of-contract claim.

74 Am. Jur. 2d *Torts* § 24 (2015); *see* J.D. Lee & Barry A. Lindahl, 1 *Modern Tort Law: Liability & Litigation* § 2:5 (2d ed. 2015) ("The modern focus . . . of the economic loss doctrine . . . is on the source of the duty that was breached. Thus all contract duties—no matter how intentional—must be enforced pursuant to contract law."). Plaintiffs' home states recognize the Economic Loss Doctrine.[9]

Because Plaintiffs claim is that CVS breached a contractual duty (*i.e.*, the supposed "require[ment]" to not charge a copayment above the pharmacy's U&C price), Plaintiffs are improperly seeking to convert contract claims—claims they have no standing to assert—into tort claims. Insofar as Plaintiffs contend they have not received the full benefits from their insurance

---

*Cromwell v. Allen*, 151 Ill. App. 404, 406 (Ill. App. Ct. 1909); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328 (1981); *Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368 (1997); *Horizon Grp. of New England, Inc. v. New Jersey Sch. Const. Corp.*, 2011 WL 3687451, at *5 (N.J. Super. Ct. App. Div. Aug. 24, 2011); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234 (N.Y. 2d Dep't 1991); *Woodcliff Mgmt., Inc. v. Clark*, 1977 WL 200074, at *1 (Ohio Ct. App. Apr. 5, 1977); *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002); *Long v. Humble Oil & Ref. Co.*, 154 S.W.2d 925, 933 (Tex. Civ. App. 1940), *writ refused W.O.M.* (Dec. 10, 1941).

[9] *See Shaw v. CTVT Motors, Inc.*, 300 P.3d 907, 909–10 (Ariz. Ct. App. 2013); *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 483 (2002); *Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So.2d 1176, 1180 (Fla. Dist. Ct. App. 2008); *City of Atlanta v. Benator*, 714 S.E.2d 109, 116 (Ga. Ct. App. 2011); *Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 325, 247–48 (Ill. App. Ct. 2004); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 11 (Md. 2013); *Garweth Corp. v. Boston Edison Co.*, 613 N.E.2d 92, 94 (Mass. 1993); *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 777 (N.J. 2010); *Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*, 620 N.Y.S.2d 196, 198 (App. Div. 1994); *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 705 (Ohio 2005); *Excavation Techs., Inc. v. Columbia Gas Co.*, 936 A.2d 111, 113–14 (Pa. Super. Ct. 2007); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 236 (Tex. 2014). While some states find that the Economic Loss Doctrine does not bar negligent misrepresentation claims under Section 552 of the Restatement (Second) of Torts, Plaintiffs here do not state a negligent misrepresentation claim under the elements of Section 552. *See infra* Part III.C.

1    coverage, their dispute is with their insurers.  But that complaint does not create tort liability for

2    CVS.  *See, e.g.*, *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 705 (Ohio

3    2005) (economic loss doctrine barred new hotel purchaser from asserting tort claims against

4    concrete subcontractor where purchaser contracted with general contractor and not

5    subcontractor; subcontractor "ha[d] no duty . . . to protect [purchaser] from purely economic

6    [injury]").

7          **B.    Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail Because They**
           **Do Not Allege CVS's U&C Prices Were Communicated To Plaintiffs (Counts**
8          **1 and 3).**

9          Under the common law of Plaintiffs' home states, claims of fraud and negligent

10   misrepresentation both require, among other elements, (1) a misrepresentation of fact and (2) the

11   plaintiff's reliance on the misrepresentation.  Plaintiffs fail to state a claim for these two torts

12   because they do not allege that CVS's purported misrepresentation—its "false" U&C price—was

13   ever communicated to them.  Rather, CVS reported the U&C price to insured customers' third-

14   party payors on electronic pharmacy claims during the adjudication process.  SAC ¶ 11.

15         It is hornbook law that reliance on a false statement requires ***actually receiving*** the

16   statement, whether from the defendant directly or (sometimes) through an intermediary.  *See*

17   Restatement (Second) of Torts § 537 (1977) (confining reliance to the "recipient of a fraudulent

18   misrepresentation").  On this principle, courts in this District routinely dismiss fraud and

19   negligent representation claims where the plaintiff does not allege having seen or otherwise

20   received the purportedly false statement.  *See, e.g., Jones v. AIG Risk Mgmt., Inc.*, 726 F. Supp.

