Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Edward W. Swanson (State Bar No. 159859)
August Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for CVS Pharmacy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CORCORAN, et al., | No. 15-CV-03504-YGR |
| Plaintiffs, | <u>CLASS ACTION</u> |
| v. | **CVS PHARMACY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| CVS PHARMACY, INC., | |
| Defendant. | Date: May 24, 2016 |
| | Time: 2:00 p.m. |
| | Courtroom: 1 |
| | Judge: Honorable Yvonne Gonzalez Rogers |

**NOTICE OF MOTION AND MOTION**

**TO:   THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 24, 2016, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 1, 4th Floor, of this Court, located at 1301 Clay Street, Oakland, California 94612, Defendant CVS Pharmacy, Inc. ("CVS") will and hereby does move the Court for an order dismissing Plaintiffs' Third Amended Complaint ("TAC") in part and without leave to amend.  This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), respectively, on the grounds that:

 a)  Counts 1, 2, and 3 of the TAC fail to state claims under the common laws of any state in which no Plaintiff resides or claims to have been injured, because Plaintiffs lack standing to bring such claims under Article III of the Constitution, consistent with the Court's prior ruling dismissing Plaintiffs' Rhode Island statutory claim for lack of standing, *see* Order at 22−24 (Mar. 14, 2016) [Dkt. No. 96]; and

 b)  Count 9 of the TAC fails to state a claim under the Texas Deceptive Trade Practices Act, Texas Business and Commerce Code §§ 17.41−17.50, because Plaintiffs fail to allege that CVS committed any of the practices "specifically enumerated" in Texas Business and Commerce Code § 17.46(b) or any "unconscionable action or course of action," *id.* § 17.50(a)(1), (3), as the Court previously ruled, *see* Order at 26, 28.

CVS's Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

Dated:  April 18, 2016

Respectfully submitted,

By: /s/ Grant A. Geyerman
Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP

Edward W. Swanson (State Bar No. 159859)
August Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP

Attorneys for CVS Pharmacy, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. iii

INTRODUCTION .............................................................................................................................1

FACTUAL BACKGROUND.............................................................................................................2
 I.  Background on Prescription Drugs and Pharmacy Claims...................................................3
 II.  The Health Savings Pass Program. .....................................................................................4
 III. This Case. .............................................................................................................................4

ARGUMENT ....................................................................................................................................5
I.  Plaintiffs Lack Article III Standing To Prosecute Class Claims Arising Under
  Laws Pursuant To Which They Themselves Have No Claim. ...............................................5
II.  The Texas Deceptive Trade Practices Act Claim Fails. .......................................................9
  A.  The Texas Plaintiffs Fail To Allege An Actionable Nondisclosure. ......................9
  B.  The Texas Plaintiffs Fail To Allege Unconscionable Conduct. ..........................10

CONCLUSION...............................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Air Trans. Ass'n of Am. v. City & County of San Francisco*, 992 F. Supp. 1149 (N.D. Cal. 1998), *aff'd*, 266 F.3d 1064 (9th Cir. 2001) ................................................. 6

*Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177 (9th Cir. 2012) ........................ 5

*Cornelius v. Fid. Nat'l Title Co.*, 2009 WL 596585 (W.D. Wash. Mar. 9, 2009) ............... 8

*Davis v. FEC*, 554 U.S. 724 (2008) ....................................................................... 7

*Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058 (N.D. Cal. 2014) .............................. 7

*Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096 (C.D. Cal. 2012) ................................ 7

*In re Actimmune Mktg. Litig.*, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ............................................................... 8

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 2009 WL 9502003 (C.D. Cal. July 6, 2009) ........................................................................................ 7

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................................... 7

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ......................................................................................... 8

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................... 8

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) .............................................................. 8

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................ 8

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..................................................................................................... 6

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014) ......................................................................................... 8

*In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ........ 8

*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014) ............................. 8

