Bonny E. Sweeney (Cal. Bar No. 176174)
HAUSFELD
600 Montgomery St., Suite 3200
San Francisco, California 94111
Tel: 415-633-1908
Fax: 415-358-4980
bsweeney@hausfeld.com

Richard Lewis (admitted *pro hac vice*)
Kristen Ward Broz (admitted *pro hac vice*)
HAUSFELD
1700 K St. NW, Suite 650
Washington, D.C. 20006
Tel: 202-540-7200
Fax: 202-540-7201
rlewis@hausfeld.com
kward@hausfeld.com

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE BEATO & MISSNER LLP
1100 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (202) 737-7777
pcipollone@steinmitchell.com
ranzidei@steinmitchell.com
rgilmore@steinmitchell.com

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel. 415-692-0772
Fax. 415-366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

*Interim Class Counsel*

**REDACTED PER COURT ORDER [DKT. 250]**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

Christopher Corcoran, et al.,

Plaintiffs,

v.

CVS Pharmacy, Inc.

Defendant.

Case No. 4:15-cv-03504-YGR

CLASS ACTION

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: January 31, 2017
Time: 2:00pm
Courtroom: 1
Judge: Honorable Yvonne Gonzalez Rogers

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... I

NOTICE OF MOTION AND MOTION .......... III

TABLE OF AUTHORITIES .......... V

STATEMENT OF ISSUES TO BE DECIDED .......... IX

INTRODUCTION .......... 1

STATEMENT OF RELEVANT FACTS .......... 4

A. In Prescription Drug Purchases Using Insurance, CVS Is Not Permitted To Charge Patients Copayments That Exceed CVS's "Usual and Customary" Price. .......... 4

B. CVS Develops The HSP Program – A Uniform Generic Drug Pricing Program – To Inflate Its Reported U&C Prices. .......... 7

C. CVS Has Deceived And Harmed Plaintiffs And Class Members In A Uniform Manner – Collecting Inflated Copayments That Exceed CVS's True U&C Prices. .......... 10

LEGAL STANDARDS .......... 12

ARGUMENT .......... 12

I. PLAINTIFFS SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23(A). .......... 12

A. The Classes Satisfy The Numerosity Requirement. .......... 12

B. CVS Acted In A Uniform Manner To Overcharge Millions Of Similarly Situated Persons, Yielding Several Core Common Questions. .......... 13

C. Plaintiffs' Claims Are Typical Of Those Of The Classes. .......... 14

D. Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class. .......... 14

E. The Class Members Are Ascertainable Through CVS's Transaction Data And Insurance Plan Documents. .......... 16

II. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(3). .......... 16

A. Given The Uniform Nature Of CVS's Overpricing Scheme And Its Impact On Plaintiffs And Class Members, Common Questions Of Law And Fact Predominate Over Individualized Inquiries. .......... 16

1. Common issues of misrepresentations and omissions predominate. .......... 17

2. Common issues of materiality and reliance – where required elements – predominate. .......... 19

3. Common issues of CVS's knowledge and intent predominate. .......... 22

4. Common issues regarding CVS's improper gains predominate. .......... 22

5. Common issues regarding economic damages predominate. .......... 23

B. Certification Is The Superior Method Of Resolving The Class Members' Claims. .......... 23

1. Individual litigation would be unfair and impracticable. .......................... 23

2. Trial of the 11 single-state classes, with numerous legal similarities and all targeting common CVS conduct, is eminently manageable. ................ 24

III. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(2). ................................................ 24

CONCLUSION ................................................................................................................ 25

**NOTICE OF MOTION AND MOTION**

**TO: THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 31, 2017, at 2:00 p.m., in Courtroom 1, 4th Floor, of this Court, located at 1301 Clay Street, Oakland, California, Plaintiffs Christopher Corcoran, Elizabeth Gardner, Tyler Clark, Michael Norkus, Zulema Avis, Robert Garber, Toni Odorisio, Onnolee Samuelson, Robert Jenks, Debbie Barrett, Carl Washington, Vincent Gargiulo, Zachary Hagert, Carolyn Caine, Walter Wulff, Amanda Gilbert, and Gilbert Brown ("Plaintiffs") will and hereby do move the Court for an order (i) certifying this action as a class action based on the description of the classes herein, (ii) appointing Plaintiffs as representatives of the class, and (iii) appointing Plaintiffs' attorneys of record as class counsel.

Plaintiffs seek to certify the following classes:

> All CVS customers in [California] [Arizona] [Massachusetts] [New York] [Ohio] [Texas] [Florida] [Illinois] [New Jersey] [Pennsylvania] [Georgia][1] who, between November 2008 and the present (the "Class Period"), (1) purchased one or more generic prescription drugs that were offered through CVS's Health Savings Pass ("HSP") program at the time of the purchase; (2) were insured for the purchase(s) through a third-party payor plan (except those that did not use usual and customary pricing or expressly excluded discount programs from usual and customary pricing);[2] and (3) paid CVS an out-of-pocket payment for the purchase greater than the HSP price for a 90-day supply of the prescription (or, greater than a price proportionate to the HSP price but for a prescription less than or greater than a 90-day supply).

For each of the state classes, Plaintiffs seek certification of a statutory unfair and deceptive acts and practices ("UDAP") claim (except in Ohio and Georgia), and common law fraud, negligent misrepresentation, and unjust enrichment claims, arising under the laws of each of the respective states.

This Motion is made pursuant to Federal Rule of Civil Procedure 23, on the grounds that:

(a) The class, consisting of numerous patients of Defendant CVS Pharmacy, Inc. ("CVS") who were unlawfully overcharged for their purchases of generic prescription drugs made using insurance, comprises millions of similarly situated individuals such that joinder of all members is impracticable;

[1] Each of the state classes has the same definition.

[2] A list of qualifying contracts is set forth in Exhibit 12 to this Motion.

(b) CVS's uniform overcharging scheme and resultant identical type of damages to Plaintiffs and the class presents several core questions of law and fact common to the class;

(c) The named Plaintiffs' claims are typical of the claims of the class;

(d) The named Plaintiffs and their attorneys – already appointed as interim class counsel – have fairly and adequately protected the interests of the class and will continue to do so;

(e) By falsely reporting inflated "usual and customary" ("U&C") prices and thereby collecting inflated copayments, CVS has acted, and refused to act, in a wrongful manner that applies generally to Plaintiffs and class members as a whole, such that final injunctive relief or a declaration, requiring CVS to report truthful U&C prices that account for cash prices it offers to the general public through discount card programs, would be appropriate;

(f) The questions of law and fact that are common to the class – notably CVS's uniform overcharging scheme and uniform manner of resultant damages to Plaintiffs and the class – overwhelmingly predominate over any individualized issues that might exist; and

(g) Certifying this case to proceed as a class action is superior to any other method of adjudicating Plaintiffs' and class members' claims against CVS.

Plaintiffs' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the supporting declarations and exhibits of evidence, Plaintiffs' Trial Plan, any reply memorandum Plaintiffs file, the orders, pleadings, and files in this action, and such other matters as may be presented at or before the hearing.

