Bonny E. Sweeney (Cal. Bar No. 176174)
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, California 94111
Tel: 415-633-1908
Fax: 415-358-4980
bsweeney@hausfeld.com

Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Tel: 202-540-7200
Fax: 202-540-7201
rlewis@hausfeld.com

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE BEATO &
  MISSNER LLP
1100 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (202) 737-7777
pcipollone@steinmitchell.com
ranzidei@steinmitchell.com
rgilmore@steinmitchell.com

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel.  415-692-0772
Fax. 415-366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

*Interim Class Counsel*

REDACTED VERSION
OF DOCUMENT  FILED
UNDER SEAL

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, et al. on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS Pharmacy, Inc.<br><br>Defendant. | Case No. 4:15-cv-03504-YGR<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF AMENDED MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 18, 2017<br>Time: 2:00pm<br>Courtroom: 1<br>Judge: Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................I

NOTICE OF AMENDED MOTION AND AMENDED MOTION ..........................VIII

STATEMENT OF ISSUES TO BE DECIDED ....................................................X

INTRODUCTION .................................................................................................1

STATEMENT OF RELEVANT FACTS ................................................................3

    A.    CVS And The Class PBMs Adjudicate Plaintiffs' Prescription Insurance Claims Through The Industry-Standard NCPDP Format. .................................................4

    B.    ███████████████████████████████████████████ ███████████████████████████████████████████

    C.    CVS Implements Its Chain-Wide HSP "Cash Discount" Program. ......................7

    D.    CVS Deprived Plaintiffs Of Their Insurance Benefits By Not Reporting Its HSP Cash Price As Its U&C Price, As Required By The CVS-Class PBM Contracts; Any Extra-Contractual "Understanding" Of The Class PBMs Is Irrelevant And Would Not Immunize CVS From Liability. ...........................................................8

    E.    CVS's Conduct Harmed Plaintiffs In A Uniform, Class-Wide Manner...............11

LEGAL STANDARDS ......................................................................................11

ARGUMENT .....................................................................................................12

    I.    COMMON QUESTIONS WITH COMMON ANSWERS PREDOMINATE. ......................12

        A.    Plaintiffs Have Addressed The Court's Predominance Concerns. ......................12

            1.    Plaintiffs have narrowed the proposed classes to only those CVS customers whose prescription insurance was administered by the Class PBMs....................................................................................................12

            2.    Plaintiffs have third-party beneficiary status to assert UDAP violations against CVS, regardless of CVS and the Class PBMs' apparent joint disregard of their contracts' U&C definitions. .......13

        B.    Plaintiffs Satisfy Rule 23's Commonality And Predominance Requirements. .....17

            1.    The UDAP law does not vary among the six states; each prohibits unfair or deceptive practices in common terms..............17

            2.    Plaintiffs will prove CVS's UDAP violations with class-wide evidence. ..............................................................................................19

    II.    PLAINTIFFS ARE TYPICAL OF, AND WILL CAPABLY REPRESENT, THE CLASSES. ...............22

    III.    CERTIFICATION IS THE SUPERIOR METHOD FOR ADJUDICATING PLAINTIFFS' CLAIMS. .....23

A.    Although, Post-*Briseno*, Ascertainability Is Not A Stand-Alone Requirement, The Court Already Has Found That Plaintiffs' Method For Identifying Class Members Is Administratively Feasible. ................................................................23

B.    Certifying The Six Narrowed And Streamlined Proposed Classes Is Manageable, And Provides The Only Realistic Means For Plaintiffs To Be Afforded Relief. .......................................................................................................24

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Advanced Concepts Chicago, Inc. v. CDW Corp.*,
938 N.E.2d 577 (Ill. Ct. App. 2010) ........................................................... 14

*Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*,
76 A.D.2d 68 (N.Y. App. Div. 1980) ........................................................... 14

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................... 12, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
133 S. Ct. 1184 (2013) ..................................................... 12, 17, 19, 20

*Boracchia v. Biomet, Inc.*,
No. C-07-0650, 2008 WL 512721 (N.D. Cal. Feb. 25, 2008) ........................ 14

*Briseno v. ConAgra Foods, Inc. (Briseno I)*,
844 F.3d 1121 (9th Cir. 2017) ............................................................. 2, 23

*Briseno v. ConAgra Foods, Inc. (Briseno II)*,
-- F. App'x --, 2017 WL 53421 (9th Cir. Jan. 3, 2017) .............................. 3, 25

Bristol Vill., Inc. v. Lousiana-Pac. Corp.,
*170 F. Supp. 3d 488 (W.D.N.Y. 2016)* ..................................................... 16

*Cheval Farm, LLC v. Chalon*,
No. CV-11-00043-TUC-JGZ, 2013 WL 11826543 (D. Ariz. Sept. 13, 2013) ......... 15

*Clinical Tech, Inc. v. Covidean Sales, LLC*,
No. CV 14-12169-PBS, 2016 WL 3360481 (D. Mass. June 16, 2016) .............. 19

*Comcast v. Behrend*,
133 S.Ct. 1426 (2013) ................................................................... 11, 21

*Cotter v. Lyft, Inc.*,
60 F. Supp. 3d 1059 (N.D. Cal. 2014) .......................................................... 16

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActivecorp*,
82 A.D.3d 421 (N.Y. App. Div. 2011) .......................................................... 15

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,

   702 A.2d 1228 (Del. 1997) ......................................................................... 15

*Faulkner, USA, Inc. v. Durrant Grp., Inc.*,

   No. CV-11-08086, 2013 WL 11834262 (D. Ariz. May 30, 2013) ..................................... 15

*First Marblehead Corp. v. House*,

   473 F.3d 1 (1st Cir. 2006) ......................................................................... 15

*Forcellati v. Hyland's, Inc.*,

   No. CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ............................... 18

*G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*,

   871 F. Supp. 2d 763 (N.D. Ill. 2012) ............................................................. 19

*Geisler v. FedEx Ground Package Sys., Inc.*,

   No. 3:12-CV-1189-J-34PDB, 2015 WL 164217 (M.D. Fla. Jan. 13, 2015) .............................. 16

*Gen. Signal Corp. v. MCI Telecommns. Corp.*,

   66 F.3d 1500 (9th Cir. 1995) ..................................................................... 14

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,

   323 F.3d 1219 (9th Cir. 2003) .................................................................... 16

*Gutierrez v. Wells Fargo Bank, NA*,

   704 F.3d 712 (9th Cir. 2012) ..................................................................... 20

*In re Anthem, Inc. Data Breach Litig.*,

   No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) .................................. 16

*In re ConAgra Foods, Inc.*,

   90 F. Supp. 3d 919 (C.D. Cal. 2015) .......................................................... 18, 21

*In re NCAA Student Athlete Name & Likeness Licensing Litig.*,

   No. C 09-1967 CW, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ...................................... 22

*In re U.S. Foodservice Inc. Pricing Litig.*,

   729 F.3d 108 (2d Cir. 2013) ...................................................................... 21

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,

   No. 09-MDL- 2074-PSG, 2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ................................. 12

*Jajco, Inc. v. Leader Drug Stores, Inc.*,
  No. C 12-05703 PJH, 2013 WL 2403593 (N.D. Cal. May 31, 2013) ........................................ 14, 15

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................................................................ 17

*Khan v. OneWest Bank, F.S.B.*,
  No. 16 CV 8074, 2017 WL 1344535 (N.D. Ill. Apr. 12, 2017) ..................................................... 16

*Kmart Corp. v. U.S. ex rel. Garbe*,
  137 S. Ct. 627 (2017) ............................................................................................................... 3, 9

*Kuehn v. Stanley*,
  91 P.3d 346 (Ariz. App. 2004) ................................................................................................... 18

*LaSalle Nat. Bank v. Gen. Mills Rest. Grp., Inc.*,
  854 F.2d 1050 (7th Cir. 1988) ................................................................................................... 15

*Leider v. Ralfe*,
  387 F.Supp.2d 283 (S.D.N.Y. 2005) ........................................................................................... 18

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ....................................................................................... 16

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................................................... 11

*Miller v. Fuhu, Inc.*,
  *No.* 14-cv-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. 2015) ................................................. 21

*Monotype Imaging Inc. v. Deluxe Corp.*,
  883 F. Supp. 2d 317 (D. Mass. 2012) ........................................................................................ 16

*Mun. Capital Appreciation Partners, I, L.P. v. Page*,
  181 F. Supp. 2d 379 (S.D.N.Y. 2002) ......................................................................................... 15

*Murray v. Farmers Ins. Co. of Ariz.*,
  239 Ariz. 58 (Ariz. Ct. App. 2016) ............................................................................................. 16

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2010) ................................................................................................. 18

*Newton v. Am. Debt Servs. Inc.*,
    75 F. Supp. 3d 1048 (N.D. Cal. 2014) ............................................................................ 19

*Nitsch v. Dreamworks Animation SKG Inc.*,
    No. 14-CV-04062-LHK, 2016 WL 4424965 (N.D. Cal. July 6, 2016) ............................... 19

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .............................................................................. 16

*Pimental v. Wachovia Mortg. Corp.*,
    411 F. Supp. 2d 32 (D. Mass. 2006) ............................................................................... 18

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) .......................................................................................... 18

*Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*,
    243 F. Supp. 2d 145 (D. Del. 2003) ............................................................................... 14

*Sadowski v. Med'l Online, LLC*,
    No. 07 C 2973, 2008 WL 2224892 (N.D.Ill. May 27, 2008) ........................................... 20

