# DX-425

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  Enu Mainigi (*Pro Hac Vice*)
   Luba Shur (*Pro Hac Vice*)
2  Grant A. Geyerman (*Pro Hac Vice*)
   WILLIAMS & CONNOLLY LLP
3  725 Twelfth Street, NW
   Washington, DC 20005
4  Telephone: (202) 434-5000
   Facsimile: (202) 434-5029
5
   Edward W. Swanson (State Bar No. 159859)
6  August Gugelmann (State Bar No. 240544)
   SWANSON & McNAMARA LLP
7  300 Montgomery Street, Suite 1100
   San Francisco, CA 94104
8  Telephone: (415) 477-3800
   Facsimile: (415) 477-9010
9
   Attorneys for CVS Pharmacy, Inc.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED (L.R. 79-5(c)(1)(C))**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CORCORAN, et al., | No. 15-CV-03504-YGR |
| Plaintiffs, | **DECLARATION OF SUSAN COLBERT IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |
| v. | |
| CVS HEALTH CORPORATION and CVS PHARMACY, INC., | |
| Defendants. | |

I, Susan Colbert, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and competent to make the following Declaration.

**Professional Background**

1. I am currently a Senior Director, Payer Relations for CVS Pharmacy, Inc. I have held this position since January 1, 2014. Prior to that, I was a Director, Payer Relations from December 1, 2004 to December 31, 2013. I have worked in CVS's Payer Relations group (formerly known as "Managed Care") for approximately 17 years.

2. I graduated from Cornell University with a B.S. in biology in 1984. I earned a Masters in Business Administration from Rensselaer Polytech in 1989. I began working for CVS in 1994.

3. Among other responsibilities, I currently lead the team responsible for the administration of CVS's contracts with pharmacy benefit managers ("PBMs") and third-party payers. My team receives contracts – which may take the form of main agreements, amendments to those main agreements, and fee schedules – [REDACTED]

**Matching Individual Claims and the Contract with the Controlling "Usual and Customary" Definition**

4. [REDACTED] Plaintiffs' approach is too simplistic to yield accurate results, nor is it an administratively feasible approach for several reasons. And as a general proposition, it

- 1 -

DECL. OF SUSAN COLBERT IN SUPP. OF
DEF.'S OPP. TO MOT. FOR CLASS CERT.
15-CV-03504-YGR

can be very difficult and labor-intensive to determine: (1) taking a given prescription drug claim, what the controlling contract was that governs that claim, or (2) taking a given contract CVS has entered with a PBM, which claims relate to certain lines of business, networks, etc. underneath that contract.

5. Few third-party payers (such as insurers, employer groups, or health and welfare benefit funds—collectively "payers") contract directly with CVS. Instead, most payers contract with a PBM, which in turn contracts and manages the relationship with any pharmacies that service the payer's members. Thus, CVS typically contracts with a PBM, not the PBM's payer-client.

6. CVS's contractual relationships with PBMs and payers are governed by a number of different types of documents: (a) the main agreement (often called a Network Agreement or Pharmacy Services Agreement) containing the governing terms and conditions; (b) amendments, which generally involve changes to the reimbursement rates or methodology set out in the main agreement; (c) fee schedules, which establish reimbursement rates for a particular group (or "network") created by a PBM; and (d) provider manuals.

7. The definition of "usual and customary" ("U&C") price is typically found in the main agreement between CVS and the PBM/payer (as opposed to in an amendment, fee schedule, or provider manual).[1] Plaintiffs' analysis, therefore, is predicated on the feasibility of identifying the main agreement that governed a particular prescription purchase, ███████████████████████████████████

8. ███████████████████████████████████████████████████████████████

9. ███████████████████████████████████████████████████████████████

---

[1] Although most CVS-PBM main agreements contain a definition of "Usual and Customary," a small minority do not. Some PBMs, such as Medco, included U&C definitions in their "provider manuals," which are documents published periodically by PBMs to clarify or supplement the terms in the main agreement. In the absence of a U&C definition in the main agreement, we would rely on the definition (if any) in the provider manual in effect at the time of the purchase.

1. ■

10. ■

11. ■

12. ■

### A. Termination of the payer's contract with CVS

13. Not every direct CVS-payer contract in effect during *some* of the period CVS offered the Health Savings Pass program was in effect during that *entire* period. From November 2008–January 2016, many payers terminated their direct contracts with CVS in favor

- 3 -

DECL. OF SUSAN COLBERT IN SUPP. OF
DEF.'S OPP. TO MOT. FOR CLASS CERT.
15-CV-03504-YGR

of contracting through a PBM. Aetna is a prime example; CVS's business with Aetna moved under the CVS-Caremark network agreements as of January 1, 2011, ▮ ▮ (Doing so allowed us to more easily isolate Aetna claims for internal tracking purposes.) ▮

### B. Payer changes PBMs

14. ▮ For example, it is my understanding that Plaintiff Vincent Gargiulo claims to have been insured by Horizon BlueCross BlueShield from January 2011 through September 2014. ▮ In July 2013, Horizon BlueCross BlueShield switched PBMs from Caremark to Prime Therapeutics. ▮ Any prescriptions filled by Mr. Gargiulo at CVS before July 2013 would be governed by CVS's contract with Caremark, while any prescriptions filled at CVS after the transition would be governed by CVS's contract with Prime Therapeutics. ▮ Effective January 1, 2013, BlueCross BlueShield of Rhode Island's commercial and Medicare Part D business moved from Caremark to Catamaran. ▮

include the 2014 CVS-Catamaran agreement in their list of contracts included in the proposed class.

### C. Mergers and acquisitions within the PBM industry

15. A number of high-profile PBMs have merged with or acquired other PBMs over the last eight years. As a result, it can be difficult—if not impossible, absent direct consultation with a PBM—to determine which network agreement governs a particular transaction. For example, in 2012, Express Scripts, Inc. acquired Medco Health Solutions, Inc. Effective February 11, 2013, Express Scripts and CVS executed the Seventh Amendment to the Express Scripts, Inc. Pharmacy Provider Agreement, which provided as follows:



Given this, CVS does not necessarily know when Express Scripts transitioned a particular Medco client to the Express Scripts agreement (if such transition occurred at all), and thus cannot determine which of the two contracts (Express Scripts or Medco) governs the claim.

16.  In 2011, WHI was acquired by Catalyst Health Solutions, which itself was later purchased by SXC Health Solutions. The merged company was renamed Catamaran Corporation, and, as noted above,

- 5 -

DECL. OF SUSAN COLBERT IN SUPP. OF DEF.'S OPP. TO MOT. FOR CLASS CERT.
15-CV-03504-YGR

prescriptions governed by CVS's current contract with Catamaran should, as I understand Plaintiffs' argument, be excluded from the proposed class.

### D. Limitations with the BIN/PCN

17. Although it is not information that I understand Plaintiffs contend should be used to match an individual pharmacy claim with the controlling contract, information sometimes used to identify a particular PBM is the BIN/PCN (Bank Identification Number/Processor Control Number). BIN/PCNs are assigned to a processor, which typically (but not necessarily) is a PBM. Even where a person knows the BIN/PCN for an individual pharmacy claim, however, that is not necessarily sufficient to identify a PBM (or, by extension, the controlling contract).

### E. Cash discount cards

18. My understanding is Plaintiffs' proffered class is intended to involve only purchases with prescription drug insurance. [REDACTED]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of November, 2016, in Woonsocket, Rhode Island.

/s/ Susan Colbert
Susan Colbert

Susan Colbert
Senior Director
Payer Relations

DECL. OF SUSAN COLBERT IN SUPP. OF
DEF.'S OPP. TO MOT. FOR CLASS CERT.
15-CV-03504-YGR