# DX-427



# Transcript of Thomas J. Gibbons, Individually and as Corporate Designee

**Date:** December 13, 2016

**Case:** Corcoran, et al. -v- CVS Pharmacy, Inc.

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Worldwide Court Reporting | Interpretation | Trial Services

## Page 1

```
 1        UNITED STATES DISTRICT COURT
 2        NORTHERN DISTRICT OF CALIFORNIA
 3
 4   - - - - - - - - - - - - - - - - - - - x
 5   CHRISTOPHER CORCORAN, ET AL.
 6       Plaintiffs
 7   vs.              CA No. 15-CV-03504-YGR
 8   CVS HEALTH, et al.
 9       Defendants
10   - - - - - - - - - - - - - - - - - - - x
11       VIDEO DEPOSITION of THOMAS J. GIBBONS,
12            INDIVIDUALLY AND AS 30(b)(6)
13       Tuesday, December 13, 2016 - 9:37 a.m.
14       Whelan, Corrente, Kinder & Siket LLP
15        100 Westminster Street, Suite 100
16             Providence, Rhode Island
17
18   --- Jill K. Ruggieri, RPR, RMR, FCRR, CRR ---
```

## Page 2

```
 1   APPEARANCES:
 2
 3   Stein Mitchell Cipollone Beato & Missner LLP
 4       Robert B. Gilmore, Esq.
 5       1100 Connecticut Avenue, N.W., Suite 1100
 6       Washington, District of Columbia 20036
 7       202.737.7777
 8       rgilmore@steinmitchell.com
 9       Counsel for plaintiffs
10
11   Williams & Connolly LLP
12       Grant A. Geyerman, Esq.
13       725 Twelfth Street, N.W.
14       Washington, District of Columbia 20005
15       202.434.5833
16       ggeyerman@wc.com
17       Counsel for defendants
18
19
20   Videographer:  Darryn Carroll
```

## Page 3

```
            I N D E X

WITNESS:
THOMAS J. GIBBONS
    Examination by Mr. Gilmore -
        Individual Capacity          6
    Examination by Mr. Gilmore -
        30(b)(6) Capacity          228

            E X H I B I T S
Exhibit 611  Email, 12/9/16          31
Exhibit 607  Gibbons declaration     58
Exhibit 240  Email with attached     65
             glossary
Exhibit 480  Email string, 3/27/13   85
Exhibit 472  Email string, 4/29/13   93
Exhibit 506  Email string, 3/8/13    99
Exhibit 478  Email string, 3/10/15  115
Exhibit 28   Retail Pricing Review, 125
             Draft:  October 27, 2010
Exhibit 483  Email string, 2/27/12  156
Exhibit 449  Memo, 8/4/11           161
Exhibit 452  Email, 8/23/11         167
Exhibit 469  Email string, 6/27/14  170
Exhibit 476  Email, 12/9/15         172
```

## Page 4

```
Exhibit 475  Email, 6/3/13                 177
Exhibit 481  Email string, 3/28/13         186
Exhibit 489  Email string, 5/20/13         193
Exhibit 468  Email string, 8/2/13          197
Exhibit 505  Email string, 2/21/14         204
Exhibit 251  Email string, 1/29/13         211
Exhibit 479  Email string, 12/4/15         217
Exhibit 6    CVS Health Code of Conduct    221
Exhibit 650  Court order, 12/9/16          228
Exhibit 608  Letter, 10/27/16              233
Exhibit 532  TP Contracts Indexing Form    241
Exhibit 546  TP Contracts Indexing Form    249
```

**Page 5**

```
 1            P R O C E E D I N G S
 2
 3            THE VIDEOGRAPHER:  We are on
 4   the record at 9:37 a.m. on December 13, 2016.
 5   This is the videotaped deposition of Thomas
 6   Gibbons in the matter Corcoran, et al.,
 7   versus CVS Pharmacy, Inc., in the United
 8   States District Court, Northern District of
 9   California, Case No. 3:15-CV-03504, taking
10   place at 100 Westminster Street, Providence,
11   Rhode Island.
12            The videographer is Darryn
13   Carroll; the court reporter is Jill Ruggieri,
14   both presenting on behalf of Planet Depos.
15            Would counsel please identify
16   themselves.
17            MR. GILMORE:  Robert Gilmore
18   with Stein, Mitchell on behalf of plaintiffs
19   and the class.
20            MR. GEYERMAN:  Grant Geyerman
21   from Williams & Connolly on behalf of
22   defendant CVS Pharmacy, Inc.
23            Also present today is Hillary
24   Dudley from CVS.
25            THE VIDEOGRAPHER:  Thank you.
```

**Page 6**

```
 1            Will the court reporter please
 2   swear in the witness, after which counsel can
 3   proceed.
 4
 5            THOMAS J. GIBBONS, a witness
 6   having been duly sworn, on oath deposes and
 7   says as follows:
 8
 9                 EXAMINATION
10   BY MR. GILMORE:
11       Q    Good morning, Mr. Gibbons.
12       A    Good morning.
13       Q    Again, my name is Robert Gilmore.
14   I represent the plaintiffs in the class in
15   this case, and I'm going to be taking your
16   deposition today.
17            Can you state your full name
18   for the record, please.
19       A    Certainly.  It's Thomas John
20   Gibbons.
21       Q    What is your current home address?
22       A    1149 Tillinghast Road.  That's in
23   East Greenwich, Rhode Island.
24       Q    What is your current employer?
25       A    CVS Pharmacy.
```

**Page 7**

```
 1       Q    I know you've given depositions
 2   before, correct?
 3       A    Correct.
 4       Q    I'm going to give you a refresher
 5   on the ground rules for depositions.
 6            My job is to ask you questions
 7   you understand, fair?
 8       A    Yes.
 9       Q    And your job is to answer my
10   questions to the best of your ability; is
11   that fair?
12       A    It is.
13       Q    Let me know if you don't understand
14   one of my questions.  I'm sure that will
15   happen during the course of the day.  I'll
16   try and rephrase it, okay?
17       A    Yes.
18       Q    If you answer my question, I'm
19   going to assume that you understood that
20   question, fair?
21       A    Yes.
22       Q    You're doing a good job of waiting
23   for me to finish my question, and I'll make
24   sure I let you finish your answer, but we
25   need to make sure not to talk over each other
```

**Page 8**

```
 1   so that we don't drive the court reporter
 2   crazy, okay?
 3       A    Agreed.
 4       Q    Also, it's important, as you've
 5   been doing, to give verbal answers rather
 6   than "uh-huhs" or headshakes, fair?
 7       A    Agreed.
 8       Q    Is there any reason that you can't
 9   give truthful and accurate testimony today?
10       A    There is not.
11            MR. GEYERMAN:  Mr. Gilmore, if
12   you're moving into substantive questioning, I
13   just wanted to state at the beginning of the
14   deposition, as both parties know, from the
15   judge's order entered last Friday, there will
16   be -- we anticipate a component to today's
17   deposition where you intend to ask
18   Mr. Gibbons certain questions in not his
19   personal capacity but in a capacity as a
20   30(b)(6) witness.
21            And you and I have talked off
22   the record over the weekend to talk about the
23   process by which you're going to make clear
24   at what point in the deposition you are
25   transitioning from asking Mr. Gibbons
```

41

1 you hold about the concept of usual and
2 customary pricing?
3      A   I think for purposes of today, my
4 understanding is this case is somewhat
5 focused on Health Savings Pass Program, as
6 well as usual and customary processing at the
7 retail pharmacy.
8           My opinion continues to be,
9 from a retail pharmacy perspective, one of
10 the data elements submitted and collected by
11 retail pharmacy is the copay field, which
12 tells us what to collect at point of sale.
13           I believe there's an
14 ongoing -- an ongoing part of this case to
15 talk about whether Health Savings Pass is or
16 is not part of usual and customary, and it
17 continues to be my opinion that the Health
18 Savings Pass is not CVS's usual and customary
19 pricing.
20      Q   In an answer you just gave, you
21 said, My opinion continues to be from a
22 retail pharmacy perspective, one of the data
23 elements submitted and collected by the
24 retail pharmacy is the copay field, which
25 tells us what to collect at point of sale."

42

1           And then you say -- you also
2 give your opinion that Health Savings Pass is
3 not CVS's usual and customary pricing.
4           Tell me the connection between
5 those two opinions that you gave in that one
6 answer that you just gave.
7      A   Well--
8           MR. GEYERMAN:  Objection to
9 form.  Go ahead.
10      A   -- I think in preparation for
11 today's discussion, there seemed like there
12 was two areas of ongoing debate, if that's an
13 appropriate term.  One is the copay amount as
14 it's collected at retail pharmacy, as set by
15 the PBM or the claim adjudicator, so I gave
16 you my opinion on that.
17           The second is, I understand
18 there's an ongoing discussion with Health
19 Savings Pass and the impact it may have on
20 usual and customary.  And again, my opinion
21 from a Health Savings Pass perspective is
22 that is not a usual and customary price.
23      Q   So what's the connection between
24 those two opinions?
25      A   My understanding is they're both

43

1 relevant for today's conversation.
2      Q   Is your position that because,
3 according to your view, the Health Savings
4 Pass price is not CVS's usual and customary
5 price, the Health Savings Pass price
6 therefore wouldn't have bearing on the copay
7 amount that CVS collects?
8      A   Would you ask me that again,
9 please?
10      Q   Is it your position that because,
11 according to your view, the Health Savings
12 Pass price is not CVS's usual and customary
13 price, the Health Savings Pass price
14 therefore doesnt's have any bearing on the
15 copay amount that CVS collects?
16      A   The Health Savings price would be
17 the price collected for members enrolled in
18 the health savings programs for those
19 prescriptions.
20           For claims processed by other
21 payers, the PBM or claim adjudicator
22 determines what the amount to be collected
23 from the member at point of sale would be.
24      Q   Had CVS submitted its Health
25 Savings Pass price as it's usual and

44

1 customary price, in that scenario, the Health
2 Savings Pass price would impact what CVS gets
3 paid in an adjudicated transaction, if that
4 Health Savings Pass price was the -- the
5 lowest of the potential prices, CVS's
6 arrangement with that payer or PBM, right?
7           MR. GEYERMAN:  Objection to
8 form.
9      A   The amount CVS submits as its usual
10 and customary does -- is one of the data
11 elements that a health plan or a PBM uses
12 during claim adjudication.
13           And in some manner, it is used
14 to determine what CVS retail should collect
15 as the copayment amount.
16      Q   And that manner generally is, say,
17 in the industry or in CVS's business,
18 referred to as lower of U&C logic, right?
19      A   There is -- I think there's two
20 important points.  There's lower of logic
21 during reimbursement, which has to do in some
22 situations at a claim level and in some
23 situations in an aggregate how CVS is
24 reimbursed for a claim.
25           The lower of logic less

**45**

1  impactful when we are receiving the amount to
2  be paid for the copayment amount, because CVS
3  does not have line of sight into what the
4  health plan or the PBM is using to determine
5  that cost of -- that copayment amount at
6  point of sale.
7      Q   In your -- the answer before the
8  one you just gave, you said that the amount
9  CVS submits as its usual and customary
10 does -- is one of the data elements in a
11 health plan or PBM uses during claim
12 adjudication, and in some manner it is used
13 to determine what CVS retailers should
14 collect as the copayment amount.
15          I'm going to ask you about the
16 "in some manner." Are you aware of any
17 manner other than if the usual and customary
18 price is lower than the contractual rates for
19 copayments, then the pharmacy collects the
20 usual and customary price?
21          That's the amount that's going
22 to get sent back?
23          MR. GEYERMAN:  Objection to
24 form.
25     A   You're asking me have I encountered

**46**

1  situations where the amount sent back to
2  pharmacy to collect from the member is
3  greater than usual and customary?
4      Q   My question is a little different.
5          You said, as I understand it,
6  that the usual and customary price that CVS
7  submits is, in some manner, used to determine
8  what CVS retailers should collect as the
9  copayment amount.
10         And I'm asking you, the "in
11 some manner," are you aware of any manner
12 that PBMs or payers use usual and customary
13 price for other than if the usual and
14 customary price is lower than the contracted
15 copayment amount than those entities will
16 tell CVS to collect the usual and customary
17 price from the customer?
18         MR. GEYERMAN:  Objection to
19 form.
20     A   So CVS would submit a usual and
21 customary amount on a claim when it's
22 submitted to adjudication.
23         The adjudicator or the payer
24 may use that field or may not use that field
25 as they're determining the appropriate

**47**

1  copayment amount be collected at point of
2  sale.
3          They may also use that field
4  for other economic classifications of those
5  claims.
6          An example might be whether a
7  certain claim is part of the guarantee or not
8  part of the guarantee.
9      Q   I'll represent to you that --
10 strike that.  We've looked at your -- strike
11 that.
12         CVS has produced transaction
13 data to plaintiffs covering the period of
14 time from November 2008 to, I think,
15 December 2015.
16         Are you aware of that, the
17 fact that CVS has produced such transaction
18 data to the plaintiffs?
19     A   I know there's been data submitted,
20 but I don't know the specifics of the data.
21     Q   And I'll -- assume with me that
22 that transaction data, which shows, among
23 other things, the third-party adjudicated
24 claims for all the drugs that were sold
25 through the HSP program during this time,

**48**

1  it's how it's been represented to us, assume
2  with me that that transaction data shows that
3  in more than 99 percent of the time, the
4  copayment is equal to or less than the usual
5  and customary price that CVS has submitted
6  for that transaction.
7      A   I apologize; I didn't understand
8  that.
9      Q   Sure.  I'll start over again.
10         Assume with me that the
11 transactions CVS has produced in this case
12 shows that in more than 99 percent of the
13 time, the copayment that's returned from the
14 payer or PBM for CVS to collect is equal to
15 or less than the U&C price that CVS
16 submitted.
17         Assuming that's the case, does
18 that sound consistent with your expectations,
19 given your familiarity with CVS's business?
20     A   May I play that back a little bit
21 and make sure we're answering the same way?
22     Q   Okay.
23     A   So what I think you're asking me
24 is, in the majority of situations, is the
25 amount we're instructed to collect at point

**261**

1  actually -- I think I'm done.
2      MR. GEYERMAN: Are you --
3      MR. GILMORE: Yes. So --
4      MR. GEYERMAN: Do you want
5  three minutes to check your notes or do you
6  know you're done?
7      (Pause.)
8      MR. GILMORE: I have no
9  further questions.
10     MR. GEYERMAN: All right.
11     THE VIDEOGRAPHER: We are off
12 the record at 5:35 p.m.
13     (Whereupon, the proceedings
14 adjourned.)
15
16
17
18
19
20
21
22
23
24
25

**262**

1      ACKNOWLEDGMENT OF DEPONENT
2      I, THOMAS J. GIBBONS, do hereby
3  acknowledge that I have read and examined the
4  foregoing testimony, and the same is a true, correct
5  and complete transcription of the testimony given by
6  me and any corrections appear on the attached Errata
7  sheet signed by me.
8
9  _____  _____
10   (DATE)            (SIGNATURE)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**263**

1          C E R T I F I C A T E
2      I, Jill K. Ruggieri, Registered Merit
3  Reporter and Certified Realtime Reporter, do certify
4  that the deposition of THOMAS J. GIBBONS, in
5  the above-captioned matter, on December 13, 2016,
6  was stenographically recorded by me, before being
7  sworn by me, a Notary Public in and for the State of
8  Rhode Island; that the transcript produced by me is
9  a true record and accurate record of the proceedings
10 to the best of my ability; that I am neither counsel
11 for, related to, nor employed by any of the parties
12 to the above action; and further that I am not a
13 relative or employee of any attorney or counsel
14 employed by the parties thereto, nor financially or
15 otherwise interested in the outcome of the action.
16
17 _____
18     Jill K. Ruggieri, RPR, RMR, FCRR, CRR
19
20 Transcript review was requested of the reporter.
21
22
23
24
25