Bonny E. Sweeney (Cal. Bar No. 176174)
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, California 94111
Tel: 415-633-1908
Fax: 415-358-4980
bsweeney@hausfeld.com

Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Tel: 202-540-7200
Fax: 202-540-7201
rlewis@hausfeld.com
sgosselin@hausfeld.com

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE BEATO &
  MISSNER LLP
1100 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (202) 737-7777
pcipollone@steinmitchell.com
ranzidei@steinmitchell.com
rgilmore@steinmitchell.com

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel.  415-692-0772
Fax. 415-366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

*Interim Class Counsel*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, et al. on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CVS Pharmacy, Inc. <br><br> Defendant. | Case No. 4:15-cv-03504-YGR <br><br> CLASS ACTION <br><br> **PLAINTIFFS' OPPOSITION TO CVS PHARMACY, INC.'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date: July 18, 2017 <br> Time: 2:00pm <br> Courtroom: 1 <br> Judge: Honorable Yvonne Gonzalez Rogers |

## UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED ............................................................ ix

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ...............................................................................................2

LEGAL STANDARDS ...................................................................................................10

ARGUMENT ...................................................................................................................10

I.   CVS IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THE RECORD EVIDENCE
     SHOWS CVS MADE DIRECT MISREPRESENTATIONS AND OMISSIONS TO PLAINTIFFS
     REGARDLESS OF THE PBMS' SUPPOSED "UNDERSTANDING" OF THE CONTRACTS' U&C
     PROVISIONS.   ..........................................................................................................10

     A.   The Plain and Unambiguous Language of CVS's Contracts Required CVS to
          Report the HSP Price as the U&C Price. ...............................................................11

     B.   The Parol Evidence Rule Precludes CVS's Flawed Evidence of Any
          Extracontractual Understandings It Had With The PBMs. ....................................13

     C.   Plaintiffs Are Intended Beneficiaries of CVS's Contracts With The PBMs. ........15

     D.   CVS Violated State Consumer Protection Statutes by Misrepresenting to
          Plaintiffs the Accuracy of the Copayments Demanded and by Failing to Inform
          Plaintiffs that it was Denying them the Benefit of their Insurance. .......................17

     E.   CVS's Supposed Evidence About The PBMs Is Defective. ..................................18

II.  CVS IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE DISPUTED ISSUES
     OF MATERIAL FACT RELATED TO RELIANCE. ..................................................................21

     A.   The TPPs or PBMs' Supposed Knowledge Is Not Imputed To Plaintiffs. ...........21

     B.   CVS's Argument Concerning a Handful of Continuing Purchases Is Irrelevant
          And Unsupported By The Facts Or Law. ..............................................................23

CONCLUSION ...............................................................................................................25

1

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Prudential Ins. Co. of Am.*,
  8 N.Y.S.2d 957 (App. Div. 1939) ............................................................................... 22

*Advanced Concepts Chicago, Inc. v. CDW Corp.*,
  938 N.E.2d 577 (Ill. Ct. App. 2010) ......................................................................... 15

*Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*,
  76 A.D.2d 68 (N.Y. App. Div. 1980) ......................................................................... 15

*Anchor Equities, Ltd. v. Joya*,
  773 P.2d 1022 (Ariz. Ct. App. 1989) ......................................................................... 22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................................... 10

*Basurto v. Utah Const. & Min. Co.*,
  485 P.2d 859 (Ariz. Ct. App. 1971) ........................................................................... 15

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ..................................................................................... 22

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ....................................................................................... 10

*Boracchia v. Biomet, Inc.*,
  No. C-07-0650, 2008 WL 512721 (N.D. Cal. Feb. 25, 2008) ................................. 14

*Boswell v. Costco Wholesale Corp.*,
  No. SACV160278DOCDFMX, 2016 WL 3360701 (C.D. Cal. June 6, 2016) ................................. 25

*Bristol Vill., Inc. v. Lousiana-Pac. Corp.*,
  170 F. Supp. 3d 488 (W.D.N.Y. 2016) ....................................................................... 17

*Canal Elec. Co. v. Westinghouse Elec. Corp.*,
  548 N.E.2d 182 (Mass. 1990) ..................................................................................... 16

*Cheval Farm, LLC v. Chalon*,
  No. CV-11-00043-TUC-JGZ, 2013 WL 11826543 (D. Ariz. Sept. 13, 2013) ................................. 13

*Clinical Tech, Inc. v. Covidean Sales, LLC,*

    No. CV 14-12169-PBS, 2016 WL 3360481 (D. Mass. June 16, 2016).............................. 18

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActivecorp,*

    82 A.D.3d 421 (N.Y. App. Div. 2011) ......................................................................... 16

*Dore v. Arnold Worldwide, Inc.,*

    139 P.3d 56 (Cal. 2006) ............................................................................................. 12

*Dunfee v. Newark Shopping Ctr. Owner LLC,*

    No. CV N14C-12-031, 2016 WL 639556 (Del. Super. Ct. Feb. 16, 2016) ....................... 14

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,*

    702 A.2d 1228 (Del. 1997) ......................................................................................... 13

*Edwards v. Freeman,*

    212 P.2d 883 (Cal. 1949) ........................................................................................... 22

*Engalla v. Permanente Med. Grp., Inc.,*

    938 P.2d 903 (Cal. 1997) ........................................................................................... 25

*Ensign Yachts, Inc v. Arrigoni,*

    No. 09-CV-209, 2010 WL 918107 (D. Conn. Mar. 11, 2010) ........................................ 17

*Faulkner, USA, Inc. v. Durrant Grp., Inc.,*

    No. CV-11-08086, 2013 WL 11834262 (D. Ariz. May 30, 2013) ................................... 16

*First Ala. Bank v. First State Ins. Co.,*

    899 F.2d 1045 (11th Cir. 1990) .................................................................................. 23

*First Marblehead Corp. v. House,*

    473 F.3d 1 (1st Cir. 2006) .......................................................................................... 13

*G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.,*

    871 F. Supp. 2d 763 (N.D. Ill. 2012) ......................................................................... 18

*Gemini Ins. Co. v. Delos Ins. Co.,*

    Cal. Rptr. 3d 889 (Ct. App. 2012)............................................................................... 12

*Gen. Signal Corp. v. MCI Telecommns. Corp.,*

    66 F.3d 1500 (9th Cir. 1995) ..................................................................................... 14

*Grant v. Nat'l Football League Players Ass'n*,
  566 F. App'x 569 (9th Cir. 2014) ................................................. 23

*GTE Prod. Corp. v. Broadway Elec. Supply Co.*,
  676 N.E.2d 1151 (Mass. App. Ct. 1997) ......................................... 22

*Gutierrez v. Wells Fargo Bank, NA*,
  704 F.3d 712 (9th Cir. 2012) ..................................................... 24

*Hall v. Time Inc.*,
  70 Cal. Rptr. 3d 466 (Ct. App. 2008) ...................................... 24, 25

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .................................................... 25

*Hollingsworth v. Perry*,
  133 S. Ct. 2652 (2013) ............................................................ 22

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) .......... 17

*In re Managed Care Litig.*,
  185 F. Supp. 2d 1310 (S.D. Fla. 2002) ...................................... 22, 23

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  252 F.R.D. 83 (D. Mass. 2008) ................................................... 21

*Intl. Ins. Co. of Hannover v. ACW Constr., Inc.*,
  2015 WL 6954962 (N.D. Cal. Nov. 10, 2015) .................................. 11

*Jacobson v. Equitable Life Assur. Soc. of U.S.*,
  381 F.2d 955 (7th Cir. 1967) ..................................................... 22

*Jajco, Inc. v. Leader Drug Stores, Inc.*,
  No. C 12-05703 PJH, 2013 WL 2403593 (N.D. Cal. May 31, 2013) ........ 15, 16

*Karlin v. IVF Am., Inc.*,
  712 N.E.2d 662 (N.Y. 1999) ...................................................... 16

*Kirkpatrick v. Strosberg*,
  894 N.E.2d 781 (Ill. App. Ct. 2008) ............................................. 16

*Kuehn v. Stanley*,

  91 P.3d 346 (Ariz. Ct. App. 2004) .................................................................................... 21

*LaSalle Nat. Bank v. Gen. Mills Rest. Grp., Inc.*,

  854 F.2d 1050 (7th Cir. 1988) .......................................................................................... 13

*Lemke v. Sears, Roebuck & Co.*,

  853 F.2d 253 (4th Cir. 1988) ............................................................................................ 14

*Marolda v. Symantec Corp.*,

  672 F. Supp. 2d 992 (N.D. Cal. 2009) .............................................................................. 17

*Miller v. Fuhu Inc.*,

  No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ................... 21

*MJS Music Publications, LLC v. Hal Leonard Corp.*,

  No. 806CV488T30EAJ, 2006 WL 1208015 (M.D. Fla. May 4, 2006) ............................ 16

*Monotype Imaging Inc. v. Deluxe Corp.*,

  883 F. Supp. 2d 317 (D. Mass. 2012) ............................................................................... 17

*Mun. Capital Appreciation Partners, I, L.P. v. Page*,

  181 F. Supp. 2d 379 (S.D.N.Y. 2002) ............................................................................... 13

*Murray v. Farmers Ins. Co. of Ariz.*,

  366 P.3d 117 (Ariz. Ct. App. 2016) .................................................................................. 17

*Mut. Life Ins. Co. of N.Y. v. Hilton-Green*,

  241 U.S. 613 (1916) .......................................................................................................... 22

*Newton v. Am. Debt Servs. Inc.*,

  75 F. Supp. 3d 1048 (N.D. Cal. 2014) .............................................................................. 18

*Nigro v. Sears, Roebuck & Co.*,

  784 F.3d 495 (9th Cir. 2015) ............................................................................................ 18

*Norse v. City of Santa Cruz*,

  629 F.3d 966 (9th Cir. 2010) ............................................................................................ 18

*O & G Indus., Inc. v. Aon Risk Servs. Ne., Inc.*,

  922 F. Supp. 2d 257 (D. Conn. 2013) ............................................................................... 16

*Oxford Comm. Corp. v. Landau,*
    190 N.E.2d 230 (N.Y. 1963)............................................................................ 14

*Petri v. Gatlin,*
    997 F. Supp. 956 (N.D. Ill. 1997) ................................................................. 17

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.,*
    842 So. 2d 773 (Fla. 2003)............................................................................ 17

*Powers v. Guar. RV, Inc.,*
    229 Ariz. 555 (Ct. App. 2012) ..................................................................... 16

*Princess Cruise Lines, Ltd. v. Superior Court,*
    101 Cal. Rptr. 3d 323 (Ct. App. 2009) ................................................... 24, 25

*Red v. Kraft Foods, Inc.,*
    2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ............................................. 25

*Ries v. Ariz. Beverages USA LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012)................................................................. 24

*River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc.,*
    287 F. Supp. 2d 1213 (S.D. Cal. 2003)........................................................ 22

*Rojas-Lozano v. Google, Inc.,*
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ....................................................... 16

*Roth v. Meeker,*
    389 N.E.2d 1248, 1256 (Ill. App. Ct. 1979) ................................................ 14

*Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.,*
    243 F. Supp. 2d 145 (D. Del. 2003).............................................................. 15

*Salazar v. Honest Tea, Inc.,*
    No. 2:13-cv-02318, 2015 WL 7017050 (E.D. Cal. Nov. 12, 2015) ............... 25

*Schultz v. Almond,*
    No. A095378, 2002 WL 1340963 (Cal. Ct. App. June 19, 2002) .................. 24

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.,*
    221 F. Supp. 3d 227 (D.R.I. 2016)............................................................... 23

*Suciu v. AMFAC Distrib. Corp.*,

   675 P.2d 1333 (Ariz. Ct. App. 1983) ............................................................... 14

*Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*,

   No. 08-4791 SC, 2010 WL 2867724 (N.D. Cal. July 20, 2010) ................................. 13, 14

*Third Party Verification, Inc. v. Signaturelink, Inc.*,

   492 F. Supp. 2d 1314 (M.D. Fla. 2007) ............................................................. 18

*Tolan v. Cotton*,

   134 S. Ct. 1861 (2014) ............................................................................... 10

*United California Bank v. Prudential Ins. Co. of Am.*,

   681 P.2d 390 (Ariz. Ct. App. 1983) ................................................................. 16

*United Logistics, Inc. v. Catellus Dev. Corp.*,

   319 F.3d 921 (7th Cir. 2003) ....................................................................... 15

*United States ex rel. Garbe v. Kmart Corp.*,

   824 F.3d 632, 645 (7th Cir. 2016) .................................................................... 1

*Vaccarino v. Midland Nat. Life Ins. Co.*,

   No. CV 11-5858 CAS MANX, 2013 WL 3200500 (C.D. Cal. June 17, 2013) ............... 25

*Vasic v. PatentHealth L.L.C.*,

   171 F. Supp. 3d 1034 (S.D. Cal. 2016) ............................................................. 21

*ViChip Corp. v. Lee*,

   438 F. Supp. 2d 1087 (N.D. Cal. 2006) ............................................................. 14

*Villiarimo v. Aloha Island Air, Inc.*,

   281 F.3d 1054 (9th Cir. 2002) ...................................................................... 18

*Whiting v. Freightliner, Sterling, W. Star of Ariz., Ltd.*,

   No. 1 CA-CV 08-0626, 2009 WL 2136759 (Ariz. Ct. App. July 16, 2009) ................ 17

*Williams v. Yamaha Motor Co.*,

   851 F.3d 1015 (9th Cir. 2017) ...................................................................... 22

*Wilner v. Allstate Ins. Co.*,

   893 N.Y.S.2d 208 (App. Div. 2010) ................................................................ 16

*Winans by & through Moulton v. Emeritus Corp.*,

   No. 13-CV-03962-SC, 2014 WL 970177 (N.D. Cal. Mar. 5, 2014) .................................. 17

**Statutes**

Ariz. Rev. Stat. § 44-1522 ........................................................................................ 17

Cal. Civ. Code § 1559 ............................................................................................... 15

Cal. Civ. Code § 1636 ............................................................................................... 12

Cal. Civ. Code § 1639 ............................................................................................... 12

Cal. Civ. Code §§ 1638-39 ........................................................................................ 12

**Other Authorities**

11 Williston on Contracts § 33:11 (4th ed.)............................................................... 14

Restatement (Second) of Agency § 14 (1958) ........................................................... 22

Restatement (Third) of Agency § 1.01 (2005)........................................................... 22

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................... 18

Fed. R. Evid. 602 ..................................................................................................... 19

Fed. R. Evid. 802 ..................................................................................................... 19

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Defendant CVS Pharmacy, Inc. ("CVS") has satisfied its burden as movant to show there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law, as to the following issues:

I.     CVS engaged in a uniform unlawful pricing scheme to overcharge named Plaintiffs and class members (collectively, "Plaintiffs") inflated copayments by not submitting as its usual and customary ("U&C") price its Health Savings Pass ("HSP") prices, given that:

      a.   the relevant contracts between CVS and pharmacy benefit managers ("PBMs") all contained substantially identical definitions of U&C price, defining it (consistent with industry standards) as the "cash" price and requiring inclusion of all applicable "discounts";

      b.   the relevant CVS – PBM contracts also all contain "lower of U&C" pricing, meaning that on insured purchases administered by the PBMs, a CVS customer using insurance to purchase prescriptions is never to be charged more than CVS's U&C price;

      c.   CVS admits it never reported its HSP prices as its U&C prices, despite those prices falling within the plain language of the relevant U&C definitions as a cash discount price;

      d.   CVS instead submitted U&C prices inflated substantially above CVS's HSP price, resulting in CVS charging Plaintiffs inflated copayments;

      e.   CVS made direct misrepresentations and omissions to Plaintiffs at the point of sale by demanding and charging an inaccurate copay above CVS's true U&C price and by failing to tell Plaintiffs that it was denying them the benefits of their prescription insurance; and

      f.   CVS therefore is liable to Plaintiffs for its unfair and deceptive trade practices under the state consumer protection laws under which Plaintiffs bring their claims.

II.    For those claims where reliance is required, Plaintiffs reasonably relied on CVS's misrepresentations and omissions, given that:

      a.   CVS admits it did not tell Plaintiffs that it was not submitting its HSP prices as its U&C prices, thereby charging Plaintiffs inflated copays and denying them the benefit of their insurance; and

b.    certain Plaintiffs' modest post-suit purchases of medically-necessary drugs from CVS do not negate reliance.

# INTRODUCTION

The evidence shows CVS engaged in misrepresentations and omissions, and thus unfair business practices and conduct, directed *against Plaintiffs*[1] *at the point of sale*, by:

- violating its contracts (including specifically those with the PBMs)[2] by excluding its HSP prices from the U&C prices it submitted on insured prescription drug purchases, thus submitting inflated U&C prices;

- misrepresenting to Plaintiffs that the copayment CVS demanded and charged as a result of its inflated U&C price was accurate; and

- failing to disclose to Plaintiffs that CVS was denying them the benefit of their insurance.

The evidence described here will vindicate these claims at trial. At a minimum, it precludes CVS from showing the absence of genuine issues of material fact or its entitlement to judgment as a matter of law.

**First**, **CVS made misrepresentations and omissions to Plaintiffs.** CVS used its HSP discount program as a pretext to offer discounts prices to cash customers, so as to compete with Wal-Mart and other big box stores, while at the same time maintaining inflated prices for insured customers like Plaintiffs – in effect, keeping "two sets of books." The Seventh Circuit characterized the very same pretextual conduct by Kmart, which had a discount offering functionally identical to CVS's HSP program, as a "flimsy . . . device" to avoid its contractual U&C reporting obligations. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 645 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 627 (2017).

Notably absent from CVS's motion is any discussion of the definitions of U&C present in all the contracts with the PBMs, which all refer to "cash" prices and require CVS to include all "applicable

---

[1] "Plaintiffs" refers to named plaintiffs Christopher Corcoran, Tyler Clark, Michael Norkus, Zulema Avis, Robert Garber, Toni Odorisio, Onnolee Samuelson, Robert Jenks, Debbie Barrett, Carl Washington, Vincent Gargiulo, Zachary Hagert, Carolyn Caine, Walter Wulff, Amanda Gilbert, and Gilbert Brown, and the proposed classes. Although certain plaintiffs and claims are not encompassed by the proposed revised class definitions in Plaintiffs' pending class certification motion [Dkt. No. 274], given that that motion is currently pending, Plaintiffs oppose CVS's summary judgment motion in its entirety, with respect to all plaintiffs and all claims. All Plaintiffs' at-issue transactions are identified in PX-769, the Jan. 27, 2017 Expert Rebuttal Report of Professor Joel W. Hay, Ph.D. ("Hay Rebuttal Rep."), at Ex. E. Similarly, all Plaintiffs' arguments in this opposition apply to the statutory UDAP and common law claims.

[2] Unless otherwise indicated, the term "PBMs" refers to Aetna, Caremark, Express Scripts, Medco, MedImpact, and Optum Rx / Prescription Solutions. Aetna properly is categorized as a PBM given its conduct relevant to this case. *See infra* fn. 63.

---

discounts."  Indeed, CVS admits it never included its HSP cash discount prices as its U&C prices.  By disregarding the plain and unambiguous contract language that required CVS to submit all cash discounts, including its HSP cash discount prices, as its U&C prices, CVS directly harmed Plaintiffs, and thus engaged in unfair and deceptive business practices: CVS charged Plaintiffs copayments higher than what they should have been had CVS obeyed the U&C definitions in the PBM contracts, and CVS never told Plaintiffs that they were not receiving the value of their insurance drug benefit or that cash customers were getting a better price.

CVS contends that it is nonetheless immunized from liability because the PBMs might have also disregarded the plain language of their contracts.  But, even if the PBMs did overlook CVS's ironclad obligations (which is disputed) it does nothing to negate CVS's liability to Plaintiffs under the consumer protection statutes at issue.  Plaintiffs are intended beneficiaries of the CVS-PBM contracts, and CVS's deceptive conduct denied them the benefits of those contracts' U&C pricing terms.  CVS and the PBMs' supposed (and belated) extracontractual "understandings" cannot alter the plain and unambiguous terms of their fully integrated contracts, and thereby disregard intended benefits for third parties.  Summary judgment thus is not warranted, legally or factually.

***Second***, **CVS's reliance arguments are legally and factually flawed.**  It is undisputed that none of the named Plaintiffs knew of the HSP program's existence, let alone CVS's failure to abide by the plain terms of its contracts with PBMs, prior to this lawsuit.  And while CVS contends that the third-party payors' ("TPPs") supposed knowledge of the HSP program and CVS's conduct is imputed to Plaintiffs, this argument is at odds with governing legal principles and unsupported by the facts.  CVS's continuing-purchases argument is similarly meritless.  Plaintiffs do not seek to recover for post-suit purchase overcharges, and in any event, a handful of post-suit purchases of medically-necessary prescriptions do not bar Plaintiffs and class members from recovering for CVS's earlier, wrongful overcharges.  At a minimum, CVS's reliance-related defenses raise triable issues, precluding summary judgment for CVS on this issue.

## STATEMENT OF FACTS

Plaintiffs all used their insurance to purchase one or more generic prescription drugs from CVS that CVS also offered to cash-paying customers at CVS's HSP discount cash prices – prices lower than

1   what CVS charged Plaintiffs for their at-issue transactions.[3] CVS's contracts with the PBMs contain

2   industry-standard "lower of U&C" pricing provisions that, as CVS senior vice president Thomas

3   Gibbons explained, "*ensure an individual at store level would never pay greater than the usual and*

4   *customary price.*"[4] CVS alone determines its U&C price according to a proprietary methodology, and

5   CVS alone is responsible for submitting its U&C price to PBMs when an insured makes a prescription

6   purchase.[5] Taking the U&C price as well as the other information CVS transmits, the PBM then

7   "adjudicates" (processes) the claim and transmits to CVS the amount of its reimbursement, including

8   the patient's share of the drug price.[6] The PBM uses the U&C price that CVS submits to limit the

9   patient's copayment to the reported U&C price.[7] CVS communicates, demands, and collects the

10  copayment from the patient, directly, at the counter.[8]

11          The U&C price is a standard, industry-wide term. The National Council of Prescription Drug

12  Programs ("NCPDP"), a pharmacy industry standard-setting organization that has established the claims

13  adjudication format CVS has used at all relevant times, defines U&C as the "[a]mount charged cash

14  customers for the prescription exclusive of sales tax and other amounts claimed."[9] CVS concedes that

15  "[t]he U&C price is an industry term meaning the cash price paid by the general public."[10] CVS's

16  internal documents offer similar definitions.[11] Consistent with the industry understanding, CVS's

17  contracts with the PBMs it discusses in its motion all contain definitions of U&C substantially similar

18  to the NCPDP definition and functionally identical to each other. Each contract defines U&C as a price

---

[3] *See supra* fn. 1.
[4] PX-806, Gibbons (TX) 61:23-62:8; *see also* PX-826, Colbert Dep. 184:8-185:9; PX-821, Ferschke Dep. 26:10-25; PX-827 Greenwood Dep. 70:10-17, 76:22-78:3; PX-808, Morrison Dep. 116:1-14. Emphasis added throughout unless otherwise noted.
[5] PX-801, CVS 1st Suppl. Resps. & Objs. To Pls.' RFA Nos. 7, 8.
[6] Aug. 12, 2016 CVS Answer to 3d Am. Compl. [Dkt. No. 144] ("Answer") ¶¶ 12, 48-49.
[7] PX-803, Amended and Supplemented Expert Declaration of Robert P. Navarro, Pharm. D. ("Navarro A&S Decl.") ¶¶ 20-24.
[8] *Id.* ¶ 17; Answer ¶¶ 11, 49.
[9] Answer ¶ 53.
[10] Dec. 4, 2015 CVS Mot. to Dismiss [Dkt. No. 56] at 15.
[11] PX-83, Health Savings Pass Reconciliation Process, at CVSC-0313152 ("Definitions: Usual and Customary (U&C): The amount that CVS Pharmacy charges to cash paying customers."); PX-240, Third Party Finance Glossary of Terms, at CVSC-0068458 ("U&C" – "The dollar amount a cash customer usually pays").

charged to "cash" customers or in "cash" transactions, including discounted cash transactions, and each limits CVS's reimbursement to the U&C price:

### CVS-PBM Contract Key U&C Terms

| PBM | U&C Definition | "Lower of U&C" Pricing |
|---|---|---|
| Aetna<br><br>PX-530 | "The **cash price less all applicable customer discounts** which Pharmacy usually charges customers for providing pharmaceutical services." [CVSC-03232840 | ███████████████<br>███████████<br>████████<br>██ [CVSC-0323805] |
| Caremark / PCS<br><br>PX-546 | "the lowest price the Provider would charge to a particular retail customer if **such customer were paying cash** for an identical prescription on that particular day. **This price must include any applicable discounts** offered to attract customers." [CVSC-0356419] | CVS will be reimbursed at █████<br>████████████ [CVSC-0356406] |
| Express Scripts<br><br>PX-532 | "'the usual and customary retail price' of a Covered Medication in a **cash transaction** at the Pharmacy dispensing the Covered Medication (in the quantity dispensed) on the date that it is dispensed, **including any discounts** or special promotions offered on such date." [CVSC-0325309] | CVS will ███████████<br>████████████<br>█████ [CVSC-0325311] |
| Medco<br><br>PX-677 (Contract)<br><br>PX-685 (Manual) | "The lowest net price a **cash patient or customer** would have paid the day the prescription was dispensed, **inclusive of all applicable discounts.**" [PX-685, at CVSC-0324430] | the amount of co-payment ███████<br>█████████████<br>██████████████<br>███████████<br>█████████ [PX-677, at CVSC0355816] |
| MedImpact<br><br>PX-676 | "the lowest price Member Pharmacy would charge to a **cash paying customer** at that location for an identical prescription on that day. This price must include **any applicable discounts**, promotions, or other offers to attract customers." [CVSC-0333838] | ███████████████<br>████████████<br>█████████ [CVSC-0333832] |
| Optum / Prescription Solutions | "the price that the Company Pharmacy would have charged the Member for the Prescription **if the Member was a cash customer. This includes all applicable** | ████████████<br>██████████████<br>████████████<br>██ [CVSC-0342357] |

| PX-541 | **discounts,** including but not limited to: senior citizen discounts, frequent shopper and special customer discounts, or other discounts." [CVSC-0342355] | |

**CVS's HSP prices were discounted prices charged to cash-paying customers, and therefore constituted U&C prices.**  As documents produced by CVS, the CVS contracts, industry standards, and expert opinions all establish, the HSP prices were discounted prices charged to cash customers, and therefore constitute CVS's U&C prices under both the general industry-wide U&C definition and the relevant contractual definitions.  Under the HSP program, CVS sold generic drugs at set "discount" prices to cash-paying customers.  CVS stated to this Court that a "*'cash' customer typically means a customer who purchases a drug without using insurance*."[12]  An HSP customer is a "customer who purchases a drug without using insurance," as the HSP enrollment form itself states that the program "is NOT health insurance" and cannot be used in conjunction with insurance.[13]  That same enrollment form informs prospective customers that the HSP program provides "*discounts*" on commonly prescribed drugs.[14]  In creating and launching the HSP program, CVS personnel, including some of its most senior executives, consistently described the HSP program as a ███████████████████████████ and indicated that the HSP program would be ███████████████████████████████ ████████████████████[15]  In its transaction data, CVS categorized its HSP program as a ██████ ██████████████.[16]  And CVS also grouped the HSP program in its █████████████████████"[17]

─────────────

[12] Dec. 4, 2015 CVS Mot. to Dismiss [Dkt. No. 56] at 15.  *See also* PX-816, Reichardt Dep. 24:22-24 ("Q. And what's a cash customer? A. A customer that is not using their insurance as a benefit.  And is paying with their own funds.").

[13] PX-629, HSP Enrollment Form at CVSC-0000091, 92, & 93 (emphasis in original).

[14] *Id.*, at CVSC-0000091 & 92.

[15] *See, e.g.,* PX-285, ████████████████████████████████████████, at 7; PX-40, ██████████████████████████████████████████████████████████ PX-60, ████████████████████████████████████████████ PX-42, ██████████████████████████████████████████ PX-14, ████████████████

[16] PX-803, Navarro A&S Decl. ¶ 53; PX-285, ███████████████████████████████ █████████ at 7.

[17] PX-28, ██████████████████, at CVSC-0049950.

─────────────

The HSP program was available throughout the country at any CVS store.[18]  A standard 90-day supply for nearly all HSP-eligible generic prescription drugs was $9.99 (November 2008-2010) and $11.99 (starting in 2011).[19]  The HSP program included over 400 generic prescription drugs, including some of the most commonly prescribed drugs for cardiovascular, allergy, and diabetes-related conditions.[20]  The HSP program was open to the general public, although CVS avoided promoting the program.[21]  Internal HSP documents state that ████████████████████████████████[22]  The only official requirement for a patient to enroll in the program was to fill out a form and pay a modest membership fee.[23]  From November 9, 2008 through 2010, cash paying customers could join the HSP program for a $10 annual fee, which was raised to $15 in 2011.[24]  CVS executives have described these fees as ████████[25]

CVS's transaction data show that even these *de minimis* membership criteria were not enforced. Professor Hay analyzed CVS's transaction data and found that nearly ████████ of HSP members did not pay the nominal membership fee for at least one of their membership years; CVS's collection of HSP fees in the aggregate was ██████ *less* than what it should have been.[26]  Even CVS's own expert, while conducting a different analysis, could not show any fee payment by as many as ████ of HSP members.[27]  Additionally, the company often charged the "HSP" prices to cash-paying customers who were not enrolled in the HSP program.  Professor Hay found that the HSP prices were among the

---

[18] PX-804, Dudley 30(b)(6) 229:14-230:3.
[19] A small subset of HSP drugs, such as antibiotics and women's health drugs, had different price-points. Answer ¶ 62; PX-805, HSP program formularies.
[20] Answer ¶ 62; PX-805, HSP program formularies.
[21] PX-58, Feb. 11, 2008 Bessant email to Morrison re Update on Morning Meetings; PX-59, Feb. 22, 2008 Morrison email re Slide Changes; PX-807, Morrison [TX] 100:16-22.
[22] PX-47, ████████████████████████████████ [at CVSC-0222898]; *see also* PX-807, ██████████████████
[23] PX-804, Dudley 30(b)(6) 234:21-235:4.
[24] Answer ¶ 62.
[25] PX-42, ████████████████████████████; PX-806, Gibbons (TX) 214:8-215:20.
[26] PX-769, Hay Rebuttal Rep. ¶ 27.
[27] *Id.* ¶ 28.

---

most common prices that CVS charged to cash customers, inside or outside of the program.[28] ████

████████████████████████████████████████████████████████████████████[29]

The broad availability of the HSP prices and the lack of uniform fee collection demonstrate that the so-called HSP "program" prices were "usual and customary" cash prices, available to anyone entering a CVS store. But by its own admission, CVS has never submitted its HSP prices as its U&C prices.[30]

      **CVS always knew its HSP prices qualified as U&C prices.** CVS was aware of, and concerned about, the prospect that its HSP program prices should be reported as its U&C prices, and the negative impact it would have on CVS's profits.

- ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████[31]

- Similarly, █████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████ ██ ████████████████████████[32]

- ████████████████████████████████████████████████████
████████████████████████████████[33]

- ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[28] PX-809, Oct. 3, 2016 Expert Declaration of Prof. Joel W. Hay, Ph.D. ("Hay Decl.") ¶ 40 & Table 3; PX-810, Jan. 9, 2017 Expert Rebuttal Declaration of Prof. Joel W. Hay, Ph.D. ("Hay Rebuttal Decl.") ¶ 19 & Table 2.

[29] PX-810, Hay Rebuttal Decl. ¶ 19.

[30] Answer ¶ 71; *see also id.* ¶¶ 13, 65.

[31] PX-66, ██████████████████████████████████████ at CVSC-0222986.

[32] PX-11, ██████████████████████████ at CVSC-0001263.

[33] PX-239, ███████████████████████████

1  ██████████████████████████████████████████████████████████

2  ████████████████████████████████████████.[34]

3  • After Connecticut instructed CVS to report its HSP price as its U&C price for state Medicaid

4  claims, ████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████.[35]

7  • CVS hired a vendor, ScriptSave, to administer the HSP program. ████████████████

8  ██████████████████████████████████████████████████████████

9  ████ ██ ████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████

11  ████████████████████████████████."[37]  After receiving these materials,

12  CVS hired ScriptSave to run the program.

13  • ██████████████████████████████████████████████████████████

14  ██████████████████████████████████████.[38]

15  ██████████████████████████████████████

16  ██████████████████████████████████████

17  ██████████████████████████████████████

18  ██████████████████████████████████████

19  **CVS's claimed "understanding" with the PBMs is factually and legally deficient and**

20  **immaterial to Plaintiffs' liability theory.**  CVS now claims it had an informal understanding with the

21  PBMs that allowed it to treat its HSP discount cash prices as an unwritten exception to the contractual

22  requirements that all applicable discounts be included in CVS's reported U&C prices.  These defense

23  witnesses assert that the supposed membership features of the HSP program removed it from the

[34] PX-36 (*E.g.*, CVSC-0222535, -536, -540, -545, -546, & -550).
[35] PX-242, ████████████████████████████████████ at CVSC-0145836.
[36] PX-251, ████████████████████████████████████████████
[37] PX-163 & 164, ████████████████████████████, at CVSC-0319526.
[38] PX-254, ████████████████████████████, at CVSC-0341635.

definitions of a U&C price.  But neither the general industry standard nor the specific contractual definitions of U&C support this assertion.[39]  The witnesses themselves admit this.  For example, Amber Compton of Express Scripts, admitted that the plain language of both the Express Scripts-CVS contract, as well as the Express Scripts provider manuals, do not exclude a program like the HSP program from the definition of U&C pricing.[40]  Other witnesses testified similarly.[41]  These witnesses also:

- did not explain how they might have personal knowledge of the features of CVS's HSP program or the PBMs' understanding of their contracts with CVS, and instead offered only unverified hearsay and speculation;

- admitted that they lacked information about the nature of CVS's HSP program and cash pricing, including the fact that CVS routinely offered the HSP prices to non-HSP members;

- agreed that if CVS was offering the HSP prices outside of the program, then CVS needed to submit those prices as its U&C prices; and

- lacked contemporaneous documentation supporting their statements.[42]

Putting aside the infirmities of CVS's "evidence" regarding the PBMs, it is immaterial to Plaintiffs' statutory and common law claims, and specifically the UDAP claims that Plaintiffs seek to certify in their amended class certification motion.  Any informal, undocumented "understanding" between CVS and the PBMs does not negate the plain meaning of the contractual U&C definitions.

---

[39] Unlike the great majority of CVS's contracts (including those at issue here), a few of CVS's contracts actually expressly exclude discount card programs from the definition of a U&C price.  *See, e.g.*, PX-20, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  PX-335, at CVSC-0355496-97 ████████████████████████████████████████████████████████ *see also id.* at CVSC-0355505 (2012 revision) (same).  These facts confirm that absent such exclusions, HSP discount cash prices constitute U&C prices under typical contractual definitions.

[40] PX-812, Compton Dep. 66:5-68:3.

[41] PX-819, Barre Dep. 67:15-68:21 ("Q. As written, the definition of 'usual and customary price' does not contain an exception for discounts, promotions, or offers that involve a membership program? A. I was reading that here.  I don't see membership listed in there, yes.")

[42] PX-813, Pls.' Chart of PBM Witness Testimony; *see also infra* Objections to Evidence.

---

1     CVS cannot evade its independent obligations to its customers who are third-party beneficiaries of fully

2     integrated contracts—contracts with the express, intended purpose of providing for how those customers

3     were to purchase prescriptions from CVS, and at what prices.[43]  CVS's own expert, Edward McGinley,

4     testified that pharmacy customers like Plaintiffs have "limited insight into the processes that occur

5     'behind the scenes' when they have a prescription filled at their local retail pharmacy," and this lack of

6     insight includes U&C pricing.[44]  CVS has no evidence it informed the Plaintiffs about the existence of

7     the HSP program, let alone that it was charging them inflated copayments (by excluding its HSP prices

8     from its submitted U&C prices), or that CVS and any PBM agreed CVS could do so.[45]  Nor does the

9     plain language of the contracts permit that interpretation.  By engaging in this wrongful conduct, CVS

10     overcharged each Plaintiff on one or more copayments that exceeded CVS's true U&C price.[46]

**LEGAL STANDARDS**

12        The Court's role at summary judgment "is not to weigh the evidence and determine the truth of

13     the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

14     477 U.S. 242, 249 (1986).  "[C]ourts may not resolve genuine disputes of fact in favor of the party

15     seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).  Rather, "evidence of the

16     non-movant is to be believed," and all reasonable inferences must be drawn in the light most favorable

17     to that nonmoving party.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007) (quoting

18     *Anderson*, 477 U.S. at 255).  "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving

19     party, summary judgment must be denied."  *Id.* (citation omitted).

**ARGUMENT**

21   **I.    CVS IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THE RECORD EVIDENCE SHOWS**

22       **CVS MADE DIRECT MISREPRESENTATIONS AND OMISSIONS TO PLAINTIFFS REGARDLESS OF THE PBMS' SUPPOSED "UNDERSTANDING" OF THE CONTRACTS' U&C PROVISIONS.**

23        At trial, Plaintiffs will use the plain language of CVS's contracts, as well as contemporaneous

24     documents and witness testimony, to prove that CVS violated, in each instance, the substantially

---

[43] *See supra* Chart of CVS-PBM Contract Key U&C Terms and cited exhibits.

[44] PX-623, Edward G. McGinley Declaration ¶ 10; PX-814, McGinley Dep. 42:21-24.

[45] PX-801, May 10, 2017 CVS 1st Supp. Resps. To Pls.' Reqs for Admission Nos. 58-59, 116.

[46] PX-810, Hay Rebuttal Decl. ¶ 40 & Ex. D; PX-800, Hay A&S Decl. ¶¶ 10, 20 & Tables 1-2; PX-803, Navarro A&S Decl. ¶¶ 72-77.

---

identical U&C provisions and thereby supplied inaccurate and inflated copayment information to Plaintiffs at the point of sale.  As intended third-party beneficiaries of CVS's contracts with PBMs, Plaintiffs are entitled to seek restitution and damages for the harm caused by CVS's misrepresentations to Plaintiffs regarding the accuracy of the copayments it charged and collected from them and by its failure to inform them that it was denying them the benefits of their insurance.  CVS and its counterparties' supposed extracontractual, undisclosed "understanding" to disregard the plain language of their contracts – even if that is actually what happened, which is factually suspect – is not relevant to CVS's liability to Plaintiffs for its unfair and deceptive practices.

### A.    The Plain and Unambiguous Language of CVS's Contracts Required CVS to Report the HSP Price as the U&C Price.

At a minimum, the evidence raises a triable issue of fact that under the plain terms of CVS's contracts the HSP prices constitute U&C prices.  Each of CVS's relevant contracts contains a materially identical U&C definition: each defines the U&C as a cash price (the price paid by a cash-paying customer), and each requires that CVS include in its submitted U&C price all applicable discounts.  Those contracts *do not* exclude HSP or similar discount programs, as even CVS must concede.  And the remaining evidence – from CVS's own court statements, its own documents, data, and witnesses, and expert testimony – shows that the HSP prices qualify as U&C prices under these materially uniform definitions.

| Elements of U&C from Relevant Contracts | Evidence HSP Meets U&C Definition |
| --- | --- |
| Price paid by cash-paying customer | • A "'cash' customer typically means a customer who purchases a drug without using insurance."  HSP is not insurance, and HSP customers do not use insurance when making HSP purchases. |
| | • CVS documents and data referred to HSP program as a "cash" program. |
| | • CVS internally grouped the HSP as part of its cash business. |
| | • HSP prices were CVS's most common cash prices paid by HSP and non-HSP cash customers. |
| Including applicable discounts | • CVS program enrollment form indicates HSP offers "discounts." |
| | • CVS categorized the HSP program as a "cash discount" program. |
| | • HSP discount prices were "applicable" to the relevant drugs on which Plaintiffs sue, as all were offered through the HSP program. |

*See supra* Stmt. of Facts at 5-8. Several CVS and PBM witnesses admitted that the contractual U&C definitions, on their face, say nothing about the HSP exclusion that CVS now claims was in effect.

In an attempt to justify its disregard of the contracts, CVS distorts this Court's decision in *Intl. Ins. Co. of Hannover v. ACW Constr., Inc.*, 2015 WL 6954962, at *3 (N.D. Cal. Nov. 10, 2015). Extracting only the language that courts must give effect to the contracting parties' mutual intent, Mot. at 15, CVS ignores the Restatement's and this Court's broader instruction that the starting point – and the ending point, where the language is clear – is the contract itself:

> "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *Id.*; Cal. Civ. Code § 1636. ***That mutual intention, where possible, should be inferred exclusively from the written provisions in the contract.*** Cal. Civ. Code § 1639; *Waller*, 11 Cal. 4th at 18; *Gemini Ins. Co. v. Delos Ins. Co.*, 211 Cal. App. 4th 719, 722 (2012). "***The clear and explicit meaning of those provisions, interpreted in their ordinary and popular sense, controls.*** *Gemini*, 211 Cal. App. 4th at 722. ***Where the contractual language is clear on its face, the analysis stops there and goes no further.*** Cal. Civ. Code §§ 1638-39; *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392-93 (2006).

2015 WL 6954962, at *3. Here, the "clear and explicit meaning of th[e CVS-PBM contract] provisions, interpreted in their ordinary and popular sense, controls." *Id.* Under any "ordinary or popular" reading of these U&C definitions, the HSP price qualified as a U&C price. The provisions could not be clearer.

What is more, the contemporaneous evidence from CVS's internal emails and presentations also show CVS's acknowledgment that its contracts required HSP prices to be submitted as the U&C price:

**CVS Internal Documents Expressed Awareness That HSP Prices Constituted U&C Prices**

- ███████████████████████████████████████████████
- ███████████████████████████████████████████████ ███████████████████████████████
- ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████
- ███████████████████████████████████████████████ ███████████████████████████████████████

---

- ████████████████████████████████████████████████
████████████████████████████

*See supra* Stmt. of Facts at 7-8.  CVS's concerns that the HSP price constituted the U&C price across its business underscores that the definitions of U&C across CVS's contracts are the same and that their plain terms encompassed the HSP program.  Further, it belies CVS's current stance that there was any sort of industry-wide consensus that cash prices offered under programs such as the HSP program were not U&C prices.  And despite its current litigation posture, CVS knew it could calculate the financial impact of submitting or not submitting the HSP price as its U&C price, and that there were neither varying terms of contracts nor specifics of insurance plan designs preventing such calculations. ████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████

**B.      The Parol Evidence Rule Precludes CVS's Flawed Evidence of Any Extracontractual Understandings It Had With The PBMs.**

Despite this plain, unambiguous, and mandatory contractual language – conspicuously absent from CVS's brief – CVS now claims that the contracts do not mean what they say.  According to CVS, it was entitled to ignore HSP in reporting its U&C because the PBMs allegedly "knew about HSP, knew that the HSP price was $9.99 (and later $11.99), and knew that CVS was not submitting the program price as its U&C."  Mot. at 12.  But CVS makes no effort to explain why that casual "understanding" was not memorialized in any of the CVS-PBM contracts, even though, according to CVS, PBMs had understood for years that discount programs like HSP did not affect U&C.  *Id.* at 13-14.[47]  Tellingly, in arguing that the "HSP price fell outside the contract definition of U&C price," Mot at 12, CVS does not even discuss the ***U&C definitions in the contracts.***  Instead, CVS merely quotes testimony from certain defense witnesses about what they thought the contracts meant.  *See id.* at 12-13.

---

[47] Nor does CVS explain why – if this understanding were so prevalent – CVS in some instances subsequently amended its contracts to exclude discounts such as HSP expressly from the U&C price, and sought to do so as a matter of course.  *See supra* fn. 40.

1    But the parol evidence rule prohibits CVS from relying on extrinsic evidence **contradicting** the

2    express and unambiguous provisions in the contracts.[48]   The rule's prohibition on the use of extrinsic

3    evidence must be construed even more strictly here, because each of the relevant contracts includes an

4    integration clause and is therefore a fully integrated written agreement.[49]   To be considered at all, the

5    Court would have to first decide that the plain language of the contracts is ambiguous and "reasonably

6    susceptible" to the alternative, unwritten oral understanding CVS urges.  As shown above, CVS cannot

7    clear this first hurdle, but even assuming *arguendo* the Court found otherwise, CVS still cannot meet its

8    burden.  Whether parol testimony may vary, contradict, or explain ambiguities of the PBM contracts is

9    a disputed issue of fact the jury must decide a trial:  these issues *cannot be decided* as a matter of law or

10   on summary judgment.  *Sussex Fin. Enters.*, 2010 WL 2867724, at *10.

11   Recognizing its fatal parol evidence problem, CVS suggests that the rule does not apply where

12   a non-party seeks to enforce the contract.  Mot. at 15, n.6.  But the cases cited by CVS indicate only that

13   a complete "stranger" to a contract cannot rely on the parol evidence rule.  Plaintiffs are far from

14   strangers to the CVS-PBM contracts – they are intended beneficiaries.  Plaintiffs are thus "entitled to

15   invoke all defenses available to the parties, including the parol evidence rule." *Lemke v. Sears, Roebuck*

16   *& Co.*, 853 F.2d 253, 255 n.4 (4th Cir. 1988); *see also ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1097

17   (N.D. Cal. 2006) (a third party beneficiary is not a "stranger" to a contract); 11 Williston on Contracts

18   § 33:11 (4th ed.) ("Notwithstanding broad statements that the parol evidence rule does not apply to

19   strangers to the contract, it is generally agreed that the parol evidence rule will apply when the third

20   party attempts to assert rights or claims based on the instrument.").[50]

21

22   [48] *See LaSalle Nat. Bank v. Gen. Mills Rest. Grp., Inc.*, 854 F.2d 1050, 1052 (7th Cir. 1988) (Posner, J.);

23   *see also First Marblehead Corp. v. House*, 473 F.3d 1, 7 (1st Cir. 2006) (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *Cheval Farm, LLC v. Chalon*, No. CV-11-00043-TUC-JGZ, 2013 WL 11826543, at *3 (D. Ariz. Sept. 13, 2013); *Sussex Fin. Enters, Inc. v.*

24   *Bayerische Hypo-Und Vereinsbank AG*, No. 08-4791 SC, 2010 WL 2867724, at *10 (N.D. Cal. July 20, 2010), *aff'd*, 460 F. App'x 709 (9th Cir. 2011); *Mun. Capital Appreciation Partners, I, L.P. v. Page*,

25   181 F. Supp. 2d 379, 391-92 (S.D.N.Y. 2002).

26   [49] PX-530 Aetna; PX-546 Caremark; PX-532 Express Scripts; PX-677 Medco; PX-676 MedImpact; PX-541 Optum/Prescription Solutions.

27   [50] *See also Dunfee v. Newark Shopping Ctr. Owner LLC*, No. CV N14C-12-031, 2016 WL 639556, at

28   *3 (Del. Super. Ct. Feb. 16, 2016) (finding that "parol evidence cannot be used to vary or contradict the clear and unambiguous terms of a contract" in the context of third-party beneficiary claim); *Suciu v.*

## C.   Plaintiffs Are Intended Beneficiaries of CVS's Contracts With The PBMs.

All of the state laws governing the interpretation and enforcement of CVS's contracts with the PBMs[51] recognize the right of a non-party to enforce the contract if that non-party is an intended beneficiary of the contract.[52]   There is no question that Plaintiffs (referred to as the ███████████ ████████████████████████████████████████████████ are intended beneficiaries of those contracts.   The very purpose of these contracts is to provide the terms and pricing under which CVS customers purchase prescription drugs.   And as explained above, specific language in these contracts provides that customers are not to pay more than CVS's U&C price.   *See supra* Stmt. of Facts at 4, CVS-PBM Contract Key U&C Terms.

In *Jajco*, the court held that an independent pharmacy that contracted with a pharmacy service administrative organization (PSAO) in order to participate in that PSAO's network of pharmacy benefit plans was entitled to sue one of the participating PBMs as a third-party beneficiary of the PSAO-PBM contract.   2013 WL 2403593, at *5.   As the court explained, various provisions in the PSAO-PBM contract demonstrated the parties' intent to benefit third party pharmacies such as the plaintiff, even though it was not named in the contract.   *Id*. at *7-8.   Even more than in *Jajco*, CVS and the PBMs' intent to benefit Plaintiffs is evident, as Plaintiffs fall within the contractual definition of ███████

---

*AMFAC Distrib. Corp.*, 675 P.2d 1333, 1338 (Ariz. Ct. App. 1983); *Roth v. Meeker*, 389 N.E.2d 1248, 1256 (Ill. App. Ct. 1979) ("Where a third person, not a party to the contract, bases his case upon it, and seeks to enforce it, the parol evidence rule applies."); *Oxford Comm. Corp. v. Landau*, 190 N.E.2d 230, 231 (N.Y. 1963) ("[I]n the case of a fully integrated agreement, where parol evidence is offered to vary its terms, the rule operates to protect all whose rights depend upon the instrument even though they were not parties to it.").

[51] ██████ ███████ █████ ████████ ███████ ████ ████████ ██████ █████ ███████ ████████ ████████████████████████████████████████████████████████████ which are enforceable under California law.   *Gen. Signal Corp. v. MCI Telecommns. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) (California courts "ordinarily will enforce" choice-of-law provisions); *Boracchia v. Biomet, Inc.*, No. C-07-0650, 2008 WL 512721, at *3 (N.D. Cal. Feb. 25, 2008) (same).

[52] *See* Cal. Civ. Code § 1559; *Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 WL 2403593, at *5 (N.D. Cal. May 31, 2013); *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 938 N.E.2d 577, 581-82 (Ill. Ct. App. 2010); *Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 153 (D. Del. 2003); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 79 (N.Y. App. Div. 1980); *Basurto v. Utah Const. & Min. Co.*, 485 P.2d 859, 863 (Ariz. Ct. App. 1971).

---

1    ███████████████████████████████████████████.  *Id.* at *5 (Plaintiffs are members of

2    the "class for whose express benefit the contract was made." (quotation omitted)).

3           Nor can CVS avoid the express contractual intent to benefit Plaintiffs by relying on the third-

4    party beneficiary disclaimers found in four of the six contracts.[53]  A contractual provision generally

5    disclaiming third-party liability will not be enforced where, as here, the same contract elsewhere

6    evidences a clear intent to benefit a third party.[54]  In *Jajco*, for example, the court upheld the plaintiff's

7    third-party beneficiary claims despite the presence of a term providing that nothing in the agreement

8    was "intended or shall be construed to confer upon any person or entity (including Participating

9    pharmacies . . . any rights or remedies").  2013 WL 2403593, at *5.  And the unenforceability of general

10   disclaimers is all the more true in the UDAP context, where parties cannot contract around the broad

11   statutory protections that state legislatures have created to safeguard consumers.[55]

12   ───────────────────────────────

13   [53]  Only four of the contracts contain such disclaimers: Caremark/PCS (Ariz.), Medco (N.Y.),
     Optum/Prescription Solutions (Cal.), and MedImpact (Ill.).  CVS's contracts with Express Scripts and

14   Aetna lack such disclaimers; CVS in fact highlights language in those agreements indicating insureds
     are intended beneficiaries on CVS's collection of copayments from the insureds.  *See* DX-448.

15   [54]  *See, e.g.*, *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003) (under
     Illinois law, a disclaimer will not be enforced if a separate contractual provision expressly confers an

16   intended benefit and the circumstances surrounding the contract's execution supported the intention);
     *Jajco,* 2013 WL 2403593, at *4–8 ("Under Ninth Circuit authority [and California law], a third party

17   may enforce a contract as a third party beneficiary despite a general contractual disclaimer where there
     is evidence that the parties to the contract intended to benefit third parties."); *O & G Indus., Inc. v. Aon*

18   *Risk Servs. Ne., Inc.*, 922 F. Supp. 2d 257, 266 (D. Conn. 2013) ("[The defendant] argues that [plaintiffs]
     cannot be third party beneficiaries because the Service Agreement includes an explicit disclaimer against

19   third party beneficiaries. However, the provision in the Service Agreement cannot be read in isolation.
     . . . [T]he court concludes by a preponderance of the evidence before it that the Service Agreement does

20   not preclude their third party status."); *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActivecorp*,
     82 A.D.3d 421, 422 (N.Y. App. Div. 2011) (boilerplate disclaimer unenforceable in light of clear

21   language benefiting plaintiff); *Faulkner, USA, Inc. v. Durrant Grp., Inc.*, No. CV-11-08086, 2013 WL
     11834262, at *5 (D. Ariz. May 30, 2013) (disclaimer can "be modified or overcome by . . . other terms"

22   that express clear intent to benefit third parties); *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681
     P.2d 390, 425 (Ariz. Ct. App. 1983) (citing 3 Corbin on Contracts § 547).

23   [55]  *See, e.g.*, *Powers v. Guar. RV, Inc.*, 229 Ariz. 555, 561 (Ct. App. 2012) ("The [CFA] is designed to

24   root out and eliminate unlawful practices in merchant-consumer transactions. Given the broad remedial
     purpose of the CFA, we do not accept Guaranty's argument that, notwithstanding its direct merchant-

25   consumer relationship with Powers, it may contractually disclaim all liability under the CFA for
     misrepresentations it conveyed to Powers. Allowing boiler-plate disclaimers of this nature to absolve all

26   liability would render the protections afforded by the CFA a nullity." (internal citations and quotations

27   omitted)); *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 548 N.E.2d 182, 187, (Mass. 1990) ("A

28

───────────────────────────────

**D.    CVS Violated State Consumer Protection Statutes by Misrepresenting to Plaintiffs the Accuracy of the Copayments Demanded and by Failing to Inform Plaintiffs that it was Denying them the Benefit of their Insurance.**

Ultimately, CVS's (disputed) claim that it made no misrepresentations *to the PBMs* is immaterial.  CVS made direct misrepresentations to Plaintiffs in violation of the consumer protection statutes of California, Arizona, Florida, Illinois, Massachusetts and New York.[56]  In every transaction in which CVS demanded and collected a copayment from Plaintiffs, at the point of sale, greater than the HSP price, CVS (1) violated the plain and unambiguous definitions of U&C in its contracts by excluding its HSP prices from its U&C prices; (2) misrepresented to insured patients, at the point of purchase, that they were receiving accurate co-payment information (which necessarily reflected CVS's decision not to report HSP prices as U&C prices); and (3) failed to inform those same insured patients that they were not receiving the benefits of their insurance drug benefits. *See supra* Stmt. of Facts. 9-10

Courts in each of the relevant states have recognized that a breach of contract can, when coupled with unfair or deceptive conduct of the sort alleged here, constitute a violation of the consumer protection statute.[57]  And in California, Delaware, Arizona, and Connecticut, courts have expressly held that third-party beneficiaries may pursue consumer protection claims arising from a violation of their

---

statutory right may not be disclaimed if the waiver could do violence to the public policy underlying the legislative enactment. Thus, we ordinarily would not effectuate a *consumer's* waiver of rights under c. 93A." (internal citations and quotations omitted)).  *See also Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208 (App. Div. 2010) (citing *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662 (N.Y. 1999)); *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 794 (Ill. App. Ct. 2008); *MJS Music Publications, LLC v. Hal Leonard Corp.*, No. 806CV488T30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006).

[56] CVS incorrectly asserts that the gravamen of Plaintiffs' complaint is that CVS *misled the PBMs*. Mot. at 11-12.  In fact, Plaintiffs' TAC alleges, among other things, that CVS violated the consumer protection statutes by making misrepresentations to Plaintiffs, by concealing from Plaintiffs the true U&C prices of the generic prescription drugs, and wrongfully obtaining monies from them.  TAC ¶¶ 129, 140, 148.

[57] *See, e.g.*, *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) ("[P]laintiff has properly pleaded a breach of contract claim, which could constitute an unfair business practice within the scope of the UCL."); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003) *Bristol Vill., Inc. v. Lousiana-Pac. Corp.*, 170 F. Supp. 3d 488, 500 (W.D.N.Y. 2016); *Winans by & through Moulton v. Emeritus Corp.*, No. 13-CV-03962-SC, 2014 WL 970177, at *8 (N.D. Cal. Mar. 5, 2014); *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012); *Whiting v. Freightliner, Sterling, W. Star of Ariz., Ltd.*, No. 1 CA-CV 08-0626, 2009 WL 2136759, at *4 (Ariz. Ct. App. July 16, 2009); *Petri v. Gatlin*, 997 F. Supp. 956, 967–68 (N.D. Ill. 1997).

---

rights under the contract.[58]  Further, five of the relevant states prohibit acts or practices that are unfair.[59]  Under those laws, an act or practice is "unfair" if it: (1) offends public policy (including the public policy that favors protection of consumers); (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers (or competitors or other businesses) that cannot be reasonably avoided and the injury is not outweighed by countervailing benefits to consumers.[60]  Thus CVS's disregard for its contracts while knowing it was overcharging Plaintiffs and depriving them of the benefits of their insurance violates these statutes – even if CVS had not made any direct misrepresentations or omissions (which it did).

### E.    CVS's Supposed Evidence About The PBMs Is Defective.

At summary judgment, parties must set out facts they will be able to prove at trial.  "While the evidence presented . . . does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citations omitted).  *See also* Fed. R. Civ. P. 56(c)(4) ("an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  The Court may disregard testimony "that states only conclusions and not facts that would be admissible evidence."  *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th

---

[58] *See Murray v. Farmers Ins. Co. of Ariz.*, 366 P.3d 117, 128-29 (Ariz. Ct. App. 2016), *review dismissed* (Dec. 16, 2016); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *31 (N.D. Cal. May 27, 2016); *Ensign Yachts, Inc v. Arrigoni*, No. 09-CV-209, 2010 WL 918107, at *15 (D. Conn. Mar. 11, 2010); *Thomas v. Harford Mut. Ins. Co.*, No. CIV.A. 01C-01-046 HD, 2003 WL 220511, at *3 (Del. Super. Ct. Jan. 31, 2003). Other states have also held that third-party beneficiaries can bring consumer-protection claims arising out of a breach. *See Murray*, 239 Ariz. at 69 (collecting cases from Washington, the District of Columbia, and Texas). The remaining states would reach the same conclusion under their existing third-party beneficiary law when paired with those states' recognition that parties to a contract may pursue UDAP claims.
[59] Arizona, California, Florida, Illinois, and Massachusetts also prohibit "unfair" acts or practices.  Ariz. Rev. Stat. § 44-1522; Cal. Bus. & Prof. Code §§ 17200; Cal. Civ. Code § 1770(a); Fla. Stat. § 501.204(1); Ill. Comp. Stat. Ch. 815 § 505/2; Mass. Gen. Laws Ch. 93a § 2(a).
[60] *See Clinical Tech, Inc. v. Covidean Sales, LLC*, No. CV 14-12169-PBS, 2016 WL 3360481, at *13 (D. Mass. June 16, 2016); *Newton v. Am. Debt Servs. Inc.*, 75 F. Supp. 3d 1048, 1062, n.13 (N.D. Cal. 2014); *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd*., 871 F. Supp. 2d 763, 769 (N.D. Ill. 2012); *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007) .

---

Cir. 2015); *see, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (holding the court properly disregarded a declaration where the declarant did not have personal knowledge of the facts included).

       While CVS's motion relies almost entirely on testimony that is irrelevant to Plaintiffs' claims, CVS has also not shown it would even be able to furnish admissible evidence to support its positions. As an initial matter, CVS's motion is premised on testimony barred by the parol evidence rule because it is extrinsic to the fully-integrated PBM contracts at issue.[61]  Additionally, the proffered testimony is not what CVS purports it to be – i.e., competent testimony of a PBM's understanding of its contracts. Six of the seven declarants CVS uses to support its motion[62] expressly disclaimed that they had authority to bind or were testifying on behalf of a PBM.  Most significantly, these witnesses' testimony lacks foundation as to how they have personal knowledge of the contracts at issue, *the PBMs'* actual understanding of those contracts, or the features of CVS's HSP program.  The PBM witnesses are not signatories to the PBM contracts at issue, were not involved in negotiating their terms, and do not otherwise demonstrate first-hand knowledge of the matters addressed by their testimony, such as the features of the HSP program.  In many instances, these witnesses admitted they lacked knowledge of these subjects.  These deficiencies render the testimony inadmissible under Fed. R. Evid. 602 (lack of personal knowledge).   And to the extent the witnesses claim to have such information from conversations with CVS, such evidence is hearsay.  Fed. R. Evid. 802.  CVS's current evidence does not lay the foundation to show that these witnesses have personal knowledge to provide admissible testimony about the PBMs' understandings of the relevant contracts related to CVS's HSP program.  As such, this testimony is not competent summary judgment evidence.

       Plaintiffs' specific objections to CVS's proffered evidence appear below.

---

[61] *See supra* Argument § I.B.

[62] Amber Compton (Express Scripts); Michael Reichardt (Optum); Franceen Spadaccino (MedCo); William Strein (MedCo); William Barre (MedImpact); and Joseph Zavalishin (Aetna).

| Testimony Cited | Plaintiffs' Objections |
|---|---|
| SF 15, 27, 34, 37, 38, 40-48, 50-52, 66-70, 75: J.Zavalishin Decl. [DX-321];  Dep. [PX-815]  14:7-15:14; 39:5-15; 40:8-14; 41:3-9; 52:21-54:14; 55:15-56:16; 85:6-86:2; 87:2-89:11; 140:14-144:16 | Zavalishin's testimony about Aetna's agreement or understanding of its PBM contract with CVS is: (1) parol (extrinsic) evidence barred by the parol evidence rule ("Parol Evid."); (2) lacks foundation as how he has personal knowledge of such facts (FRE 602) ("Lacks P.K."); and (3) based on hearsay (FRE 802) ("Hearsay"). PX-815 [Zavalishin Dep.] at 9:21-10:14; 12:10-21; 13:3-7; 90:18-91:3; 120:18-24; 121:18-22 (testified he was not a representative of Aetna and could not speak on behalf of Aetna). |
| SF 15, 34, 35, 37, 38, 40-44, 52, 55, 56, 72.: A. Compton Decl. [PX-618]; Compton Dep. [PX-812] 19:16-22:4; 20:14-22:4; 52:19 -53:6; 56:12-57:1; 91:6-19 | Compton's testimony about Express Script's agreement or understanding of its PBM contract with CVS is inadmissible: (1) Parol Evid.; (2) Lacks P.K.; (3) Hearsay. PX-812 [Compton Dep.] at 12:17-13:12;  15:1-18:1; 19:3-9; 21:19-11; 59:15-60:7 (testimony solely her opinion and does not know if supervisors shared her opinion; cannot speak for Express Scripts); 10:5-12 (not in relevant department from 2010-12); 16:4-17:8; 19:3-9 (never spoke to anyone at Express Scripts about HSP); 21:19-22:11; 44:5-46:16; 47:22-48:14; 54:10-55:12; 56:12-57:9; 59:15-60:7. |
| SF 15, 34, 42, 43, 52, 62, 63, 72: M.Reichardt Decl. [PX-691]; Reichardt Dep. [PX-816] 74:16-21; 201:22-203:4; 205:3-16; 205:24-206:10; 206:22-207:13; 222:5-224:9 | Reichardt's testimony about Optum's agreement or understanding of its PBM contract with CVS is inadmissible: (1) Parol Evid.; (2) Lacks P.K.; (3) Hearsay. PX-816 [Reichardt Dep.]  at 13:7-23;  16:23-17:7;  25:15-26:10; 28:22-29:1; 29:17-25; 30:23-31:15; 32:5-7; 35:6-36:9; 267:5-9 (did not work for Optum until July 2015), 108:25-109:2 (does not know how Optum interpreted relevant 1999 Optum-CVS contract); 34:1-7 (had not heard of term U&C in pharmacy context until July 2015); 34:24-35:18; 81:19-82:18 (did not discuss the Jan. 2015 Optum-CVS contract with anyone or participate in its negotiation; did not participate in any CVS contract negotiation until Jan. *2017*). |
| SF 15, 34, 38, 44, 59, 60, 78: F. Spadaccino Decl. [PX-663]; F. Spadaccino  Dep. [PX-817] 35:3-14; 37:21-38:7; 70:18-74:8; 73:10-74:8 | Spadaccino's testimony about Medco's agreement or understanding of its PBM contract with CVS is inadmissible: (1) Parol Evid.; (2) Lacks P.K.; (3) Hearsay. PX-817 [Spadaccino  Dep.]  at  9:9-20;  13:15-14:6;  20:22-23 (discussing job duties); 22:13-23:4; 32:8-33:20; 34:1-25; 34:19-25; 35:3-37:17; 38:8-14. |
| SF 15, 34, 37, 38, 40-44, 52, 59, 60: W. Strein Decl. [PX-662];  Strein Dep. [PX-818] 74:24-75:13; 88:15-91:3; 91:7-94:22; 150:1-150:14; 151:15-20 | Strein's testimony about Medco's agreement or understanding of its PBM contract with CVS is inadmissible: (1) Parol Evid.; (2) Lacks P.K.; (3) Hearsay. PX-818 [Strein Dep.] at 9:23-10:16 (Decl. prepared by CVS counsel); 11:6-9  12:4-12;  13:16-21;  14:10-15:3;  87:20-88:14; 102:18-103:21; 104:16-105:11 (has no idea if discussion re: HSP resulted in a change of Medco policy, or if supervisors knew of or approved it; never saw the policy change in writing); 156:9-23 (a letter is not enough to evidence policy change). |
| SF 15, 34, 37, 38, 40-44, 48, 52, 53, 64, 65: W. Barre Dep. [PX-819] 10:12-11:21; 23:24-33:19; 34:1-35:8 | Barre's testimony about MedImpact's agreement or understanding of its PBM contract with CVS is inadmissible: (1) Parol Evid.; (2) Lacks P.K.; (3) Hearsay. PX-819 [Barre Dep.] at 11:19-20; 13:4-6 (left in 2010); 29:23-30:15; 50:15-52:7; 65:7; 68:23-69:3; 85:11-23 (does not recall CVS and MedImpact negotiating U&C definition and did not speak with CVS about whether CVS would submit the HSP price as U&C; does not recall discussing HSP internally or if anyone shared his personal |

| | |
|---|---|
| | view that HSP outside of U&C). |
| SF 15, 34, 35-38, 40-49, 52, 57, 58, 73, 74: J. Lavin Decl. [PX-701]; Lavin Dep. [PX-820] 100:5-102:3; 104:23-106:7; 105:7-107:23; 116:8-117:12; 119:1-120:1 | Lavin's testimony about Caremark's agreement or understanding of its PBM contract with CVS is inadmissible: (1) Parol Evid.; (2) Lacks P.K.; (3) Hearsay. PX-820 [Lavin Dep.] at 126:6-127:1; 106:18-107:15; 107:25-108:11; 127:9-128:17; 129:2-7; 131:6-131:2; 132:24-133:10; 136:8-15; 148:17-149:1 (not aware of a single internal document on the issue); 132:4-22 (cannot identify single person involved in alleged decision). |

## II.   CVS IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE DISPUTED ISSUES OF MATERIAL FACT RELATED TO RELIANCE.

CVS fails to provide legal or factual support for its argument that "the PBMs did not rely on the misrepresentation, any reliance would not have been reasonable, and the Plaintiffs themselves have not relied—both because their TPPs' knowledge is imputed to Plaintiffs, and as evidenced by their continuing to purchase prescriptions at CVS even after learning of the alleged fraud."  Mot. at 19.  CVS itself acknowledges that reliance is an element in **only two** of the six states' statutory consumer protection claims (Arizona and California) for which Plaintiffs seek to proceed on a class basis.  Mot. at 20 (noting that "reliance is an explicit element of Plaintiffs' consumer protection claims in Arizona, California (CLRA & UCL)").[63]  CVS's arguments are unavailing in any event, even for those two states.

### A.   The TPPs or PBMs' Supposed Knowledge Is Not Imputed To Plaintiffs.

Whether the PBMs relied on CVS's misrepresentations and omissions with regard to its true U&C prices (by excluding the HSP prices) is irrelevant to Plaintiffs' UDAP claims because Plaintiffs are third-party beneficiaries with a right to enforce the plain language of the contracts.  *See supra* Argument § I.C.  Implicitly recognizing this, CVS tries to argue that the PBM and/or TPPs'[64] supposed

---

[63] And as CVS has acknowledged, reliance under both the Arizona and California UDAPs need not be justifiable (or even reasonable, under the Arizona UDAP).  *See* CVS Opp. to Class Cert. Ex. 7 at 1-2 (quoting *Vasic v. PatentHealth L.L.C.*, 171 F. Supp. 3d 1034, 1043 (S.D. Cal. 2016); *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) ("An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information.")).  *See also Miller v. Fuhu Inc.*, No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794, at *16 (C.D. Cal. Dec. 1, 2015) ("[I]n plaintiff's CLRA . . . claims, reliance may be presumed by demonstrating the materiality of the alleged misrepresentations and omissions.").

[64] CVS's references to TPPs are based primarily on the lone declaration of Joseph Zavalishin, a former employee of Aetna.  *See, e.g.*, Mot. at 4, 9; UF 27.  But he was an employee of the Aetna *in-house PBM*, not the TPP, and his description of Aetna's supposed knowledge and conduct pertained only to its PBM function.  *See* DX-321, Zavalishin Decl. at 2; PX-815, Zavalishin Dep. at 14:24-17:17.  Harvard Pilgrim is the only TPP CVS points to as potentially having relevant knowledge; yet the only evidence CVS cites is the inadmissible deposition testimony of a *MedImpact* employee: "Q: And what was their

1  knowledge should be imputed to Plaintiffs.  Mot. at 23-24 (arguing that "TPPs—including Aetna, one

2  of the largest health insurers—knew that CVS did not submit the HSP price as the U&C price. And even

3  if TPPs did not know, they should have known. The TPPs' actual or constructive knowledge is therefore

4  imputed to Plaintiffs, foreclosing reliance.").  That argument is unsupported by the facts or the law.

5      Governing legal principles, applied to the facts here, make clear that summary judgment is

6  inappropriate.  CVS relies heavily on just one case, *In re Pharm. Indus. Average Wholesale Price Litig.*,

7  252 F.R.D. 83, 97 (D. Mass. 2008), in which the court concluded that "[b]ecause many of the proposed

8  class consumer members were beneficiaries of the TPP plans, the knowledge of the TPP is imputed to

9  the consumer."  However, that single out-of-circuit opinion, and CVS's argument, is contrary to basic

10 agency principles, under which "[a]n essential element of agency is the principal's right to control the

11 agent's actions."  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2666 (2013) (citing Restatement (Third) of

12 Agency § 1.01, cmt. f (2005)).  At a minimum, "[a]gency requires that the principal maintain control

13 over the agent's actions."  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (quoting

14 *Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003)).  And even where a party confers a benefit on

15 another or acts in another's interest, "[i]n the absence of the essential characteristic of the right of control,

16 there is no true agency and, therefore, no 'imputation.'"  *Edwards v. Freeman*, 212 P.2d 883, 884 (Cal.

17 1949); *see also* Restatement (Second) of Agency § 14 (1958) ("[E]xecutors, guardians, and receivers,

18 although required to act wholly for the benefit of those on whose account the relation has been

19 established, are not subject to their directions" and are thus not "agents" under the law).  Plaintiffs do

20 not have the "power to give lawful directions [to their TPPs] which the agent is under a duty to obey,"

21 Restatement (Second) of Agency § 14, cmt. b (1958), and thus lack "control" over the TPPs that is an

22 "essential element of agency," *Hollingsworth*, 133 S. Ct. at 2666.

23      Moreover, even if CVS could establish the basic elements of an agency relationship here, the

24 equitable principles underlying the constructive-knowledge doctrine prevent CVS from using the

25 doctrine to sidestep liability for its violations of consumer protection laws.  The constructive knowledge

26

27 response when you explained that it was outside of U&C? A: Don't really remember any specific
   response. Just a clarity of explanation of what the program was. Q: And they didn't object, I take it? A:
28 I don't recall. . . . THE WITNESS: I don't recall any objection."  SF 53; PX-819, Barre 34:1-35:8).

doctrine "is intended to protect those who exercise good faith, and not as a shield for unfair dealing." *Mut. Life Ins. Co. of N.Y. v. Hilton-Green*, 241 U.S. 613, 623 (1916).  Courts in each of the six relevant states have declined to impute knowledge to a principal in certain cases of unfair dealing or fraud.[65] CVS "cannot use agency law's constructive knowledge rule to shield itself from liability for its fraudulent misrepresentation."  *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1319 (S.D. Fla. 2002) (quoting *First Ala. Bank v. First State Ins. Co.*, 899 F.2d 1045, 1060 n.8 (11th Cir. 1990)).

Finally, even if CVS had provided *legal* support for its argument that there can be agency without control, and that traditional equitable considerations should be pushed aside to impute knowledge to unwitting consumers, CVS did not provide undisputed evidence of the TPPs' knowledge that CVS did not submit the HSP price as its U&C.  TPPs have sued CVS for the same deceptive conduct.  *See Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, 221 F. Supp. 3d 227 (D.R.I. 2016) (denying CVS's motion to dismiss TPP fraud, negligent misrepresentation, and UDAP claims).  At most, the existence of an agency relationship is another contested issue of fact.  *Grant v. Nat'l Football League Players Ass'n*, 566 F. App'x 569, 570 (9th Cir. 2014).

### B.  CVS's Argument Concerning a Handful of Continuing Purchases Is Irrelevant And Unsupported By The Facts Or Law.

CVS's argument that some Plaintiffs' "continued patronage of CVS defeats causation and reliance and entitles CVS to summary judgment," Mot. at 24, also is unsupportable.  To begin with, whether a Plaintiff made *any* purchases from CVS post-suit far overstates what might conceivably be relevant here.  Rather, CVS's "continued patronage" theory must mean that the Plaintiff: (1) bought a HSP-eligible drug using their insurance; (2) after joining or becoming aware of this suit, but before February 2016, when HSP was discontinued; and (3) was overcharged – *i.e.* charged more than the true U&C.  Only five Plaintiffs made a total of 19 "at-issue" transactions that fit these criteria.[66]

---

[65] *See Anchor Equities, Ltd. v. Joya*, 773 P.2d 1022, 1025 (Ariz. Ct. App. 1989) ("An agent's knowledge is not imputable to his principal when the agent acts adversely to his principal's interests."); *River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1227 (S.D. Cal. 2003) ("The intention of the rule, however, is only to protect agents acting in good faith; it is not a shield for unfair dealings."); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1319 (S.D. Fla. 2002) (same); *Jacobson v. Equitable Life Assur. Soc. of U.S.*, 381 F.2d 955, 961 (7th Cir. 1967) (same); *GTE Prod. Corp. v. Broadway Elec. Supply Co.*, 676 N.E.2d 1151, 1156 (Mass. App. Ct. 1997) (same); *Abbott v. Prudential Ins. Co. of Am.*, 8 N.Y.S.2d 957, 960 (App. Div. 1939) (same).

[66] PX-810, Hay Rebuttal Decl. ¶ 43 & Ex. G.

---

First, at the Court's suggestion (*see* Mar. 21, 2017 Order, Dkt. No. 249, at 14), in their amended class certification motion, Plaintiffs have resolved this narrow issue by cutting off the damages period at date of filing.  But second, and more importantly, CVS's "continuing purchases" argument does not undermine Plaintiffs' theory of causation.  CVS itself has advocated for continuity of care, a principle that supports Plaintiffs' decision to continue making nondiscretionary purchases of medically necessary generic drugs at CVS.  The decision of a few Plaintiffs to continue receiving care from their pharmacy after learning of CVS's misrepresentations does not give rise to a reasonable inference that they wanted to be overcharged.  *See, e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 729 (9th Cir. 2012) ("[W]e are hard pressed to agree that any class member would prefer to incur multiple overdraft fees."); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 538 n.4 (N.D. Cal. 2012) ("Defendant's argument, that there is a lack of materiality which would defeat class certification in any situation where consumers may have had multiple reasons for purchasing a product, if accepted, would prevent class certification in every consumer product labeling case. That is clearly not the law."); *Schultz v. Almond*, No. A095378, 2002 WL 1340963, at *2 (Cal. Ct. App. June 19, 2002) (there is "intrinsic value to continuity of care").

CVS's cases are consistent with the notion that a few purchases *after* learning of an *earlier* misrepresentation do not defeat reliance or causation.  For example, CVS cites *Hall v. Time Inc.*, for the premise that, "absent such representation, the plaintiff would not, in all reasonable probability, have *entered into* the contract or other transaction."  Mot. at 24 (quoting 70 Cal. Rptr. 3d 466, 471 n.2 (Ct. App. 2008)) (emphasis added).  But in *Hall*, the plaintiff received notice of the alleged misrepresentation *prior to* the at-issue purchase.  70 Cal. Rptr. 3d at 473.  In contrast, Plaintiffs here have testified that price is *always* important, Mot. for Class Cert. Ex 54, Dkt. No. 215-5 (Plaintiff Testimony Chart), and as CVS itself has highlighted, Dkt. No. 278-18, Plaintiffs had no actual or constructive notice of the overcharges prior to making their first purchases.  Once deceived, Plaintiffs should not be required to stop purchasing their medications or switch pharmacies.  *Gutierrez*, 704 F.3d 712 at (9th Cir. 2012).

Similarly, the cruise excursions purchased in *Princess Cruise Lines, Ltd. v. Superior Court*, was a luxury, discretionary purchase that is not comparable to necessary medications.  101 Cal. Rptr. 3d 323, 329 (Ct. App. 2009) ("It made no difference to [plaintiffs] how much the excursions cost."); *see also id.* at 326.  Plaintiffs here testified that price is always important to them, Dkt. No. 215-5, and their decisions

1   to continue making non-discretionary purchases does not negate their reliance on CVS's representation

2   that they were receiving the benefit of their insurance when they made those purchases. *See Boswell v.*

3   *Costco Wholesale Corp.*, No. SACV160278DOCDFMX, 2016 WL 3360701, at *5 (C.D. Cal. June 6,

4   2016) ("[E]ven if Plaintiffs still would have purchased the product, but would not have paid as much,

5   "the extra money paid . . . is economic injury and affords the consumer standing to sue." (quoting

6   *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013)).

7        Furthermore, as the Eastern District of California explained in *Salazar v. Honest Tea, Inc.*, the

8   cases CVS cites "are distinguishable, because the lead plaintiff's deposition testimony in each clearly

9   established that the plaintiff did not in fact rely on the alleged misrepresentations." No. 2:13-cv-02318,

10  2015 WL 7017050, at *8 (E.D. Cal. Nov. 12, 2015) (citing *Princess Cruise Lines, Ltd. v. Superior Court*,

11  101 Cal. Rptr. 3d 323, 329 (Ct. App. 2009). As in *Salazar*, Plaintiffs "did not undermine [their] claim

12  by testifying that the [misleading] statements were not a substantial factor in [their] decision to purchase

13  [generic medications], or that [they were] never actually misled by the misrepresentations. To the

14  contrary, [Plaintiffs] testified that [price was material when] deciding to purchase the product…." *Id.*

15       Unlike the cases CVS cites, which involved discretionary purchases of snack foods (*Red v. Kraft

16  Foods, Inc.*, 2011 WL 4599833, at *12 (C.D. Cal. Sept. 29, 2011)), books (*Hall*), and luxury travel

17  (*Princess Cruise Lines*), Plaintiffs filed suit to seek a remedy upon learning of the misrepresentation,

18  further demonstrating that price matters to them, Dkt. No. 215-5, and they did not acquiesce to CVS's

19  practice of overcharging them for their generic prescriptions. *See, e.g.*, *Vaccarino v. Midland Nat. Life

20  Ins. Co.*, No. CV 11-5858 CAS MANX, 2013 WL 3200500, at *10 (C.D. Cal. June 17, 2013) (quoting

21  *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997)) ("To prove reliance, a plaintiff

22  need not show that the misrepresentation was the 'sole or even the predominant or decisive factor'" but

23  only that it was a "'substantial factor' in influencing this decision."). At a minimum, there are disputed

24  factual issues with regard to reliance and causation, even as to those Plaintiffs who continued purchasing

25  their medically necessary medications at CVS. Summary judgment is not warranted.

### CONCLUSION

27       CVS cannot show either that there are no genuine issues of material fact or that it is entitled to

28  judgment as a matter of law. The Court should deny CVS's summary judgment motion.

Dated:  June 20, 2017

By: */s/ Robert B. Gilmore*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE MISSNER
 & BEATO LLP

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP

Respectfully submitted,

By: */s/ Bonny E. Sweeney*
Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP