*[SUBMITTING COUNSEL APPEAR ON SIGNATURE PAGES]*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, et al., | Case No. 3:15-cv-03504-YGR |
| Plaintiffs, | CLASS ACTION |
| v. | **UPDATED JOINT CASE MANAGEMENT STATEMENT** |
| CVS Pharmacy, Inc. | Date: August 19, 2019<br>Time: 2:00 p.m.<br>Courtroom: 1, 4th Floor, Ronald Dellums<br>Federal Building<br>Judge: Hon. Yvonne Gonzalez Rogers |
| Defendant. | |

Pursuant to the Court's July 10, 2019 Order [Dkt. No. 364] and Local Rule 16-10(d), the parties hereby submit this Updated Joint Case Management Statement, in advance of the August 19, 2019 Case Management Conference.

### I.        Posture of the Case

The Court has not seen this case in nearly two years.  As the Court will recall, the case involves a group of individual consumers with prescription drug insurance claiming CVS pharmacies overcharged them on purchases of certain generic medications made using their insurance.  Plaintiffs' theory is that CVS collected from insured customers a copayment higher than it would have been had CVS reported to the pharmacy benefit managers ("PBMs") adjudicating their purchases the price charged in CVS's Health Savings Pass program.  The Health Savings Pass or "HSP" price, Plaintiffs claim, properly is considered CVS's "usual and customary" or "U&C" price under the controlling CVS-pharmacy benefit manager ("PBM") contract's definition of that phrase.  For a further background to the case, *see generally Corcoran v. CVS Health Corporation*, 169 F. Supp. 3d 970 (N.D. Cal. 2016) (motion to dismiss opinion); *Corcoran v. CVS Health Corporation, Inc.*, 2016 WL 4080124 (N.D. Cal.

July 29, 2016) (second motion to dismiss opinion); *Corcoran v. CVS Health*, 2017 WL 1065135 (N.D. Cal. Mar. 21, 2017) (opinion on motion for class certification and *Daubert* motion); *Corcoran v. CVS Health*, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017) (opinion on second motion for class certification, second *Daubert* motion, and summary judgment motion).

In September 2017, the Court issued an opinion combining rulings on Plaintiffs' second motion for class certification, CVS's second *Daubert* motion, and CVS's motion for summary judgment. *Corcoran v. CVS Health*, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017).  The Court ***first*** certified for each of four states (California, Florida, Illinois, and Massachusetts) a class consisting of insured customers whose transactions at CVS for certain generic medications were adjudicated by the same PBM as the transactions for the class representative for that state.[1]  The Court based this "same-PBM" narrowing of the classes on Rule 23's typicality requirement.  Plaintiffs' motion had sought broader classes than were certified—i.e., classes comprised of insured customers in the state whose transactions at CVS were adjudicated ***by any of*** the PBMs Caremark, Express Scripts, Medco, MedImpact, or OptumRx (the "Five PBMs").  ***Second***, the Court ruled that certain opinions of Plaintiffs' expert Dr. Joel Hay were inadmissible under *Daubert* and Rule 702 of the Federal Rules of Evidence.  ***Third***, the Court granted summary judgment for CVS, finding there was no genuine issue of material fact as to whether CVS misrepresented the U&C price to the Five PBMs by CVS's non-submission of the HSP price as the U&C price.  Finding proof of a misrepresentation a *prima facie* element of each of Plaintiffs' consumer protection and tort claims, the Court granted summary judgment on all claims in the case.

Plaintiffs appealed all three rulings.  On June 12, 2019, the Ninth Circuit issued its opinion reversing the District Court and remanding the case for further proceedings.  *Corcoran v. CVS Health Corp.*, --- Fed. App'x ----, 2019 WL 2454529 (9th Cir. June 12, 2019) (attached as Exhibit A).  ***First***, the panel found that the Court erred in granting summary judgment for CVS.  ***Second***, the panel held that it was error to narrow the proposed classes on typicality grounds, finding a class representative was typical of class members whose claims were adjudicated by any of the Five PBMs.  ***Third***, the panel

---

[1] The Court denied without prejudice Plaintiffs' motion to certify classes for New York and Arizona on the grounds that because the proposed class representatives "ha[d] no transactions adjudicated by any of the five PBMs at issue" and, therefore, "neither is typical of the classes, which they seek to represent." 2017 WL 3873709, at *6.

held that Dr. Hay's opinions were excluded improperly.  On July 5, 2019, the Ninth Circuit issued its mandate formally remanding the case "for further proceedings."

## II.    Next Steps in the Case

### A.  Plaintiffs' Position

In light of the Ninth Circuit's ruling, the parties should now focus their efforts on trial preparation.  To that end, Plaintiffs propose that the Court: (i) set an expedited schedule to allow Plaintiffs to substitute class representatives for the proposed New York and Arizona classes, as contemplated by the Court's class certification order [Dkt. No. 325 at pp. 10, 11, 31]; (ii) approve a notice program to provide notice to the certified classes; and (iii) set a trial date and pretrial schedule to allow the parties to prepare for trial.  Plaintiffs submit below a proposed schedule for the Court's consideration that provides for these steps to be completed in a timely manner and proceed to trial in the first half of 2020. Plaintiffs strongly disagree with CVS's proposals to engage in further class certification and summary judgment briefing on issues that have been previously resolved by this Court and the Ninth Circuit.  Two additional rounds of briefing, as CVS suggests, fly in the face of Rule 1's admonition that the Federal Rules must "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

### 1.    Substitution of Two Class Representatives for New York and Arizona

CVS's contention that Plaintiffs have somehow waived their right to substitute in new class representatives for the proposed New York and Arizona classes finds no support in the facts or the law.  As noted above, the Court's class certification order with respect to the New York and Arizona classes was explicitly and repeatedly "**WITHOUT PREJUDICE**," Dkt. No. 325 at pp. 10, 11, 31, and thus contemplated that Plaintiffs could substitute in new class representatives, assuming that the case continued.  There is nothing in the Ninth Circuit's ruling that holds to the contrary, and there has been no waiver merely because Plaintiffs did not appeal the Court's decision not to certify the New York and Arizona classes **until** Plaintiffs could come forward with adequate class representatives.[2]

---

[2]  Plaintiffs have included in their proposed schedule dates for expedited discovery and limited briefing solely as to the typicality and adequacy of the proposed substitute representatives under Fed. R. Civ. P. 23.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2. CVS's Proposal for a Third Round of Class Certification Briefing Following the Ninth Circuit's Decision

CVS asks this Court to order a third round of class certification briefing on remand, insisting that "a new motion is the required procedure" after the Ninth Circuit's decision in this case determining the precise contours of the certified classes. But CVS is mistaken in suggesting there actually are no certified classes as a result of the appellate decision. Its assertion that an appellate ruling ***broadening*** the previously certified classes actually had the effect of ***eliminating*** those classes altogether finds no support in the text of the Ninth Circuit's opinion and defies logic.

For its procedural requirement proposal, CVS offers only *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019), an odd choice given the significant differences between that appeal and this litigation. As CVS notes, in *Tinsley*—an interlocutory appeal—a divided panel of the Ninth Circuit affirmed certification of two classes of children alleging mistreatment in Arizona's foster-care system. As to a third "Medicaid Subclass," however, the panel reversed certification because of "an apparent misconception of the legal framework" for claims under the Medicaid Act, which require acts or omissions by the state that actually violate the requirements imposed by the Medicaid Act—in contrast to the plaintiffs' constitutional claims, which required only a substantial risk of harm. *See Tinsley*, 922 F.3d at 976. The *Tinsley* plaintiffs argued on appeal that certification of the Medicaid class should nevertheless be upheld "because a similar, but distinct, risk theory supports the class," under which "the class may be certified based on a common 'significant risk' of an imminent Medicaid violation to all class members . . ." *Id*. The Ninth Circuit responded that "*[a]s a conceptual matter*, we agree with the plaintiffs that Rule 23's commonality requirement can be satisfied in a statutory case by a common risk of a future violation that flows from the same state-wide policy or practice." *Id*. Here, however, the "district court did not make factual findings or exercise its discretion based on this understanding of commonality when it certified the Medicaid Subclass." *Id*. at 977.

> Nowhere in its order is there a factual finding that every subclass member was subject to an identical "significant risk" of a future Medicaid violation that would support injunctive relief. True, we could perhaps infer that such a finding was made because the district court exercised its discretion to certify the class after correctly explaining that "central to the claim here is the question of whether practices by [DCS] and AHCCCS failed to adhere to the Medicaid statute." But we are skeptical we should do so in light of the legal

1
2
3
4
5
6

> error we have identified, which appears intertwined with the district court's decision to certify this subclass. Moreover, as an appellate body we cannot presume that the district court would have made this finding or exercised its discretion to certify the class had it considered this legal theory for commonality, and we will not supplant its discretion by making that determination for ourselves. We therefore vacate the Medicaid Subclass and remand for further proceedings. We emphasize that, while we have vacated class certification based on the nature of the litigation to date, nothing in our opinion should prevent the district court from making new factual findings and exercising its discretion to recertify the Medicaid Subclass on remand, if it determines that such action would be appropriate.

7   *Id*. at 977–78.

8          This is a far cry from the case here, and *Tinsley* hardly provides general guidance for post-
9   appellate remand proceedings.  Unlike in *Tinsley*, the Ninth Circuit did not remand here for further
10  factual findings or an exercise of this Court's discretion under Rule 23; quite the opposite, the Ninth
11  Circuit's decision forecloses the very arguments—commonality and predominance—that CVS hopes to
12  revive in yet another round of class certification briefing.  The Ninth Circuit could not have been clearer
13  that all class members "were injured in the same manner [and] suffered the same type of damages, *i.e.*,
14  the delta between the actual copayment and the HSP price."  2019 WL 2454529 at *2; *see also id.*
15  ("While plaintiffs' motion for class certification focused on CVS's agreements with five PBMs, the
16  alleged overall conduct or scheme was the same. That is, plaintiffs alleged that insured CVS customers
17  were charged higher copayments as a result of CVS's failure to report its actual U&C prices in
18  accordance with its agreements with the PBMs."). The Ninth Circuit also observed the absence of "any
19  meaningful differences in the PBM agreements that would result in the interests of the class
20  representatives being misaligned with those of the absent class members," and that "the class
21  representatives claims are 'reasonably coextensive' if not 'substantially identical' to the claims of the
22  absent class members."  *Id*.  And while the Ninth Circuit's decision focuses on the typicality element of
23  Fed. R. Civ. P. 23(a), the language of its decision and the reversal of this Court's decision to narrow the
24  classes extinguishes any challenge by CVS on commonality and predominance grounds under either
25  Fed. R. Civ. P. 23(a) or (b)(3).  Plainly, the Ninth Circuit concluded that the broader classes it certified
26  in its ruling satisfied Fed. R. Civ. P. 23 *in its entirety*.  Consistent with the plain findings of the Ninth
27  Circuit, there is no need and no purpose for further briefing on the issue, including as to manageability
28  or superiority.

### 3. CVS's Proposal for a Second Round of Summary Judgment Briefing Following the Ninth Circuit's Decision

Nor is CVS entitled to a second motion for summary judgment to revisit a debate on third-party beneficiary status that the parties already briefed—at length, in this Court, two years ago—in CVS's first motion for summary judgment. This Court's standing order prevents successive summary-judgment motions, *see* Standing Order in Civil Cases, Judge Yvonne Gonzalez Rogers, Sec. 9.b., as even CVS acknowledges, and the Ninth Circuit's decision explicitly foreclosed CVS's summary judgment argument in any event:

> In addition to key disputed factual questions relating to the interpretation of the agreements and whether CVS was obligated to report its HSP prices as the U&C prices, the evidence raises other related genuine issues of material fact such as: (1) whether the HSP program constitutes a "cash discount" program; (2) whether CVS offered HSP prices to uninsured customers who were not program members and whether the PBM witnesses were aware that CVS offered such prices to non-HSP members; and (3) ***whether plaintiffs are third-party beneficiaries of any of the PBM contracts.***

2019 WL 2454529, at *2, fn. 2 (emphasis added).

Still, CVS insists that a further motion for summary judgment, after four years of litigation, a judgment, and a lengthy appeal, is warranted because, according to CVS, Plaintiffs changed their theory of liability on appeal.  Not so.  For years, Plaintiffs have asserted—in this Court and in the Ninth Circuit—that "*[a]s third-party beneficiaries of the CVS-Class PBM contracts*, Plaintiffs have the right to insist that CVS adhere to the plain language in the integrated contracts' U&C definitions, which unambiguously include the HSP prices available to the cash-paying general public."  Dkt. No. 274 at 1-2 (emphasis added); *id*. at 10 ("CVS cannot evade its independent obligations to its customers as third-party beneficiaries of fully integrated contracts with substantially identical U&C provisions."), 13 ("Because Plaintiffs are the third-party beneficiaries of those contracts, there is no role for testimony about CVS and the Class PBMs' supposed 'understanding' to disregard the plain language of their contracts."), 14-15 (explaining that under the relevant state laws third-party beneficiaries to a contract may sue for breach); Dkt. No. 313 at 5-9 ("The legal standard for third-party beneficiary status is uniform, and Plaintiffs will prove they meet this standard with common evidence."), 9 ("Plaintiffs are third-party beneficiaries – and can demonstrate that status using common evidence."), 10 ("Plaintiffs

here are not "strangers" to these five contracts; they are *intended beneficiaries*."); Dkt. No. 304 at 2, 10-11, 14-16.[3]

CVS cannot seriously contend that it did not have an opportunity to argue this point at summary judgment—and it is simply mistaken in suggesting that "third-party beneficiary status was previously discussed . . . [only] in the context of the parol evidence rule . . . or as a reason class certification was not appropriate." CVS made this argument—and lost, both in this Court and in the Ninth Circuit. This Court concluded that "[P]laintiffs need not be third-party beneficiaries to the agreements to raise the UDAP and common law claims brought here." Dkt. 327 at 30 n.19. The Ninth Circuit differed on this point but determined, explicitly, that there exists a genuine issue of material fact as to whether Plaintiffs are third-party beneficiaries. 2019 WL 2454529 at *2, n. 2.

There is nothing to CVS's suggestion that Plaintiffs changed course on appeal either. It suggests that Plaintiffs' briefing somehow differed from their comments at oral argument in the Ninth Circuit. To make that argument, however, CVS omits key quotation marks from Plaintiffs' appellate brief demonstrating that Plaintiffs were quoting *from this Court's decision*, consistent with Plaintiffs' longstanding argument that they are in fact third-party beneficiaries. Appellants' Br. at 38 ("In a footnote, the District Court . . . [concluded] that Plaintiffs need not even 'be third-party beneficiaries to the agreements to raise the UDAP and common law claims brought here.'"). What is more, CVS contested Plaintiffs' status as third-party beneficiaries again on appeal, CVS App. Br. at 45 n.121, noting the contracts in the record that ultimately *supported* the panel's determination that there is a genuine issue of material fact on this question.

Whether Plaintiffs are third-party beneficiaries is hardly a new issue in this litigation "that arose during Plaintiffs' appeal." Two years ago, the parties debated, at some length and in summary judgment briefing, whether there is a genuine issue of material fact as to third-party beneficiary status, and the

---

[3] Even the parties' headings in the previous summary judgment briefing are telling. Plaintiffs opposed summary judgment on various grounds, including that "**Plaintiffs Are Intended Beneficiaries of CVS's Contracts with The PBM**s," *i.e.*, at a minimum there exists a genuine issue of material fact on this question. Dkt. No. 304 at 14-16. And CVS responded that "**Plaintiffs are Not Third-Party Beneficiaries of CVS's Contracts**." Dkt. No. 315 at 7-11.

Ninth Circuit has now provided an answer.  A new round of summary judgment briefing on the very same issue would be wasteful of this Court's resources and futile for CVS.

### 4. Next steps

After four years of litigation (including an appeal), this case is ready for trial.  To be sure, a few pretrial steps remain, including notice to class members and Plaintiffs' forthcoming request, by way of a motion for leave, to substitute in a class representative for the New York and Arizona classes.  But, Plaintiffs respectfully submit that those tasks are no impediment to disseminating class notice, and preparing for and trying the case, by April 2020.  Plaintiffs propose the following schedule to accomplish these goals:

| Plaintiffs' Proposed Schedule | |
| --- | --- |
| Deadline for Plaintiffs' motion to substitute class representatives for the New York and Arizona classes | September 9, 2019 |
| Deadline for Plaintiffs' submission of proposed notice plan[4] | September 16, 2019 |
| Deadline for CVS's responses to Plaintiffs' motion to substitute (including any depositions of the additional proposed class representatives) and proposed notice plan | October 7, 2019 |
| Reply in support of Plaintiffs' motion to substitute and proposed notice plan | October 21, 2019 |
| Dissemination of class notice (following the Court's decisions on Plaintiffs' motion to substitute and the notice plan) | November 27, 2019 (or as soon thereafter as possible following the Court's decision on the notice plan and substitution of New York and Arizona class representatives) |

---

[4] Class Counsel have issued requests for proposals to a number of class action notice providers so that Plaintiffs will be in a position to submit their proposed notice plan in early September 2019 for Court approval.

| Deadline for opting out of the classes | February 10, 2020 (or 75 days after dissemination of class notice) |
|---|---|
| Deadline for filing list of any opt-outs with the Court | February 25, 2020 (or 15 days after deadline for opting out of the classes) |
| Deadline to exchange pretrial materials to be included in joint Pretrial Conference Statement | March 17, 2020 |
| Deadline to exchange motions *in limine* | March 27, 2020 |
| Deadline to file joint Pretrial Conference Statement and unresolved motions *in limine* | April 10, 2020 |
| Final pretrial conference | April 24, 2020 |
| **Trial begins (lasting 10 trial days)[5, 6]** | **May 11, 2020 (or as soon thereafter as the Court orders given its calendar)** |

B.    **CVS's Position:**

For the reasons discussed in the sections below, CVS sees three appropriate next steps to advance this case to conclusion—(1) Plaintiffs should identify which individual plaintiffs and causes of action they intend to proceed with at trial and dismiss anyone/any claims not proceeding to trial; (2) Plaintiffs should file a new motion for class certification for the Court's determination in light of the Ninth Circuit's recent clarification on Rule 23's typicality requirement as applied to this case; and (3) the Court should allow CVS to file a second summary judgment motion to be briefed on the same schedule as the new motion for class certification.  The motion for summary judgment would demonstrate there is no genuine dispute of material fact, and CVS is entitled to judgment as a matter of law, because Plaintiffs

---

[5] It is Plaintiffs' intention to try only the certified class claims.  In that regard, Plaintiffs are committed to discussing how to resolve:  (i) the individual claims of named plaintiffs who remain in the case, but are not certified class representatives; and (ii) the claims that were not put forward by all Plaintiffs for certification in connection with Plaintiffs' class certification motion.  Plaintiffs anticipate that these claims will be resolved well before the final pretrial conference, so as not to impede final pre-trial planning or trial.

[6] CVS believes a class action trial would require 15 trial days.  Its view is formed partly based on the length of a HSP-related trial CVS completed in June 2019.

are not third-party beneficiaries under the CVS-PBM contracts underlying their consumer protection claims.  After the Court rules on these further motions for class certification and summary judgment, if appropriate, the Court could set a schedule for providing class notice and the trial.

Plaintiffs oppose each of these steps.  They believe the appropriate next step is moving directly to providing notice to the classes as requested in Plaintiffs' second motion for class certification, filed in June 2017.

### 1.    Identify the Plaintiffs and Claims Proceeding to Trial

The Court should require Plaintiffs to (1) identify by name which Plaintiffs intend to proceed with proving a claim at trial, (2) identify which particular causes of action Plaintiffs intend to prove at trial, and (3) dismiss any individuals and claims that would not go to trial.  *Cf.* Fed. R. Civ. P. 41(b). Plaintiffs' Third Amended Complaint is the operative complaint.  Dkt. No. 101.  Of the twenty-two Plaintiffs named in that pleading, fifteen still had one or more pending causes of action in June 2017, when Plaintiffs filed their second motion for class certification and CVS moved for summary judgment. In that second motion for class certification, (a) only seven individuals were proffered as class representatives, and (b) certification was sought for only claims arising under the six states' consumer protection statutes where those individuals resided or shopped (i.e., Arizona, California, Florida, Illinois, Massachusetts, and New York).  Plaintiffs did not seek certification for any common law claims (fraud, negligent misrepresentation, and unjust enrichment), nor seek certification of the consumer protection claims in any state other than the six listed above.

Because the Ninth Circuit's remand returns this case effectively to its position prior to when the parties filed the motions in June 2017, the question arises:  with what Plaintiffs and causes of action do Plaintiffs intend to proceed at trial?  For example, is Plaintiff Zachary Hagert of Pennsylvania intending to prove at trial his personal claims under Pennsylvania's common law and consumer protection statute? The same question applies to Plaintiff Vincent Gargiulo of New Jersey alleging claims under New Jersey's consumer protection statute and common law.  Pennsylvania and New Jersey, for example, were not among the six states for which Plaintiffs sought certification in 2017.  And what about the common law claims of Plaintiff Tyler Clark, an individual proffered as the class representative for Californian's claims under California's Unfair Competition Law and Legal Remedies Act, but who also

still has common law claims for fraud, negligent misrepresentation, and unjust enrichment?  In preparing the case for trial and briefing class certification (see next section), the parties and the Court should know if Plaintiffs intend the trial here to include both class and individual claims, including any individual claims under the consumer protection statutes of states other than California, Florida, Illinois, and Massachusetts (i.e., the previous certification states).

In a footnote above, Plaintiffs say "[i]t is Plaintiffs' intention to try only the certified class claims." *See supra* n.5.  If that truly is their intention, they should dismiss all other claims and Plaintiffs from the case who will not be proceeding to trial.  *Cf*. Fed. R. Civ. P. 41(b).  If they do not dismiss their claims, it could affect whether a class action trial here will be manageable and a superior way to adjudicate Plaintiffs' claims, considering the jury will be required to consider a myriad of other claims (e.g., common law claims) and states' laws separate and apart from the class claims.

### 2.   Brief a New Motion for Class Certification

Plaintiffs should file a new motion for class certification.  This ensures that the Court will analyze whether Plaintiffs' classes, as proposed (as opposed to as previously certified in narrowed form), satisfy all of Rule 23's elements in light of the Ninth Circuit's ruling on typicality.

***First***, a new motion is the required procedure.  Where, as here, a court of appeals holds that the district court's order certifying a class involved legal error, the appropriate procedure is for the district court to analyze class certification on remand in light of the appellate court's pronouncement of the correct legal framework.  *See B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019).  In *Tinsley*, the district court certified three separate classes related to children in Arizona's foster care system.  On appeal, the Ninth Circuit affirmed the order certifying two of the classes, but as to the third, it held the district court's commonality analysis was premised on "an apparent misconception" of the proof required to demonstrate the class's claim, a violation of the federal Medicaid Act.  *Id*. at 975–76. The district court wrongly presumed "proving risk [of not receiving Medicaid services] alone" was sufficient, *id*. at 976, whereas the Ninth Circuit held the claim required proof of an actual deprivation of Medicaid services.  Rather than holding such proof precluded class certification or, conversely, that commonality and Rule 23's other elements were satisfied in spite of such proof, the court of appeals held the district court should make that assessment on remand in a fresh analysis of class certification.

*Id*. at 977 ("as an appellate body we cannot presume that the district court would have made this finding or exercised its discretion to certify the class had it considered this legal theory for commonality, and we will not supplant its discretion by making that determination for ourselves"); *see also id*. at n.6 ("Only a separate class certification analysis, recognizing the differences between the due process claims and the Medicaid claim as we have explained in this opinion, and making factual findings in conformity with that legal framework, will ensure that 'after a rigorous analysis, the prerequisites of Rule 23(a) have been satisfied.'") (quoting *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); omitting ellipsis).

As *Tinsley* demonstrates, additional class briefing is appropriate here since this Court must assess whether Plaintiffs' classes—as Plaintiffs intend to propose them (i.e., as classes comprised of customers in a state whose claims were adjudicated by *any of* Caremark, Express Scripts, Medco, MedImpact, or OptumRx)—satisfy all of Rule 23's prerequisites to certification.  This is especially true since this Court did not decide several arguments CVS made in opposing certification before because it narrowed the classes to include only those insured customers with the same PBM as the class representative.  For example, CVS's lead argument against commonality and predominance—that the evidence concerning each specific CVS-PBM contract, that contract's definition of U&C, and CVS's compliance therewith will vary—was "mooted" by the Court's narrowing of the classes.  2017 WL 3873709, at *7 ("[T]he Court finds that defendants' first two arguments are mooted by the Court's decisions herein.")  In addition, CVS's second argument—that commonality and predominance are foreclosed by potential variations in whether Plaintiffs and class members are third-party beneficiaries under the five different CVS-PBM contracts and the five controlling state-law standards governing that determination—was not considered.  *Id*.; *see also id*. at *20 n.19 ("without resolving whether plaintiffs are actually third-party beneficiaries . . .").  Third-party beneficiary status is of even greater importance following remand, for the reasons explained further in the section below.  Likewise, having narrowed the classes from what Plaintiffs' proposed, the Court discounted CVS's attacks against the superiority and manageability of trying to a single jury a case involving six state classes, each involving five different CVS-PBM contracts with choice-of-law provisions from five states that sometimes differed from the six states whose consumer protection statutes were at issue.  *Id*. at *9 ("[T]he Court's limitation of each state class

only to the PBMs that adjudicated the named representative's claims and finding that Arizona and New York classes lack a typical representative further reduces the complexity of any potential trial.").

*Second*, Plaintiffs have no principled objection to filing a new motion for class certification.  In Plaintiffs' view, a new motion is unnecessary because this Court certified several state classes in narrowed form, and the Ninth Circuit's reversal merely broadened those already-certified classes.  Yet Plaintiffs contend motions practice is unnecessary even concerning Arizona and New York, the two states for which the Court previously did ***not*** certify a class.

In 2017, the Court denied without prejudice certification of Arizona and New York classes because Plaintiffs had no class representative from those states with a transaction meeting the class definition.  CVS believes it is not appropriate at this time to allow Plaintiffs to pursue certification of classes for Arizona and New York since (1) Plaintiffs did not appeal the Court's denial of certification concerning those states, and (2) the parties should be narrowing the case at this point, not expanding it. Nonetheless, the Court obviously has discretion concerning Arizona and New York, and if the Court allows Plaintiffs to seek class certification for those states, certainly a new motion for class certification is necessary.  For example, CVS would need the opportunity (after taking discovery) to challenge whether the substitute individual is a typical and adequate class representative.[7]  That requires a new motion.  To be clear, CVS believes a new motion for certification is necessary ***regardless*** of the state at issue.  It merely highlights Arizona and New York now to demonstrate that Plaintiffs' reason for opposing class certification is internally inconsistent.

Plaintiffs argue that *Tinsley* is distinguishable and CVS misunderstands the current status of the California, Florida, Illinois, and Massachusetts classes given the Ninth Circuit's ruling.  Tellingly, Plaintiffs cite no authority supporting their interpretation that the Ninth Circuit's ***reversal*** of this Court's certification decision leaves the parties with four currently-certified classes and that trial is the next step. In its decretal language, the Ninth Circuit remanded the case "for further proceedings" (not "for trial"), which is entirely consistent with how CVS proposes the case proceed.

---

[7] As of this filing, Plaintiffs have not identified an Arizona or New York resident with a qualifying transaction to substitute as a potential class representative.

UPDATED JOINT CASE MANAGEMENT STATEMENT
Case No. 3:15-cv-03504-YGR

***Third***, briefing a new class motion can be completed quickly.  CVS proposes the following schedule, which would complete the briefing within approximately two months of the status conference:

| DATE | EVENT |
| --- | --- |
| Sept. 23, 2019 | Plaintiffs' file new motion for class certification |
| Oct. 14, 2019 | CVS files opposition to new motion |
| Oct. 28, 2019 | Plaintiffs file any reply brief |
| Nov. 12, 2019 | Hearing on the motion |

### 3.   Brief a Second Motion for Summary Judgment

A party may file a second summary judgment motion only on leave of court.  *See* Judge Gonzalez Rogers' Standing Order in Civil Cases (updated Apr. 2, 2019) at § 9(b); *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) ("district courts have discretion to entertain successive motions for summary judgment").  In appropriate circumstances, courts have allowed successive summary judgment motions.  *See*, *e.g.*, *Hoffman*, 593 F.3d 908 (no abuse of discretion in allowing a second motion and noting "allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive resolution of suits'") (quoting Fed. R. Civ. P. 1); Order Permitting Limited Successive Summary Judgement Motions, *GPP, Inc. v. Guardian Protection Products, Inc.*, Case No. 1:15-cv-00321-SKO (E.D. Cal. Mar. 31, 2017) [Dkt. No. 183].  CVS requests leave to file a second summary judgment motion to address a dispositive issue that arose during Plaintiffs' appeal: whether Plaintiffs are third-party beneficiaries of the CVS-PBM contracts, which Plaintiffs now say is a necessary element of their consumer protection claims.  Allowing a motion on this narrow issue is appropriate for four reasons:

***First***, it was not until the Ninth Circuit argument on December 17, 2018, that Plaintiffs announced that they must be third-party beneficiaries of the CVS-PBM contracts in order to prove a consumer protection claim.  In the prior district court proceedings, Plaintiffs did not argue being a third-party beneficiary of CVS's contracts was ***necessary*** to their claims.  For example, on the same day CVS moved for summary judgment, Plaintiffs filed their trial plan, jury instructions, and proposed verdict form in support of their second motion for class certification, and those documents nowhere mentioned third-party beneficiary status having a role at trial. Dkt. No. 274-40.  Nor have Plaintiffs in this case

ever alleged a cause of action for breach of contract.  To the extent third-party beneficiary status was previously discussed (and only after CVS moved for summary judgment on June 6, 2017), it was in the context of the parol evidence rule (which Plaintiffs said justified ignoring the PBMs' testimony about their contract definitions of U&C) or as a reason class certification was not appropriate.[8]  The section heading Plaintiffs cite above (n.3) from prior briefs each responded to Plaintiffs' invocation of the parol evidence rule.

It was only at the oral argument on appeal that Plaintiffs, for the first time, argued being a third-party beneficiary under the CVS-PBM contract is a necessary element to proving their claim:

> THE COURT: Let me ask a question. ***Do the plaintiffs need to be third-party beneficiaries to bring any other claims***?
>
> MR. GILMORE: The District Court said that that wasn't relevant. ***We think that they do need to be and are third-party beneficiaries***.

Hr'g Tr. (Dec. 17, 2018) at 8:23–9:3 (emphases added).  That answer differed from what Plaintiffs had argued even as recently as their opening brief on appeal. Appellants' Br. (Feb. 12, 2018) at 38 ("Moreover, Plaintiffs need ***not*** even 'be third-party beneficiaries to the agreement to raise the UDAP and common law claims brought here.'") (emphasis added; quoting Dkt. No. 327 approvingly).  When pressed by the panel, however, counsel pivoted, as being an intended beneficiary of the CVS-PBM contract was Plaintiffs' way to suggest (1) Plaintiffs were entitled to pay a copayment no higher than CVS's U&C price, since the contract's reimbursement formula capped CVS's payment (from the PBM) at the pharmacy's U&C price; and/or (2) CVS's breach of the contract definitions of U&C gave rise to a cognizable by Plaintiffs (as opposed to by PBMs).   Tellingly, Plaintiffs nowhere above cite any statement (apart from the answer at oral argument) in which they argued that proof of third-party beneficiary status ***is a necessary element to proving their consumer protection claims***.   Given

---

[8] Dkt. No. 274 (June 6, 2017) at 13 (Plaintiffs: "Because Plaintiffs are the third-party beneficiaries of those contracts, there is no role for testimony about CVS and the Class PBMs' supposed 'understanding' to disregard the plain language of their contracts."); Dkt. No. 301 (June 20, 2017) at 11 (CVS: "There is no common evidence that Plaintiffs are third-party beneficiaries.").

Plaintiffs' new position on the necessary role third-party beneficiary status plays to their claim, that status is obviously an important issue.[9]

**Second**, the Court can decide another summary judgment motion without prolonging the case. CVS suggests briefing the motion for summary judgment in parallel with, and subject to the same deadlines as, Plaintiffs' renewed motion for class certification discussed above.  In opposing class certification, CVS will be discussing third-party beneficiary status anyway.  It is therefore sensible and efficient for the Court to entertain a simultaneous motion for summary judgment addressing the same issue.

**Third**, the third-party beneficiary question is outcome-determinative.  Three of the four CVS-PBM contracts governing the prior class representatives' claims contain provisions saying that the contacting parties do not intend to benefit third parties, and those provisions generally state that insured customers in particular are not intended beneficiaries.[10]  At the depositions of the PBM representatives, Plaintiffs did not question the witnesses about those contract provisions, leaving their plain text unrebutted.  The provisions are unambiguous.  If Plaintiffs are ***not*** third-party beneficiaries of the CVS-PBM contracts, then Plaintiffs' consumer protection claims fail as a matter of law, as Plaintiffs and the Ninth Circuit both recognize. Hr'g Tr. (Dec. 17, 2018) at 8:23–9:3; (counsel's argument); *Corcoran*, 2019 WL 2454529, at *1 ("It is enough for plaintiffs to show that CVS failed to report the HSP prices as U&C prices ***contrary to the PBM contracts***, and that, as a result, plaintiffs were charged higher copayments.") (emphasis added).

**Fourth**, a motion is not foreclosed by the footnote in the Ninth Circuit's opinion stating: "the evidence raises other related genuine issues of material fact such as . . . whether plaintiffs are third-party beneficiaries of any of the PBM contracts."  *Corcoran*, 2019 WL 2454529, at *2 n.2.  The statement is

---

[9] CVS has previously commented on Plaintiffs' shifting positions concerning the significance *vel non* to Plaintiffs' case of CVS's contracts with PBMs.  Dkt. No. 301 at 11 ("It is notably [sic] just how far Plaintiffs have evolved.  In January 2016, in opposing CVS's original motion to dismiss, Plaintiffs forcefully disclaimed the notion that CVS's contracts bore any legal significance to their claims. Of course, those contracts are now central to their 'refined' theory of liability.") (internal cites and quotes omitted).  Counsel's statement at the Ninth Circuit argument that third-party beneficiary status is now "necessary" to the consumer protection claims moves Plaintiffs' evolving position one step further.

[10] Dkt. Nos. 280-21 (PX-546; Caremark contract, ¶ 9.2), 283-12 (DX-300; MedImpact contract, p.6 XI), 285-8 (PX-695; OptumRx contract, ¶ 9.5).

dicta and does not preclude the Court from considering the issue now.  It is also puzzlingly, since this Court had not determined whether Plaintiffs are third-party beneficiaries, 2017 WL 3873709, at *20 n.19; neither Plaintiffs nor CVS urged the Ninth Circuit to decide the issue itself; CVS did not argue on appeal third-party beneficiary status as an alternative ground for affirmance; and the panel's opinion does not mention the issue apart from the one reference, much less identify what record evidence could potentially create a triable issue on the topic.  Accordingly, as CVS understands the panel's opinion, this Court is not precluded from entertaining a summary judgment motion on whether Plaintiffs are third-party beneficiaries of the CVS-PBM contracts.

## III.    Disclosure on Alternative Dispute Resolution

In May 2017, the parties participated in a private mediation in response to the Court's order. After the Ninth Circuit's decision, Plaintiffs raised the possibility of dispute resolution via settlement; Plaintiffs presented CVS with a settlement demand and proposed further mediation; and CVS rejected the demand. CVS does not believe a further mediation (or any other form of alternative dispute resolution) would be productive at this time.

## IV.    Disclosure of Non-party Interested Entities or Persons

Plaintiffs have no interests to report under Local Rule 3-15.  No person or entity is funding the prosecution of any claim and there are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by them to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

CVS Health Corporation has a financial interest in the subject matter in controversy and in Defendant CVS Pharmacy, Inc.  CVS Health Corporation is the parent company of CVS Pharmacy, Inc.

Dated: August 12, 2019                                     Respectfully submitted,

*Class Counsel*                                                    *Attorneys for Defendant*
                                                                          *CVS Pharmacy, Inc.*

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker (Cal. Bar No. 146267)        By: */s/ Grant A. Geyerman*
Jonathan K. Levine (Cal. Bar No. 220289)           Edward W. Swanson
PRITZKER LEVINE LLP                                        August Gugelman
                                                                          SWANSON & MCNAMARA LLP

180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel.  415-692-0772
Fax. 415-366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

Bonny E. Sweeney (Cal. Bar No. 176174)
HAUSFELD
600 Montgomery St. Suite 3200
San Francisco, California 94111
Tel: (415) 633-1908
bsweeney@hausfeld.com

Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar. No. 269171)
HAUSFELD
1700 K St. NW, Suite 650
Washington, D.C. 20006
Tel: (202) 540-7200
rlewis@hausfeld.com
sgosselin@hausfeld.com

Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL MISSNER
 & BEATO LLP
1100 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (202) 737-7777
rgilmore@steinmitchell.com

300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Tel: (415) 477-3800
eswanson@swansonmcnamara.com
agugelman@swansonmcnamara.com

Enu Mainigi (admitted *pro hac vice*)
Grant A. Geyerman (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
emainigi@wc.com
ggeyerman@wc.com

## ATTESTATION

I, Elizabeth C. Pritzker, am the ECF user whose ID and password are being used to file this document.  In compliance with Local Rule 5-1(i)(3), I hereby attest that all other signatories listed have concurred in this filing.

*/s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker

# EXHIBIT A

**FILED**

**NOT FOR PUBLICATION**

JUN 12 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER CORCORAN, *et al.*, | No. 17-16996 |
| Plaintiffs-Appellants, | D.C. No. 4:15-cv-03504-YGR |
| v. | |
| CVS HEALTH CORPORATION and CVS PHARMACY, INC., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted December 17, 2018
San Francisco, California

Before: CALLAHAN and N.R. SMITH, Circuit Judges, and OLGUIN,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Fernando M. Olguin, United States District Judge for the Central District of California, sitting by designation.

Plaintiffs filed a multi-state consumer putative class action against CVS Pharmacy, Inc. ("CVS"), alleging that CVS misrepresented the "usual and customary" ("U&C") prices of certain generic prescription drugs by not submitting the lower prices CVS charged to members of its Health Savings Pass ("HSP") program to third-party insurance providers ("TPPs") and pharmacy benefits managers ("PBMs").[1]   The district court: granted in part plaintiffs' motion for class certification; granted CVS's motion to exclude and strike the expert opinion of plaintiffs' pharmaceutical economist, Professor Joel W. Hay; and granted CVS's motion for summary judgment.  Plaintiffs appeal the district court's decisions.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

1.   We review the grant of summary judgment de novo.  *See Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014).  The district court erred in granting summary judgment to CVS, because, having found plaintiffs' evidence "relevant" but "inconsequential" or "unavailing," the district court nonetheless placed CVS's and plaintiffs' evidence on equal footing and impermissibly weighed the evidence and failed to credit and draw all reasonable inferences from the evidence in plaintiffs' favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations,

---

[1]  Because the parties are familiar with the factual and procedural history of the case, we need not recount it in detail here.

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

a.     Plaintiffs argue that certain emails and presentations (that CVS produced) show that CVS employees had expressed concerns about whether CVS needed to report its HSP price as usual and customary, but the district court found that those materials failed to create a triable issue, because CVS did not misrepresent, based on the PBMs' testimony, the U&C price.  We disagree.  A jury weighs the evidence and determines whether CVS engaged in wrongful conduct in its reporting of U&C prices, which resulted in the PBMs calculating higher copayments.  Contrary to CVS's assertion, plaintiffs need not produce evidence that the PBMs believed that CVS misrepresented the U&C price. It is enough for plaintiffs to show that CVS failed to report the HSP prices as U&C prices contrary to the PBM contracts, and that, as a result, plaintiffs were charged higher copayments.

b.     CVS also argues that summary judgment was properly granted, because the testimony of the PBM witnesses established that the parties to the contracts agreed on the meaning of the U&C provisions.  While the district court set forth the definitions of the U&C provisions contained in the relevant PBM agreements and noted that plaintiffs were relying on the language in those agreements, the district court did not discuss or explain

(5 of 13)

Case: 17-16996, 06/12/2019, ID: 11328624, DktEntry: 48-1, Page 4 of 8
Case 4:15-cv-03504-YGR   Document 365   Filed 08/12/19   Page 23 of 27

why the contractual provisions, in conjunction with the evidence proffered by plaintiffs, were insufficient to raise a genuine issue of material fact.  Instead, the district court noted that "[i]n some cases, the PBMs even amended the agreement to exclude explicitly membership programs from their definition of U&C."  But this same evidence could show the opposite, *i.e.*, that the U&C definitions in the PBM contracts encompassed the HSP prices.  A jury could reasonably infer that subsequent modifications of the agreements indicate that the prior definitions of U&C included HSP prices.

     c.    Although CVS and the PBMs agreed during this litigation (as opposed to when the agreements were negotiated) that the PBM contracts did not require CVS to submit its HSP prices as the U&C prices, plaintiffs proffered "some evidentiary support for [their] competing interpretation[] of the contract[s'] language." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  Given the extrinsic evidence proffered by plaintiffs to support their reasonable interpretation of the U&C language in the PBM contracts, the district court erred in granting summary

(6 of 13)

Case: 17-16996, 06/12/2019, ID: 11328624, DktEntry: 48-1, Page 5 of 8
Case 4:15-cv-03504-YGR   Document 365   Filed 08/12/19   Page 24 of 27

judgment.[2]  *See, e.g.*, *First Nat'l. Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058,

1067 (9th Cir. 2011) ("Where the interpretation of contractual language turns on a

question of the credibility of conflicting extrinsic evidence, interpretation of the language

is not solely a judicial function.  As trier of fact, it is the jury's responsibility to resolve

any conflict in the extrinsic evidence properly admitted to interpret the language of a

contact." (emphasis omitted) (quoting *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912-13

(1998))).

    2.    The district court narrowed plaintiffs' proposed classes by limiting each

class to the PBM(s) in California, Florida, Illinois, and Massachusetts that adjudicated

the respective class representative's claims based on Federal Rule of Civil Procedure

23(a)'s typicality requirement.  The district court found that, since the evidence relating

to one PBM does not necessarily apply to the other PBMs, typicality was lacking.  We

review the district court's class certification ruling for abuse of discretion.  *Pulaski &*

*Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015); *see also Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23(a)]'s permissive

---

   [2]  In addition to key disputed factual questions relating to the interpretation of the
agreements and whether CVS was obligated to report its HSP prices as the U&C prices,
the evidence raises other related genuine issues of material fact such as: (1) whether the
HSP program constitutes a "cash discount" program; (2) whether CVS offered HSP
prices to uninsured customers who were not program members and whether the PBM
witnesses were aware that CVS offered such prices to non-HSP members; and (3)
whether plaintiffs are third-party beneficiaries of any of the PBM contracts.

(7 of 13)

Case: 17-16996, 06/12/2019, ID: 11328624, DktEntry: 48-1, Page 6 of 8
Case 4:15-cv-03504-YGR   Document 365-4   Filed 08/12/19   Page 25 of 27

standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

The district court abused its discretion in narrowing the proposed classes on typicality grounds.  The named plaintiffs and the absent class members are insured customers who were charged copayments higher than the HSP prices, which plaintiffs maintain should have been CVS's actual U&C prices.  As a result, the named plaintiffs were injured in the same manner as the absent class members and they suffered the same type of damages, *i.e.*, the delta between the actual copayment and the HSP price. Plaintiffs' action is not based on conduct that is unique to the named plaintiffs.  *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

While plaintiffs' motion for class certification focused on CVS's agreements with five PBMs, the alleged overall conduct or scheme was the same.  That is, plaintiffs alleged that insured CVS customers were charged higher copayments as a result of CVS's failure to report its actual U&C prices in accordance with its agreements with the PBMs. The district court did not identify any meaningful differences in the PBM agreements that would result in the interests of the class representatives being misaligned with those of the absent class members.  Indeed, CVS reported the same prices to the PBMs notwithstanding any variation in the language of the PBM contracts.  In other words, CVS's actual reporting to the PBMs underscores the fact that the class representatives'

claims are "reasonably coextensive," if not "substantially identical" to the claims of the absent class members.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017).

3.     We review the district court's decision to exclude and strike Dr. Hay's testimony for abuse of discretion.  *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011); *see also Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (observing that the test for admissibility "is not the correctness of the expert's conclusions but the soundness of his methodology, and when an expert meets the threshold established by [Federal Rule of Evidence] 702, the expert may testify and the fact finder decides how much weight to give that testimony." (quoting *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010))).

The district court found that Dr. Hay's testimony lacked foundation, it excluded his report on that basis, and it struck Dr. Hay's testimony that CVS's HSP prices are the U&C prices as defined in CVS's contracts.  We disagree that Dr. Hay's opinion lacks foundation.  Based on our review of Dr. Hay's disclosed report and the record before us, it is apparent that Dr. Hay formed his opinion regarding the U&C price based on his experience, industry standards, and his review of the materials produced by CVS (including transactional data) during the course of the litigation.  Dr. Hay's review of these materials provides an adequate basis for his disclosed testimony.

(9 of 13)

Case: 17-16996, 06/12/2019, ID: 11328924, DktEntry: 48-1, Page 9 of 8
Case 4:15-cv-03504-YGR   Document 365   Filed 06/12/19   Page 27 of 27

The district court also appears to have accepted CVS's argument that the conclusions that Dr. Hay disclosed in his report were not the product of sound or reliable methodology. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he importance of *Daubert*'s gatekeeping requirement . . . is to ensure the reliability and relevancy of expert testimony."). In part, this conclusion appears to be due to the fact that CVS's expert, Dr. Barlag, reviewed much of the same transaction level data as Dr. Hay and disagreed with Dr. Hay's analysis and conclusions. However, Dr. Barlag's analysis doesn't show Dr. Hay's analysis to be without foundation or the product of questionable or unreliable methodology; if credited, Dr. Barlag's testimony does little more than cast some doubt on Dr. Hay's conclusions. Resolving the conflict between these experts is a matter for the jury, not a basis to exclude one of them under Rule 702. *See Pyramid Tech., Inc.*, 752 F.3d at 813.

We therefore reverse the district court's summary judgment order, its class certification order, and its order excluding the expert opinion and striking the expert report of Dr. Hay. We remand for further proceedings. The parties shall bear their own costs on appeal.

### REVERSED and REMANDED.