Bonny E. Sweeney (Cal. Bar No. 176174)
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, California 94111
Tel: 415-633-1908
Fax: 415-358-4980
bsweeney@hausfeld.com

Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Tel: 202-540-7200
Fax: 202-540-7201
rlewis@hausfeld.com
sgosselin@hausfeld.com

Robert B. Gilmore (admitted *pro hac vice*)
Edward H. Meyers (admitted *pro hac vice*)
STEIN MITCHELL BEATO & MISSNER LLP
1100 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: 202-737-7777
Fax: 202-296-8312
rgilmore@steinmitchell.com
emeyers@steinmitchell.com

Elizabeth C. Pritzker (Cal. Bar No. 146267)
Jonathan K. Levine (Cal. Bar No. 220289)
Bethany L. Caracuzzo (Cal. Bar No. 190687)
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel.  415-692-0772
Fax. 415-366-6110
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com
bc@pritzkerlevine.com

*Class Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, *et al*., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS Pharmacy, Inc.,<br><br>Defendant. | Case No. 4:15-cv-03504-YGR-JSC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPROVAL OF NOTICE PROVIDER AND CLASS NOTICE PROGRAM**<br><br>Date:  November 12, 2019<br>Time:  1:00 pm<br>Courtroom: 1<br>Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

Plaintiffs have proposed a comprehensive notice plan that provides for direct class member notice by text message and email, complemented by U.S. mail. As crafted, the plan recognizes that the vast majority of Americans today are comfortable with and used to receiving information by text and email, and are likely to view and respond to communications sent this way. The plan intends to encrypt email notice to ensure the security and privacy of email notifications. Reply Declaration of Steven Weisbrot ("Reply Weisbrot Decl."), ¶¶ 4-5. Class members who cannot be notified by text or email will receive direct mail notice. The combined forms of notice described in the plan provide class members the "best notice practicable under the circumstances," thereby satisfying the mandates of Rule 23 and due process. They offer substantial cost advantages, too.

CVS does not oppose the appointment of Angeion Group, LLC, as notice provider and, aside from a few minor points of phrasing, also does not oppose the content of Plaintiffs' proposed notice. CVS's stated concerns about compliance with the Heath Insurance Portability and Accountability Act ("HIPAA") and the Telephone Consumer Protection Act ("TCPA") have been addressed by Plaintiffs, and are discussed further in this brief. CVS's main criticism appears to be its assertion that the plan is "motivated purely by cost." This is incorrect. Electronic notice is not just more affordable than mailed notice; it also is the primary and most effective means of communication available today. Still, cost must be an important factor in designing a class notice plan, because cost affects which forms of notice are practicable under the circumstances, and the potential recovery of the classes and resources of the parties should not be squandered on a notice plan that does not increase the likelihood that class members will receive or review the notice.

Ignoring the fact that CVS, in its regular course of business, routinely communicates with its prescription drug purchasing customers electronically, CVS objects to using these same contemporary and cost-effective forms of notice communication here—communications that have the added benefit of maximizing the amount of any future recovery for the class—in favor of an unduly expensive direct mail notice plan that benefits no one. The key consideration for the Court is not what notice plan CVS prefers, but rather, what plan provides the "best notice practicable under

the circumstances" under Federal Rule of Civil Procedure 23(c)(2)(B). Plaintiffs' proposed notice plan does so. The Court should approve Plaintiffs' class notice plan as the best notice practicable and direct notice to class members by text, email, or mail as set forth in the expert declarations of Steven Weisbrot and Plaintiffs' opening brief.

## II. LEGAL ARGUMENT

### A. Plaintiffs' notice program is the best notice practicable under the circumstances

Plaintiffs' notice plan is "the best notice that is practicable under the circumstances" under Federal Rule of Civil Procedure 23(c)(2)(B) because it proposes to provide individual notice to class members by electronic means or U.S. mail. "Best practicable notice requires individual notice 'to all class members whose names and addresses may be ascertained through reasonable effort.'" *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). The Federal Rules allow this notice to be provided by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. Proc. 23(c)(2)(B).

CVS argues that notice should be provided exclusively by a windowless envelope or "closed" postcard sent by U.S. mail. Opp. at 5. CVS advocates this form of notice because it asserts that it is most protective of the company's interests. *See id.* at 10. CVS asserts that it wants to avoid the task of ascertaining which of its customers have consented to be contacted by text message. *Id.* at 4. CVS also asserts that it wants to protect itself from a risk of TCPA litigation associated with CVS providing customers' mobile numbers to the notice provider as part of a court-ordered notice program. *Id.* at 10-11.

But the best notice practicable does not mean the form of notice preferred by the defendant in a case where there is a certified class. Instead, "[t]he word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. . . . Rule 23 contemplates cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case." *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969). Notice must be reasonable, and "[i]n every case, reasonableness is a function of anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977)

1  (discussing efforts to identify class members).

2  The notice plan proposed by CVS is not practicable, because it is needlessly expensive and does not provide additional benefits to the classes to justify the expense. If the Court certifies the pending New York and Arizona classes, there will be 6,154,351 class members. *See* Declaration of Jonathan Levine ("Levine Decl.") [Dkt. 377-3], ¶ 4. The cost of providing notice to all these class members by mail would be approximately $3 million, based on the estimates provided during the request for proposal process. Providing notice by text or email where possible will save the classes more than an estimated $2.5 million. Furthermore, class members at this time are being notified of a certified class, *not of settlement or final judgment* (where recovery for the class has already been established). In the event Plaintiffs prevail, the cost of disseminating this notice should not unduly reduce class members' eventual recovery. The touchstone of adequate notice is that appropriate individual notice satisfies the mandates of Rule 23, but at the same time, the class members' interests are best served by ensuring that effective notice is provided at the most reasonable cost.

Class members and the policies of Rule 23 would not be better served by CVS's notice proposal. As further detailed in Sections B and C below, the proposed electronic notice complies with HIPAA and the TCPA. Class members' privacy would be safeguarded through the text and email notice proposed by Plaintiffs, because the notices do not include unique health information or affirmatively state that recipients are class members. See Br. at 9. Angeion, the notice provider, will also encrypt emails to class members for additional security. Reply Weisbrot Decl., ¶¶ 4-5. Additionally, the body of the email notice will not contain the recipient's name, and so could not disclose the identity of a class member to an unintended recipient. *Id.* at ¶ 10.

CVS cites a 17-year-old case from the District of Colorado in support of the proposition that "notice by mail is a safer, more controlled means of communicating notice compared to text message or unsecured e-mail, which should carry special weight in this case involving consumers' healthcare choices." *See* Opp. at 5-6; *Reab v. Electronic Acts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002). *Reab* is not even a healthcare case; it is an FSLA case. *See Reab*, 214 F.R.D. at 626-27. And the concerns raised by the *Reab* court are not unique to electronic communication. Mailed notice can be posted

to "internet sites" with as much ease as electronic communications—for example, through the use of a scanner or retyping the text of the notice. *See id.* at 630-31. The *Reab* court also raised concerns about reaching the "intended audience"—but texts and emails are at least as likely to reach the "intended audience" as mailed notice because people change their cell phone numbers and email addresses no more often than they may move. *See id.*

CVS has cell phone numbers for 51% of the classes, which enables accurate, effective, and cost-reasonable notice to millions of class members (provided they have consented to be texted). Br. at 4. And Angeion estimates that it can obtain accurate email addresses for approximately 65% of class members through use of other data points, including class members' phone numbers. *See* Weisbrot Decl., ¶ 14.

Rule 23 does not compel universal mailed notice. *See* Fed. R. Civ. Proc. 23(c)(2)(B). CVS argues that courts have historically preferred mailed notice. Opp. at 5-7. But, as Plaintiffs noted in their opening brief, the 2018 Advisory Committee Notes to Rule 23(c)(2) admonish counsel that "simply assuming that 'traditional' methods are best may disregard contemporary communication realities." Br. at 7. The notion that people prefer to receive information by mail in today's world is demonstrably incorrect—in the past decade, use of U.S. Mail has declined by over 25%.[1] By contrast, use of email and text has risen dramatically. There are around 244.5 million email users in the United States.[2] Over 80% of these email users check their email at least daily.[3] And 96% of Americans own a cell phone, compared with 62% in 2002.[4] As of 2015, 97% of smartphone users reported texting at least weekly—and this percentage has almost certainly grown.[5] More than 90%

---

[1] *See First-Class Mail Volume Since 1926*, United States Postal Service (Feb. 2019), https://about.usps.com/who-we-are/postal-history/first-class-mail-since-1926.pdf (first class mail volume figures) (last accessed October 21, 2019).

[2] *E-mail usage in the United States - Statistics & Facts*, statista (Aug. 9, 2019), https://www.statista.com/topics/4295/e-mail-usage-in-the-united-states/ (last accessed October 21, 2019).

[3] *How Often Do You Check Your Inbox?*, statista (March 6, 2017), https://www.statista.com/chart/8387/checking-inbox-for-emails/ (last accessed October 21, 2019).

[4] *Mobile Fact Sheet*, Pew Research Center (June 12, 2019), https://www.pewinternet.org/fact-sheet/mobile/.

[5] *U.S. Smartphone Use in 2015*, Pew Research Center (April 1, 2015) at 7-8, available at

of people read a text message within the first three seconds of receiving it.[6]  Texting is the most popular feature of smartphones (with email usage not far behind).[7]  CVS argues that class members may be reluctant to click on hyperlinks and that emails may be caught in spam filters.  *See* Opp. at 7.  But Angeion has detailed the practices that it uses to help ensure that its email messages are not blocked by spam filters.  Declaration of Steven Weisbrot [Dkt. No. 377-2], ¶ 17.  And Plaintiffs' proposed text and email notice includes summary information that alerts class members to the pending lawsuit.  *See* Levine Decl., Exs. A-C.  In the case of email notice, it is the same summary information that would be provided in the mailing.  *Id.*, Ex. A.  Those class members who want additional details can easily click on a hyperlink to access the long-form notice and other information.  *Id.*

### B.      Text notice satisfies the TCPA

Plaintiffs and CVS agree that the proposed text notice is a communication regulated by the TCPA.  *See* Br. at 10; Opp. at 9.  Express *written* consent to text messages regulated by the TCPA is only required if these messages constitute advertisements.  *Smith v. Blue Shield of California Life & Health Ins. Co*., 228 F. Supp. 3d 1056, 1065 (C.D. Cal. 2017).  If text messages are informational in nature, only express consent is required.  *Id.*  The proposed class notice is clearly informational in nature, meaning that class members must have given prior express consent—but not written consent—to receive the text notice.  This is why Plaintiffs have proposed sending text notice only to class members who have consented to receive text messages about their pharmacy prescriptions (even though no specific pharmaceutical information is provided), and why Plaintiffs have asked the Court to make an explicit finding that the proposed text notice is informational in nature.

---

https://www.pewinternet.org/2015/04/01/us-smartphone-use-in-2015/.

[6] *Why businesses can't ignore SMS (Hint: 90% of people read a text message within the first 3 minutes)*, VentureBeat (March 27, 2015), https://venturebeat.com/2015/03/27/why-businesses-cant-ignore-sms-hint-90-of-people-read-a-text-message-within-the-first-3-minutes/   (last   accessed October 21, 2019).

[7] U.S. Smartphone Use, *supra* n. 5, at 8.

      **i.    CVS concedes that class members have consented to text message contact**

Class members who have expressly consented to receive texts about their CVS prescriptions have also expressly consented to receive the proposed text notice, because the notice "relates to the same subject matter as is covered by the challenged … text messages." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). CVS complains that it might be sued under the TCPA and cites prior cases in which customers have challenged CVS's use of text messaging. Opp. at 10 (citing *Lowe v. CVS*, No. 1:14-cv-03687 (N.D. Ill.), *Bailey v. CVS*, No. 3:17-cv-11482 (D.N.J.), *Marcus v. CVS*, No. 3:15-cv-00259 (D.N.J.). In these cases, CVS allegedly called or texted plaintiffs about flu shot promotions. CVS defended its calls and texts as TCPA-compliant, arguing that the individuals had consented to the contact (i) by providing and/or confirming their phone numbers in previously receiving flu shots at CVS (*Lowe*) [Dkt. No. 384 at 14] or (ii) by enrolling in CVS's pharmacy service text message program (*Bailey* [Dkt. No. 11-1 at 20-23] and *Marcus* [Dkt. No. 75 at 22-27]). In defending against these lawsuits, CVS assumes a more expansive view of the scope of express consent under the TCPA than it does in this action. CVS cites to *Blow v. Bijora, Inc.*, 855 F.3d 793, 804-05 (7th Cir. 2017) for the proposition that consent must be only "reasonably related to the purpose for which [a plaintiff] provided her cell phone number" [*Lowe* at 17; *see also Bailey* at 19 and *Marcus* at 26-27], and to *Jackson v. Safeway, Inc.*, No. 15-cv-4419, 2016 WL 5907917, at *1 (N.D. Cal. Oct. 11, 2016) for the proposition that consent extends to calls that bear "some relation to the reason for which the number was originally provided" [*Bailey* at 19.].

CVS also argues that "it would not be appropriate to force CVS to determine which of the *Corcoran* class members have consented or not opted out of receiving text messaging." Opp. at 10. This argument is nonsensical, because CVS has already determined which class members and other customers have consented to be texted—it must do so in order to ascertain whether it can send them prescription reminders and other messages.[8]

---

[8] CVS also notes that some phone numbers in their Data Warehouse may be misidentified as cell phone numbers, or that the numbers may have been reassigned to other class members. (Opp. at 10-11.) CVS does not need to engage a third-party vendor—it can simply provide all phone numbers to Angeion, who can perform the required analysis within the Court's prescribed schedule.

1 Numerous courts in the past decade have ordered that class notice be sent to class members by text message without causing any apparent violation of the TCPA. *See, e.g.*, *In re TracFone Unlimited Serv. Plan Litig.*, No. 13-CV-03440-EMC, 2015 WL 13035125; *Lynch v. Dining Concepts Grp., LLC*, No. 2:15-CV-580-PMD, 2015 WL 5916212, at *6 (D.S.C. Oct. 8, 2015); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625 RJS, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015); *Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022, 2018 WL 1934069, at *6 (C.D. Ill. Apr. 24, 2018); *Rosas v. Sarbanand Farms, LLC*, No. C18-0112-JCC, 2019 WL 859225, at *5 (W.D. Wash. Feb. 22, 2019); *Desio v. Russell Rd. Food & Beverage, LLC*, No. 215CV01440GMNCWH, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017); *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2018 WL 6431869, at *5 (C.D. Cal. Sept. 28, 2018); *Irvine v. Destination Wild Dunes Mgmt., Inc*., 132 F. Supp. 3d 707, 711 (D.S.C. 2015); *Eley v. Stadium Grp*., LLC, No. 14-CV-1594 (KBJ), 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig*., 789 F. Supp. 2d 935, 941, 968–69 (N.D. Ill. 2011).

CVS distinguishes this action from *TracFone*, a case in which customers sued a wireless cell service, arguing that there was a tighter "nexus" between the class members and the defendant as well as the theory of wrongdoing in the case and subject matter of the class notice. Opp. at 12. But "nexus" has nothing to do with whether a customer's express consent can extend to cover class notice. Either express consent under the TCPA covers litigation related to the subject of the consent, or it does not.

Moreover, there is a clear nexus in this case between CVS's primary method of communicating with a substantial number of class members—text message—and the proposed text notice. Text message is a particularly appropriate method of providing notice to those class members that CVS routinely texts. Leading class action experts have suggested, "When selecting a means of giving notice, the parties and court should begin by assessing the reliability of the method of communication typically used by the defendant in its regular business to notify its customers or

clients."[9] CVS has touted its text messaging service as "easy" and "convenient" for customers since its launch in 2012,[10] and prominently features the service on its website.[11] Today, CVS has cell phone numbers for over three million class members, and it is likely that a significant portion of these class members have consented to receive text messages from CVS. For these class members, text message is likely their primary means of communication with CVS—and is therefore the most easy, logical, and reliable vehicle by which to send them class notice.

### ii. The Court's notice order should include proposed TCPA findings

CVS criticizes Plaintiffs' phrasing of the proposed finding that text notices are "informational messages pertaining to the class members' relationship with CVS." Opp. at 12. Plaintiffs are amenable to narrowing this language to a finding that text notices are "informational messages pertaining to the class members' prescriptions filled at CVS."

Additionally, to allay CVS's concerns about TCPA compliance, Plaintiffs propose that the Court make an additional finding that the consent that class members have given to CVS for texts about their prescriptions constitutes "prior express consent" to receive the proposed class notice by text. This would afford CVS a complete defense against any litigation related to text notice in this case. *See Van Patten v*, 847 F.3d at 1044.

### C. Email notice complies with HIPAA

Plaintiffs' proposed notice program complies with HIPAA. CVS argues that the proposed email notice likely discloses "protected health information" ("PHI") because it "reveals the class member's identity and healthcare decision." Opp. at 13. But Plaintiffs' email notice does *not* reveal any class member's identity or healthcare decision: the email does not state that the recipient is necessarily a class member, nor does it state that the recipient actually received healthcare services

---

[9] *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, Bolch Judicial Institute, Duke Law School, at 49, available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-Practices-Final-Version.pdf.

[10] *CVS/pharmacy Helps Customers Save Time with New Prescription Text Alerts*, CVS/pharmacy (Feb. 1, 2012), https://www.prnewswire.com/news-releases/cvspharmacy-helps-customers-save-time-with-new-prescription-text-alerts-138485204.html. (last accessed October 21, 2019).

[11] *See* https://www.cvs.com/mobile-cvs/text.

from CVS.  *See* Levine Decl., Ex. A.

Even if the proposed email does disclose PHI (which Plaintiffs dispute), the email notice nonetheless complies with HIPAA. The Act allows PHI to be disclosed pursuant to a court order, 45 C.F.R. § 164.512I(i), and CVS has already taken the additional step of informing its customers that it may disclose their PHI in response to a court order.  *See* Levine Decl., Ex. F.  If the Court directs email notice to class members, CVS will be complaint with HIPAA.

CVS does not dispute that it can disclose PHI pursuant to a court order.  *See* Opp. at 13-14. Instead, CVS argues that Plaintiffs should have proposed sending encrypted emails for additional security.  In fact, Plaintiffs do propose to send encrypted emails.  Reply Weisbrot Decl., ¶¶ 4-5. Emails will be encrypted to ensure that their contents cannot be read in transit.  *Id.*  Angeion will also ensure that the name of the recipient is not included in the body of the email message, ensuring that the identity of class members will not be disclosed to unintended recipients.  *Id.* at ¶ 10.  The sources CVS cites in support of encryption do not specify that encryption should take the form of emails requiring a log-in and password.  *See* Opp. at 13-14.  Department of Health and Human Services guidelines that CVS cites explicitly acknowledge that HIPAA "does not prohibit the use of unencrypted e-mail," though the guidelines note that "other safeguards should be applied to reasonably protect privacy, such as limiting the amount or type of information disclosed through the unencrypted e-mail."  *Id.* at 14.  Plaintiffs propose emails that "limit[] the amount or type of information disclosed" and are also encrypted for additional security.

**D.     CVS should pay for the additional cost of a direct mail notice plan**

CVS asks the Court to exponentially increase the cost of the notice that Plaintiffs have proposed because of its perception that mailed notice will better protect CVS from potential future litigation. *See* Opp. at 10. Because CVS wants notice that is needlessly expensive, CVS should pay for the additional expense.

When it comes to class notice, "no rigid rule as to allocation of expense of notice is advisable."  *Berland v. Mack*, 48 F.R.D. 121, 132 (S.D.N.Y. 1969).  *See also Hunt v. Check Recovery Sys., Inc.*, No. C05 04993 MJJ, 2007 WL 2220972, at *4 (N.D. Cal. Aug. 1, 2007), aff'd

sub nom. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009) (applying *Berland* factors to allocate the cost of class notice, including "the number of named plaintiffs and their financial responsibility, their interests compared with the entire class, and their ability to pay considering the cost of the notice"). While the most common reason for courts to require defendants to pay for class notice is that the liability of the defendant has already been established, courts have also required defendants who advocated for a more expensive form of notice to pay the additional cost. In *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*, plaintiffs proposed emailing notice to class members. 290 F.R.D. 452, 464 (D. Vt. 2013). Defendants opposed plaintiffs' proposal, and wanted both mailed and emailed notice. *Id.* The court determined that if defendants wanted mailed notice in addition to the emailed notice plaintiffs proposed, defendants should pay the cost of postage. *Id.*

Analogously, courts have required defendants who make periodic mailings to class members to include class notice in these mailings in order to reduce the expense of notice. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356, 98 S. Ct. 2380, 2392 n.22 (1978); *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 n.19 (S.D.N.Y. 1996); *Kan. Hosp. Ass'n v. Whiteman*, 167 F.R.D. 144, 145–46 (D. Kan. 1996); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 437 (D.N.M. 1988). These cases demonstrate the propriety of reducing the cost of class notice where possible, and of requiring a defendant to shoulder a portion of the notice burden.

### III. CONCLUSION

Notice exclusively by mail is not the best notice practicable in this case for the reasons that Plaintiffs have articulated. Plaintiffs respectfully ask the Court to approve Plaintiffs' class notice proposal and order the dissemination of this notice by text, email, or mail.

Dated: October 21, 2019                                   Respectfully submitted,

By: */s/ Jonathan K. Levine*                              By: */s/ Robert Gilmore*
Elizabeth C. Pritzker (Cal. Bar No. 146267)   Robert B. Gilmore (admitted *pro hac vice*)
Jonathan K. Levine (Cal. Bar No. 220289)   Edward H. Meyers (admitted *pro hac vice*)
Bethany L. Caracuzzo (Cal. Bar No. 190687)   STEIN MITCHELL BEATO & MISSNER LLP
PRITZKER LEVINE LLP

By: */s/ Bonny Sweeney*
Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Sathya S. Gosselin (Cal. Bar No. 269171)
HAUSFELD LLP

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Jonathan K. Levine, attest that concurrence in the filing of this document has been obtained from each of the persons listed in the above signature block.

Date: October 21, 2019

By: */s/ Jonathan K. Levine*