21   2d 1049, 1058 (N.D. Cal. 2010) (no reliance where misrepresentations "made to [plaintiffs'

22   employer] and not to [plaintiff] herself"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047

23   (N.D. Cal. 2014) (no allegation plaintiffs "saw any particular representation"); *accord Pooshs v.*

24   *Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1026–27 (N.D. Cal. 2012) ("no evidence that

25   plaintiff relied on any affirmative [false] statement of any defendant").  Cases in Plaintiffs' home

26   states are to the same effect.[10]  Under these well-established authorities, the SAC's failure to

27

28   _____
     [10] *See, e.g., Kuehn v. Stanley*, 91 P.3d 346, 350 (Ariz. Ct. App. 2004) (non-reliance because
     plaintiffs were "already contractually bound to purchase the property . . . before they received the

1  allege that CVS's U&C price was actually communicated to Plaintiffs forecloses reliance,

2  barring any fraud or negligent misrepresentation claim.

3      **C.   The Negligent Misrepresentation Claim (Count 3) Fails Because Plaintiffs Are Not Within The "Limited Group" For Which CVS Reported The U&C Price To Adjudicate Pharmacy Claims.**

4

5      Even had they somehow received the alleged "misrepresented" U&C price, Plaintiffs

6  could not sue for negligent misrepresentation because they are not within the class of recipients

7  who could bring such a claim.  With the exception of New York (which imposes an even stricter

8  standard),[11] Plaintiffs' home states have endorsed the explanation of negligent misrepresentation

9  in Section 552 of the Restatement (Second) of Torts.[12]  Under Section 552, a plaintiff must be

10  among the "limited group of persons" who receive (negligently) false information "in their

11  business transactions" and to whom the defendant intended the information be used in such

12  transactions.  Plaintiffs, individual consumers, are not part of that limited group.  Rather, CVS

13  reports its U&C price to payors during the claims "[a]djudication" process wherein payors

14  "verif[y] and/or confirm[] . . . patient eligibility for insurance . . . [and] set[] the reimbursement

15  amount and any applicable copayment."  SAC ¶ 48.  Stated more simply, the U&C price

16  allegedly factors into a payor's apportionment of the prescription cost under the payor's cost-

17

18  [false] appraisal"); *Mirkin v. Wasserman*, 858 P.2d 568, 570 (Cal. 1993) (answering negatively
    "whether plaintiffs, who cannot allege that they actually read or heard the alleged
19  misrepresentations, have pled a cause of action for deceit"); *In re Cascade Int'l Sec. Litig.*, 840
    F. Supp. 1558, 1571 (S.D. Fla. 1993) (dismissing fraud count for non-reliance where plaintiff did
20  not allege actual reliance on misrepresentations but, instead, "the more general reliance on the
    market" theory).

21

22  [11] In New York, a plaintiff must allege privity or near privity with the defendant making the false
    statement.  *Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 597 N.E.2d 1080, 1087
23  (N.Y. 1992).  The SAC does not allege CVS and Plaintiffs were in privity or near privity.

24  [12] *See Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 340 (Ariz. Ct. App. 1996);
    *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 414 (1992); *Specialty Marine & Indus. Supplies, Inc.*
25  *v. Venus*, 66 So. 3d 306, 310 (Fla. Dist. Ct. App. 2011); *Hardaway Co. v. Parsons, Brinckerhoff,*
    *Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997); *Kelley v. Carbone*, 837 N.E.2d 438,
26  440–41 (Ill. App. Ct. 2005); *Premium of Am., LLC v. Sanchez*, 73 A.3d 343, 357 (Md. Ct. Spec.
    App. 2013); *Nycal Corp. v. KPMG Peat Marwick LLP.*, 688 N.E.2d 1368, 1371–72 (Mass.
27  1998); *People Express Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 112–13 (N.J. 1985);
    *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989); *Bilt-Rite Contractors,*
28  *Inc. v. Architectural Studio*, 866 A.2d 270, 285–86 (Pa. 2005); *McCamish, Martin, Brown &*
    *Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

1  sharing rules.  Although insured consumers may be **affected by** the payor's determinations in this

2  process, they are not part of the "limited group" for "whose benefit and guidance [CVS] intends

3  to supply the information" for adjudication.  Restatement (Second) of Torts § 552(2)(a).  Payors

4  are that group.  For this independent reason, Plaintiffs fail to state a claim.

5  **D.    The Constructive Fraud Claim (Count 2) Fails Because CVS Had No Duty To Disclose Its HSP Price To Plaintiffs, Let Alone Pursuant To A Fiduciary, Confidential, Or Special Relationship.**

6

7      To state a constructive fraud claim based on "material . . . omissions," SAC ¶ 112,

8  Plaintiffs must demonstrate that CVS had a "fiduciary," "special," or "confidential" duty to

9  disclose the HSP program price to them during their prescription purchases.[13]  CVS owed

10  Plaintiffs no such duty, and the SAC identifies no authority suggesting otherwise.  CVS has not

11  located a case holding that a pharmacist owes a customer such heighted duties regarding a drug's

12  purchase price, the allegedly concealed information here.  SAC ¶ 112 ("CVS breached its duty . .

13  . by making material . . . omissions regarding the true U&C prices").  Where cases have found a

14  pharmacist owed special duties, the pharmacist's role as a healthcare provider was at issue (*e.g.*,

15  informing consumers how to take medication, maintaining confidentiality over personal health

16  information, and correcting obvious errors made by other healthcare professionals).  *See, e.g.*,

17  *Forish v. Paul*, 2 Pa. D. & C.4th 413, 416–17 (Ct. Com. Pl., Erie Cty. 1989); *Huggins v. Longs*

18  *Drug Stores California, Inc.*, 6 Cal. 4th 124, 132 (1993); *Randol Mill Pharmacy v. Miller*, 465

19  S.W.3d 612, 618–19 (Tex. 2015).  Plaintiffs are not contending that CVS provided them

20  inadequate healthcare services, and thus fail to allege that CVS had the fiduciary, special, or

21  confidential duty necessary to support constructive fraud.

22

23

---

[13]  *Brazee v. Morris*, 204 P.2d 475, 477 (Ariz. 1949); *Younan v. Equifax Inc.*, 111 Cal. App. 3d
498, 517 (1980); *State v. Mark Marks, P.A.*, 698 So. 2d 533, 539 (Fla. 1997); *Midtown Chains
Hotel Co. v. Merriman*, 48 S.E.2d 831, 832–33 (Ga. 1948); Ga. Code Ann. § 23-2-51; *Kovac v.
Barron*, 6 N.E.3d 819, 833 (Ill. App. Ct. Mar. 7, 2014); *Thompson v. UBS Fin. Servs., Inc.*, 115
A.3d 125 (Md. 2015); *Hawkes v. Lackey*, 93 N.E. 828, 830 (Mass. 1911); *N.J. Econ. Dev. Auth.
v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. 1998); *M & T Bank Corp. v.
Gemstone CDO VII, Ltd.*, 891 N.Y.S.2d 578, 581 (App. Div. 2009); *G.E. Capital Corp. v. Tartan
Fields Golf Club, Ltd.*, 1 N.E.3d 463, 469–70 (Ohio Ct. App. 2013); *Basile v. H & R Block, Inc.*,
777 A.2d 95, 101–03, 107 (Pa. Super. Ct. 2001); *Hubbard v. Shankle*, 138 S.W.3d 474, 483
(Tex. App. 2004).

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

1     **E.     The Unjust Enrichment Claim (Count 4) Is Duplicative.**

2         Plaintiffs' unjust enrichment claim arises out of the same alleged factual predicate as

3     their other claims—"CVS knowingly charg[ing] plan participants artificially high copayments."

4     SAC ¶ 127.  In addition, the claim purports to seek "restitution," *id*. ¶ 133, which in this case

5     means the same monies asserted as compensatory damages (*i.e.*, the "copayments . . . far higher

6     than the prices they would have paid"), *id*. ¶ 107, and the same remedy available under the

7     consumer protection statutes Plaintiffs invoke.[14]   Accordingly, the Court should dismiss the

8     claim as "duplicative" and "superfluous" given Plaintiffs' other claims.  *See, e.g.*, *Hendricks v.*

9     *StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) (Gonzalez Rogers, J.) (dismissing

10    "duplicative" unjust enrichment claim); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 967 (N.D.

11    Cal. 2013) (dismissing "superfluous" unjust enrichment claim); *In re Apple & AT&T iPad*

12    *Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs can not

13    [sic] assert unjust enrichment claims that are merely duplicative of statutory or tort claims").  For

14    the same reasons the other claims fail on the merits, CVS's conduct cannot be called "unjust."

15    **IV.    THE STATUTORY CLAIMS FAIL FOR ADDITIONAL REASONS.**

16        Beyond their failure to state a plausible claim for relief under Rule 8, or to comply with

17    the particularity requirement of Rule 9(b), *see supra* Parts I–II, Plaintiffs' 15 statutory claims fail

18    for additional reasons, which we address in turn.

19    **A.     The Rhode Island Deceptive Trade Practices Act Claim (Count 5) Fails.**

20        Plaintiffs' claim under the Rhode Island Deceptive Trade Practices Act fails because they

21    do not allege having purchased prescriptions in Rhode Island.  Plaintiffs therefore lack Article III

22    standing to assert that claim.  Article III standing "is a jurisdictional element that must be

23    satisfied prior to class certification."  *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997)

24    (citation omitted); *Nelsen v. King County*, 895 F.2d 1248, 1249-50 (9th Cir. 1990).  Courts in this

25    ───────────────

26    [14] 6 R.I. Gen. Laws § 13.1-5.2(a); *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992);
      *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003); *Hendricks*, 30 F.
27    Supp. 3d at 933; Fla. Stat. Ann. § 501.211; D.C. Code Ann. § 28-3905(K); Ga. Code Ann. § 10-
      1-399; 815 Ill. Comp. Stat. 505/10a; Md. Code Ann., Com. Law § 13-408; Mass. Gen. Laws
28    Ann. Ch. 93A, § 9(1); N.J. Stat. Ann. § 56:8-19; Ohio Rev. Code Ann. § 1345.01; 73 Pa. Cons.
      Stat. § 201-4.1; Tex. Bus. & Com. Code § 17.50.

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

District consistently have dismissed claims where a named plaintiff attempts to assert consumer protection claims on behalf of putative class members whose alleged injuries arise under the laws of states in which no named plaintiff claimed to (1) reside or (2) have purchased the product at issue.[15]  Because Plaintiffs do not allege filling prescriptions in Rhode Island, they lack standing to assert claims under the Rhode Island statute.  *See Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) (dismissing claims under Rhode Island's Deceptive Trade Practices Act for class representative's lack of standing).

### B.   The California Legal Remedies Act Claim (Count 7) Fails.

To state a claim under the California Legal Remedies Act ("CLRA"), a plaintiff must allege that the defendant committed one of 26 specific unlawful practices enumerated in the statute.  Cal. Civ. Code § 1770; *Webb v. Carter's Inc.*, 272 F.R.D. 489, 501 (C.D. Cal. 2011).  CVS's alleged conduct is not an enumerated practice.  Indeed, Plaintiffs do not even attempt to identify which CLRA provision CVS supposedly violated.  SAC ¶¶ 152–163.  Accordingly, the claim should be dismissed.  *Burton v. Nationstar Mortg. LLC*, 2013 WL 2355524, at *15 (E.D. Cal. May 29, 2013) (dismissing CLRA claim for "failure to tether meaningfully [defendant's] alleged wrongs to a CLRA violation").

### C.   The Ohio Consumer Sales Practices Act Class Claims (Count 11) Fail.

Plaintiffs Ken Bolin and Walter Wulff purport to assert class claims under the Ohio Consumer Sales Practices Act ("CSPA").  SAC ¶ 187.  Under the CSPA, however, consumers may not seek relief through a class action unless "the defendant was sufficiently on notice that its conduct was deceptive or unconscionable," *In re Porsche Cars N. Am., Inc., Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012), which can only occur if

---

[15] *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *17 (N.D. Cal. Oct. 2, 2014) (Gonzalez Rogers, J.) (dismissing claims under state laws where no named plaintiff resided because "regardless of whether the issue is characterized as one of 'standing' or adequacy and typicality, this District consistently has applied the principle that '[a] class [representative] cannot assert a claim on behalf of an individual that they cannot represent'"); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (same); *accord Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) ("consumer protection laws of the jurisdiction in which the transaction took place" control).

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

1  "(1) a specific rule or regulation has been promulgated [by the Ohio Attorney General] that

2  specifically characterizes the challenged practice as unfair or deceptive, or (2) an Ohio state

3  court has found the specific practice either unconscionable or deceptive in a decision open to

4  public inspection." *Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E. 2d 434, 441 (Ohio

5  2010).  Neither circumstance has occurred here, foreclosing class claims under the CSPA.  *Id.* at

6  441 (dismissing class claim); *Marrone v. Philip Morris USA, Inc.*, 850 N.E. 2d 31, 38 (Ohio

7  2006) (reversing judgment upholding certification).

8        **D.**     **The Texas Deceptive Trade Practices Act Claim (Count 12) Fails.**

9        The Texas Deceptive Trade Practice and Consumer Protection Act permits a consumer to

10  bring an action based on (1) practices "specifically enumerated" in Texas Business and

11  Commercial Code § 17.46(b); or (2) any "unconscionable action or course of action by any

12  person," Tex. Bus. & Com. Code § 17.50(a)(1) & (3).  CVS's alleged conduct is neither

13  enumerated in Section 1746(b) nor "unconscionable," meaning an "act or practice which, to a

14  consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity

15  of the consumer to a grossly unfair degree." *Id.* § 17.45(5).  Plaintiff Pacheco does not claim she

16  lacks the "knowledge, ability, experience, or capacity" to determine that her copayments

17  exceeded the publicly-available HSP price.  Nor can she plausibly claim CVS "t[ook] advantage"

18  of her when she "anticipates filling future prescriptions for these generic drugs" at CVS despite

19  knowing she will not receive HSP pricing.  SAC ¶ 25.  Her claim should be dismissed.  *See*

20  *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 687–88 (N.D. Tex. 2006) (dismissing TDTPA

21  claim; "proving unconscionability . . . is difficult").

22        **E.**     **The Georgia Fair Business Practices Act Claim (Count 19) Fails.**

23        Plaintiff Carolyn Caine brings class claims under the Georgia Fair Business Practices Act

24  ("FBPA"), which are foreclosed by the statute's explicit bar on class actions.  Ga. Code Ann. §

25  10-1-399(a) (no claims "in a representative capacity"); *In re New Motor Vehicles Canadian Exp.*

26  *Antitrust Litig.*, 241 F.R.D. 77, 83 (D. Me. 2007) (FBPA "eliminat[ed] . . . the consumer's ability

27  to use a class action"), *vacated in part on other grounds*, 522 F.3d 6 (1st Cir. 2008).

28        Caine's individual claim also should be dismissed.  First, she does not allege having

1   complied with the statutory pre-suit notice requirement, which is an independent basis for

2   dismissal.  Ga. Code Ann. § 10-1-399; *Alvear v. Sandy Springs Toyota, Inc.*, 775 S.E. 2d 172

3   (Ga. Ct. App. 2015).  Second, she does not allege facts showing that she exercised due diligence

4   to discover the alleged falsity of CVS's U&C prices, as Georgia law requires.  *Tiismann v. Linda*

5   *Martin Homes Corp.*, 637 S.E.2d 14, 18 (Ga. 2006) ("When the alleged FBPA violation is a

6   misrepresentation, the consumer must show that [s]he exercised due diligence to ascertain the

7   falsity of the statement.").  Caine's failure to allege facts establishing due diligence therefore

8   bars her individual claim.  *See, e.g.*, *id.* at 18; *Isbell v. Credit Nation Lending Serv., LLC*, 735

9   S.E.2d 46, 57 (Ga. Ct. App. 2012).

10      **F.   The Remaining Statutory Claims Fail (Counts 5, 6, 8–11, 13–18).**

11      Finally, Plaintiffs do not allege facts showing that CVS's conduct was "deceptive" or

12   "unfair," dooming their claims under the consumer protection statutes of Arizona, California

13   (Unfair Competition Law or "UCL"), the District of Columbia, Florida, Illinois, Maryland,

14   Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Rhode Island.[16]

15      **1.   "Deceptive" Conduct**

16      All 12 states expressly prohibit "deceptive" acts or practices.  Although each state defines

17   "deceptive" differently, a common requirement across jurisdictions is that the defendant's

18   conduct have the "capacity or tendency to deceive" or to create "confusion and

19   misunderstanding."[17]  For the reasons discussed in Part II.B, Plaintiffs have not demonstrated

20

21   ───────────────
   [16] *See* Ariz. Rev. Stat. Ann. § 44-1522(A); Cal. Bus. & Prof. Code § 17200; D.C. Code Ann. §
22   28-3904; Fla. Stat. Ann. § 501.204(1); 815 Ill. Comp. Stat. 510/2; *Robinson v. Toyota Motor
   Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002); Md. Code Ann., Com. Law § 13-301; Mass. Gen.
23   Laws Ann. ch. 93A, § 2(a); N.J. Stat. Ann. § 56:8-2; N.Y. Gen. Bus. Law § 349(a); Ohio Rev.
   Code Ann. § 1345.02; 73 Pa. Cons. Stat. Ann. § 201-2(4); 6 R.I. Gen. Laws § 13.1-2.  As
24   discussed above, the Ohio and Rhode Island claims also fail for other reasons.

25   [17] *Larkey v. Health Net Life Ins. Co.*, 2012 WL 2154185, at *3 (Ariz. Ct. App. June 14, 2012)
   (defining deceptive); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000); *Search v. Uber
26   Techs., Inc.*, --- F. Supp.3d ----, 2015 WL 5297508, at *9 (D.D.C. Sept. 10, 2015);  *Hill v.
   Hoover Co.*, 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012); Ill. Comp. Stat. 510/2; *McGraw v.
27   Loyola Ford, Inc.*, 723 A.2d 502, 510 (Md. Ct. Spec. App. 1999); *RFF Family P'ship, LP v. Link
   Dev., LLC*, 932 F. Supp. 2d 213, 226 (D. Mass. 2013); *Vagias v. Woodmont Props., L.L.C.*, 894
28   A.2d 68, 71 (N.J. Super. Ct. App. Div. 2006); *Gaidon v. Guardian Life Ins. Co. of America*, 725
   N.E.2d 598, 604 (N.Y. 1999); *Thomas v. Nat'l College of Va.*, 901 F. Supp.2d 1022, 1033 (S.D.

- 23 -

1   deception.   The HSP price was public information; the program had sufficient visibility to,

2   allegedly, account for "most" of CVS's non-insured prescriptions, SAC ¶ 68; and at the same

3   time, CVS reported U&C prices that on their face were not HSP prices.   There is nothing

4   deceptive about that arrangement.   Again, the SAC alleges **no facts** explaining how CVS's

5   conduct was deceptive.

6                         **2.    "Unfair" Conduct.**

7         In addition, five statutes prohibit "unfair" practices, which are generally defined as

8   practices that offend public policy or are immoral, unethical, oppressive, unscrupulous, or

9   substantially injurious to consumers.[18]   The SAC does not allege any "unfairness" apart from the

10   same conduct addressed above—CVS's reporting of U&C prices that were not HSP prices,

11   which allegedly "deceived" Plaintiffs into "paying falsely inflated copays."  SAC ¶ 143.  For the

12   same reasons discussed above, there is nothing about that practice that was legally improper or

13   offensive to public policy.

14         Because Plaintiffs' allegations demonstrate neither "deceptive" nor "unfair" conduct, the

15   consumer protection claims under the laws of Arizona, California (UCL[19]), the District of

16   Columbia, Florida, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio,

17   Pennsylvania, and Rhode Island should be dismissed.

18                         **CONCLUSION**

19         For the foregoing reasons, the Court should dismiss the SAC with prejudice.

20

21

22   Ohio 2012); *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 932 A.2d 1230, 1236 (Pa. Commw. Ct. 2007); 6 R.I. Gen. Laws § 13.1-1(6)(xii)–(xiii).

23   [18] *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1117 (S.D. Cal. 2011); *Hill*, 899 F. Supp. 2d at 1264 (Florida); *Robinson*, 775 N.E.2d at 961; *Mass. Eye & Ear Infirmary v. QLT*

24   *Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir.) *decision clarified on denial of reh'g*, 559 F.3d 1 (1st Cir. 2009) (Massachusetts); *Long v. Dell., Inc.*, 93 A.3d 988, 1001 (R.I. 2014).

25

26   [19] Under the UCL, "unlawful" conduct—violations of statutes, regulations, or the common law— may also give rise to liability.  *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1053

27   (C.D. Cal. 2014) ("The 'unlawful' prong of the UCL 'borrows' violations of other laws and treats them as unlawful practices.'") (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

28   20 Cal. 4th 163, 180 (1999)).   Plaintiffs' failure to state a claim for any violation of law here, *supra* Parts II–III, forecloses a UCL claim premised upon the statute's "unlawful" prong.

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR

1    Dated: December 4, 2015              Respectfully submitted,

2                                         By: /s/ Grant A. Geyerman
                                          _____
3                                         Enu Mainigi (*Pro Hac Vice*)
                                          Luba Shur (*Pro Hac Vice*)
4                                         Grant A. Geyerman (*Pro Hac Vice*)
                                          WILLIAMS & CONNOLLY LLP
5
                                          Edward W. Swanson (State Bar No. 159859)
6                                         August Gugelmann (State Bar No. 240544)
                                          SWANSON & McNAMARA LLP
7
8                                         Attorneys for CVS Pharmacy, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CVS PHARMACY, INC.'S NOT. OF MOT. AND
MOT. TO DISMISS; MEM. IN SUPPORT
15-CV-03504-YGR