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) ................. 8

*In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365 (E.D. Mich. July 17, 2012) ............................................................................................. 8

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ....................... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ..................................................................................................... 6

CVS PHARMACY, INC.'S MOT. TO DISMISS
15-CV-03504-YGR

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)............................................7

*Lewis v. Casey*, 518 U.S. 343 (1996)............................................5, 7

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................................6

*Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) ............................................8

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) ............................................6

*Renee v. Duncan*, 686 F.3d 1002 (9th Cir. 2012) ............................................1

*Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)............................................8

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................6

**STATE CASES**

*Chastain v. Koonce*, 700 S.W.2d 579 (Tex. 1985) ............................................11

*Patterson v. McMickle*, 191 S.W.3d 819 (Tex. App. 2006) ............................................10

**OTHER AUTHORITIES**

U.S. Const. art. III ............................................*passim*

Fed. R. Civ. P. 12 ............................................*passim*

Fed. R. Civ. P. 21 ............................................5

Fed. R. Civ. P. 41 ............................................5

Tex. Bus. & Com. Code §§ 17.41–17.50 ............................................2

Tex. Bus. & Com. Code § 17.45 ............................................11

Tex. Bus. & Com. Code § 17.46 ............................................2, 9, 10

Tex. Bus. & Com. Code § 17.50 ............................................2, 9

CVS PHARMACY, INC.'S MOT. TO DISMISS
15-CV-03504-YGR

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**INTRODUCTION**

3      Defendant CVS Pharmacy, Inc. ("CVS") moves to dismiss in part Plaintiffs' Third

4   Amended Complaint ("TAC") [Dkt. No. 101].   As in the Second Amended Complaint ("SAC")

5   [Dkt. No. 49], Plaintiffs, a group of pharmacy customers, contend CVS perpetrated a consumer

6   "fraud" for more than seven years by limiting the pricing benefits of its Health Savings Pass

7   ("HSP") program to customers actually enrolled in that program, and allegedly causing Plaintiffs

8   to pay higher copayments.

9      Following CVS's Motion to Dismiss Plaintiffs' SAC, which the Court granted in part and

10  denied in part, Plaintiffs filed the TAC.   As relevant here, on behalf of a putative nationwide

11  class, Plaintiffs allege common law claims for fraud, negligent misrepresentation, and unjust

12  enrichment.   Two newly-added Plaintiffs from Texas also allege a violation of Texas's Deceptive

13  Trade Practices Act on behalf of a Texas state subclass.   CVS moves to dismiss the TAC in part

14  on the following grounds:

15     ***First***, the Court previously dismissed Plaintiffs' statutory claims under Rhode Island law

16  based on their lack of standing to assert such claims.   *See* Order at 22−24 [Dkt. No. 96].

17  Likewise, Plaintiffs lack Article III standing to prosecute class claims under the common laws of

18  states under which Plaintiffs themselves have no individual claims.   Plaintiffs are residents of 12

19  states and claim to have filled prescriptions in 13 jurisdictions—their 12 home states and the

20  District of Columbia.   Yet, Plaintiffs assert claims, on behalf of a class, not only under these 13

21  jurisdictions' laws, but also under the common laws of other states to which they allege no

22  meaningful nexus.   Therefore, pursuant to Fed. R. Civ. P. 12(b)(1), the Court should dismiss all

23  claims in Counts 1, 2, and 3 arising under the common laws outside of the 13 jurisdictions in

24  which Plaintiffs reside or claim to have filled prescriptions.[1]

25

26  [1] CVS previously moved to dismiss only Plaintiffs' statutory law claims, not their common law
    claims, on Article III standing grounds.   CVS now moves to dismiss the common law claims.
27  This argument is jurisdictional and may be raised at any time.   *See Renee v. Duncan*, 686 F.3d
    1002, 1012 (9th Cir. 2012).

28

***Second***, Plaintiffs fail to state a claim under the Texas Deceptive Trade Practices Act, Texas Business and Commerce Code §§ 17.41–17.50, because Plaintiffs fail to allege that CVS committed any of the practices "specifically enumerated" in Texas Business and Commerce Code § 17.46(b) or any "unconscionable action or course of action," *id.* § 17.50(a)(1), (3). Plaintiffs' allegations about CVS's conduct did not materially change between the SAC and TAC. Because CVS's conduct alleged in the SAC was not sufficient to state a violation under the Texas statute, that same conduct as alleged in the TAC cannot state a violation either. Therefore, pursuant to Fed. R. Civ. P. 12(b)(6) Court should dismiss Count 9.

Plaintiffs have had three opportunities to amend their pleadings and correct the deficiencies; they have failed to do so. The deadline to amend pleadings and add parties has passed, *see* Case Management and Pretrial Order at 1 (Dec. 9, 2015) [Dkt. No. 62], and any further amendment would be futile. Thus, the Court should dismiss the Counts at issue with prejudice.

## FACTUAL BACKGROUND[2]

The TAC's allegations about CVS and its conduct have not materially changed from the SAC. CVS operates one of the largest retail pharmacy chains in the United States. TAC ¶ 4. In November 2008, CVS introduced its HSP program, which provided special pricing for approximately 400 generic prescription medications ("HSP drugs") to individuals who completed an application, agreed to the program's terms and conditions, and paid an annual membership fee. *Id.* ¶¶ 62–63. Plaintiffs—22 CVS pharmacy customers from 12 states who claim to have filled prescriptions in their home states and the District of Columbia[3]—do not allege they enrolled in HSP. Yet, they claim CVS "knowingly and intentionally submit[ted] falsely inflated" usual and customary ("U&C") prices to their insurers, by allegedly misreporting a U&C price that was not the HSP price, which allegedly resulted in Plaintiffs paying higher

---

[2] For purposes of this motion only, CVS assumes the truth of Plaintiffs' factual allegations.

[3] Plaintiffs reside in Arizona, California, Florida, Georgia, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Texas. The Maryland Plaintiff claims to have filled a prescription in the District of Columbia.

copayments for HSP drugs covered by their insurance. *Id.* ¶¶ 9–14. Plaintiffs cast CVS's policy of limiting HSP pricing to HSP members as various forms of fraud and deceptive conduct in violation of the common laws of states nationwide and 12 consumer protection statutes. *Id.* ¶¶ 103–25, 126–228.

## I.    Background on Prescription Drugs and Pharmacy Claims.

"About 90% of all United States citizens" are enrolled in insurance plans subsidizing "some or all [of their] medical and pharmaceutical costs." TAC ¶ 8. Insurers require their beneficiaries to pay (in addition to premiums) a portion of each prescription in the form of a "copayment[]." *Id.* ¶ 44. The formula for apportioning a drug's cost between the insurer (*i.e.*, the "third-party payor," *id.* ¶¶ 8–9) and the beneficiary varies by insurance plan. *See id.* ¶¶ 49, 54–56. Unlike insured consumers, individuals without insurance coverage bear the full cost of prescriptions themselves. *Id.* ¶ 47. Plaintiffs describe individuals without insurance as "cash-paying customers." *Id.* ¶ 12.

CVS pharmacies dispense prescription medicines. TAC ¶ 6. When an insured customer fills a prescription at CVS, the pharmacist generates a "claim" by transmitting certain patient, prescription, and insurance information electronically to the customer's insurer (or an intermediary acting for the insurer). *Id.* ¶¶ 47–50; *see id.* ¶ 49 (referencing the insurer's "agent," also known as the pharmacy benefit manager or PBM).[4] During this real-time process known as claims "adjudication," the insurer responds by (1) confirming the customer is an eligible beneficiary and the drug is a covered benefit; (2) identifying the total amount the pharmacy will receive for dispensing the prescription; and (3) "identify[ing] the copayment amount that the patient must pay to CVS" for the prescription. *Id.* at ¶¶ 49, 54.

The CVS-insurer or CVS-PBM electronic communications utilize standardized data fields developed by the National Council for Prescription Drug Programs ("NCPDP"), a

---

[4] The TAC does not explain the role played by PBMs—the purported "agent[s]," TAC ¶ 49—who contract with insurers to administer the members' benefits. But federal courts have written about such entities. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 600–03 (S.D.N.Y. 2005).

CVS PHARMACY, INC.'S MOT. TO DISMISS
15-CV-03504-YGR

standard-setting organization for the healthcare industry.  TAC ¶ 50.  One data field on NCPDP's standard layout is Field No. 426-DQ, the U&C field.  *Id.* ¶ 53.  According to Plaintiffs, NCPDP defines the U&C price as "the cash price to the general public, which is the amount charged cash customers for the prescription, exclusive of sales tax or other amounts claimed."  *Id.* ¶ 53.  "In some situations," Plaintiffs allege, "the copayment may only be charged as a percentage of the U&C price."  *Id.* ¶ 56.

## II.     The Health Savings Pass Program.

In November 2008, CVS launched HSP, an enrollment-based generic discount program.  TAC ¶ 60.  Although "designed . . . to appeal to price sensitive customers," *id.* ¶ 64, HSP enrollment was open to any CVS customer willing to become a member, including individuals with prescription drug insurance.  *Id.* ¶ 62 ("open to cash-paying customers"), ¶ 81 (implicitly acknowledging Plaintiffs were eligible enrollees).  To become a member, customers were required to complete an application, agree to HSP's terms and conditions, and pay an annual enrollment fee ($10 through 2010; $15 beginning in 2011).  *Id.* ¶ 62.  After enrolling, HSP members could purchase a standard 90-day supply of a predefined list of generic medications for a fixed price (*e.g.*, $9.99 through 2010; $11.99 beginning in 2011).  *Id.*  For "cash customers"— those who purchased drugs without insurance and not as part of the HSP program—CVS charged the pharmacy's "usual and customary charge," *i.e.*, the U&C price.  *Id.* ¶¶ 68, 71.  Plaintiffs cite no law requiring pharmacies to treat the price charged under a fee-based membership drug program as the U&C price, and CVS is aware of no law that would have required it to report its HSP price as the U&C price to Plaintiffs' insurers or their agents.

## III.    This Case.

On July 30, 2015, Plaintiffs filed this lawsuit against CVS Health Corporation.  Compl. [Dkt. No. 1].  Thereafter, on October 24, 2015, and November 3, 2015, respectively, Plaintiffs filed an Amended Complaint [Dkt. No. 43] and the SAC; these pleadings added CVS Pharmacy, Inc. as a defendant and added multiple Plaintiffs.  On March 14, 2016, the Court (a) dismissed with prejudice Plaintiffs' counts for constructive fraud and its claims of violations of Rhode Island and Georgia statutory law; (b) dismissed with prejudice the class claims under Ohio

1   statutory law; and (c) dismissed with leave to amend Plaintiffs' claims under Texas statutory

2   law.  The Court also dismissed CVS Health Corporation from the case for lack of personal

3   jurisdiction.

4          On April 4, 2016, Plaintiffs filed the TAC.  The TAC replaced the only prior Texas

5   Plaintiff, Irma Pacheco, with two new Texas Plaintiffs, Amanda Gilbert and Gilbert Brown.[5]

6   The TAC continues to assert claims for fraud, negligent misrepresentation, unjust enrichment,

7   and violations of 12 consumer protection statutes.  TAC ¶¶ 103–228.  Plaintiffs seek certification

8   of a nationwide class (and 13 state subclasses) of CVS customers who (1) purchased HSP-

9   eligible drugs using insurance benefits since November 2008 and (2) paid a copayment greater

10  than either (a) the HSP program price or (b) for customers whose copayments "are calculated as

11  a percentage of the drug price to be paid to CVS," an amount in excess of that percentage

12  multiplied by the HSP price.  *Id.* ¶ 83.  Although Plaintiffs claim to reside or to have purchased

13  prescriptions in only 13 jurisdictions, they purport to assert their common law claims not only on

14  behalf of themselves and the state subclasses but also on behalf of a "National Class."  *Id.*,

15  Counts 1, 2, and 3.

**ARGUMENT**

16

17  **I.    Plaintiffs Lack Article III Standing To Prosecute Class Claims Arising Under Laws
         Pursuant To Which They Themselves Have No Claim.**

18         Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a complaint if the

19  court lacks subject matter jurisdiction over the claims at issue, including when a plaintiff lacks

20  Article III standing.  *See Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir.

21  2012).  On March 14, 2016, the Court dismissed Plaintiffs' claims under the Rhode Island

22  Deceptive Trade Practices Act ("RIDTPA").  In doing so, the Court held:

23              [A] named plaintiff who seeks to represent a class "must allege and
                show that they" have Article III standing to bring suit.  *Lewis v.*
24              *Casey*, 518 U.S. 343, 357 (1996).  Where "the source of the
                plaintiff's claim to relief" is a statute, "the standing question . . . is
25              whether the . . .  statutory provision on which the claim rests

26  _____

27  [5] Plaintiffs dropped Pacheco without seeking leave to do so.  *See* Fed. R. Civ. P. 21 & 41.  CVS
    reserves its rights to seek relief for Plaintiffs' non-compliance with the rules at the appropriate
28  time.

1
2
> properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975)."

3   Order at 22.  The Court found that because no Plaintiff resided in Rhode Island or purchased

4   prescriptions there, no Plaintiff had standing to bring a claim under the RIDTPA.  *Id.* at 22−24;

5   *accord Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("consumer

6   protection laws of the jurisdiction in which the transaction took place" control).

7        For similar reasons, the Court should dismiss Plaintiffs' common law claims for fraud,

8   negligent misrepresentation, and unjust enrichment insofar as those claims arise under the

9   common laws of states other than those where Plaintiffs claim to reside or to have suffered injury

10   when purchasing supposedly overpriced prescriptions.  Each Plaintiff claims to reside in one of

11   12 states and to have purchased prescriptions in their home states as well as the District of

12   Columbia.  TAC ¶¶ 16–37.  They do not allege any significant nexus to any other jurisdiction—

13   and presumably for that reason, they do not invoke the consumer protection statutes of any other

14   state.  Under such circumstances, Plaintiffs cannot assert claims under those states' laws.  *See*

15   *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 821–22 (1985) (due process requires a "significant

16   contact or significant aggregation of contacts" between a party and the state at issue before that

17   state's law can be applied to the party's claims) (quotations omitted); *In re Graphics Processing*

18   *Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007) (Alsup, J.) ("For a

19   nationwide class to invoke the law of a particular state, the chosen state's law must both (1) not

20   conflict with the law of another jurisdiction that has an interest in the case, and (2) have a

21   significant contact or significant aggregation of contacts to claims asserted by each member of

22   the plaintiff class to insure that the choice of the forum state's law is not arbitrary or unfair.").[6]

23   ──────────────────

24   [6] *Accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728, at *4 (N.D. Cal. June 29, 2010) (Illston, J.) (dismissing claims on due process grounds where plaintiffs failed to "provide a necessary link between plaintiffs' claims and the states whose laws plaintiffs seek to invoke") (emphasis omitted).  Indeed, absent the requisite connection to a particular forum, that forum lacks the power to regulate the conduct at issue.  The "dormant Commerce Clause precludes State and local laws that have the extraterritorial effect of regulating commerce occurring wholly outside the boundaries of a State.  When a state statute directly regulates . . . interstate commerce, . . . [the Supreme Court] ha[s] generally struck down the statute without further inquiry." *Air Trans. Ass'n of Am. v. City & County of San Francisco*, 992 F. Supp. 1149,

25
26
27
28

CVS PHARMACY, INC.'S MOT. TO DISMISS
15-CV-03504-YGR

1    Nor can Plaintiffs assert out-of-state claims on behalf of a putative class under the laws of

2  states that do not apply to Plaintiffs themselves.  As a constitutional matter, "a plaintiff must

3  demonstrate standing for ***each claim*** he seeks to press and for each form of relief that is sought."

4  *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis added) (quotations omitted); *cf. Lewis*, 518

5  U.S. at 358 n.6 ("standing is not dispensed in gross").  Article III standing requirements apply to

6  class claims: "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for

7  even named plaintiffs who represent a class must allege and show that they personally have been

8  injured, not that injury has been suffered by other, unidentified members of the class to which

9  they belong and which they purport to represent." *Lewis*, 518 U.S. at 357 (ellipsis in original)

10  (quotations omitted).[7]  Based on these principles, "'[c]ourts routinely dismiss claims where no

11  plaintiff is alleged to reside in a state whose laws the class seeks to enforce.'"  Order at 22

12  (quoting *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 2009 WL 9502003, at *6 (C.D.

13  Cal. July 6, 2009)); Order at 22−23 (citing *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F.

14  Supp. 3d 1051, 1075 (N.D. Cal. 2015) (Chen, J.)  (finding that "named Plaintiffs do not have

15  standing to assert claims from states in which they do not reside or did not purchase their mobile

16  device"); *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082−83 (N.D. Cal. 2014) (Orrick,

17  J.) (finding that named plaintiffs "lack standing to assert claims based on" states' laws, ***including***

18  ***common law***, where they neither resided nor suffered an injury); *Pardini v. Unilever U.S., Inc.*,

19  961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (Conti, J.) (finding plaintiff did "not have standing

20  to assert a claim under the consumer protection laws of the other states named in [her]

21

22  1161 (N.D. Cal. 1998) (Wilken, J.) (ellipses in original) (citation and quotations omitted), *aff'd*,
    266 F.3d 1064 (9th Cir. 2001).

23

24  [7] While Plaintiffs do not identify the particular states' common laws they invoke, failure to plead
    the law cannot circumvent the requirements for Article III standing.  *See In re Wellbutrin XL*

25  *Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (holding that plaintiffs cannot state a claim
    for unjust enrichment if they "fail to link their claim to the law of any particular state"; "cobbling

26  together the elements of a claim of unjust enrichment from the laws of the fifty states is no
    different from applying federal common law," which does not exist for such claims); *accord*

27  *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101−02 (C.D. Cal. 2012) (discussing
    differences among state common law claims).

28

Complaint")); *accord In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1163−64 (N.D. Cal. 2009) (Armstrong, J.) ("[w]here, as here, a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal," including statutory *and common law claims*) (emphasis omitted); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (Patel, J.) (dismissing claims brought under consumer protection statutes in states where no representative plaintiff resided), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007) (White, J.) (dismissing for lack of standing claims based on antitrust laws of states in which plaintiffs neither resided nor purchased the product at issue).[8]

The Court has already held Plaintiffs cannot invoke Rhode Island's consumer protection statute because Plaintiffs neither reside nor allege having purchased prescriptions in Rhode Island.  The same principle applies to Plaintiffs' out-of-state common law claims:  Plaintiffs cannot sue, for themselves or a class, under the common law of any jurisdiction other than the 13 in which they claim to reside or to have suffered an injury.  The Court should therefore dismiss

---

[8] *Accord In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757–58 (E.D. Pa. 2014) (dismissing consumer protection and *unjust enrichment claims* asserted under laws of states in which no named plaintiff resided or was injured); *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 48–49 (E.D.N.Y. 2014) (dismissing claims for states where named class plaintiffs failed to allege any injury); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *11–12 (D.N.J. Oct. 2, 2013) (granting motion to dismiss claims in states where no named plaintiff in class action resided or was injured); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (holding that class plaintiffs "fail to satisfy their burden of showing Article III standing for states in which they do not reside and/or did not purchase the products at issue"); *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365, at *6–7 (E.D. Mich. July 17, 2012) (dismissing statutory and *common law claims* where complaint had "no factual allegations that connect any injuries by the named IP Plaintiffs [in class action] to any causes of action arising in these states"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *7−10 (D.N.J. Oct. 20, 2011) (dismissing claims in states in which plaintiffs neither resided nor purchased the product at issue); *Cornelius v. Fid. Nat'l Title Co.*, 2009 WL 596585, at *9−10 (W.D. Wash. Mar. 9, 2009) (holding plaintiffs do not have standing to represent unnamed out-of-state plaintiffs); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (granting motion to dismiss in states where named class plaintiffs failed to "allege they were harmed").

CVS PHARMACY, INC.'S MOT. TO DISMISS
                                              15-CV-03504-YGR

1    Plaintiffs' fraud, negligent misrepresentation, and unjust enrichment claims insofar as they arise

2    under the common laws of jurisdictions other than Plaintiffs' 12 states of residence or the

3    District of Columbia.

4    **II.**    **The Texas Deceptive Trade Practices Act Claim Fails.**

5    Under Federal Rule of Civil Procedure 12(b)(6), a cause of action must be dismissed if it

6    fails to state a claim as a matter of law. Count 9 of the TAC, arising under the Texas Deceptive

7    Trade Practices Act ("TDTPA"), is the only cause of action Plaintiffs have re-pled. TAC ¶¶

8    168–78. To bring a claim under the TDTPA, a consumer must allege either (1) a practice

9    "specifically enumerated" in Texas Business and Commerce Code § 17.46(b); or (2) any

10    "unconscionable action or course of action by any person," Tex. Bus. & Com. Code §

11    17.50(a)(1), (3). In dismissing the claim from the SAC, the Court ruled that the prior Texas

12    Plaintiff, Irma Pacheco, failed to meet either prong but granted leave to amend to allow Plaintiffs

13    the opportunity to plead additional facts, if any, that would support their claim. Order at 26, 28.

14    Plaintiffs have alleged no such additional facts.

15    The TAC removes Pacheco as a Plaintiff and substitutes two other individuals, Amanda

16    Gilbert and Gilbert Brown, as the Texas Plaintiffs. TAC ¶¶ 36–37. The TAC alleges CVS's

17    conduct ***exactly*** as it did before, and the allegations with respect to the Texas Plaintiffs are

18    virtually identical to the allegations in the SAC regarding Pacheco, except the TAC does not

19    allege the Texas Plaintiffs plan to purchase prescriptions from CVS in the future. *Compare* TAC

20    ¶¶ 36–37 (Texas Plaintiffs), *with* SAC ¶ 25 (Irma Pacheco). This change does not save

21    Plaintiffs' claim.

22    **A.**    **The Texas Plaintiffs Fail To Allege An Actionable Nondisclosure.**

23    The only "enumerated" conduct Plaintiffs allege is CVS's alleged "fail[ure] to disclose

24    information" under § 17.46(b)(24). To prevail on a nondisclosure claim under the TDTPA, a

25    plaintiff must allege:

26   
27           (1) the defendant knew information regarding the goods or services, (2) the information was not disclosed, (3) there was an intent to ***induce the consumer to enter into the transaction***
28    ***through the failure to disclose***, and (4) the consumer ***would not***

*have entered into the transaction had the information been disclosed*.

*Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006) (emphases added).

The Court held that Pacheco, then the only Texas Plaintiff, failed to allege that CVS's purported non-disclosure "'was intended to induce [her] into a transaction into which [she] would not have entered had the information been disclosed.'"  Order at 26 (quoting Tex. Bus. & Com. Code § 17.46(b)(24)).  To the contrary, she alleged that "she plans to purchase generic drugs from CVS in the future."  *Id.* (citing SAC ¶ 25).  Although the Texas Plaintiffs do not affirmatively allege they will continue to purchase prescriptions from CVS, their allegations still fall short of what the Court held was required.

The Texas Plaintiffs allege they "would not have paid" the allegedly inflated copayments had they known how CVS calculated its U&C price, TAC ¶ 173, not that they would have refrained from "enter[ing] into the transaction" in the first place—*i.e.*, not purchased their prescriptions from CVS.  *Patterson*, 191 S.W.3d at 827; *see* Tex. Bus. & Com. Code § 17.46(b)(24) ("to induce the consumer *into a transaction* into which the consumer *would not have entered*") (emphases added).  This is a dispositive distinction.  Claiming they would not have paid *the particular price they paid* for a product is not the same as alleging they would not have purchased the product at all.  Nor could such an allegation be plausible on the TAC's allegations.  In paying the copayments charged by CVS, Plaintiffs by definition were willing to pay a price above the HSP price.  Given that admitted willingness, a disclosure about the U&C calculation methodology that does not change the price should not reasonably make Plaintiffs any more price-sensitive.  Presumably, it is for this reason the 20 other Plaintiffs all concede they intend to continue shopping at CVS (although, as most consumers, they would prefer to receive a lower price, all things being equal).  TAC ¶¶ 16–35.

**B.    The Texas Plaintiffs Fail To Allege Unconscionable Conduct.**

As before, the Texas Plaintiffs also fail to allege "unconscionable" conduct by CVS.  The TDTPA defines "unconscionable" conduct as an "act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the

consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5).  The Court previously ruled that Pacheco failed to allege such conduct.  Order at 26 (quoting Tex. Bus. & Com. Code § 17.45(5)).   The Court noted that the Texas Supreme Court has interpreted the statutory requirement of "grossly unfair" conduct to mean "'glaringly noticeable, flagrant, complete and unmitigated,'" Order at 26 (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)), and held that Plaintiffs failed to allege conduct by CVS that rose to that extreme level, Order at 26. As the Court noted at oral argument, the Texas standard for pleading a TDTPA claim is "much higher" than in other states.  Hr'g Tr. at 32:20–22 [Dkt. No. 98].

The TAC offers ***no new allegations*** showing how ***CVS's conduct*** was supposedly "grossly unfair."   It simply re-pleads the SAC's same allegations the Court found legally deficient and substitutes two new named Plaintiffs who, unlike the previous Texas Plaintiff, do not allege they will continue filling prescriptions at CVS.  But the TAC lacks any allegations that CVS acted any differently toward the two new Plaintiffs than it did toward Pacheco, whom the Court found could not plausibly allege that CVS's conduct was "grossly unfair."  And the TAC alleges no specific facts about the new Texas Plaintiffs that would render CVS's alleged treatment of them any more "unfair" than its alleged treatment of Pacheco.  Plaintiffs' failure to plausibly allege that CVS's conduct was so "flagrant, complete, and unmitigated" that it qualified as "unconscionable" requires dismissal of their claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice (a) Counts 1, 2, and 3 of the TAC insofar as those claims do not arise under the common laws of the 13 jurisdictions in which Plaintiffs reside or allegedly purchased overpriced prescriptions and (b) Count 9 of the TAC.

Dated: April 18, 2016                    Respectfully submitted,

By: /s/ Grant A. Geyerman
Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP

Edward W. Swanson (State Bar No. 159859)
August Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP

Attorneys for CVS Pharmacy, Inc.