Dated: October 3, 2016

Respectfully submitted,

By: /s/ Bonny E. Sweeney

Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Kristen Ward Broz (admitted *pro hac vice*)
HAUSFELD

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE MISSNER & BEATO LLP

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................................ 3, 20

*Bias v. Wells Fargo & Company*,
312 F.R.D. 528 (N.D. Cal. 2015)......................................................................................... 3

*Brazil v. Dell Inc.*,
No. C-07-01700 RMW, 2010 WL 5387831, (N.D. Cal. Dec. 21, 2010).................................... 19, 21

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)......................................................................................... 16

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)........................................................................................................ 12

*Corcoran v. CVS Health Corp.*,
-- F. Supp. 3d --, No. 15-CV-3504-YGR (N.D. Cal. Mar. 14, 2016) ............................................. 10

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
445 U.S. 326 (1980)........................................................................................................... 3

*Engalla v. Permanente Med. Grp., Inc.*,
938 P.2d 903 (Cal. 1997) ..................................................................................................... 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)............................................................................................................ 17

*Gen. Tel. Co. of S.W. v. Falcon*,
457 U.S. 147 (1982)............................................................................................................ 18

*Gutierrez v. Wells Fargo Bank, NA*,
704 F.3d 712 (9th Cir. 2012) ............................................................................................... 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................................... 13, 14, 24

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
No. C 04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007)................................................. 22

*In re Checking Account Overdraft Litigation*,
307 F.R.D. 630 (S.D. Fla. 2015) ........ 3

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ........ 19, 24

*In re NCAA Student Athlete Name & Likeness Licensing Litig.*,
No. C 09-1967 CW, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ........ 14

*In re U.S. Foodserv. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)........ 20, 21

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)) ........ 17

*In re Welding Fume Prod. Liab. Litig.*,
245 F.R.D. 279 (N.D. Ohio 2007) ........ 24, 25

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015)........ 17

*Keilholtz v. Lennox Hearth Products Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010)........ 23

*Kumar v. Salov N. Am. Corp.*,
No. 14-cv-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016)........ 12, 14

Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,
*244 F.3d 1152 (9th Cir. 2001)* ........ 24

*Miller v. Fuhu Inc.*,
No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ........ 19

*Nitsch v. Dreamworks Animation SKG Inc.*,
No. 14-CV-04062-LHK, 2016 WL 4424965 (N.D. Cal. July 6, 2016) ........ 16

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........ 25

*Petersen v. Costco Wholesale Co.*,
312 F.R.D. 565 (C.D. Cal. 2016) ........ 24

*Powers v. Hamilton County Public Defender Comm'n*,
501 F.3d 592 (6th Cir. 2007) ........................................ 20

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........................................ 23

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ........................................ 20

*Schumacher v. Tyson Fresh Meats, Inc.*,
221 F.R.D. 605 (D.S.D. 2004) ........................................ 22

*Shady Grove Orthopedic Assocs, P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ........................................ 12

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003) ........................................ 23

*Spann v. J.C. Penny Corp.*,
307 F.R.D. 508 (C.D. Cal. 2015) ........................................ 3, 17

*Staton v. Boeing Co.*,
327 F. 3d 938 (9th Cir. 2003)) ........................................ 15

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ........................................ 19

*Stitt v. Citibank*,
No. 12-CV-03892- YGR, 2015 WL 9177662 (N.D. Cal. Dec. 17, 2015 ........................................ 18

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ........................................ 12

*United States ex rel. Garbe v. Kmart Corp*,
824 F. 3d 632 (7th Cir. 2016) ........................................ 1, 11

*Vaccarino v. Midland Nat. Life Ins. Co.*,
No. CV 11-5858 CAS MANX, 2013 WL 3200500 (C.D. Cal. June 17, 2013) ........................................ 22

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................ 2, 13

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)............................................. 16

*Wit v. United Behavioral Health*,
No. 14-CV-02346 JCS, 2016 WL 4990514 (N.D. Cal. Sept. 19, 2016).................................... 18, 25

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ....................................................................................... 22

*Wolph v. Acer Am. Corp.*,
No. 09-cv-1314, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012) ....................................................... 16

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................... passim

**Treatises**

NEWBURG ON CLASS ACTIONS (5th ed. 2013)......................................................................... 19

## STATEMENT OF ISSUES TO BE DECIDED

I. Should the Court certify the 11 state classes Plaintiffs assert, given:

(i) CVS's uniform unlawful pricing scheme, and its resultant harm to Plaintiffs and the classes, presents multiple common questions of law and fact;

(ii) millions of CVS patients are similarly situated to Plaintiffs;

(iii) Plaintiffs' claims are typical of the classes;

(iv) Plaintiffs and their counsel have represented, and will continue to represent, those classes ably;

(iv) CVS wrongfully has acted or refused to act in a manner that applies generally to Plaintiffs and the classes, such that a final injunction or declaration would be appropriate;

(v) the common questions of law and fact overwhelmingly predominate over individualized issues, given the uniform nature of CVS's conduct, the uniform manner in which Plaintiffs and the classes were harmed, the uniform method for calculating Plaintiffs' and classes members' damages, and the similarities in the state laws on which Plaintiffs and the class sue; and

(vi) class treatment is superior to any other means of adjudicating this action, given the numerous essentially uniform claims of the class members, and the classwide factual and legal issues that can best be adjudicated in a single proceeding?

II. Should the Court appoint the named Plaintiffs as representatives of the classes?

III. Should the Court appoint Plaintiffs' attorneys of record as class counsel?

## INTRODUCTION

Since November 2008, CVS Pharmacy, Inc. ("CVS") has engaged in a uniform, unlawful pricing scheme: CVS has knowingly charged millions of insured patients (including Plaintiffs and class members) falsely inflated copayments on purchases of a number of generic prescription drugs. CVS did so by knowingly submitting to health insurance plans falsely inflated "usual & customary" ("U&C") prices, instead of CVS's true U&C prices – ones based on the Health Savings Pass ("HSP") program prices CVS offered to the general public. To remedy CVS's misconduct, Plaintiffs move this Court to certify 11 single-state classes of similarly situated members – insured patients whom CVS charged copayments in excess of CVS's true U&C prices.

CVS's conduct is uniform and classwide. In every pharmacy transaction involving a customer with health insurance, CVS reports to the customer's insurer (also described as the third party payor, or "TPP") or its claims administrator (also described as the pharmacy benefits manager, or "PBM") CVS's U&C price for the drug being purchased under its contractual arrangements with the insurer. In the pharmaceutical industry, the U&C price is defined as the "cash" price charged to the general public (*i.e.*, the amount charged for transactions in which insurance is not used). Informed by CVS's reported U&C, the insurer and the patients pay CVS their respective portions of what is owed for the drug. The amounts that CVS collects from insurers and patients cannot exceed CVS's reported U&C price.

But CVS, in determining its U&C price – a confidential process which CVS itself has described as "proprietary" and to which only CVS has access – artificially and fraudulently inflates the purported U&C prices it submits to TPPs and PBMs, in order to collect higher amounts from insurers and patients. CVS does so by purposefully excluding from consideration the most common and customary cash prices it actually charges to the general public: the price CVS offers under its HSP program. In other words, CVS has reported as its purported U&C prices ones that ***were neither* "*usual*" *nor* "*customary*."** Just this year, in *United States ex rel. Garbe v. Kmart Corp*, the Seventh Circuit found this type of conduct wrongful, holding that the prices another pharmacy offered in its own discount program (functionally identical to CVS's HSP program) "represented the 'usual and customary' charges for the drugs," because "***the 'usual and customary' price requirement should not be frustrated by so flimsy a device***

***as [the pharmacy's] 'discount programs.'"*** 824 F.3d 632 (7th Cir. 2016).[3] As a result of CVS fraudulently inflating U&C prices submitting to TPPs and PBMs, CVS has collected from its insured customers (including Plaintiffs and class members) copayments far higher than CVS's true U&C price.

CVS has admitted, or cannot reasonably dispute, that its conduct applies in a uniform manner for each relevant transaction of every class member. CVS admitted in its Answer that it "does not today, and never has, reported the HSP price as its U&C price on drugs included on the HSP formulary."[4] [redacted] In short, that ruling "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Therefore, this case is the quintessential one for which class certification is warranted.

CVS's fraudulent and deceptive reporting of U&C prices has caused millions of class members, who have purchased many of the most commonly-prescribed health-critical generic drugs, to pay much higher copayments than they should have. [redacted]

Plaintiffs demonstrate below that they satisfy all elements for certification. But three salient points bear emphasis. ***First*, the evidence of CVS's uniform scheme to charge inflated copayment prices is the same for all claims and all class members**. Each transaction where CVS charged a patient an inflated copayment, by falsely inflating CVS's submitted U&C price, constitutes both a written misrepresentation – stating a false U&C price and a false charge to the patient – and an omission – concealing that the patient was not getting the benefit of her insurance. The claims adjudication process and CVS's transaction data evidences that CVS conducted this overcharge scheme in a common and uniform manner across the class, and that CVS has charged each class member at least one inflated

[3] Emphasis added throughout unless otherwise indicated.
[4] Aug. 12, 2016 CVS Pharmacy, Inc. Answer [ECF 144] ¶ 71.
[5] Declaration of Robert B. Gilmore ("Gilmore Decl."), Ex. 1, Tierney 226:18-25. All exhibit references are to those attached to the Gilmore Declaration unless otherwise indicated.

copayment in this manner. This sort of common, classwide evidence of deception is why the Supreme Court observed that certification so often is warranted in consumer fraud cases. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

***Second*, CVS uniformly deceived each class member by reporting and charging inflated *prices***. This case is all about false prices – CVS charging Plaintiffs and class members falsely inflated copayments calculated from falsely inflated U&C prices. The case law recognizes that price is a material term of any consumer transaction, and thus reliance and materiality can be established on a classwide basis. *See Bias v. Wells Fargo & Company*, 312 F.R.D. 528, 541 (N.D. Cal. 2015). Indeed, the uniform nature of CVS's overcharging scheme is quite similar to other cases where courts, including this Court, have found that a defendant's uniform classwide ***financial*** misrepresentations warranted certification. *See, e.g., Bias*, 312 F.R.D. at 537 (certifying class based on uniform failure to inform customers that broker's price opinion fees included a mark-up); *In re Checking Account Overdraft Litigation*, 307 F.R.D. 630, 648 (S.D. Fla. 2015) (certifying classes where Wells Fargo's uniform overdraft fee overcharging scheme "constitute the very heart of the claims for which Plaintiffs seek class certification."); *Spann v. J.C. Penny Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015), *amended* 314 F.R.D. 312 (C.D. Cal. 2016) (evidence of a "systematic and pervasive unlawful price comparison policy" supported certification).

***Third*, the case is ideally suited for classwide resolution and vindicates the underlying policy of Rule 23**. Plaintiffs seek certification of 11 single-state classes, thus avoiding any inter-state conflicts of laws. Plaintiffs show through their accompanying Trial Plan that their causes of action are amenable to classwide proof, and that trying 11 single-state classes is readily manageable. What is more, this is the paradigmatic case "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages" and therefore "aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980); *see also Bias*, 312 F.R.D. at 543. CVS has been able to get away with its uniform scheme by overcharging patients in modest amounts individually, but reaping enormous sums for itself in the aggregate. The class action was created to combat exactly this type of conduct. Plaintiffs therefore respectfully request that this Court certify the

11 single-state classes set forth in the Notice of Motion, appoint the Plaintiffs identified above as class representatives, and appoint the law firms of Hausfeld LLP, Stein, Mitchell, Cipollone, Beato, & Missner, LLP, and Pritzker Levine LLP as class counsel.

## STATEMENT OF RELEVANT FACTS

At trial, Plaintiffs will rely upon common, classwide evidence of CVS's uniform pricing conduct to demonstrate classwide liability, injury, and damages for all class members under each state law cause of action. This common evidence of liability and harm comes from CVS itself: CVS's internal emails and memoranda, CVS's prescription drug transaction data, CVS's witness testimony, even CVS's judicial admissions, as described extensively below. In addition, Plaintiffs will rely on the expert testimony of Dr. Robert P. Navarro, a professor of pharmacy at the University of Florida, and Dr. Joel Hay, a professor of pharmaceutical economics at the University of Southern California, as described in their declarations submitted with Plaintiffs' Motion, cited below.

### A. In Prescription Drug Purchases Using Insurance, CVS Is Not Permitted To Charge Patients Copayments That Exceed CVS's "Usual and Customary" Price.

Approximately 90% of Americans – including all Plaintiffs and class members – are enrolled in a private or public health care plan that splits prescription drug costs between the insurer and insured. Declaration of Dr. Robert P. Navarro ("Navarro Decl.") ¶¶ 10, 12, Ex. 2. When filling prescriptions using insurance, insured patients frequently pay a portion of the cost (a copayment), and the plan (TPP, or the PBM on behalf of the TPP) pays the remainder of the cost. *Id.* ¶ 12; Answer ¶¶ 10-11, 44. The PBMs and TPPs have agreements with pharmacies, including CVS, which govern, among other things, the prices that CVS may charge for prescription drugs purchased by the insured patients. Ex. 2, Navarro Decl. ¶¶ 13-14; Answer ¶¶ 10, 44, 67. When an insured patient fills a prescription at CVS, the pharmacist generates a claim by transmitting patient, prescription, and insurance information electronically to the TPP or PBM. Answer ¶¶ 12, 48-49. Using that information, the TPP or PBM then immediately transmits back to CVS the amounts that CVS will receive from the insurer and from the patient. *Id.* ¶ 49. This almost-instantaneous, automated process is known in the pharmacy industry as "claims adjudication." *Id.* Since at least November 2008, CVS's electronic claims adjudication process has utilized standardized data fields developed by the NCPDP, a pharmacy standard-setting

organization. Answer ¶¶ 49-50. CVS follows this format for all transactions with all TPPs and PBMs. Ex. 3, 30(b)(6) 68:8-23; Answer ¶ 50.

For every insured transaction, CVS transmits its U&C price to the TPP or PBM. Ex. 3, 30(b)(6) 80:5-83:23; Ex. 1, Tierney 42:12-43:7. The NCPDP's Telecommunication Standard includes Field No. 426-DQ, "Usual and Customary Charge," which NCPDP's data dictionary defines as "Amount charged cash customers for the prescription exclusive of sales tax and other amounts claimed." Answer ¶ 53. As CVS has conceded, "[t]he U&C price is an industry term meaning the cash price paid by the general public" and a "'cash' customer typically means a customer who purchases a drug without using insurance." Dec. 4, 2015 CVS Pharmacy Mot. to Dismiss [ECF 56] at 15. CVS's internal documents and witnesses offer similar definitions. *See, e.g.,* Ex. 4, Health Savings Pass Reconciliation Process [CVSC-0313152, at 152] [redacted] Ex. 5, Third Party Finance Glossary of Terms [CVSC-0068438, at 458] [redacted]; Ex. 6, Greenwood 40:11-25.

The U&C price serves a vital purpose. A common, standardized aspect of the claims adjudication process is that, on insurance transactions, a pharmacy cannot charge an amount higher than its U&C price, and thus TPPs and PBMs use the U&C price that a pharmacy submits to calculate the amounts that the pharmacy will be paid for the purchase. Ex. 2, Navarro Decl. ¶¶ 7-8. [redacted] Ex. 7, Gibbons (TX) 61:23-62:8 [CVSC-0223177, at 192-93]. [redacted][6] [redacted] Ex. 3, 30(b)(6) 188:8-189:23.

---

[6] Ex. 7, Gibbons (TX) 60:20-61:1 [redacted]); *see also* Ex. 8, Colbert (TX) 184:8-185:9 [redacted]; Ex. 9, Ferschke (TX) 26:10-25 [redacted]

All of Plaintiffs' and class members' TPP or PBM's agreements with CVS prohibit CVS from charging patients prices that exceed the pharmacy's U&C prices. Ex 12, Chart of Relevant Contracts; Ex. 6, Greenwood 43:15-44:10, 76:22-78:3 [redacted] Ex. 2, Navarro Decl. ¶¶ 21, 25.[7] Exhibit 12 to the Gilmore Declaration sets forth the insurance plan contracts and documents that have been identified to date as containing "Lower of U&C" pricing terms. Importantly, for purposes of this motion, all of the contracts pertaining to class members have the same or substantially similar "Lower of U&C" provisions, so that no individual contractual analysis is necessary. CVS patients in the 11 state classes insured under these plans, and who paid copayments described in the class definitions (*i.e.*, higher than CVS's HSP prices), are class members.[8]

Beyond this uniformity in the contracts, [redacted]. Ex. 15, Declaration of Dr. Joel Hay ("Hay Decl.") ¶ 33. [redacted]. Ex. 1, Tierney 43:8-45:12; Ex. 3,

---

[redacted] Ex. 10, Morrison 116:1-14 (admitting that majority of contracts from 2006-May 2010 "contained a requirement that the reimbursement CVS would get would be the lesser of a contract price of the pharmacy's reported U&C price"); Ex. 6, Greenwood 48:18-49:1 [redacted] *id*. 70:10-17 [redacted]

[7] *E.g.*, Ex. 13, Oct. 8, 2001 Pharmacy Provider Agreement between Humana Health Plan, Humana Insurance and CVS Pharmacy [CVSC-0014111], Ex. C ¶ 5 ("If [CVS]'s usual and customary charge is less than the Member's Copayment, [CVS] may collect only the usual and customary charge from the Member."); *see also id.*, § 2.2(iii) ("Provider … shall collect from the Member the lesser of the Participating Pharmacy's usual and customary price or the applicable Member Copayment as indicated by on-line claim adjudication."); Ex. 14, Feb. 1, 2008 MedCare Pharmacy Network Agreement between MedImpact and CVS, at p. 14 ("In no case shall reimbursement to Member Pharmacy exceed Member Pharmacy's Usual and Customary price.").

[8] Plaintiffs reserve the right to add as class members patients who made purchases pursuant to additional plans based on further information adduced during discovery.

30(b)(6) 89:12-91:18. ***Third,*** [REDACTED] [REDACTED]. 7, Gibbons (TX) 120:21-121:5, 124:6-125:7; Ex. 9, Ferschke (TX) 30:15-31:25.

Thus, CVS's contracts, its own witnesses, its transaction data, and its internal tracking of claims adjudication, all demonstrate that the Lower of U&C pricing mechanism applies uniformly to Plaintiffs and class members' transactions with CVS.

**B. CVS Develops The HSP Program – A Uniform Generic Drug Pricing Program – To Inflate Its Reported U&C Prices.**

In 2008, CVS determined that it needed to lower the prices it charged cash-paying customers in order to avoid losing market share to large retailers such as Wal-Mart. Ex. 7, Gibbons (TX) 140:7-21. At the same time, CVS wanted to avoid having to lower the U&C prices it submitted to TPPs and PBMs and face reduced reimbursements. Ex. 10, Morrison 142:23-143:12. CVS therefore created the so-called Health Savings Pass program, which provided a pretext for CVS to continue to report falsely high "U&C" prices to the TPPs, while still obtaining the competitive benefits of charging lower prices to cash-paying customers.

CVS launched the HSP program in November 2008. Answer ¶ 60. Under the HSP program, CVS sold generic drugs at set "discount" prices to cash-paying customers who paid a nominal membership fee. The HSP program was available throughout the country at any CVS store. Ex. 3, 30(b)(6) 229:14-230:3. A standard 90-day supply for nearly all HSP-eligible generic prescription drugs was $9.99 (November 2008-2010) and $11.99 (starting in 2011). Answer ¶ 62.[9] The HSP generic drug program included over 400 generic prescription drugs, including some of the most commonly prescribed generic drugs for cardiovascular, allergy, and diabetes conditions, among others. Answer. ¶ 62; Ex. 16, HSP program formularies. In February 2016, CVS discontinued the HSP program, replacing it with a new discount card program administered through third-party Scriptsave, Ex. 3, 30(b)(6) 194:17-20. CVS stopped the HSP program after Plaintiffs filed this suit, and while regulators such as the Texas Attorney General still are investigating CVS's U&C reporting and the HSP program.

[9] A small subset of HSP drugs had different price-points, such as antibiotics and women's health drugs. Answer ¶ 62; Ex. 16, HSP program formularies.

In essence, CVS used the HSP program as a ruse to evade reporting the pharmacy's true cash prices as its U&C price, thereby increasing the amounts CVS could charge insurers and patients. Plaintiffs will rely on classwide evidence – CVS documents, CVS witness testimony, CVS transaction data, and expert testimony and analysis – to prove that CVS's HSP prices were CVS's true U&C prices: the cash prices charged to the general public for the eligible generic drugs.

***First***, HSP indisputably involved cash prices. [redacted] [redacted]

***Second***, the HSP program was open to the general public. [redacted] Ex. 22, CVSC-0222895, at -98; *see also* Ex. 23, Morrison (TX) 227:2-22 [redacted] The only criteria for a patient to enroll in the program was to fill out a form and pay a small membership fee. Ex. 10, Morrison 117:1-25; Ex. 3, 30(b)(6) 234:21-235:4. From November 9, 2008 through 2010, cash paying customers could join the HSP program for a $10 annual fee, which was raised to $15 in 2011. Answer ¶ 62. [redacted] [redacted] [redacted] Ex. 15, Hay Decl. ¶ 41. [redacted] *Id.* [redacted] *Id.* ¶ 41, Table 4. [redacted], Ex. 2, Navarro

---

[10] *See, e.g.,* [redacted] Ex. 18, [redacted]" Ex. 19, [redacted] Ex. 20, Sept. 12, 2008 M. Dowling email to E. Wingate (HSP program "***will essentially function as a cash script***"); Ex. 21, [redacted]

[11] Ex. 19, Aug. 3, 2008 D. Ghertner Email to multiple CVS personnel [CVSC-0222766]; Ex. 7, Gibbons (TX) 214:8-215:20; *see also* Ex. 2, Navarro Decl. ¶ 52.

Decl. ¶¶ 45-46, belying CVS's position that its HSP program could be excluded from determining its U&C cash price.

***Third***, [redacted] Ex. 15, Hay Decl. ¶¶ 10, 40.[12]

***Fourth***, [redacted]" Ex. 24, [redacted] Ex. 25, [redacted]

[12] Although CVS claims that it did not offer prices of less than the "standard" program price for prescriptions less than 90 days, [redacted] Ex. 15, Hay Decl. ¶ 42, Table 4. [redacted] Ex. 1, Tierney 203:17-204:20; Ex. 3, 30(b)(6) 63:12-64:2.

[13] Ex. 26, June 2010 Landscape Strategy Presentation, at CVSC-0341635; Ex. 7, Gibbons (TX) 246:12-247:13; Ex. 9, Ferschke (TX) 120:18-121:17.

**Overall Third Party Implications**

- Passing HSP pricing on to State Medicaid would lead to Private Payers demanding the same price
  - HSP becomes U&C
  - In May there were 5.2M claims; translates to 67M claims annually
  - The estimated impact for the month of May came to $42M which translates to $547M annually.

**C. CVS Has Deceived And Harmed Plaintiffs And Class Members In A Uniform Manner – Collecting Inflated Copayments That Exceed CVS's True U&C Prices.**

In a prior opinion, this Court described the core of Plaintiffs' and class members' case:

> Plaintiffs contend that not only was the false U&C price directly communicated to them every time they paid inflated copayments, but it was also indirectly communicated to them through their insurers (third-party payors) every time their claims were adjudicated and copayments were calculated.

*Corcoran v. CVS Health Corp.*, -- F. Supp. 3d --, No. 15-CV-3504-YGR, 2016 WL 948880, at *11 (N.D. Cal. Mar. 14, 2016). For each of Plaintiffs and class members' overcharge transactions, CVS's deception constitutes both a ***misrepresentation*** – communicating the false U&C price to Plaintiffs and class members with each inflated copayment – as well as an ***omission*** – "concealing from [Plaintiffs] the true U&C prices …" and thus concealing that Plaintiffs were being denied the prices to which they were entitled under their insurance. *Id.* at * 11, *13.

Plaintiffs will show through classwide evidence that CVS committed these misrepresentations and omissions. CVS uniformly has reported inflated U&C prices, rather than its HSP prices. CVS admits that it "does not today, and never has, reported the HSP price as its U&C price on drugs included on the HSP formulary." Answer ¶ 71; *see also id.* ¶¶ 13, 65. [REDACTED] Ex. 11, Melkonian 64:9-65:7; 103:2-104:4.

Based on the foregoing evidence and their own expertise, Dr. Navarro and Dr. Hay have concluded that CVS should have included its HSP prices when setting and reporting its U&C prices. *See* Ex. 2, Navarro Decl. ¶¶ 7, 28, 36, 40, 41-52; Ex. 15, Hay Decl. ¶¶ 35-43. The Seventh Circuit

agrees. CVS's HSP program is functionally identical to Kmart's discount program challenged in *United States ex rel. Garbe v. Kmart Corp.*, which the Southern District of Illinois and the Seventh Circuit both held "represented the 'usual and customary' charges for the drugs." 824 F.3d at 632. *See also id.* at 636 (describing Kmart as offering 90-day prescriptions at $15 to patients who signed up for program); *id.* at 643 ("Cash customers walking into Kmart do not cease to be members of the general public the minute they are offered – or pushed into – 'membership' in Kmart's discount program" even if they paid a nominal $10 membership fee).

[redacted] Ex. 15, Hay Decl. ¶ 43. Thus the evidence of CVS's conduct in reporting inflated U&C prices and charging inflated copays is common to each class member, and will be applied uniformly to prove liability and damages as to each class member.

CVS's transaction data, and contract and plan documents with PBMs and TPPs, provide evidence of the composition of the 11 state classes for which Plaintiffs seek certification. Plaintiffs and class members participate in third-party health care plans and purchased HSP-eligible generic prescription drugs from CVS retail pharmacies between November 2008 and the present. Exhibit 27 to the Gilmore Declaration illustrates that Plaintiffs are typical of the class as a whole. Each Plaintiff and each class member purchased one or more drugs listed on the HSP program, using insurance that required that CVS not charge more than its U&C price. Ex. 27, Chart of Plaintiff Contract and Plaintiff Testimony; Ex. 15, Hay Decl. ¶¶ 9, 11, 45-50; Ex. 2, Navarro Decl. ¶¶ 20, 25. Each Plaintiff and class member paid CVS one or more copayments that exceeded CVS's true U&C price. Ex. 15, Hay Decl. ¶ 50. This overcharge is calculated in a uniform method using a simple arithmetic formula that is common across the classes: by measuring the difference between what CVS should have reported as its U&C price – based on the HSP prices – and the actual copayment that CVS charged to each class member. *Id.* ¶¶ 58-63. [redacted] *Id.* ¶ 56. [redacted] *Id.*

## LEGAL STANDARDS

"Federal Rule of Civil Procedure 23, which governs class certification, has two distinct sets of requirements that plaintiffs must meet before the Court may certify a class." *Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411-YGR, 2016 WL 3844334, *2 (N.D. Cal. July 15, 2016). "Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b), depending on the nature of the class they seek." *Id.* (citing *Shady Grove Orthopedic Assocs, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010)).

Rule 23(a) requires a party seeking to certify a class to demonstrate (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). In addition, the members of the class must be ascertainable. *Bias*, 312 F.R.D. at 534. Plaintiffs here seek certification under both Rule 23(b)(3) and Rule 23(b)(2). Certifying a class under Rule 23(b)(3) involves two inquiries: (1) whether the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

### I. PLAINTIFFS SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23(A).

#### A. The Classes Satisfy The Numerosity Requirement.

There can be no dispute that each of the classes as defined is so numerous that joinder of all members even in one state would be "impracticable." Fed. R. Civ. P. 23(a)(1). *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement."); *Bias*, 312 F.R.D. at 536. Here, each of the proposed classes includes hundreds of thousands or millions of members, easily satisfying Rule 23(a)(1)'s numerosity requirement. Ex. 15, Hay Decl. ¶ 56.

### B. CVS Acted In A Uniform Manner To Overcharge Millions Of Similarly Situated Persons, Yielding Several Core Common Questions.

Rule 23(a) also requires one or more questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23 does not require that all questions of law and fact be common to every class member; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011(9th Cir. 1998). Commonality is met where plaintiffs' claims "depend upon a common contention … of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 351 .

This case presents a number of common questions of law and fact that satisfy Rule 23's commonality requirement because they will "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Further, each of these common questions satisfies Rule 23(a)'s commonality requirement because each "focuses on the actions of Defendant[] and does not vary by class member." *Bias*, 312 F.R.D. at 538. The common questions include:

- Whether, in setting and reporting its U&C prices, CVS was required to include its HSP prices for drugs on the HSP formulary (which CVS admits it did not do);
- Whether by reporting to TPPs and PBMs inflated U&C prices, charging Plaintiffs and class members inflated copayments, and failing to tell Plaintiffs that they were being denied the benefit of their insurance, CVS engaged in false and deceptive conduct;
- Whether such false and deceptive conduct injured Plaintiffs and class members by causing them to pay CVS inflated copayments; and
- Whether CVS was unjustly enriched through obtaining payments from Plaintiffs inflated above CVS's true U&C prices.

All of these common questions flow from CVS's uniform practice of overcharging insured patients for HSP-eligible drugs by reporting inflated U&Cs to the TPPs. *See supra* Statement of Facts at 3-9. All of these factual and legal issues are derivative of the central issue: CVS should have reported its HSP prices as its U&C prices. That question, when decided, will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 351.

    ### C. Plaintiffs' Claims Are Typical Of Those Of The Classes.

Rule 23's third requirement for typicality, which is liberally construed, is met if the "claims or defenses of the representative parties are typical of the claim or defenses of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "This requirement is usually satisfied if the named plaintiffs have suffered the same or similar injuries as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members were injured by the same course of conduct." *In re NCAA Student Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2013 WL 5979327, *4 (N.D. Cal. Nov. 8, 2013) (citation omitted).

The named plaintiffs are typical of the class as a whole. As discussed in the Statement of Facts, each Plaintiff (1) is enrolled in a third-party health insurance plan that limited the price CVS could charge to its usual and customary price; (2) purchased one or more drugs included on the HSP generic drug formulary, and (3) was charged a copayment that is higher than the usual and customary price for that drug (CVS's true U&C prices, based on CVS's HSP prices). Ex. 27; Ex. 15, Hay Decl. ¶ 50. Furthermore, CVS has admitted it has no knowledge or evidence that it told any of the named Plaintiffs the truth – that it was charging Plaintiffs copayments higher than CVS's true U&C prices. Ex. 3, 30(b)(6) 135:4-16. And Plaintiffs themselves testified they were deceived by CVS's conduct. Ex. 27. Plaintiffs satisfy the typicality requirement.

### D. Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class.

To be an adequate class representative, Plaintiffs and their attorneys must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he Court must consider '(i) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Kumar*, 2016 WL 3844334 at *2 (quoting *Staton v. Boeing Co.*, 327 F. 3d 938, 957 (9th Cir. 2003)). Here, Plaintiffs and their attorneys easily meet these requirements. ***First***, no conflicts exist between the named Plaintiffs and their counsel, and the class as a whole: their interests are aligned with all class members in challenging CVS's fraudulent and deceptive pricing scheme. The relief that Plaintiffs and their attorneys seek is the same for the named individuals and the class: recovery of the inflated copayment amounts they paid to CVS.

***Second***, the named Plaintiffs and counsel have litigated this action vigorously. As an initial matter, plaintiffs' counsel has already been deemed qualified based on the Court's approval of plaintiffs' counsel as interim class counsel. Each of the named plaintiffs deposed to date[14] demonstrated their adequacy by explaining their reasons for joining the lawsuit and the efforts expended so far in connection with litigation the case on behalf of the absent class members. Plaintiffs articulated their understanding of the lawsuit.[15] And Plaintiffs explained why they joined the lawsuit: they trusted CVS to give them the benefit of their insurance and charge them the price they were owed.[16] They believe that CVS's failure to do so was unfair, misleading, and fraudulent.[17] Plaintiffs understand their role as class representatives, have actively participated in the suit to date through review of case filings, collection of documents, answering interrogatories, and sitting for depositions. They are prepared to fulfill the class representative role and perform whatever actions are asked of them.[18] In sum, Plaintiffs will more than adequately represent the class.

---

[14] The four named plaintiffs seeking to represent California (Ms. Gardner and Messrs. Corcoran, Clark, and Norkus) have yet to be deposed. Plaintiffs will supplement this submission with relevant testimony from these individuals after their depositions are completed.

[15] See, e.g., Ex. 28, Avis 52:24-54:6; Ex. 29, Caine 19:9-17, 61:13-25, 82:8-11; Ex. 30, Garber 13:2-6; Ex. 31, Gargiulo 83:11-84:7, 93:8-16; Ex. 32, Gilbert 38:9-13; Ex. 33, Hagert 98:17-99:10, 101:13-25, 103:10-15, 106:3-18; Ex. 34, Jenks 50:17-51:13, 71:11-19, 145:17-20; Ex. 35, Samuelson 187:11-15; Ex. 36, Wulff 96:14-23..

[16] See, e.g., Ex. 28, Avis 87:20-88:21, 91:4-20; Ex. 37, Barrett 197:18-198:2, 216:1-19, 225:16-226:1; Ex. 29, Caine 122:13-16, 20-24, 134:17-22; Ex. 30, Garber 49:2-5; Ex. 31, Gargiulo 122:4-123:17; 181:13-14, 184:8-12; Ex. 32, Gilbert 56: 18-22; 69:21-70:2; 149:23-150:1; Ex. 33, Hagert 168:3-21, 178:22-179:1; Ex. 34, Jenks 148:21-149:5, 201:22-203:8; Ex. 35, Samuelson 159:18-160:11, 241:11-15; Ex. 38, Washington, 247:4-17; 294:3-8; Ex. 36, Wulff 96:5-23.

[17] See, e.g., Ex. 28, Avis 183:5-16, 185:20-22; Ex. 37, Barrett 39:8-12; Ex. 30, Garber 57:14-58:10; Ex. 31, Gargiulo 171:9-172:2; Ex. 32, Gilbert 227:8-14; Ex. 33, Hagert 205:7-206:11, 207:5-208:8; Ex. 34, Jenks 145:17-146:6; Ex. 39, Odorisio 121:2-16; Ex. 35, Samuelson 174:3-11, 242:6-20; Ex. 38, Washington 292:12-293:6.

[18] See, e.g., Ex. 28, Avis 183:5-184:5, 188:3-22; Ex. 37, Barrett 265:9-18, 267:3-25, 275:12-276:9; Ex. 29, Caine 204:1-205:1, 210:18-23; Ex. 30, Garber 21:22-22:24; Ex. 31, Gargiulo 196:25-197:6, 204:16-25, 205:21-206:6; Ex. 32, Gilbert 51:18-52:21, 59:14-23; Ex. 33, Hagert 48:7-23, 77:19-78:1; Ex. 34, Jenks 219:9-220:22; Ex. 39, Odorisio 64:24-65:4, 121:2-16, 258:21-259:4; Ex. 35, Samuelson 274:3-8, 274:12-17, 281:4-282:20; Ex. 38 Washington 314:22-315:8, 319:24-320:9, 332:3-333:15; Ex. 36, Wulff 50:7-13, 62:14-18.

### E. The Class Members Are Ascertainable Through CVS's Transaction Data And Insurance Plan Documents.

In addition to the Rule 23(a) requirements, Plaintiffs must also establish that the class members are identifiable. Plaintiffs satisfy the ascertainability requirement because "members of the proposed class are readily identifiable by objective criteria, and it is administratively feasible to determine whether a particular person is a member of the class." *Bias*, 312 F.R.D. at 538; *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010). Indeed, the members of the class are readily identifiable through CVS's own transaction data. With this data, matched with CVS's contracts (*see* Ex. 12), Dr. Hay can determine which CVS customers (1) purchased an HSP-eligible prescription drug during the class period, (2) for which the reported U&C price was greater than the HSP price (or prorated HSP price), (3) were insured through a TPP or PBM that required CVS not to charge amounts higher than its U&C prices, and (4) paid a copay that was higher than it would have been if it had been based on the actual U&C price. Ex. 15, Hay Decl. ¶¶ 45-56.[19] The use of defendant's own databases to identify class members based on objective criteria is the prototypical model of ascertainability. *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2006 WL 2642528, at *3 (N.D. Cal. Sept. 14, 2006) (analyzing records maintained by defendant is a "reasonable, objective method of ascertaining those individuals"); *Wolph v. Acer Am. Corp.*, No. 09-cv-1314, 2012 WL 993531, at *2 (N.D. Cal. Mar. 23, 2012) (same); *Bias*, 312 F.R.D. at 538-39 (same).

## II. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(3).

### A. Given The Uniform Nature Of CVS's Overpricing Scheme And Its Impact On Plaintiffs And Class Members, Common Questions Of Law And Fact Predominate Over Individualized Inquiries.

Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer … fraud …." *Id.* Plaintiffs satisfy this standard when they "establish that the 'issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof.'" *Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2016 WL 4424965, at *3 (N.D. Cal. July 6, 2016)

[19] The class definition in the Notice of Motion has been revised from the version set forth in Plaintiffs' Third Amended Complaint [ECF 101], to be even more precise with respect to the eligible class members.

(quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)) (ellipses in original). "[P]roving predominance does not require plaintiffs to prove every element of a claim is subject to classwide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) (citation omitted).

The Rule 23(b)(3) analysis starts "with the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As explained below and further demonstrated in Plaintiffs' proposed Trial Plan, common, generalized evidence will be used to establish elements in multiple causes of action brought by each class (*e.g.*, fraud, negligent misrepresentation, and statutory claims within each class share multiple elements that will be established by common evidence). In other words, the classes "will prevail or fail in unison," and thus class treatment is proper. *Spann*, 307 F.R.D. at 523 (citation omitted).

**1. Common issues of misrepresentations and omissions predominate.**

Every UDAP, fraud, and negligent misrepresentation claim will require proof of a misrepresentation or omission. In this case, as the Court recognized, Plaintiffs have alleged that "CVS made a false misrepresentation every time it charged plaintiffs copays that were inflated based on inflated U & C prices," and made omissions by "concealing from [Plaintiffs] the true U&C prices," thus concealing that Plaintiffs were being denied the benefits of their insurance. *Corcoran*, 2016 WL 948880, at *11, *13. Plaintiffs will prove, through classwide evidence, that (1) CVS was required to charge Plaintiffs and class members copayments based on truthfully calculated and submitted U&C prices; (2) CVS submitted to TPPs and PBMs falsely inflated U&C prices rather than CVS's HSP prices – CVS's true U&C prices for drugs on the HSP formulary; and (3) CVS charged Plaintiffs inflated copayments based on CVS's inflated U&C prices. These common issues predominate over individualized inquiries.

***First***, the common issue that CVS could not charge Plaintiffs and class members more than its U&C prices will be established using classwide evidence. As described in detail above, CVS's contracts with PBMs and TPPs, CVS's witnesses' testimony, and CVS's transactional data all evidence this common issue and show a simple key fact, [REDACTED] Ex. 7,

Gibbons (TX) 61:23-62:3.  *See supra* Statement of Facts at 4-7.  While the particular phrasing may differ, there are no material variations among the contracts – the common requirement that CVS cannot charge more than its U&C prices applies classwide.  Just two weeks ago, in certifying a class of insureds proceeding against a health insurer under a number of different plans, the Court found that commonality and predominance were met where "Plaintiffs here have demonstrated, as a factual matter, that the insurance plans for the putative class members are substantially the same in a key respect…."  *Wit v. United Behavioral Health*, No. 14-CV-02346 JCS, 2016 WL 4990514, at *17 (N.D. Cal. Sept. 19, 2016); *see also Bias*, 312 F.R.D. at 536 (rejecting variation among mortgage terms as a ground for denying certification, where defendant "fail[ed] to explain how variations in contract language would negate the liability determination").  In this key respect, Plaintiffs' case is readily distinguishable from *Stitt v. Citibank*, where this Court held that "class members' agreements had 'distinct terms' such that common proof could not be used to determine the validity of property inspection fees."  *Stitt v. Citibank*, No. 12-CV-03892- YGR, 2015 WL 9177662, at *5 (N.D. Cal. Dec. 17, 2015).  That simply is not the case here.  CVS's contracts, data, and witness testimony (*see supra* Statement of Facts) confirm that the "Lower of U&C" pricing requirements apply classwide, and thus common proof ***will*** determine the "validity" of CVS's inflated U&C prices and copayment charges.

    ***Second***, whether CVS was required to include its HSP prices when reporting its U&C prices to TPPs and PBMs is a question that will be uniform for all Plaintiffs.  Plaintiffs will rely on decisions like *Kmart*, along with industry standards set by NCPDP and the evidence concerning the nature of CVS's HSP program, to establish that CVS was required to include its HSP prices in reporting its U&C prices.  *See supra* Statement of Facts at 7-10.  Because these questions of law apply equally to each class member, class relief is "particularly appropriate."  *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982).  Furthermore, Plaintiffs will rely upon CVS's own data to demonstrate that prices offered under the HSP program were the most common cash prices that CVS charged for drugs on the HSP formulary.  This will not vary among Plaintiffs or across the classes.  The same objective evidence (CVS's data) will apply to determine whether CVS should have submitted U&C prices based on the prices it offered through the HSP program.  Ex. 15, Hay Decl. ¶¶ 31-34, 45-50.

***Third***, Plaintiffs will rely on CVS's own admissions and documents to show that CVS did not, in fact, report the HSP pricing as its U&C prices. *See, e.g.*, Answer ¶ 70 ("Defendant admits that CVS does not today, and never has, reported the HSP price as its U&C price on drugs included on the HSP formulary."); Ex. 1, Tierney 228:6-14. CVS's "systematic and pervasive unlawful price … policy" is "common to all putative class members and predominates over any individual factual questions." *Spann*, 307 F.R.D. at 523. This warrants class certification.

**2. Common issues of materiality and reliance – where required elements – predominate.**

As detailed in the Trial Plan, only certain of Plaintiffs' causes of action require proof of materiality and reliance. Plaintiffs will establish these elements, where required, through the same classwide evidence. *See supra* Statement of Facts. Many of Plaintiffs' causes of action follow a "reasonable consumer" standard, allow a presumption of reliance, or circumstantial evidence of reliance. *See* Trial Plan § I.D. As the Ninth Circuit has described, this standard inquires "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). For such claims, class treatment is appropriate because the individual circumstances of specific class members themselves do not control, and thus generalized proofs through classwide evidence will establish Plaintiffs' claims. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1034 (C.D. Cal. 2015) (analyzing numerous UDAP statutes and concluding that they follow a reasonable consumer standard conducive to certification); *Miller v. Fuhu Inc.*, No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794, at *16 (C.D. Cal. Dec. 1, 2015) (common law fraud, UCL and CLRA claims amenable to class wide proof in consumer product class action; "liability issues under these statutes will focus on the nature of [the defendant's] representations and other promotional materials, not whether each and every class member would be deceived given their individual preferences or needs."); *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010) (certifying common law fraud and negligent misrepresentation claims, and CLRA claim; "plaintiffs need not establish that each and every class member based his or her decision on the represented discounts.").

But even with respect to those causes of action that do not allow for a presumption of reliance based on a reasonable person type standard, "a fraud claim may be common and not individualized for

(b)(3) purposes if both the misrepresentation or omission requirement and the reliance requirement ***can be met with common proof across the class***." NEWBURG ON CLASS ACTIONS § 4:59 (5th ed. 2013). And courts often certify classes, particularly in the consumer deception context, that involve a common classwide representation/omission and pattern of conduct. Predominance is "a test readily met in certain cases alleging consumer ... fraud," *Amchem Prods.*, 521 U.S. at 625, particularly where, as here, uniform practices and misrepresentations give rise to the controversy. *See, e.g., In re U.S. Foodserv. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) (holding that class actions may be reasonably litigated through use of "legitimate inferences based on the nature of the alleged misrepresentations at issue"); *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."). The Sixth Circuit's decision last year in *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) illustrates this in the consumer fraud context. Surveying multiple states' laws (including California, Illinois, and Florida), the court of appeals held that

> Plaintiffs can prove causation and/or reliance on a classwide basis provided that (1) the alleged misrepresentation … is material or likely to deceive a reasonable consumer, and (2) [defendant] made that misrepresentation in a generally uniform way to the entire class. As previously discussed, both factors are met here.

*Id.* at 518. The court then went on to find that even for a state (North Carolina) that did not permit presumptions of reliance, but required actual reliance, "although individualized showings may be required for actions for fraud, this does not in and of itself preclude a finding of the existence of a class" so long as common issues predominate. *Id.* And "while each plaintiff must prove his own reliance" the Court found that based on the nature of the misrepresentation at issue, the circumstantial evidence that can be used to show reliance is common to the whole class …." *Id.* For this reason, the court held that "this classwide proof—that the alleged misrepresentation is material and was made in a generally uniform manner to all class members—would also suffice … to show actual reliance such that individual issues would not predominate." *Id.*

Here, Plaintiffs' case stems from CVS's uniform scheme to inflate its U&C prices. Each transaction results from CVS reporting through the standard claims adjudication process an inflated U&C price, Ex. 15, Hay Decl. ¶¶ 35-39, and payment of the resulting inflated copayment would not

have occurred "absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed," *Bias*, 312 F.R.D. at 541. In such a case, there is a "presumption of reliance without individualized inquiry" based on evidence of payment of an inflated price: "[i]n cases involving fraudulent overbilling, payment may cause circumstantial proof of reliance based on a reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." *Id.* (citing *In re Foodservice*, 729 F.3d at 119-120).

This Court's holding in *Bias* applies with equal force here. The Plaintiffs themselves testified that being charged the right price was important to them and the basis for their suit, *see supra* Statement of Facts, and what is more, multiple CVS witnesses testified that, based on their experience and knowledge of CVS's business, price is important to customers. Ex. 40, Hughes 74:7-15; Ex. 10, Morrison 77:6-13; Ex. 1, Tierney 225:6-24. And "[t]here is no dispute that the alleged misrepresentations were communicated to all class members, because the representations were made at the point of sale as part of a standardized … purchasing process." *Brazil*, 2010 WL 5387831, at *4. Every time CVS reported an inflated U&C price to TPPs and PBMs, and charged and collected an inflated copayment from Plaintiffs and class members – evidenced by CVS's transaction data for each drug purchase – the pharmacy made the same type of misrepresentation and omission in a uniform manner. [REDACTED] Ex. 1, Tierney 226:18-25. This evidence further establishes reliance across the class. *Brazil*, 2010 WL 5387831, at *5 (certifying UDAP, fraud, and negligent misrepresentation claims).

Finally, to the extent any Plaintiffs continued filling HSP-eligible prescriptions at CVS after joining this litigation, that would not change the classwide evidence of reliance and materiality. Rejecting the defendant bank's argument that "some class members would have engaged in the same conduct irrespective of the alleged misrepresentation," the Ninth Circuit concluded in *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012) that "we are hard pressed to agree that any class member would prefer to incur multiple overdraft fees." *Id.* at 729 (common issues predominated; "the pervasive nature of Wells Fargo's misleading marketing materials amply demonstrates that class members, like

the named plaintiffs, were exposed to the materials and likely relied on them.”). That is because “[t]o prove reliance, a plaintiff need not show that the misrepresentation was the ‘sole or even the predominant or decisive factor’ in his or her decision making. Instead, the representation need only have been a ‘substantial factor’ in influencing this decision.” *Vaccarino v. Midland Nat. Life Ins. Co.*, No. CV 11-5858 CAS MANX, 2013 WL 3200500, at *10 (C.D. Cal. June 17, 2013) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903 (Cal. 1997)).

**3. Common issues of CVS's knowledge and intent predominate.**

The class claims for Fraud and certain UDAP claims will require Plaintiffs to establish CVS's knowledge of its true U&C and CVS's intent to induce reliance. *See* Trial Plan § I.B. These elements will be established based on the same evidence of CVS's actions that were uniform among the Plaintiffs. It cannot be disputed that CVS knew every detail about its pricing and how it calculated its U&C prices; in fact, CVS had exclusive knowledge of this information and argued to this Court that it was “proprietary.” CVS Pharmacy MTD Reply Br. 15 [ECF 74]. And as the Court has stated (based on CVS's submissions in discovery disputes), “it is undisputed that CVS did not report its HSP price as its U&C price anywhere in the country, ***and knew it did not so report***.” Aug. 18, 2016 Order on Nationwide Data [ECF 152] at 2; Answer ¶ 71. This case-critical fact is the same for every class member.

**4. Common issues regarding CVS's improper gains predominate.**

Common questions also predominate as to Plaintiffs' unjust enrichment claims. “In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment.” *In re Abbott Labs. Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (quoting *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004). Plaintiffs will show that CVS received and retained wrongful benefits from Plaintiffs in the form of overpayments “common to all Class members.” *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see also Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (“Common to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their fireplaces.”). [redacted]

[REDACTED].[20]

### 5. Common issues regarding economic damages predominate.

Plaintiffs will prove that all class members were harmed economically by CVS's misrepresentations: if CVS had reported its actual U&C price for drugs on the HSP formulary, then the class members would have paid lower copays for their prescriptions than those CVS charged. Plaintiffs' method of proving damages must be tied to their theory of liability. *See Comcast Corp*., 133 S. Ct. at 1433; *Bias*, 312 FRD at 542 ("[The] post *Comcast* [question] is whether damages could be feasibly and efficiently calculated once the common liability questions are adjudicated.") (citations omitted). Plaintiffs easily meet this requirement. Dr. Hay has set forth a "workable method for calculating monetary recovery" that is tied to Plaintiffs' liability theory. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015). CVS overcharged each class member as a result of CVS's reporting inflated U&C prices. Using CVS's data, Dr. Hay calculates these overcharges in a uniform method across the classes: by measuring the difference between the HSP price (including prorated prices), and the actual copayment that CVS charged to each class member. Ex. 15, Hay Decl. ¶¶ 58-60. "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003).

## B. Certification Is The Superior Method Of Resolving The Class Members' Claims.

### 1. Individual litigation would be unfair and impracticable.

This case is particularly suited to class resolution because individual "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. Superiority is "easily satisfied" where, if "plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

---

[20] Ex. 26, June 2010 Landscape Strategy Presentation, at CVSC-0341635.

### 2. Trial of the 11 single-state classes, with numerous legal similarities and all targeting common CVS conduct, is eminently manageable.

Although the state laws at issue in this case share many of the same legal tests, Plaintiffs seek certification of single state classes representing the class members in each state. This is a common approach courts in this circuit use to certify class actions involving multiple states. For example, in *In re ConAgra Foods, Inc.*, the court certified 11 single-state classes – the same number here. 90 F. Supp. 3d at 1033–34. Rejecting the defendant's argument that such a case could not be tried manageably, the Court agreed with plaintiffs' arguments: "they propose that the court certify eleven separate classes, alleviating choice of law concerns … [and] while they require proof of different elements, the various state consumer protection laws all 'fall into consistent pattern'…." *Id.* Similarly, in *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 582 (C.D. Cal. 2016), the court found manageable nine single-state subclasses. While noting that "[d]efendants have pointed to different state law formulations concerning whether a product has to be both defective and unreasonably dangerous, or just defective," the Court found that it "need not resolve whether these variations are material because Plaintiffs have alternatively proposed formulating nine single-state subclasses. This proposal 'would avoid almost completely the tangled' variations in state law present in other multi-state class action cases." *Id.* (citing *In re Welding Fume Prod. Liab. Litig.*, 245 F.R.D. 279, 294 (N.D. Ohio 2007). And "'by holding separate trials for each state-wide class, or perhaps a combined trial for a few statewide subclasses, where the law in those states is similar enough to allow creation of jury instructions and a verdict form that is not too complex," the court found that defendants' supposed manageability concerns would be obviated. *Id.* (citing *In re Welding*, 245 F.R.D. at 294). In their Trial Plan, Plaintiffs show that classwide evidence of CVS's uniform conduct and similarities in states' laws will allow the Court to manage the trial of this case. Plaintiffs satisfy the superiority requirement.

## III. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(2).

Plaintiffs also are entitled to certification of the 11 state classes for purposes of injunctive relief. Class certification on this ground is appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. "When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the

dispute. Predominance and superiority are self-evident." *Id.* at 362-63. As the Ninth Circuit held in *Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014), where "every [member] in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in [defendant's conduct]," Rule 23(b)(2) certification is warranted.

An "indivisible injunction benefitting all [class] members at once" is what Plaintiffs seek. Plaintiffs are taking one or more medications and are likely to do so on an ongoing basis. They have purchased these drugs from CVS in the past, and would do so in the future, but seek for CVS to stop charging inflated copayments. In *Wit*, the court certified a Rule 23(b)(2) injunctive relief class seeking that the defendant insurer institute new guidelines under which it would process insurance claims. 2016 WL 4990514, at *23. Plaintiffs here seek a similar sort of relief: CVS should implement a new, lawful, approach to setting and reporting its U&C prices that takes into account either the HSP program or the successor program that CVS now is offering (since it continues to exclude these prices from its U&C prices as well), Ex. 3, 30(b)(6) 188:8-189:23, so that, on a going forward basis, Plaintiffs and class members will not be overcharged inflated copayments on generic drugs they purchase from CVS. [21]

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to certify the 11 classes described in the Notice of Motion.

Dated: October 3, 2016

Respectfully submitted,

By: /s/ Bonny E. Sweeney

Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Kristen Ward Broz (admitted *pro hac vice*)
HAUSFELD

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE MISSNER & BEATO LLP

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP

[21] "[P]laintiffs are not 'required to come forward with an injunction that satisfies Rule 65(d) with exacting precision at the class certification stage." *Wit*, 2016 WL 4990514, at *27 (citation omitted).