*Siemer v. Assocs. First Capital Corp.*,
    No. CV97-281TUCJMRJCC, 2001 WL 35948712 (D. Ariz. 2001) ................................... 21

*Spann v. J.C. Penny Corp.*,
    307 F.R.D. 508 (C.D. Cal. 2015) .................................................................................... 19

*Stitt v. Citibank, N.A.*,
    No. 12-CV-03892-YGR, 2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ........................... 12

*Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*,
    No. 08-4791 SC, 2010 WL 2867724 (N.D. Cal. July 20, 2010) ....................................... 15

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) .................................................................................... 18

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
    492 F. Supp. 2d 1314 (M.D. Fla. 2007) .......................................................................... 19

*Thomas v. Harford Mut. Ins. Co.*,
    No. CIV.A. 01C-01-046 HD, 2003 WL 220511 (Del. Super. Ct. Jan. 31, 2003) .............. 16

*United California Bank v. Prudential Ins. Co. of Am.*,
    681 P.2d 390 (Ariz. Ct. App. 1983) ............................................................................. 15

*United Logistics, Inc. v. Catellus Dev. Corp.*,
    319 F.3d 921 (7th Cir. 2003) ....................................................................................... 15

*United States ex. rel. Garbe v. Kmart Corp.*,
    824 F.3d 632 (7th Cir. 2016) ......................................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................... 12

*Westways World Travel, Inc. v. AMR Corp.*,
    No. 99-CV-386, 2005 WL 6523266 (C.D. Cal. Feb. 24, 2005) .................................. 13

*Whiting v. Freightliner, Sterling, W. Star of Ariz., Ltd.*,
    No. 1 CA-CV 08-0626, 2009 WL 2136759 (Ariz. Ct. App. July 16, 2009) ................. 16

*Winans by & through Moulton v. Emeritus Corp.*,
    No. 13-CV-03962-SC, 2014 WL 970177 (N.D. Cal. Mar. 5, 2014) ............................ 16

*Wit v. United Behavioral Health*,
    No. 14-CV-02346 JCS, 2016 WL 4990514 (N.D. Cal. Sept. 19, 2016) ....................... 13

**Statutes**

Arizona Consumer Fairness Act, Ariz. Rev. Stat. §§ 44-1521–44-1534 ......................... ix, 18

Cal. Civ. Code § 1559 ................................................................................................... 14

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* .................... ix, 18

California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq*. ..................... ix

Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. §§ 501.201–501.213 ............... ix

Illinois Consumer Fraud & Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. § 505/2 ............... ix, 18

Massachusetts Consumer Protection Act, Mass. Gen. Law c. 93A ................................... x, 18

New York's Deceptive Acts and Practices statute, N.Y. Gen. Bus. Laws, §§ 349 and 350 ............. x, 18

**Rules**

Federal Rule of Civil Procedure 23 ............................................................................. passim

**NOTICE OF AMENDED MOTION AND AMENDED MOTION**

**TO:    THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 18, 2017, at 2:00 p.m., in Courtroom 1, 4th Floor, of this Court, located at 1301 Clay Street, Oakland, California, Plaintiffs Tyler Clark, Zulema Avis, Robert Garber, Onnolee Samuelson, Robert Jenks, Debbie Barrett, and Carl Washington (the "named Plaintiffs," and collectively with the members of the classes, "Plaintiffs") will and hereby do move the Court for an order (i) certifying this action as a class action based on the description of the classes herein, (ii) appointing the named Plaintiffs as representatives of the class, and (iii) appointing the named Plaintiffs' attorneys of record as class counsel.

Plaintiffs seek to certify the following classes:

All CVS Pharmacy, Inc. ("CVS") customers in [California] [Arizona] [Florida] [Illinois] [Massachusetts] [New York][1] who, between November 2008 and July 31, 2015 (the "Class Period"), (1) purchased one or more generic prescription drugs from CVS that were offered through CVS's Health Savings Pass ("HSP") program at the time of the purchase; (2) were insured for the purchase(s) through a third-party payor plan administered by one of the following pharmacy benefit managers: Caremark/PCS, Express Scripts, Medco,[2] MedImpact, or Optum/Prescription Solutions (prior to January 29, 2015); and (3) paid CVS an out-of-pocket payment for the purchase greater than the HSP program price for the prescription.

For each of the state classes, Plaintiffs seek certification of a statutory unfair and deceptive acts and practices ("UDAP") claim (and for California, two such claims) arising under the laws of each of the respective states: (1) the California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq.* , and California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; (2) the Arizona Consumer Fairness Act, Ariz. Rev. Stat. §§ 44-1521–44-1534; (3) the Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. §§ 501.201–501.213; (4) the Illinois Consumer Fraud & Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. § 505/2; (5) the Massachusetts Consumer Protection Act, Mass. Gen.

---

[1] Each of the state classes has the same definition.

[2] PCS is a predecessor company of Caremark. Prescription Solutions is a predecessor company of Optum. Express Scripts acquired Medco in 2012.

Law c. 93A; and (6) New York's Deceptive Acts and Practices statute, N.Y. Gen. Bus. Laws, §§ 349 and 350.[3] This Motion is made pursuant to Federal Rule of Civil Procedure 23, on the grounds that:

(a) The classes, consisting of numerous insured patients who CVS unlawfully overcharged for purchases of generic prescription drugs, comprises millions of similarly situated individuals such that joinder of all members is impracticable;

(b) CVS's uniform overcharging scheme and resulting identical type of damages to Plaintiffs presents core questions of law and fact common to the classes;

(c) The named Plaintiffs' claims are typical of the claims of the classes;

(d) The named Plaintiffs and their attorneys – already appointed as interim class counsel – have fairly and adequately protected the interests of the classes and will continue to do so, as the Court found already in its March 21, 2017 Order [Dkt. No. 249];

(e) The questions of law and fact that are common to the class – notably CVS's uniform overcharging scheme and uniform manner of resulting damages to Plaintiffs – overwhelmingly predominate over any individualized issues that might exist; and

(f) A class action is superior to any other method of adjudicating Plaintiffs' claims against CVS.

Plaintiffs' Amended Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the supporting declarations and exhibits of evidence, Plaintiffs' Trial Plan, any reply memorandum Plaintiffs file, the orders, pleadings, and files in this action, and such other matters as may be presented at or before the hearing.

Dated:  June 6, 2017                                    Respectfully submitted,

By: */s/ Robert B. Gilmore*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE BEATO &
  MISSNER LLP

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP

By: */s/ Bonny E. Sweeney*
Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP

---

[3] *See* 3d Am. Compl. ("TAC") [Dkt. No. 101] ¶¶ 129, 132, 133, 140, 140-45 (CA); 148, 150-51 (AZ); 156-57, 159-60 (MA); 164, 166-67 (NY); 182-85 (FL); 189-91, 193-97 (IL).

**STATEMENT OF ISSUES TO BE DECIDED**

I.   Should the Court certify the six state classes Plaintiffs assert, given:

(a) CVS's uniform unlawful pricing scheme, and its resulting harm to Plaintiffs, presents multiple common questions of law and fact;

(b) millions of CVS patients are similarly situated to the named Plaintiffs;

(c) the named Plaintiffs' claims are typical of the classes;

(d) the named Plaintiffs and their counsel have represented, and will continue to represent, those classes ably, as the Court already found in its March 21, 2017 Order [Dkt. No. 249];

(e) the common questions of law and fact overwhelmingly predominate over individualized issues, given the uniform nature of CVS's conduct, the uniform manner in which Plaintiffs were harmed, the uniform method for calculating Plaintiffs' damages, and the substantial similarities in the state laws on which Plaintiffs sue; and

(f) class treatment is superior to any other means of adjudicating this action, given the numerous essentially uniform claims of class members, and the class-wide factual and legal issues that can best be adjudicated in a single proceeding?

II.  Should the Court appoint named Plaintiffs Tyler Clark, Zulema Avis, Robert Garber, Onnolee Samuelson, Robert Jenks, Debbie Barrett, and Carl Washington as representatives of the classes?

III. Should the Court appoint named Plaintiffs' attorneys of record as class counsel?

**INTRODUCTION**

The Court should certify Plaintiffs' proposed narrower, simplified state consumer-protection classes as a necessary step to remedy CVS's uniform overcharging scheme.  Plaintiffs' amended motion addresses the Court's specific concerns raised in its March 21, 2017 Order [Dkt. No. 249] ("Order").

***First***, **Plaintiffs have narrowed the amended class definition, limiting the class to CVS customers whose prescription insurance was administered by one of five pharmacy benefit managers ("PBMs")** ███████████████████████████████████████████████████

███████████████████████████████  The Court will only need to review the definition of the usual and customary ("U&C") price in the five master agreements between CVS and the five PBMs addressed in the amended class definition: Caremark/PCS, Express Scripts, Medco, MedImpact, and Optum / Prescription Solutions (the "Class PBMs").  As the contract language itself makes clear, and as pharmacy industry experts Susan Hayes, Dale Chamberlain, and Robert Navarro explain, ████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████     ████████████████████████████████████████████████████,

telling the Court that "[d]espite different formulations of the definition, ***the definitions share a common element, which is that the U&C price is the price paid by the*** '***cash customer***'" and that a "'***cash' customer typically means a customer who purchases a drug without using insurance***."[4]  CVS's conduct also conforms to this common U&C definition: CVS submits the very same U&C price for any given drug to every PBM and asserts that doing so complies with all of its contracts.

***Second,*** **CVS misled Plaintiffs by misrepresenting the accuracy of the copayment amount demanded and charged at the point of sale and omitting that the prices CVS charged them for generic prescription drugs were higher than they would have been without insurance.** ██████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████ – CVS overcharged Plaintiffs in a uniform, class-wide manner.  As third-party

---

[4] Nov. 21, 2016 CVS Opp. to Pls.' Mot. for Class Cert. [Dkt. No. 184] at 10; Dec. 4, 2015 CVS Mot. to Dismiss [Dkt. No. 56] at 15.  Emphasis is added throughout unless otherwise noted.

beneficiaries of the CVS-Class PBM contracts, Plaintiffs have the right to insist that CVS adhere to the plain language in the integrated contracts' U&C definitions, which unambiguously include the HSP prices available to the cash-paying general public.  By failing to adhere to the contractual language, CVS charged Plaintiffs copayments higher than what they would have been had CVS followed the U&C definitions in the five PBM contracts, while never disclosing to Plaintiffs that they were not receiving the benefit of their insurance or that cash customers were getting better prices than they were.  CVS's conduct violated the relevant states' consumer-protection statutes, harming Plaintiffs as a result.  Nor is CVS immunized from liability for overcharging Plaintiffs merely because the Class PBMs may have acquiesced to CVS's disregard for the plain language of their contracts' U&C definitions.

*Third*, **the amended class definition addresses the typicality issues the Court raised**.

- **No downward proration:**  the revised class definition includes only transactions where the amount of the Plaintiffs' overcharge exceeds the "standard" HSP program's pricing.  This addresses the issue of whether CVS engaged in downward proration of "standard" HSP prices, by removing that issue from the case.  *See* Order at 13.

- **Class period ends at the filing of the suit:**  the revised class period ends at July 31, 2015, the date on which Plaintiffs filed suit.  This addresses the issue of certain Plaintiffs' post-suit continuing purchases, by removing that issue from the case.  *See* Order at 14.

*Fourth*, **the narrower amended class further confirms that class treatment is the superior method of adjudication.**  Though no longer a standalone requirement after *Briseno v. ConAgra Foods, Inc. (Briseno I)*, 844 F.3d 1121 (9th Cir. 2017), Plaintiffs have presented an administratively feasible way to identify Class members, as this Court previously concluded.  Further, Plaintiffs' amended motion contemplates a more streamlined class proceeding, involving analysis and application of only five contracts between CVS and the Class PBMs, and just six single-state classes asserting only statutory UDAP claims.  Plaintiffs' Trial Plan and annexed proposed jury instructions demonstrate that Plaintiffs' amended class definition addresses the Court's concerns (*see* Order at 18), and the case can be tried in a manageable and effective manner on a class basis.  Finally, this is precisely the sort of case where "the likely recovery is too small to incentivize individual lawsuits, and the realistic alternative to class

litigation would be no adjudication at all." *Briseno v. ConAgra Foods, Inc. (Briseno II)*, -- F. App'x --, 2017 WL 53421 (9th Cir. Jan. 3, 2017).

CVS used its HSP discount club as a pretext to set up "two sets of books," one to compete with the big-box stores for uninsured customers and the other to inflate its reported U&C prices and thereby overcharge its insured customers. The Seventh Circuit characterized the same pretextual conduct by K-Mart as a "flimsy ... device" to avoid its contractual obligations. *United States ex rel. Garbe v. Kmart Corp.* (*Garbe*), 824 F.3d 632, 645 (7th Cir. 2016), *cert. denied sub nom. Kmart Corp. v. U.S. ex rel. Garbe*, 137 S. Ct. 627 (2017). Not certifying this class would deny Plaintiffs relief from CVS's unfair and deceptive conduct, and allow CVS to retain over ███ million in wrongful overcharges.

For all of these reasons, as further explained below and in the attached exhibits, the Court should grant Plaintiffs' amended motion for class certification.

## STATEMENT OF RELEVANT FACTS

The proposed Class Representatives are consumers from six states who bought at least one HSP-listed generic drug from CVS on or before July 31, 2015, and who paid to CVS an out-of-pocket co-payment for their prescription that exceeded the HSP price for that drug at the time of purchase.[5] Each of the proposed Class Representatives had a third-party prescription drug plan administered by one or more of the five Class PBMs, which Plaintiffs used for their purchases:[6]

| State Class | Plaintiffs | PBM | CVS-Class PBM Contract |
|---|---|---|---|
| California | Tyler Clark | Caremark | Ex. 5, CVSC-0356399 |
| Arizona | Zulema Avis | Caremark | Ex. 5, CVSC-0356399 |
| Florida | Debbie Barrett | Optum/Prescription Solutions | Ex. 6, CVSC-0342343 |
| | Robert Jenks | Caremark | Ex. 5, CVSC-0356399 |
| Illinois | Carl Washington | Caremark | Ex. 5, CVSC-0356399 |
| | Robert Jenks | Caremark | Ex. 5, CVSC-0356399 |
| Massachusetts | Robert Garber | Express Scripts/Medco | Ex. 7, CVSC-0325306 |
| | | MedImpact | Ex. 8, CVSC-0333819 |
| New York | Onnolee Samuelson | MedImpact | Ex. 8, CVSC-0333819 |

---

[5] *See* Ex. 1, Amended and Supplemented Declaration of Prof. Joel W. Hay ("Hay A&S Decl.") ¶¶ 8-10, 15-17, 18-19 & Ex. E. Exhibit references are to those attached to the Declaration of Robert B. Gilmore accompanying this motion.

[6] *See id.*; Ex. 2, Oct. 27, 2016 Geyerman Ltr. to Gilmore re Contracts Applicable to Plaintiffs; Ex. 3, Gibbons 30(b)(6) 233:7-234:19; Ex. 4, Mar. 6, 2017 Excerpt from CVS Demonstrative; CVS Opp. Ex. 74 [Dkt. No. 182-76]

---

Plaintiffs will use common evidence (including the relevant CVS-Class PBM contracts), to prove that CVS's common course of conduct – charging and collecting copayments from Plaintiffs in excess of CVS's HSP price – amounts to an unfair and deceptive business practice under the consumer laws of each Class Representative's state.  The class-wide harm that CVS's conduct caused to Plaintiffs is also subject to common proof and formulaic calculation.  In addition to CVS's own witnesses' testimony and documents, Plaintiffs will rely on the testimony and evidence of Susan Hayes, a pharmacy benefits practice specialist; Dale Chamberlain, the former president of the National Council of Prescription Drug Programs ("NCPDP") and an experienced pharmacy industry executive and consultant;  Dr. Robert P. Navarro, a professor of pharmacy at the University of Florida; and Dr. Joel Hay, a professor of pharmaceutical economics at the University of Southern California.

### A.     CVS And The Class PBMs Adjudicate Plaintiffs' Prescription Insurance Claims Through The Industry-Standard NCPDP Format.

The Class PBMs contract with participating pharmacies, including CVS, to fill prescriptions and provide prescription drug benefits to Plaintiffs at contracted-for price reimbursements.[7]  The CVS-Class PBM contracts here[8] all serve a common purpose – adjudicating Plaintiffs and Class members' prescription drug purchases at CVS – and they fulfill this purpose in a common way.[9]  ██████████  ████████████████████████████████████████████████  ███████████████████████████████████████  When an insured patient fills a prescription at CVS, the CVS pharmacist generates a claim by electronically transmitting patient, prescription, and insurance information, *as well as CVS's purported U&C price for that particular drug*, to the Class PBM.[10]  Using that information, the Class PBM then immediately transmits back to

---

[7] Ex. 9, Amended and Supplemented Declaration of Professor Robert Navarro ("Navarro A&S Decl.") ¶¶ 17-18; Aug. 12, 2016 CVS Answer to 3d Am. Compl. [Dkt. No. 144] ¶¶ 10, 44, 67; Ex. 10, Greenwood 100:16-102:12; Ex. 11, Colbert 47:12-48:11; Ex. 12, Veale 142:6-12; Ex. 13, Corum 14:8-15; Ex. 14, Barre 17:21-19:2.  *See also infra* at 6 (Chart: CVS-Class PBM Contracts – Key U&C Terms).
[8] The CVS-Class PBM contracts, along with the relevant Class PBM provider manuals, are attached as Exhibits 5-8, 15, 18, and 47-50.
[9] Ex. 9, Navarro A&S Decl. ¶¶ 19-31, 36-48; Ex. 16, Expert Declaration of Susan Hayes ("Hayes Decl.") ¶¶ 13-34; Ex. 17, Expert Declaration of Dale Chamberlain ("Chamberlain Decl.") ¶¶ 31-32.
[10] Answer ¶¶ 12, 48-49.

---

CVS the amounts that CVS will receive (*i.e.*, be "reimbursed") from the PBM and from the patient.[11] This nearly instantaneous, automated process is known in the pharmacy industry as "claims adjudication."[12]   Since at least November 2008, CVS's electronic claims adjudication process has utilized standardized data fields developed by the NCPDP.[13]  CVS follows this format for all transactions with the Class PBMs.[14]  The system includes an adjudication screen that displays for the CVS pharmacist the copayment generated by these inputs.[15]  CVS then charges and collects this amount directly from the customer for the dispensed prescription.[16]

**B.**   ███████████████████████████████████████████
████████████████████████████████████████████.

The U&C price is a standard, industry-wide term.  One of the NCPDP's standard data fields used in the claim adjudication process is "Usual and Customary Charge," which the NCPDP's data dictionary defines as: "Amount charged cash customers for the prescription exclusive of sales tax and other amounts claimed."[17]  As CVS has conceded, "[t]he U&C price is an industry term meaning the cash price paid by the general public" and a "***'cash' customer typically means a customer who purchases a drug without using insurance*.*"[18]  CVS's internal documents offer similar definitions.[19]

Consistent with the industry understanding, the ████████████████████████████
████████████████████████████████         ██████████████████████████████████
███████████████████████████████████████████████████████, as the chart below indicates, and as Plaintiffs' experts have all concluded.[20]  ████████████████████████████
█████████████████████████████

---

[11] *Id.* ¶ 49.
[12] *Id.*
[13] Answer ¶¶ 49-50.
[14] Ex. 19, Dudley 30(b)(6) 68:8-23; Answer ¶ 50; Ex. 20, Tierney 226:18-25.
[15] Ex. 9, Navarro A&S Decl. ¶¶ 19, 28; Answer ¶¶ 45, 49, 54.
[16] Ex. 9, Navarro A&S Decl. ¶ 17; Answer ¶¶ 11, 49.
[17] Answer ¶ 53.
[18] Dec. 4, 2015 CVS Pharmacy Mot. to Dismiss [Dkt. No. 56] at 15.
[19] Ex. 21, Health Savings Pass Reconciliation Process [CVSC-0313152, at 152] ███████████████████████
████████████████████████."); Ex. 22, Third Party Finance Glossary of Terms [CVSC-0068438, at 458] ("████████████████████████
████████████████").
[20] Ex. 9, Navarro A&S Decl. ¶ 40; Ex. 16, Hayes Decl. ¶¶ 22-31; Ex. 17, Chamberlain Decl. ¶¶ 31-32.

---

██████████████████████████████████████████████████████████████████████████

████████ .[21]

**Chart: CVS-Class PBM Contracts – Key U&C Terms**

| PBM | U&C Definition | "Lower of U&C" Pricing |
|-----|----------------|------------------------|
| Caremark / PCS | ████████████████████ ████████████████████ ███████████████ ████████████████ ████████ | ████████ ████ |
| Express Scripts | ████████████████████ ████████████████ ████████████████ ███████████████ | ████████ |
| Medco | ████████████████████ ████████████████████ ███████████████ | ████████ |
| MedImpact | ████ ████████████████████ ████████████████ ████████████████ ████████████████ | ████████ |
| Optum / Prescription Solutions | ████████████████████ ████████████████ ████████████████ ████████████████ ██████████ | ████████ |

CVS's conduct demonstrates that these U&C definitions are functionally identical.  CVS submits the same U&C price for a given drug to each of the Class PBMs (along with every other PBM and third party with which CVS transacts business), and asserts that doing so complies with all such contracts.[22]

---

[21] CVS Opp. Ex. 74 [Dkt. No. 182-76] (Contract Chart); CVS Opp. Ex. 12 [Dkt. No. 182-14] (Declaration of Amber Compton – Express Scripts); CVS Opp. Ex. 14 [Dkt. No. 182-16] (Declaration of John Lavin – Caremark); CVS Opp. Ex. 17 [Dkt. No. 182-19] (Declaration of William Strein – Medco); CVS Opp. Ex. 16 [Dkt. No. 182-18] (Declaration of Franceen Spadaccino – Medco); CVS Opp. Ex. 15 [Dkt. No. 182-17] (Declaration of Michael Reichardt – Optum/Prescription Solutions).
[22] Ex. 3, Gibbons 63:4-64:2; *see also* Ex. 23, Melkonian 76:19-24, Ex. 19, Dudley 30(b)(6) 81:17-83:23; Ex. 24, Zevzavadjian 55:9-13, 131:6-24; Ex. 11, Colbert 248:18-249:6.

---



### C.   CVS Implements Its Chain-Wide HSP "Cash Discount" Program.

In 2008, CVS decided it needed to lower prices for popular generic prescription drugs charged to its cash-paying customers, as a strategy to avoid losing market share to large retailers, such as Wal-Mart.[27] At the same time, CVS wanted to avoid reporting these lower cash prices as its U&C prices, thereby maintaining higher reimbursements from PBMs and its insured customers.[28]  To accomplish these goals, CVS launched the Health Savings Pass ("HSP") program in November 2008.[29]

---

[23] *See supra* at 6 (Chart: CVS-Class PBM Contracts – Key U&C Terms); Ex. 9, Navarro A&S Decl. ¶¶ 41-45; Ex. 25, Gibbons (TX) 60:20-61:16; Ex. 26, Colbert (TX) 184:8-185:9; Ex. 27, Ferschke (TX) 26:10-25; Ex. 10, Greenwood  70:10-17, 76:22-78:3; Ex. 28, Morrison 116:1-14.

[24] Ex. 3, Gibbons 61:13-16, 247:1-248:24, 259:22-260:20.

[25] Ex. 24, Zevzavadjian, 59:12-20, 60:17-24; Ex. 11, Colbert 41:5-14; Ex. 10, Greenwood 48:18-49:1; Ex. 29 Lavin (Caremark) 63:23-64:10, 74:10-22; Ex. 30, Compton (Express Scripts) 33:18-34:4; Ex. 31, Reichardt (Optum Rx) 269:1-21.  *See also* Ex. 32, May 10, 2017 CVS 1st Supp. Resps. To Pls.' Reqs for Admission No. 23.

[26] Ex. 25, Gibbons (TX) 61:23-62:8; *see also* Ex. 10, Greenwood 43:15-44:10, 48:18-49:1.

[27] Ex. 25, Gibbons (TX) 140:7-21.

[28] Ex. 33, June 2010 Landscape Strategy Presentation, at CVSC-0341635; Ex. 25, Gibbons (TX) 246:12-247:13; Ex. 27, Ferschke (TX) 120:18-121:17; Ex. 34, ScriptSave Presentation, at CVSC-0319526-27 (HSP administrator's presentation explaining how it will administer HSP to offer cash discounts while protecting third-party reimbursement).

[29] Answer ¶ 60.

---

The HSP program was open to all customers at every CVS store.  The program included over 400 generic prescription drugs, including some of the most commonly prescribed generic drugs for cardiovascular, allergy, and diabetes conditions.[30] Under the HSP program, CVS sold standard, 90-day supplies of these generics at set "discount prices"—$9.99 initially (November 2008-2010) and later $11.99 (starting in 2011)—to cash-paying customers who paid a nominal annual membership fee.[31] CVS ended the HSP program in February 2016,[32] after Plaintiffs filed suit, and during pending investigations by regulators such as the Texas Attorney General.[33]

> **D.     CVS Deprived Plaintiffs Of Their Insurance Benefits By Not Reporting Its HSP Cash Price As Its U&C Price, As Required By The CVS-Class PBM Contracts; Any Extra-Contractual "Understanding" Of The Class PBMs Is Irrelevant And Would Not Immunize CVS From Liability.**

CVS did not submit its discounted HSP cash price as its U&C price for any generic drugs on the HSP list, ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████. CVS's HSP program had all of the hallmarks of a discounted cash price under the CVS-Class PBM contracts.  Internally, CVS consistently described the HSP program as a "cash program," "cash card," or "cash script."[34] In its marketing materials, CVS described the program as offering "discounts."[35]  CVS's transaction data also categorizes its HSP program as a "cash discount" program price.[36]  And the HSP program was at all relevant times open to the general public.  CVS documents describing the policies and procedures for the HSP program

---

[30] *Id.* ¶ 62; Ex. 35, HSP program formularies.

[31] Answer ¶ 62.

[32] Ex. 19, Dudley 30(b)(6) 194:17-20.

[33] Ex. 36, Texas Compl. ¶¶ 9-10, 17-18, 25-28, 33-39, 43-57, 60-65.

[34] *See, e.g.,* Ex. 37, CVS list ██████████████████████ p██████ at 6; Ex. 38, Apr. 9, 2008 Emails re "██████████████████████████ Ex. 39, May 14, 2008 T. Morrison-B. Harlam Email Exchange ████████████; Ex. 40, Aug. 3, 2008 D. Ghertner Email ██████████████████████ Ex. 41, Sept. 12, 2008 M. Dowling email to E. Wingate (HSP program *will essentially function as a cash script*").

[35] Ex. 42, CVSC-0000091.

[36] Ex. 9, Navarro Decl. ¶ 53.

---

admit "there are no restrictions to program enrollment"[37] and "anybody who came into [a CVS] store had the ability to sign up for Health Savings Pass."[38]

These program characteristics, according to Plaintiffs' experts (professionals with decades of experience in the pharmacy benefits industry), reveal the HSP program for what it is:  an "applicable discount" that CVS was required to submit as its U&C prices, under all the CVS-Class PBM contracts at issue.[39]  Other retailers have also faced liability for failing to report discount programs offered to the general public as part of their "U&C" prices (in a similar attempt to attract business from non-insured customers while unlawfully charging a premium to insured customers).  The Southern District of Illinois and the Seventh Circuit, interpreting contracts that another pharmacy retailer, Kmart, had with these same PBMs involving generic prescription claim reimbursements allegedly due to Medicare and Medicaid, both held that Kmart's cash discount membership program offered to the general public by Kmart's in-house pharmacy "represented the 'usual and customary' charges for the drugs."  *Garbe*, 824 F.3d at 643.  The Kmart discount membership program is indistinguishable from CVS's HSP program. And Plaintiffs provide expert declarations from Susan Hayes and Dale Chamberlain, who also served as experts in the *Garbe* case.  As Ms. Hayes and Mr. Chamberlain state in their declarations in this case, the definitions of U&C at issue in the contracts in *Garbe* are functionally identical to those in the CVS-Class PBMs contracts here.[40]

CVS claims it had an oral understanding with its PBMs that allowed it to treat its discounted HSP cash prices as an unwritten exception to CVS's contractual requirement that all applicable discounts be included in its reported U&C prices.  CVS's evidence on this score is underwhelming. The claimed "understanding" is not documented in contemporaneous business records and, in any event, an oral understanding cannot modify the integrated CVS-PBM contracts.  Notably, the Class PBMs had a financial incentive to look the other way as CVS breached the contracts and artificially inflated its U&C price, as Susan Hayes explains in some depth.[41]

---

[37] Ex. 43, CVS/Pharmacy Health Savings Pass Policies & Procedures [CVSC-0222895, at -98].
[38] Ex. 44, Morrison (TX) 227:2-22.
[39] *See supra* at 9; Ex. 9, Navarro A&S Decl. ¶¶ 49-71; Ex. 16, Hayes Decl. ¶¶ 35-42; Ex. 17, Chamberlain Decl. ¶¶ 33-40; *see also* CVS Opp. Ex. 74 [Dkt. No. 182-76] (Contract Chart).
[40] Ex. 16, Hayes Decl. ¶ 31; Ex. 17, Chamberlain Decl. ¶ 39.
[41] Ex. 16, Hayes Decl. ¶¶ 43-52.

But more importantly, CVS's "evidence" that the Class PBMs supposedly acted with CVS to disregard their contracts' U&C definitions, and allow CVS not to submit its HSP program prices as CVS's U&C prices, has no bearing on the claims Plaintiffs seek to certify.  Plaintiffs' UDAP claims arise from (1) CVS's violation of its Class PBM contracts by excluding HSP prices from its U&C prices; (2) CVS's misrepresentation at the point of purchase that the copayment demanded and charged was accurate; and (3) CVS's omission at the point of purchase that Plaintiffs were not receiving any benefit from their insurance.  Any informal, undocumented "understanding" between CVS and the Class PBMs has no effect on CVS's liability.  CVS cannot evade its independent obligations to its customers as third-party beneficiaries of fully integrated contracts with substantially identical U&C provisions.

In fact, CVS knew it was evading the U&C reporting terms of its CVS-Class PBM contracts, and it understood that this evasion would cost its customers hundreds of millions of dollars in overcharges for prescribed generics.[42]  CVS's executives even commissioned analyses confirming that CVS's conduct of reporting inflated U & C prices would impact customers across the class in the same way, and that the damages flowing from that conduct could be calculated on a formulaic basis.  In June 2010, CVS undertook an analysis across all of its business, ████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████[43]



---

[42]*See, e.g.*, Ex. 33, June 2010 Landscape Strategy Presentation, at CVSC-0341635; Ex. 25, Gibbons (TX) 246:12-247:13; Ex. 27, Ferschke (TX) 120:18-121:17.
[43] Ex. 33, June 2010 Landscape Strategy Presentation, at CVSC-0341635.

### E.     CVS's Conduct Harmed Plaintiffs In A Uniform, Class-Wide Manner.

CVS's uniform practice of not submitting its discounted HSP cash price as its U&C price for generics on the HSP list has had the common effect of depriving Plaintiffs of the benefit of their insurance.  CVS admits that it knowingly did not inform any of the Plaintiffs that it was excluding its HSP prices from the U&C prices it calculated and submitted to PBMs, or that CVS and any PBM agreed CVS could do so.[44]  Nor does the plain language of the contracts permit that interpretation.  As a direct result of CVS's deceptive and wrongful conduct, CVS collected from each Plaintiff copayments that exceeded what CVS should have reported as its true U&C price: its discounted HSP cash price.[45]

In short, CVS overcharged Plaintiffs for their generic drug purchases in a common, deceptive and unfair way. Plaintiffs' expert, Dr. Joel Hay, shows that Plaintiffs' overcharges can be calculated in a uniform way using a simple arithmetic formula: by measuring the difference between (1) what CVS should have reported as its U&C price under the CVS-PBM contracts as its U&C price (i.e., CVS's actual discounted HSP cash price), and (2) the actual copayment that CVS collected from each Plaintiff. CVS's transaction data show there are ███████ class members who meet these criteria.  The damages across all classes are calculated at more than ███████.[46]

## LEGAL STANDARDS

The legal standards governing Plaintiffs' renewed class certification motion are set forth in the Court's Order.  Plaintiffs must show they satisfy each requirement of Federal Rule of Civil Procedure 23(a): "numerosity, commonality, typicality and adequacy of representation."  Order at 4 (citing Fed. R. Civ. P. 23(a) and *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 588 (9th Cir. 2012)). "Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show 'though evidentiary proof' that the class is appropriate for certification under one of the provisions of in Rule 23(b)." *Id*. at 4-5 (citing *Comcast v. Behrend*, 133 S.Ct. 1426, 1432 (2013)).  As Plaintiffs seek certification under Rule 23(b)(3), they must show "that questions of fact common to Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id*. at 5 (citing Fed. R. Civ. P. 23(b)(3)).

---

[44] Ex. 32, May 10, 2017 CVS 1st Supp. Resps. To Pls.' Reqs for Admission Nos. 58-59, 116.
[45] Ex. 1, Hay A&S Decl. ¶¶ 10, 20 & Tables 1-2; Ex. 9, Navarro A&S Decl. ¶¶ 72-77.
[46] Ex. 1, Hay A&S Decl. ¶¶ 11, 21-24 & Tables 3-4.

1

**ARGUMENT**

2

**I.   COMMON QUESTIONS WITH COMMON ANSWERS PREDOMINATE.**

3

In light of the Court's Order and comments at the initial class certification hearing, Plaintiffs

4

have refined their liability theory, simplified their claims, and limited the proposed classes to just six

5

states, each involving a statutory consumer protection claim (and two claims for California).  Common

6

questions of fact and law – with common answers that will drive the resolution of this litigation –

7

pervade this case, satisfying the requirements of commonality and predominance. *See Amgen Inc. v.*

8

*Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

9

338, 350, 359 (2011); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Hanlon v. Chrysler*

10

*Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

11

**A.   Plaintiffs Have Addressed The Court's Predominance Concerns.**

12

In its prior Order, the Court indicated that its class certification analysis should be guided by the

13

specifics of the relevant PBM contracts at issue.  This was a critical component for certification, the

14

Court reasoned, given Plaintiffs' assertions that CVS's contracts with PBMs and other third parties

15

contained common "lower of" pricing methods and functionally similar U&C definitions and reporting

16

requirements.  *See* Order at 10-12 and n.12.  As discussed in greater depth below, Plaintiffs' revisions

17

to the proposed class ensure that Rule 23's commonality and predominance requirements are met.

18

**1.   Plaintiffs have narrowed the proposed classes to only those CVS customers whose prescription insurance was administered by the Class PBMs.**

19

20

Plaintiffs have significantly reduced the number of contracts between CVS and PBMs that fall

21

within the class.  The five Class PBMs have contracts (or in the case of Medco, provider manuals) with

22

virtually identical U&C provisions: each expressly addresses cash customers and transactions, and each

23

expressly mandates inclusion of discounts in the U&C prices.  Gone are the examples of variation the

24

Court identified in its prior Order (as well as the possibility of any further examples).  Order at 10.

25

This uniformity among the five Class PBMs' relevant U&C definitions bears no resemblance to

26

the "distinct [contract] terms" and "var[iety]" that prevented class certification in *Stitt v. Citibank, N.A.*,

27

No. 12-CV-03892-YGR, 2015 WL 9177662, at *4–5 (N.D. Cal. Dec. 17, 2015) (whether charge was

28

unlawful turned on plaintiffs' individual circumstances); *In re WellPoint, Inc. Out-of-Network "UCR"*

*Rates Litig.*, No. 09-MDL- 2074-PSG, 2014 WL 6888549, at *4 (C.D. Cal. Sept. 3, 2014) (prices

reported and charged depended on extra-contractual market factors); and *Westways World Travel, Inc. v. AMR Corp.*, No. 99-CV-386, 2005 WL 6523266, at *9 (C.D. Cal. Feb. 24, 2005).  After Plaintiffs' refinements to their proposed classes, this class-certification motion now mirrors *Wit v. United Behavioral Health*, No. 14-CV-02346 JCS, 2016 WL 4990514, at *17 (N.D. Cal. Sept. 19, 2016), which held that certification of a class of insured patients (under various health plans) was proper, and that commonality and predominance were satisfied, because "Plaintiffs ... have demonstrated, as a factual matter, that the insurance plans for the putative Class members are *substantially the same in a key respect* ...." *Id.*  So too here.  Given the parity among the five PBM contracts, whether CVS should have included the HSP prices in its U&C reporting will not vary among Class members.

### 2. Plaintiffs have third-party beneficiary status to assert UDAP violations against CVS, regardless of CVS and the Class PBMs' apparent joint disregard of their contracts' U&C definitions.

Plaintiffs will show with class-wide evidence that CVS violated the consumer-protection statutes of six states by (1) misrepresenting ***to insured patients***, at the point of purchase, that they were receiving accurate co-payment information (which necessarily reflected CVS's decision not to report HSP prices as U&C) and (2) omitting to those same insured patients that they were not receiving the benefits of their insurance drug benefits. ***Whether CVS made related misrepresentations to the PBMs or the TPPs is not determinative of liability or certification of Plaintiffs' claims, which are limited to CVS's direct misrepresentations and omissions at the point of purchase***.[47]

At trial, Plaintiffs will use CVS's contracts with the five Class PBMs to prove that CVS violated, in each instance, the substantially identical U&C provisions and thereby supplied inaccurate and inflated co-payment information to Plaintiffs and Class members at the point of sale, in violation of state consumer-protection laws. Because Plaintiffs are the third-party beneficiaries of those contracts, there is no role for testimony about CVS and the Class PBMs' supposed "understanding" to disregard the plain language of their contracts.  That testimony – articulated in litigation-driven declarations submitted years after the relevant events by a handful of current and former employees who overwhelmingly lacked specific personal knowledge or even corporate knowledge –  cannot be relevant or determinative of

---

[47] As the Court observed in its previous order, it is "the PBM or TPP [that] transmit[s] to the pharmacy what copay it should charge the customer," but that transmission is based on CVS's inaccurate reporting of "the U&C price to the PBM or the TPP." Order at 9 n.9.

*CVS's liability to the class* for its unfair and deceptive practices under these laws.  All of the relevant state UDAP laws uniformly embrace Plaintiffs' claims, and prevent CVS from attempting to revise or undermine the plain language of its PBM contracts with declarations from hand-picked witnesses years after the fact. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.[48]  These common features enable a common liability analysis.

   As an initial matter, under California choice-of-law rules, the CVS-Class PBM contracts' choice-of-law provisions control for purposes of determining whether Plaintiffs are third-party beneficiaries.[49] All five states identified by those choice-of-law provisions provisions – California (Optum/Prescription Solutions); Arizona (Caremark/PCS); New York (Medco); Illinois (MedImpact); and Delaware (Express Scripts) – agree that third-party beneficiaries to a contract may sue for breach.[50]  Those same

---

[48] *See supra* Chart: CVS-Class PBM Contracts – Key Terms; CVS Opp. Ex. 74 [Dkt. No. 182-76] (Contract Chart); *see also* Exs. 5-8, 15, 18, and 47-50 (CVS-Class PBM contracts and provider manuals).
[49] *See Gen. Signal Corp. v. MCI Telecommns. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) ("If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention . . . ." (internal citations omitted)); *Boracchia v. Biomet, Inc.*, No. C-07-0650, 2008 WL 512721, at *3 (N.D. Cal. Feb. 25, 2008) ("Under California law, a contract's choice of law provision will identify what state's substantive law . . . will be applied.").
[50] *See* Cal. Civ. Code § 1559; *Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 WL 2403593, at *5 (N.D. Cal. May 31, 2013) (analyzing California law and holding that "[a] third party may enforce a contract if it can be shown that he or she is a member of the class for whose express benefit the contract was made." (internal citations and quotations omitted)); *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 938 N.E.2d 577, 581-82 (Ill. Ct. App. 2010) ("It is well settled in Illinois law that if a contract is entered into for the direct benefit of a third party who is not a party to the contract, such third party is entitled to sue for breach of that contract."); *Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 153 (D. Del. 2003) (holding that, under Delaware's third-party beneficiary doctrine, "an individual who is not a party to a contract has standing to enforce the contract under certain circumstances" (internal citations and quotations omitted)); *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 79 (N.Y. App. Div. 1980) ("A third party may sue as a beneficiary on a contract made for his benefit."); *Basurto v. Utah Const. & Min. Co.*, 15 Ariz. App. 35, 39 (1971) ("Arizona recognizes the right of third-party beneficiaries to sue on a contract …." (internal citations omitted)).

---

1   five state also agree that a general disclaimer against third-party beneficiaries[51] is inoperative where the

2   contracting parties demonstrate a clear intent to benefit a third party elsewhere in the same contract,[52]

3   as here. The unenforceability of general disclaimers is all the more true in the UDAP context, where

4   parties cannot contract around the broad statutory protections that state legislatures have created to

5   safeguard consumers.[53]

6   Moreover, all of the relevant jurisdictions agree on the importance of integration clauses in

7   contracts and forbid precisely the type of *post hoc* arguments CVS and its declarants now pursue about

8   the "meaning" of their U&C provisions: a fully integrated written agreement cannot be contradicted,

9   dishonored, or varied by collateral oral understandings or agreements absent stark ambiguity.[54] By their

10  express terms, the five CVS-Class PBM contracts contain the complete and exclusive expression of the

---

51  ██████████████████████████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████████████████.

52  *See, e.g.*, *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003) (holding that, under Illinois law, a third-party beneficiary may have a breach of contract claim despite an express disclaimer when a separate contractual provision expressly confers an intended benefit and the circumstances surrounding the contract's execution supported the intention); *Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 WL 2403593, at *4–8 (N.D. Cal. May 31, 2013) ("Under Ninth Circuit authority [and California law], a third party may enforce a contract as a third party beneficiary despite a general contractual disclaimer where there is evidence that the parties to the contract intended to benefit third parties."); *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActivecorp*, 82 A.D.3d 421, 422 (N.Y. App. Div. 2011) (holding that "plaintiffs enforceable rights [] were not extinguished by the 'boilerplate "no third-party beneficiaries" language' . . . . To construe the purchase agreement in the manner suggested by defendant would be to ignore the clear, specific provisions of the purchase agreement recognizing plaintiffs' rights under the agreement, which we decline to do."); *Faulkner, USA, Inc. v. Durrant Grp., Inc.*, No. CV-11-08086, 2013 WL 11834262, at *5 (D. Ariz. May 30, 2013) (a disclaimer of third-party beneficiaries can "be modified or overcome by . . . other terms" that express clear intent to benefit third parties); *United California Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 425 (Ariz. Ct. App. 1983) (citing 3 Corbin on Contracts § 547).

53  *See supra* n. 51.

54  *See, e.g.*, *LaSalle Nat. Bank v. Gen. Mills Rest. Grp., Inc.*, 854 F.2d 1050, 1052 (7th Cir. 1988) (holding that, under Illinois law, "[i]f a judge can make sense of a written contract without hearing testimony, his duty is to construe the contract without letting the parties introduce any evidence other than the contract itself") (Posner, J.). *See also First Marblehead Corp. v. House*, 473 F.3d 1, 7 (1st Cir. 2006) (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)); *Cheval Farm, LLC v. Chalon*, No. CV-11-00043-TUC-JGZ, 2013 WL 11826543, at *3 (D. Ariz. Sept. 13, 2013); *Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*, No. 08-4791 SC, 2010 WL 2867724, at *10 (N.D. Cal. July 20, 2010), *aff'd*, 460 F. App'x 709 (9th Cir. 2011); *Mun. Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 391–92 (S.D.N.Y. 2002).

---

party's agreement; supersede any oral understanding between CVS and a PBM; and can be modified only in writing. The choice-of-law states respect these self-imposed limitations.

Plaintiffs' UDAP claims, meanwhile, are governed by the laws of the six states in which the named Plaintiffs reside.[55]  And each of those states, in addition to the states identified in the CVS-Class PBM contracts' choice-of-law provisions, recognizes that breach of contract can give rise to a UDAP claim as well, provided the requirements of the UDAP law are met.[56]  California, Arizona, and Delaware have also specifically recognized the ability of third-party beneficiaries to pursue UDAP claims arising out of a breach.[57]  The remaining states have yet to visit that particular question but nevertheless reach the same conclusion under the existing third-party beneficiary law when paired with those states' recognition that parties to a contract may pursue UDAP claims.[58]

Finally, even assuming there was an extra-contractual "understanding" among CVS and the Class PBMs, it could not deter class certification in any event because of the professed similarity.  As

---

[55] *See Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1065 (N.D. Cal. 2014) ("'When a law contains geographical limitations on its application, . . . courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply.'" (quoting *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003)); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014) ("[T]he Court concludes that the choice-of-law provision in the Licensing Agreement does not overcome the presumption against extraterritorial application of California law absent an indication that such a presumption does not apply.").

[56] *See Khan v. OneWest Bank, F.S.B.*, No. 16 CV 8074, 2017 WL 1344535, at *7–8 (N.D. Ill. Apr. 12, 2017); *Bristol Vill., Inc. v. Lousiana-Pac. Corp.*, 170 F. Supp. 3d 488, 500 (W.D.N.Y. 2016); *Geisler v. FedEx Ground Package Sys., Inc.*, No. 3:12-CV-1189-J-34PDB, 2015 WL 164217, at *14 (M.D. Fla. Jan. 13, 2015) *appeal dismissed* (Apr. 22, 2015); *Winans by & through Moulton v. Emeritus Corp.*, No. 13-CV-03962-SC, 2014 WL 970177, at *8 (N.D. Cal. Mar. 5, 2014), *clarified on other grounds on denial of reconsideration*, No. 13-CV-03962-SC, 2014 WL 2586370 (N.D. Cal. June 9, 2014) (CLRA); *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012); *Whiting v. Freightliner, Sterling, W. Star of Ariz., Ltd.*, No. 1 CA-CV 08-0626, 2009 WL 2136759, at *4 (Ariz. Ct. App. July 16, 2009); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) (UCL); *Thomas v. Harford Mut. Ins. Co.*, No. CIV.A. 01C-01-046 HD, 2003 WL 220511, at *3 (Del. Super. Ct. Jan. 31, 2003).

[57] *See Murray v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58, 69-70 (Ariz. Ct. App. 2016), *review dismissed* (Dec. 16, 2016); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *31 (N.D. Cal. May 27, 2016); *Thomas v. Harford Mut. Ins. Co.*, No. CIV.A. 01C-01-046 HD, 2003 WL 220511, at *3 (Del. Super. Ct. Jan. 31, 2003). Other states to consider this issue have also held that third-party beneficiaries can bring consumer-protection claims arising out of a breach. *See, e.g.*, *Murray*, 239 Ariz. at 69 (collecting cases from Washington, the District of Columbia, and Texas).

[58] *See supra* nn. 50 & 52.

---

previously noted by the Court, there was the potential for heterogeneity among more than fifty PBMs, at least some of whom may have "underst[ood] that the HSP prices at issue in this litigation were not considered U&C prices." Order at 10. Now that only the five declarant PBMs remain, there is no such variety: all of them profess to have the very same understanding, at least insofar as the declarants can actually speak on behalf of the PBMs.  Plaintiffs would, or course, challenge that contention on the merits (were it any obstacle to liability), but for now that uniformity is no barrier to class certification. At most, this "evidence" presents yet another common issue on which Plaintiffs' claims will succeed or fail in concert.  *See Amgen*, 133 S. Ct. at 1191.

**B.      Plaintiffs Satisfy Rule 23's Commonality And Predominance Requirements.**

Common questions of fact and law thus abound in this litigation and predominate over individualized issues, if any.  Notably:

- CVS used a uniform unfair and deceptive scheme to overcharge Plaintiffs in a common manner;

- CVS's contracts with the five Class PBMs are nearly identical with respect to their U&C provisions and contain various other common features;

- Those five contracts' governing law all *agree* on fundamental principles of contract interpretation; and

- The six UDAP statutes are substantially similar as well, enabling a single set of liability jury instructions as set forth in the attached trial plan.[59]

**1.      The UDAP law does not vary among the six states; each prohibits unfair or deceptive practices in common terms.**

There is significant commonality and little variation in the six UDAP statutes that will guide the trier-of-fact in determining whether CVS is liable for consumer-protection violations, as the enclosed trial plan demonstrates.

---

[59] *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 550 (C.D. Cal. 2012) ("Plaintiffs have satisfied their burden of demonstrating that a consumer protection class with three separate state subclasses comprised of California, Florida and New York residents satisfies the predominance requirement. There are no material differences in the consumer protection laws of the three states .... Thus, with the parties' concurrence, *the court can proceed as if the substantive law that governs the claims of the subclasses is identical, and use a single set of liability jury instructions for the sub-classes at trial*.").

All six Class States prohibit "deceptive … acts or practices."[60]  A deceptive act or practice need not be fraudulent under these state laws: all that is required is that the act or practice be dishonest or misleading in some material respect. Deceptive acts or practices also are commonly defined based on an objective standard: any act reasonably likely to mislead a consumer under the circumstances is sufficient to incur liability.[61]

In addition, five of the six Class States—Arizona, California, Florida, Illinois, and Massachusetts – also prohibit "unfair ... acts or practices,"[62] and the analysis to be used by the trier of fact in assessing whether an act or practice should be considered "unfair" is substantially common as well. Generally speaking, an act or practice is "unfair" if it: (1) offends public policy (including the public policy that favors protection of consumers); (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers (or competitors or other businesses) which cannot be reasonably avoided

---

[60] Ariz. Rev. Stat. § 44-1522; Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code § 1770(a); ); Fla. Stat. § 501.202; Ill. Comp. Stat. Ch. 815 § 505/2; Mass. Gen. Laws Ch. 93a § 2(a); N.Y. Gen. Bus. Laws, §§ 349 and 350.

[61] *See, e.g.*, *Rikos v. Procter & Gamble Co*., 799 F.3d 497, 514 (6th Cir. 2015) (holding that, under the ICFA, "'where the representation being challenged was made to all putative class members, Illinois courts have concluded that causation is susceptible of classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material" (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 997 (C.D. Cal. 2015))); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("For purposes of class certification, the UCL … and CLRA are materially indistinguishable. Each statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation."); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) ("[T]hese two New York GBL statutes define a deceptive act or practice using an 'objective definition,' whereby deceptive acts or practices, including omissions, are 'limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Leider v. Ralfe*, 387 F.Supp.2d 283, 292 (S.D.N.Y. 2005))); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) ("[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." (internal quotation omitted)); *Pimental v. Wachovia Mortg. Corp.*, 411 F. Supp. 2d 32, 40 (D. Mass. 2006) ("A practice may be a violation of Massachusetts General Laws, Chapter 93A if [an act or practice] may reasonably be found to have caused a person to act differently than she otherwise might have." (internal quotation omitted); *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. App. 2004) ("An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information.").

[62] Ariz. Rev. Stat. § 44-1522; Cal. Bus. & Prof. Code §§ 17200; Cal. Civ. Code § 1770(a); Fla. Stat. § 501.204(1); Ill. Comp. Stat. Ch. 815 § 505/2; Mass. Gen. Laws Ch. 93a § 2(a).

---

and the injury is not outweighed by countervailing benefits to consumers.[63] These common considerations will yield a common answer for the Classes as a whole—one that goes to the heart of establishing CVS's liability under each Class State's consumer protection law.

### 2.     Plaintiffs will prove CVS's UDAP violations with class-wide evidence.

Equally critical, Plaintiffs will use common, class-wide evidence to prove every element of their UDAP claims.  Every element of Plaintiffs' statutory claims is "subject to generalized proof, and thus applicable to the class[es] as a whole," *Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2016 WL 4424965, at *3 (N.D. Cal. July 6, 2016), which confirms yet again that the proposed classes "will prevail or fail in unison," satisfying the predominance requirement, *Amgen*, 133 S. Ct. at 1191; *Spann*, 307 F.R.D. at 523 (citation omitted).

***First*, Plaintiffs will utilize common evidence—chiefly the five integrated Class PBM contracts; CVS's transactional data; CVS's admissions, and CVS's own witness testimony—to prove CVS's common, class-wide misrepresentations and omissions.**  This common evidence will show that (1) the Class PBM contracts uniformly required CVS to report its HSP prices as its U&C prices; (2) CVS never did so (which it concedes); and (3) CVS uniformly misrepresented to Plaintiffs, at the point of purchase, that they were receiving accurate co-payment information (which necessarily reflected CVS's decision not to report HSP prices as U&C) and omitted to Plaintiffs that they were not

---

[63] *See, e.g.*, *Clinical Tech, Inc. v. Covidean Sales, LLC*, No. CV 14-12169-PBS, 2016 WL 3360481, at *13 (D. Mass. June 16, 2016) ("Although there is no clear definition of what conduct constitutes an 'unfair or deceptive' act, courts require the objectionable conduct to attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." (internal citations and quotations omitted)); *Newton v. Am. Debt Servs. Inc.*, 75 F. Supp. 3d 1048, 1062, n.13 (N.D. Cal. 2014) ("A business practice is unfair for purposes of the UCL where the utility of the defendant's conduct is outweighed by the gravity of the harm to the alleged victim. Thus, an unfair practice is one that offends an established public policy or one which is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (internal citations and quotations omitted)); *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd*., 871 F. Supp. 2d 763, 769 (N.D. Ill. 2012) (To determine whether a defendant's conduct constitutes an unfair practice within the meaning of the ICFA, Illinois courts ask whether the following factors are present: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers."); *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007) ("An unfair practice is one that offends established public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.").

---

receiving the benefits of their insurance drug benefits.  Indeed, CVS executives have testified that CVS reports the very same U&C price for a given prescription drug to every PBM, and CVS admits it never reported its discounted HSP prices as its U&C prices.[64]  Because CVS's misrepresentations and omissions were precisely the same for all class members, arising from the same uniform plain-language definition of U&C across the five PBM contracts, the classes exhibit no variation.  *See Amgen*, 133 S. Ct. at 1191;  *Sadowski v. Med'l Online, LLC*, No. 07 C 2973, 2008 WL 2224892, *5 (N.D. Ill. May 27, 2008) (certifying class's Illinois Consumer Fraud claim and holding that predominance was met where "[c]ommon questions ... include how numbers were generated from [d]efendant's database").

**Second**, Plaintiffs will likewise draw on common class-wide evidence to prove materiality for the two states (New York and California) that require it as an element of a UDAP claim. As shown in the trial plan, Plaintiffs will use (1) CVS documents and testimony and Plaintiffs' expert testimony showing that the U&C affects the calculation of Class members' copays; (2) an analysis of CVS data showing that Plaintiffs and Class members overpaid because of CVS's reported U&C prices; and (3) documents and testimony showing that for every class-member transaction, CVS charged an inflated copayment amount—and failed to inform the class member that CVS was not charging the class member the price to which he or she was entitled under his or her insurance drug benefit plan (administered by one of the five PBMs).[65] CVS thus deprived Plaintiffs of the benefit of their prescription insurance.  Courts have recognized that common misrepresentations and omissions are material for UDAP purposes when, as here, they result in class members paying higher prices. *See, e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012).

**Third**, Plaintiffs will use common evidence to prove reliance (to the extent required under the Arizona and California UDAP statutes) and CVS's intent to induce reliance on its misrepresentations and omissions (to the extent required under the Arizona and Illinois UDAP statutes). Plaintiffs will draw on CVS's documents and witness testimony that show that CVS's methodology and reporting of U&C prices to PBMs and the methodology used to determine co-payments demanded of and charged to Plaintiffs were entirely opaque to customers – as was CVS's

---

[64] *See supra* Statement of Facts.
[65] Ex. 45, Pls.' Trial Plan; *see also supra* Statement of Facts.

decision to ignore U&C price definitions that require inclusion of "discounts" – definitions that were intended for the benefit of Plaintiffs.  Indeed, CVS's insistence that this information warrants secrecy and is "proprietary" makes it impossible for Class members to have known they were overcharged or otherwise understand the co-payment calculation. This common evidence, taken together, will establish Plaintiffs' reliance and the reasonableness of Class members' belief "that the invoiced amount [associated with their prescription drug purchases] was honestly owed." *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013).  Were that not enough, Arizona and California's UDAP requirement of reliance is modest. Arizona permits Class members to "demonstrate reliance by their purchase of [the affected good]. *This alone is sufficient to show reliance to the degree necessary under the ACFA*." *Siemer v. Assocs. First Capital Corp.*, No. CV97-281TUCJMRJCC, 2001 WL 35948712, at *4, 24-25 (D. Ariz. 2001).  And "a California class suing under the state's consumer protection statutes need not show individualized reliance if it can establish the materiality of [representation] to a reasonable consumer...." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015).

Nor can CVS seriously contest that it intended for insured patients to rely on the accuracy of copayment information CVS supplied at the point of purchase and ***with which CVS demanded payment***. That too will be the subject of common proof in any event.

The Court reserved the question in its previous order whether "the PBMs and plaintiffs' knowledge of the HSP program and its relation to U&C prices may have bearing on the presumption of reliance, to the extent such exists in the states at issue."  Order at 12 n.15. As explained above, however, the PBMs' supposed knowledge is no longer relevant to any aspect of the liability analysis. And Class members' awareness of the HSP program, to the extent it even exists, does not mean that any Class members knew of, or even could have known of, its relation to U&C prices, a process that lacks any transparency by design. What is more, governing California law makes clear that materiality – easily satisfied here – is enough to satisfy the reliance requirement. *Miller v. Fuhu, Inc., No.* 14-cv-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. 2015).

***Finally*, a common class-wide analysis can be used to dependably calculate and apportion damages, consistent with Plaintiffs' liability theory.** *See Comcast Corp.*, 133 S. Ct. at 1433.  Dr. Hay has formulated a workable and reliable methodology that uses CVS's own transactional data to measure

the difference between the HSP price and the actual copayment that CVS charged to each class member.[66]   In its last order, the Court identified and took no issue with Dr. Hay's opinion that "calculation of damages is common and uniform." Order at 4, 17 (affirming that Dr. Hay had set forth "a sufficiently feasible method for ascertaining the members of classes.").

## II.   PLAINTIFFS ARE TYPICAL OF, AND WILL CAPABLY REPRESENT, THE CLASSES.

**Plaintiffs satisfy the typicality requirement.**   Typicality is met if the "claims or defenses of the representative parties are typical of the claim or defenses of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "This requirement is usually satisfied if the named plaintiffs have suffered the same or similar injuries as the unnamed Class members, the action is based on conduct which is not unique to the named plaintiffs, and other Class members were injured by the same course of conduct."  *In re NCAA Student Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2013 WL 5979327, *4 (N.D. Cal. Nov. 8, 2013) (citation omitted).

Each Plaintiff purchased one or more drugs included on the HSP generic drug formulary; was charged a copayment that is higher than the usual and customary price for that drug (CVS's true U&C prices); and made such purchases using prescription drug insurance administered by one of the Class PBMs.[67]  CVS has admitted it has no evidence that it told any of the named Plaintiffs the truth – that CVS was excluding the HSP prices from its submitted U&C prices.[68]

The amended class definition that Plaintiffs seek also addresses the two typicality issues that the Court addressed in its Order.  ***First***, in its Order, the Court stated that "[u]nlike plaintiffs' central theory that defendants submitted a U&C rate above a fixed HSP price, plaintiffs offer no reference price with regard to supplies below the 90-day supply specifically proscribed by the HSP program. The argument of proration is speculative."  Order at 13.  Plaintiffs address this concern by excluding downward-prorated overcharges (*i.e.*, more than $3.33 pre-2011, or more than $3.99 2011-onward, for a 30-day prescription) from the amended class definition.  Thus, the class now focuses on the "central theory that defendants submitted a U&C rate above a fixed HSP price" in a manner common across the class.  *Id.*

---

[66] Ex. 1, Hay A&S Decl. ¶¶ 11, 21-23.
[67] *See supra* Statement of Facts; Ex. 1, Hay A&S Decl. ¶¶ 9-10, 18-19 & Ex. E.
[68] Ex. 19, Dudley 30(b)(6) 135:4-16; Ex. 32, May 10, 2017 CVS 1st Supp. Resps. To Pls.' Reqs for Admission Nos. 58-59, 116.

---

Each of the Plaintiffs offered as class representatives has at least one transaction where he or she was charged more than the full, standard HSP price.[69]

**Second**, Plaintiffs have amended the class definition to remove post-suit purchases.  In its Order, the Court rejected CVS's argument that certain Plaintiffs' continued purchases from CVS defeated typicality: "defendants do not offer any reasons why such continued purchases would disqualify these plaintiffs and make them atypical of the class. The Court could address these concerns administratively or by limiting the Class Period to end on an earlier date." Order at 14.  Following the Court's guidance, the amended class definition now ends on July 31, 2015, when Plaintiffs filed suit.

**Plaintiffs are adequate class representatives.**  After reviewing both sides' extensive arguments and filings, the Court previously concluded that Plaintiffs satisfied the adequacy requirement: "[a] review of plaintiffs' depositions here reveals that each has demonstrated a sufficient understanding of the basic facts and claims in this litigation.  Each understands the allegations that CVS charged them inflated copays for generic prescription drugs, and each has participated in the litigation by reviewing complaints, attending depositions, and producing documents. (*See* Dkt. No. 215-5 (deposition excerpts from named plaintiffs).) Such are sufficient to satisfy the adequacy requirements of Rule 23."  Order at 16.  Further, the Court found that "Defendants do not contest that any plaintiffs or counsel have conflicts of interests, nor do they contest that counsel will prosecute the action vigorously on behalf of the class." *Id.*  There is no reason or basis to disturb these findings.

III.    CERTIFICATION IS THE SUPERIOR METHOD FOR ADJUDICATING PLAINTIFFS' CLAIMS.

Class actions certified under Rule 23(b)(3) must be "superior to other available methods for fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).  Plaintiffs' streamlined amended class definition satisfies the superiority criteria.

A.    **Although, Post-*Briseno*, Ascertainability Is Not A Stand-Alone Requirement, The Court Already Has Found That Plaintiffs' Method For Identifying Class Members Is Administratively Feasible.**

In *Briseno I*, the Ninth Circuit held that there is no stand-alone "administrative feasibility" requirement for certification under Rule 23; Plaintiffs are not required to show as a separate prerequisite that there is an administratively feasible manner to identify absent Class members.  844 F.3d at 1128.

---

[69] Ex. 1, Hay A&S Decl. ¶¶ 9-10, 18-19 & Ex. E.

1  Regardless, Plaintiffs have shown that Class members can be ascertained readily, as the Court found:

2  "plaintiffs have presented a sufficiently feasible method for ascertaining the members of classes: Dr.

3  Hay opines that one could review CVS's transactional data and use a numeric identified known as a

4  'condor code' to trace the transaction back to the applicable PBM or TPP contract."  Order at 17.  In

5  support of Plaintiffs' amended motion, Dr. Hay has employed the same methodology he used previously,

6  and which the Court found sufficient, to identify Class members and qualifying transactions for the

7  amended classes.[70]  Indeed, Dr. Hay's approach is consistent with the method CVS's own expert, Brett

8  Barlag, used to identify the transactions and damages associated with these very same PBMs.[71]

9  **B.  Certifying The Six Narrowed And Streamlined Proposed Classes Is Manageable, And Provides The Only Realistic Means For Plaintiffs To Be Afforded Relief.**

10

11       Plaintiffs submit that their proposed amended classes address the manageability questions that

12  the Court posed.  *See* Order at 18.  *First*, in Plaintiffs' amended class definition, there are only six

13  proposed individual state UDAP classes – half as many as were certified in *Briseno* – and the UDAP

14  laws of these states, as discussed above, *see supra* Argument § I, are substantially common in their

15  application and analysis.  Focusing on just the five CVS-Class PBM contracts also will allow the Court

16  and the jury to analyze a narrower set of contracts and evidence.  Thus, liability and remedies will be

17  determined on a class-wide basis in a common manner.

18       *Second*, Plaintiffs provide the Court with the attached proposed trial plan, which (1) describes

19  the common issues for trial as well as the common evidence that will be used to prove the state UDAP

20  claims on a class-wide basis, and (2) details how jury instructions may be structured to guide a jury's

21  determination on specific elements of these claims, including materiality, reliance, harm, and whether

22  CVS's actions are "unfair" or "deceptive" practices under applicable law.[72]

23       *Third*, particularly in light of the narrowed and streamlined classes Plaintiffs now seek to certify,

24  "concentrating the litigation of the claims in this particular forum," Order at 18, on a class basis is the

25  most fair and efficient means of adjudicating the case.  This Court has presided over the case for nearly

26  two years, and during that time has become well-acquainted with the legal claims and factual record,

27

28

---

[70] Ex. 1, Hay A&S Decl. ¶¶ 8, 15-17, 20.
[71] *Id.* ¶¶ 16-17.
[72] Ex. 46, Pls.' Trial Plan.

making it by far the best forum in which to have this matter litigated. And because the "likely recovery [per plaintiff] is too small to incentivize individual lawsuits," especially as compared to the time, expense, and level of expertise needed to adjudicate Plaintiffs' claims through trial, "the realistic alternative to class litigation would be no litigation at all." *Briseno II*, 2017 WL 53421, at *2.

## CONCLUSION

Plaintiffs respectfully submit that their amended motion addresses the Court's concerns identified in the Order, and establishes that certification is warranted.

Dated: June 6, 2017

Respectfully submitted,

By: */s/ Robert B. Gilmore*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE MISSNER
 & BEATO LLP

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP

By: */s/ Bonny E. Sweeney*
Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP