Enu Mainigi (admitted *pro hac vice*)
Grant A. Geyerman (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Edward W. Swanson (Cal. Bar No. 159859)
August Gugelmann (Cal. Bar No. 240544)
SWANSON & MCNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

*Attorneys for Defendant CVS Pharmacy, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, et al., | Case No. 15-cv-03504-YGR |
| Plaintiffs, | <u>CLASS ACTION</u> |
| v. | **CVS PHARMACY, INC.'S OPPOSITION TO PLAINTIFFS' REVISED MOTION TO SUBSTITUTE CLASS REPRESENTATIVES AND FOR CERTIFICATION OF NEW YORK AND ARIZONA CLASSES** |
| CVS Pharmacy, Inc., | |
| Defendant. | Date:  November 12, 2019 |
| | Time:  1:00 p.m. |
| | Courtroom:  1 |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

1
2

# TABLE OF CONTENTS

3

TABLE OF AUTHORITIES ............................................................................................ ii

4

INTRODUCTION ...........................................................................................................1

5

FACTUAL BACKGROUND.............................................................................................2

6

ARGUMENT ..................................................................................................................3

7   I.   THE COURT SHOULD NOT CERTIFY AN ARIZONA OR NEW YORK CLASS
         BECAUSE A FIVE- OR SIX-CLASS TRIAL IS NOT MANAGEABLE. .............................3

8
    II.  THE COURT SHOULD NOT CERTIFY THE PROPOSED CLASSES BECAUSE THE
9        PROPOSED REPRESENTATIVES' CLAIMS ARE TIME-BARRED.................................8

10       A.  Stephen Sullivan's Claim is Time-Barred. ......................................................8

11            1.       His claim was untimely as of March 2013....................................8

12            2.       No claim based on a purchase before July 30, 2012 could be timely........12

13       B.  Darlene McAfee's Claim is Time-Barred.........................................................12

14            1.       Her claim accrued more than one year before a claim was asserted. .........12

15            2.       Arizona's recognizing the discovery rule shows why common issues do
                       not predominate and a class should not be certified. .................................16

16  III. THE COURT SHOULD NOT CERTIFY A NEW YORK CLASS FOR OTHER
         REASONS UNIQUE TO SULLIVAN.......................................................................17

17       A.  Sullivan Did Not Purchase the At-Issue Prescriptions Himself.........................17

18       B.  Sullivan's Identified Insurer – Cigna – Did Not Use a Class-Qualifying PBM. ...............19

19       C.  Sullivan is Not an Adequate Class Representative. .........................................21

20  CONCLUSION....................................................................................................22

21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abed v. A.H. Robins Co. (In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.)*, 693 F.2d 847 (9th Cir. 1982), *abrogated on unrelated grounds in Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...............................................................17

*Balsam v. Tucows Inc.*, 627 F.3d 1158 (9th Cir. 2010) ...................................................7

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505 (D. Md. 2011)...........................19

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ...................................16

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144 (N.D. Cal. 1991)...................21, 22

*Corcoran v. CVS Health*, 2017 WL 1065135 (N.D. Cal. Mar. 21, 2017) ...............................1, 4, 21, 22

*Corcoran v. CVS Health*, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017)..........................................1, 3, 4

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016)...............................................15

*Corcoran v. CVS Health Corp.*, 2019 WL 2454529 (9th Cir. June 12, 2019) ........................................1

*Dongelewicz v. PNC Nat'l Ass'n*, 104 F. App'x 811 (3d Cir. 2004) .....................................................17

*Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014), *overruled on other grounds*, *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576 (9th Cir. 2016)...........................21

*Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896 (2d Cir. 2008) ............................................21

*Frazer v. Millennium Bank*, 2010 WL 4269584 (D. Ariz. Oct. 27, 2010)............................................12

*Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893 (8th Cir. 1997).......................8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...............................................................20

*In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124 (E.D. Pa. 2015) ......................................6

*Inspired Capital, LLC v. Conde Nast*, 2018 WL 6173712 (S.D.N.Y. Nov. 26, 2018), *appeal filed*, No. 19-2057 (2d Cir. July 3, 2019).....................................................................10, 11

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ...........................................................4

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004)......................................................21, 22

*Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865 (N.D. Ohio 2017) .................................................21

*Plumlee v. Pfizer, Inc.*, 664 F. App'x 651 (9th Cir. 2016)................................................................8

*Saudi Am. Bank v. Shaw Grp., Inc. (In re Stone & Webster, Inc.)*, 558 F.3d 234 (3d Cir. 2009)................................................................................................................................7

*Siegel v. Shell Oil Co.*, 256 F.R.D. 580 (N.D. Ill. 2008), aff'd, 612 F.3d 932 (7th Cir. 2010)................................................................................................................................4

*Theodosakis v. Clegg*, 2016 WL 1295182 (D. Ariz. Feb. 9, 2016) ........................12, 14, 15, 16

*United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412 (D. Mass. 2015)................................................................................................................16

*United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201 (1st Cir. 2016) ...................16

*Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974) ................................................8

*Welling v. Alexy*, 155 F.R.D. 654 (N.D. Cal. 1994)..................................................................22

**STATE CASES**

*Carnegie v. H&R Block, Inc.*, 703 N.Y.S.2d 27 (N.Y. App. Div. 2000)..................................18

*Castle v. Barrett-Jackson Auction Co., LLC*, 276 P.3d 540 (Ariz. Ct. App. 2012)..................5

*De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009).................................................................5

*Demian v. Calmenson*, 2016 WL 1535220 (N.Y. Sup. Ct. Apr. 13, 2016), *aff'd*, 66 N.Y.S.3d 462 (N.Y. App. Div. 2017)................................................................................11

*Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83 (Ariz. Ct. App. 1983)............................5

*Egan v. Telomerase Activation Scis., Inc.*, 8 N.Y.S.3d 175 (N.Y. App. Div. 2015) ...............19

*F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 865 N.E.2d 228 (Ill. App. Ct. 2007)................................................................................................................................7

*Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078 (N.Y. 2001)............................................8

*Henry v. Bank of Am.*, 48 N.Y.S.3d 67 (N.Y. App. Div. 2017).........................................9, 11

*Kainer v. Christie's, Inc.*, 34 N.Y.S.3d 58 (N.Y. App. Div. 2016) ......................................8, 12

*Moman v. Sony BMG Music Entm't.*, 880 N.Y.S.2d 874 (Sup. Ct. 2009) (unpublished table decision), 2009 WL 224685 ..........................................................................7

*Norton v. First Fed. Sav.*, 624 P.2d 854 (Ariz. 1981) (en banc)..............................................6

*Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ........................................5

*Salomon v. Town of Wallkill*, 107 N.Y.S.3d 420 (N.Y. App. Div. 2019)...............................................10

*Stutman v. Chem. Bank*, 731 N.E.2d 608 (N.Y. 2000) ........................................................................6

*United Healthcare Servs., Inc. v. First Street Hosp. LP*, 570 S.W.3d 323 (Tex. App.—
    Hous. [1st Dist.] 2018).............................................................................................................11

*Wender v. Gilberg Agency*, 716 N.Y.S.2d 40 (N.Y. App. Div. 2000).....................................................8

## OTHER AUTHORITIES

Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. 44-1521, *et seq.*) ......................................... passim

Fed. R. Civ. P. 23 ....................................................................................................................... passim

Fla. Stat. Ann. § 501.204 .................................................................................................................5

Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. § 504.204) .................................5

Illinois Consumer Fraud & Deceptive Practices Act...........................................................................5

New York Civil Practice Law and Rule 214(2).....................................................................................8

New York's General Business Law § 349.......................................................................................... passim

# INTRODUCTION

The Court should deny Plaintiffs' Revised Motion to Substitute Class Representatives and for Certification of New York and Arizona Classes (Dkt. No. 386-2) ("Motion").

*First*, the Motion fails to carry Plaintiffs' burden of showing—and could never show—how the upcoming trial in April will be manageable for a jury if Arizona and New York classes are certified. Given the Ninth Circuit's opinion in this case, at trial, the jury must apply evidence concerning five different CVS/PBM contracts against each of five different consumer protection statutes for the four classes already certified for California (two), Florida, Illinois, and Massachusetts. Adding further complexity, each separate PBM's evidence must be analyzed pursuant to the contract-law principles from even more states whose laws are identified in the contract's choice-of-law provision. Thus, keeping the right law and evidence straight for the four existing classes will be daunting enough, and adding Arizona and/or New York classes will only exacerbate the problem. Neither of the Court's prior opinions deciding motions for class certification held that a trial proceeding under these circumstances would be manageable for the jury, and the Motion makes no attempt to show otherwise.

*Second*, the Court also should not certify Arizona and New York classes because each of the proffered class representatives' claims are time-barred. The New York representative's claim became time-barred three years after he first sustained injury – in 2010 – when he says CVS first overcharged him. New York does not recognize the discovery rule for consumer protection claims, meaning that the limitations period expired a strict three years after being overcharged. The Arizona representative, who is subject to a one-year statute of limitations, knew or should have known in 2010, when she made her purchase at issue, that she had been charged a copayment that exceeded the HSP price. Thus, even though the discovery rule applies under Arizona law, her claim is untimely.

*Third*, certification of a New York class also is not appropriate for reasons specific to the proffered New York representative—(1) his wife, rather than he, likely made the purchases at issue, meaning he does not meet the class definition and is atypical of the class; (2) based on his testimony, he used an insurance company that did not contract with one the five PBMs that are specified in the class definition; and (3) as his deposition shows, he fails to know the minimum facts the Court has required of other Plaintiffs here to qualify as an "adequate" class representative.

**FACTUAL BACKGROUND**

This is the third motion seeking class certification the Court has considered.

In March 2017, the Court denied without prejudice the Plaintiffs' first motion for class certification, which had sought certification of classes asserting consumer protection and common law claims in each of eleven states. *Corcoran v. CVS Health*, 2017 WL 1065135, at *4–11 (N.D. Cal. Mar. 21, 2017). In September 2017, the Court granted in part and denied in part the Plaintiffs' second motion for class certification. *Corcoran v. CVS Health*, 2017 WL 3873709, at *4–10 (N.D. Cal. Sept. 5, 2017). The Court denied the motion insofar as Plaintiffs sought classes for Arizona and New York customers because no plaintiff from those states had a prescription purchase meeting the class definition. *Id.* at *6. It granted the motion insofar as it certified four state classes—for California, Florida, Illinois, and Massachusetts—for certain CVS customers whose prescriptions were adjudicated by the same pharmacy benefit manager ("PBM") as adjudicated that state-representative's prescription. The motion had proposed a broader class for each of the four states – customers whose prescriptions were adjudicated by any of five PBMs, not just the same PBM as applied to the class representative. Earlier this year, however, the Ninth Circuit reversed this "same-PBM" limitation on the four certified classes as inconsistent with the Circuit's typicality jurisprudence. *Corcoran v. CVS Health Corp.*, 2019 WL 2454529, at *2–3 (9th Cir. June 12, 2019).

After the Ninth Circuit remanded the case, the Court honored Class Counsel's request to propose new representatives for potential Arizona and New York classes, and to move to certify classes in those states. Class Counsel has identified one proposed representative for each state: Darlene McAfee (Arizona) and Stephen Sullivan (New York). McAfee is suing over a single purchase she made in 2010, and her claim under Arizona's Consumer Fraud Act is subject to a one-year statute of limitations. Ex A (McAfee's Objs. & Resps. to CVS's Interrogatories) (Sept. 9, 2019) at 8 (identifying transaction).[1] Sullivan also alleges he was first overcharged by CVS in 2010, and his claim under New York's General Business Law Section 349 is subject to a three-year statute of limitations. Ex B (Sullivan's Amended Objs. & Resps. to CVS's Interrogatories) (Oct. 15, 2019) at 8–9 (identifying transactions). This lawsuit was not filed until July 30, 2015.

---

[1] All Exhibits are attached to the declaration of Grant A. Geyerman.

1
2
3
4
5
6

At his deposition, Sullivan testified that his wife – not he – likely made the purchases at CVS over which he is suing in the case.  He also identified Cigna as the insurance company through whom he has received prescription drug benefits, even though Cigna did not utilize one of the class-qualifying PBMs to adjudicate prescriptions at the time of his prescription.  Unlike McAfee, Sullivan was unable to recite at his deposition basic facts or issues in the case, admitting that he had not even read the key portions of the complaint.  *See infra* Part III.

7

## ARGUMENT

8
9
10
11
12
13
14
15
16

The Court should not certify classes for New York or Arizona because neither a five- nor six-class trial would be manageable, particularly given that the four classes already going to trial will each involve every CVS/PBM contract and not just the contract controlling the class representative's claim.  Nor is certification appropriate where, as here, the class representative's claim is time-barred.  For New York, certification also cannot be based on Sullivan, who is not an appropriate representative because (1) his wife, not he, likely made the prescription purchases at issue; (2) those purchases were not even adjudicated by a class-qualifying PBM, if one accepts as true his testimony identifying Cigna as the insurance company that has provided him prescription coverage over the years; and (3) he is startlingly unfamiliar with the facts and claims in the case and thus not an adequate representative.

17
18

## I.    THE COURT SHOULD NOT CERTIFY AN ARIZONA OR NEW YORK CLASS BECAUSE A FIVE- OR SIX-CLASS TRIAL IS NOT MANAGEABLE.

19
20
21
22
23
24
25
26
27

The Court cannot certify either an Arizona or New York class without finding, for each, that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23 identifies four non-exhaustive factors to consider:  (1) class members' "interests in individually controlling the prosecution or defense of separate actions," (2) "any litigation concerning the controversy already begun," (3) "the desirability . . . of concentrating the litigation . . . in the particular forum," and (4) "the likely difficulties in managing a class action." *Id*.  Whereas the first three factors split on whether they support class certification, *Corcoran*, 2017 WL 3873709, at *9 (discussing factors), the fourth so strongly weighs against certification under the current circumstances that it should tip the balance.

28

---

Plaintiffs bring claims under seven materially different consumer protection statutes,[2] and partly for that reason, the Court advised Plaintiffs in its first class certification opinion that Plaintiffs' "trial plan [submitted with any renewed motion for class certification] should include details on how jury instructions could be structured and formulated to account for [multiple] statewide classes involving statutory and common law state claims." *Corcoran*, 2017 WL 1065135, at *11. Despite that instruction and Plaintiffs' burden of proving each of Rule 23's requirements, the instant Motion does not attach a trial plan or jury instructions. Plaintiffs presumably would rely on the trial plan and jury instructions submitted with their second motion for class certification, since their argument seems to be that the prior certification opinion means certification of Arizona and New York classes necessarily is appropriate. Mot. at 6 ("[C]lass treatment for the claims of the Arizona and New York classes are superior to any other means of adjudicating those class members' claims, for the same reasons the Court found superiority for the now-certified classes." (citing *Corcoran*, 2017 WL 3873709, at *10–11)). That argument overlooks the context of the Court's prior certification decision.

In 2017, the Court's finding that a four-class trial was manageable assumed two things were true—(1) when deciding the consumer protection claim within a given class, the jury would only have to consider the evidence of the same CVS/PBM contract governing that state's class representative's purchases, not the evidence concerning each of five different PBM contracts; and (2) the jury would need to evaluate CVS's conduct under the consumer protection statutes of only four states, not six states. The Court noted that these assumptions simplified the case. *Corcoran*, 2017 WL 3873709, at *9 ("[T]he Court's limitation of each state class only to the PBMs that adjudicated the named representative's claims and finding that the Arizona and New York classes lack a typical representative further reduces the complexity of any potential trial."). Of course, the Ninth Circuit's decision eliminated the "same-PBM" limitation on the scope of each certified class, and thus the jury will need to decide five or six states' claims, not just four, if the Court certifies Arizona and/or New

---

[2] *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008) ("[S]tate consumer fraud laws differ with regard to several key issues—the type of prohibited conduct, proof of injury-in-fact, available remedies, scienter, statute of limitations, and reliance. Moreover, several states' consumer fraud laws require proof of deception or reliance, thus precluding class certification." (citations omitted)), *aff'd*, 612 F.3d 932 (7th Cir. 2010); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (identifying differences in scienter, reliance, and remedies under UDAP statutes).

---

York classes.  Because the prior assumptions are no longer true, the question now, then, is squarely presented:  Is a five- or six-class trial—where every PBM contract applies—manageable for a single jury?

The Motion fails to demonstrate that it is.  It does not show how the Court could intelligibly— yet still accurately and without introducing error—write jury instructions that capture the unique requirements of Arizona's Consumer Fraud Act or New York's General Business Law Section 349 when five other statutes are involved.  For example, the Plaintiffs' proposed "jury instructions" from 2017 do not contain declarative statements about what Arizona's statute in particular requires the jury to find for Plaintiffs to prove their claim.  As one example, the instructions make the general statement—"If you find that CVS engaged in a false, misleading, or deceptive act or practice, then Element 1 is satisfied for all states," Pls.' Trial Plan in Supp. of Class Cert. (June 6, 2017) (Dkt. No. 274-40) ("Trial Plan") at 8—even though Arizona's statute regulates a narrower class of conduct than this private-citizen suit.  In such suits, there must be a "false promise or misrepresentation" to violate the statute.  *See Castle v. Barrett-Jackson Auction Co., LLC*, 276 P.3d 540, 542 (Ariz. Ct. App. 2012) ("'The elements of a private cause of action under the [A]ct are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury.'" (citing *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983)); Trial Plan at 12 (quoting *Castle*).[3]  The scope of Arizona's statute thus differs from, for example, the Illinois Consumer Fraud & Deceptive Practices Act that prohibits any "deceptive act,"[4] or Florida's Deceptive and Unfair Trade Practices Act that reaches a "deceptive act" *or* an "unfair practice."[5]  As written, the proposed instructions gloss over material differences concerning the type of conduct sufficient to violate each statute.

---

[3] The statute authorizes Arizona's Attorney General to pursue remedies for a broader range of conduct. *See* Ariz. Rev. Stat. Ann. 44-1522, -1524.

[4] *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009) ("A Consumer Fraud Act claim requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception.").

[5] Fla. Stat. Ann. § 501.204; *see Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) ("[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."); Trial Plan at 12 (quoting *Rollins*).

1   As further examples, the proposed jury instructions ignore Arizona's requirement that the

2   defendant's conduct occur "in connection with the sale or advertisement of merchandise" and New

3   York's requirement that the "challenged act or practice was consumer-oriented."  Trial Plan at 8 n.4;

4   Ariz. Rev. Stat. Ann. 44-1522(A); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000) (stating

5   elements of Section 349 claim).  In a footnote, Plaintiffs say these omissions—and several other state-

6   specific requirements for the Illinois and Massachusetts statutes—reflect Plaintiffs' assumption that

7   CVS will "agree[] before trial" that these particular requirements are satisfied.  Trial Plan at 8 n.4.

8   That is ludicrous.  At trial, CVS will require Plaintiffs to prove to the jury every element of each one

9   of their causes of action.  Plaintiffs' assumption shows the proposed jury instructions pay only lip-

10   service to the Court requiring Plaintiffs propose a realistic trial plan and jury instructions

11   demonstrating how a multi-state jury trial could actually occur.  *See In re Processed Egg Prods.*

12   *Antitrust Litig.*, 312 F.R.D. 124, 164–65 (E.D. Pa. 2015) (no certification of multi-state class where

13   "Plaintiffs do not show . . . what the jury instructions would look like or how the verdict form could be

14   written to account for the nuanced differences in the state laws").

15   In addition to both overgeneralizing and omitting *prima facie* elements of the Arizona and New

16   York statutes, the proposed instructions also ignore entirely how the Court could instruct on relevant

17   contract-law and statute-of-limitation principles without overwhelming the jury.  For example,

18   although Plaintiffs recently conceded that they must be third-party beneficiaries of CVS's contracts

19   with PBMs,[6] the proposed instructions do not address third-party beneficiary law.  The five states

20   whose laws the CVS/PBM contracts identify as controlling contract-related questions articulate

21   different standards for demonstrating a third-party beneficiary.  *See, e.g.*, *Norton v. First Fed. Sav.*,

22   624 P.2d 854, 856 (Ariz. 1981) (en banc)  ("The Arizona rule is that in order for a person to recover as

23   a third-party beneficiary of a contract, an intention to benefit that person must be *indicated in the*

24   *contract itself*.  The contemplated benefit must be both *intentional and direct*, and it must *definitely*

25   *appear* that the parties intend to recognize the third party *as the primary party in interest*." (citations

26

27   ───────────────

    [6] *See* Ninth Circuit Appeal Hr'g Tr. (Dec. 17, 2018) at 8:23–9:3 ("THE COURT: Let me ask a
    question. Do the plaintiffs need to be third-party beneficiaries to bring any other claims? MR.

28   GILMORE: The District Court said that that wasn't relevant. We think that they do need to be and are
    third-party beneficiaries.").

and internal quotation marks omitted) (Caremark contract));[7] *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010) ("Under California law . . . [a] third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and *the terms of the contract make that intent evident*." (internal quotation marks omitted) (Optum contract)); *Saudi Am. Bank v. Shaw Grp., Inc.* (*In re Stone & Webster, Inc.*), 558 F.3d 234, 241 (3d Cir. 2009) ("According to Delaware law, . . . to qualify as a third party beneficiary of a contract, (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been *intended as a gift or in satisfaction of a pre-existing obligation to that person*, and (c) the intent to benefit the third party must be *a material part of the parties' purpose in entering into the contract*." (internal quotation marks omitted) (Express Scripts contract)); *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 865 N.E.2d 228, 235 (Ill. App. Ct. 2007) ("Courts require an express provision because the contract's provisions apply to only [the signatories] and not to third parties.  In order to overcome that presumption, the implication that the contract applies to third parties must be *so strong as to be practically an express declaration*." (citations and internal quotation marks omitted) (MedImpact contract)); *Moman v. Sony BMG Music Entm't.*, 880 N.Y.S.2d 874 (Sup. Ct. 2009) (unpublished table decision), 2009 WL 224685, at *3 ("[E]ven though the beneficiary may be the beneficiary of a public or a private contract, he can recover only by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that *the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost*." (internal quotation marks omitted) (Medco contract)).  It would be extraordinarily difficult for the jury to apply each of these standards to the applicable PBM contract, while further applying each PBM's evidence to each of the five or six classes' consumer-protection claims.  The instructions make no effort to show how it could be done.

CVS obviously realizes that the trial in April will involve four state classes.  Because such a trial will be challenging enough for the jury, the Court should not certify Arizona and New York classes now and make the situation worse.  Indeed, it cannot do so when the Motion makes no effort to show how the jury could be manageably, yet accurately, instructed in a six-class trial.

---

[7] All emphases in quotations in this Brief are added, unless otherwise indicated.

## II.   THE COURT SHOULD NOT CERTIFY THE PROPOSED CLASSES BECAUSE THE PROPOSED REPRESENTATIVES' CLAIMS ARE TIME-BARRED.

Stephen Sullivan and Darlene McAfee are the only individuals offered to represent New York and Arizona, respectively.  Sullivan's claim is time-barred by New York's three-year statute of limitations, because he was injured by CVS's alleged misconduct as early as March 2010, more than five years before any Plaintiff in this case asserted claims under New York General Business Law Section 349, and the statute's limitation period runs strictly from date of first injury and is not tolled by the discovery rule.  McAfee's claim, too, is time-barred under Arizona's one-year statute of limitation.  She could have known of the basis of her claim under the Arizona Consumer Fraud Act in August 2010, when she made her only at-issue purchase.  At that time, she knew how her copayment was calculated and had familiarity with the concept of "usual and customary" prices; the HSP price was also a knowable fact.  Because their claims are time-barred, neither is a class representative upon which the Court may certify additional classes.  *See Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 654 (9th Cir. 2016) ("Because Plumlee's individual claims are time-barred, she cannot serve as a class representative.").[8]

### A.   Stephen Sullivan's Claim is Time-Barred.

#### 1.   His claim was untimely as of March 2013.

New York applies a three-year statute of limitations to claims under New York General Business Law ("NYGBL") Section 349, which runs from the plaintiff's injury caused by the defendant's deceptive act.  *Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078, 1082–83 (N.Y. 2001) ("[W]e hold that the three-year period of limitations for statutory causes of action under CPLR 214(2) applies to the instant General Business Law § 349 claims."); *Kainer v. Christie's, Inc.*, 34 N.Y.S.3d 58, 60 (N.Y. App. Div. 2016) (the "three-year period of limitations for statutory causes of action [such as] General Business Law § 349 claims . . . runs from the time when the plaintiff was injured" (citations and alterations omitted)).  The limitations period is *not* subject to a discovery rule.  *Wender*

---

[8] *Accord Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997) ("Here, Tacey is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class."); *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 556 (4th Cir. 1974) ("Furthermore, being [time] barred from suit himself, Weinberger is not a member of the class he seeks to represent . . . and thus does not fulfill the first prerequisite of Fed. R. Civ. P. 23(a).").

*v. Gilberg Agency*, 716 N.Y.S.2d 40, 41–42 (N.Y. App. Div. 2000) ("Plaintiff's claims under . . . § 349 . . . are time-barred [by] the three-year limitations period . . . and the date of discovery rule is not applicable and cannot serve to extend that limitations period").

Sullivan claims injury as early as March 23, 2010, the day he says CVS first overcharged him for a prescription.  Ex. B (Sullivan's Amended Objs. & Resps. to CVS's Interrogatories) (Oct. 15, 2019) at 8–9.  Sullivan thus had until March 23, 2013 to bring his claim, and yet (1) no Plaintiff in this case asserted a claim under NYGBL Section 349 until July 30, 2015, the day the lawsuit was filed, *see* Compl. (July 30, 2015) (Dkt. No. 1) at 49, and (2) Sullivan himself did not assert a claim until he was offered as a class representative on September 30, 2019.  Even assuming Sullivan's claim relates back to the first day when any Plaintiff asserted a NYGBL claim here, his claim is time-barred.

Sullivan may argue his claim is timely because at least one of his allegedly overpriced prescriptions occurred within three years of when this lawsuit was filed (i.e., in February 2015).  Such an argument presumes that each purchase constitutes an "independent, distinct wrong[]" against Sullivan, when in reality each inflated copayment paid was merely "the continuing effects of earlier unlawful conduct" – namely, CVS's decision not to report its HSP price as its U&C price under the contract definitions of "usual and customary."  *Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (N.Y. App. Div. 2017).  Under New York law, although a deceptive business practice may cause the plaintiff "continuing consequential damages" in recurring transactions, the cause of action still accrues "at the time that the wrongful act first injured [the] plaintiff."  *Id.*

*Henry* is instructive.  The plaintiff there had a credit card account with the defendant-bank from roughly 2001 to 2010.  *See id.* at 68–69.  In March 2001 and March 2007, the bank enrolled plaintiff into two separate privacy-protection programs for his account without his knowledge or consent.  *See id.*  Plaintiff thereafter paid a monthly fee for each of the programs until he closed his account in 2010.  *See id.* at 68–70.  Plaintiff sued in 2014, upon learning of the unauthorized charges in 2012 or 2013, and brought, *inter alia*, claims for breach of contract and violations of NYGBL Section 349.  *Id.* at 69–70.  Although plaintiff argued that the monthly billing statements were "continuing wrongs" that tolled the statute of limitations, thus allowing him to bring NYGBL Section 349 claims based upon any monthly bills he paid within the preceding three years, the court found

instead the bank's deception was enrolling plaintiff in the programs without consent, and the monthly

charges were merely consequential damages that grew with each billing cycle.  The court explained

the distinction between continuing conduct that constitutes "independent, distinct wrongs" and

"continuing consequential damages":

> The doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs.  The doctrine is inapplicable where there is one tortious act complained of since the cause of action accrues in those cases at the time that the wrongful act *first injured plaintiff* and it does not change as a result of continuing consequential damages.  In contract actions, the doctrine is applied to extend the statute of limitations when the contract imposes a continuing duty on the breaching party.  Thus, where a plaintiff asserts a single breach—with damages increasing as the breach continued—the continuing wrong theory does not apply.
>
> Here, the alleged wrongs are the enrollment of plaintiff in the CPP and PAS programs in March 2001 and 2007, respectively, and there was no breach of a recurring duty. The monthly billings demanding payment of CPP and PAS fees, both before and after plaintiff closed his account, represent the consequences of those wrongful acts in the form of continuing damages, not the wrongs themselves, and do not qualify for application of the continuous wrong doctrine.

*See id.* at 69–70.

Other New York courts have followed *Henry*, holding that subsequent events or transactions

that increased the plaintiffs' damages from an earlier wrongful act did not toll the statute of

limitations.  *See, e.g.*, *Salomon v. Town of Wallkill*, 107 N.Y.S.3d 420, 422 (N.Y. App. Div. 2019)

("[T]he Town made the determination to . . . subject [petitioner] to a 15% health insurance premium

contribution requirement, as reflected in her first paycheck" and "[e]ach subsequent paycheck

deduction 'represent[ed] the consequences of [that allegedly] wrongful act[ ] in the form

of continuing damages,' and was not an independent wrong in itself." (quoting *Henry*)); *Inspired*

*Capital, LLC v. Conde Nast*, 2018 WL 6173712, at *7 (S.D.N.Y. Nov. 26, 2018) (breach of fiduciary

duty claim accrued no later than January 2014, when former owner started competing with his former

company, and "[a]ny continued illicit use of Plaintiffs' intellectual property and confidential

information after January 2014 can only be considered 'continuing consequential damage' and cannot

be used to toll the statute of limitations" (quoting *Henry*)), *appeal filed* No. 19-2057 (2d Cir. July 3,

2019); *Demian v. Calmenson*, 2016 WL 1535220, at *1–2 (N.Y. Sup. Ct. Apr. 13, 2016) (plaintiffs' contract and tort claims based upon defendant's publishing book without accreditation to plaintiff and without sharing profits accrued on the date of publication irrespective of continuing damages), *aff'd*, 66 N.Y.S.3d 462 (N.Y. App. Div. 2017) (citing *Henry*); *cf. United Healthcare Servs., Inc. v. First Street Hosp. LP*, 570 S.W.3d 323, 346–47 (Tex. App.—Hous. [1st Dist.] 2018) (citing *Henry* in collection of cases supporting holding that "separate bills are a form of continuing damages arising from one core alleged fraudulent misrepresentation: that First Hospital owned or operated the Off-site ERs and held federal provider-based status").

At the core, Plaintiffs say CVS acted deceptively by breaching the "CVS-PBM contracts' definitions of "usual and customary" – specifically, disregarding that the HSP price fit within those definitions and, by doing so, depriving Plaintiffs, as third-party beneficiaries, the expected financial "benefits of those contracts' U&C pricing terms" through collecting copayments above the HSP price. *See* Plfs. Opp. to CVS's Mot. for S.J. (June 20, 2017) (Dkt. No. 304) at 2, 17.[9]  CVS's supposed breach occurred in November 2008, when it launched the HSP program and simultaneously could have, but did not, start submitting its HSP price as the U&C price during adjudication to the class PBMs.  Although Sullivan may say that inflated overpayments were collected on each of his 14 (allegedly) class-qualifying prescriptions, like the bank's collection of fees in *Henry*, CVS's collection of copays was merely the "consequence[] of the wrongful acts [(CVS's alleged breaching the CVS-PBM contracts)] in the form of continuing damages, not the wrongs themselves."  *Henry*, 48 N.Y.S.3d at 70–71; *see* Plfs. Opp. to CVS's Mot. for S.J. at 18 ("Thus CVS's disregard for its contracts while knowing it was overcharging Plaintiffs and depriving them of the benefits of their insurance violates these [consumer protection] statutes – even if CVS had not made any direct misrepresentations or

---

[9] *See also, e.g.*, *id*. at 2 ("By disregarding the plain and unambiguous contract language that required CVS to submit all cash discounts, including its HSP cash discount prices, as its U&C prices, CVS directly harmed Plaintiffs . . . ."); *id.* (noting Plaintiffs' alleged harm stemmed directly from CVS's failure to "obey[] the U&C definitions in the PBM contracts" and "failure to abide by the plain terms of its contract with PBMs"); Plfs. Am. Mot. for Class Cert. (June 6, 2017) (Dkt. No. 274) at 20 ("Because CVS's misrepresentations and omissions were precisely the same for all class members, arising from the same uniform plain-language definition of U&C across the five PBM contracts, the classes exhibit no variation.").

omissions . . . .").[10]  Because no NYGBL claim was filed within three years of Sullivan sustaining injury on March 23, 2010, Sullivan's claim is time-barred.

### 2.     No claim based on a purchase before July 30, 2012 could be timely.

A New York class is not certifiable because Sullivan's claim is time-barred, for the reasons described above.  But even if the Court were to hold – contrary to *Henry*'s analysis – that New York's three-year statute of limitations restarted for each of Sullivan's 14 separate, independently actionable prescriptions, the Court still should not certify the New York class as Plaintiffs are proposing.  Plaintiffs want to certify a class of customers who purchased prescriptions dating back to November 2008.  Because the discovery rule does not apply to NYGBL Section 349 claims, no such claim would be timely if based on a prescription dated prior to July 30, 2012, three years before the lawsuit was filed.  At the very least, the Court should decline to certify a class of New York customers whose purchases occurred prior to July 30, 2012.

### B.     Darlene McAfee's Claim is Time-Barred.

### 1.     Her claim accrued more than one year before a claim was asserted.

McAfee brings a claim under the Arizona Consumer Fraud Act ("ACFA") based on one purchase from CVS dated August 6, 2010.  *See* Declaration of Joel Hay in support of Plfs. Motion (Sept. 30, 2019) (Dkt. No. 386-3) at Ex. C.  Because McAfee should have known by that date that her copayment exceeded the HSP program price, Arizona's one-year statute of limitation started running on that day and her claim became untimely after August 6, 2011.  *See Theodosakis v. Clegg*, 2016 WL 1295182, at *4 (D. Ariz. Feb. 9, 2016) ("The [ACFA] creates a private right of action that is governed by the one-year limitations period for statutory causes of action. . . . [T]he one-year limitations period begins to run 'when the defrauded party discovers or with reasonable diligence could have discovered the fraud.'") (quoting *Frazer v. Millennium Bank*, 2010 WL 4269584, at *3 (D. Ariz. Oct. 27, 2010)), *report and recommendation adopted*, 2016 WL 1272912 (D. Ariz. Mar. 31, 2016).

---

[10] Plaintiffs have no evidence that CVS made false statements or misrepresentations to Sullivan for the purpose of concealing any alleged breach of the PBM contracts' definitions.  *Kainer*, 34 N.Y.S.3d at 60 ("[T]he later fraudulent misrepresentation must be for the purpose of concealing the former tort").

From HSP's launch in November 2008, CVS made known publicly the price that enrollees in HSP would pay when purchasing prescriptions under the program. That price—generally $9.99 for a 90-day supply[11]—and the list of drugs available at that price were posted on CVS's website and in marketing materials and the enrollment forms available in CVS stores. *See, e.g.*, Ex. C (CVS.com Screen Shots (Nov. 2008)); Ex. D (HSP Marketing Materials); Ex. E (HSP Enrollment Form). CVS pharmacists were trained about the program and available to answer customers' questions about the program. *See* Ex. F (Pharmacy Team Huddle Guide). The HSP price was thus a price-point knowable to anyone, meaning McAfee could have known when she made her purchase in August 2010 that her copayment exceeded the HSP price.

Unlike some customers, McAfee was actually familiar at the time of her purchase with concepts relevant to her consumer-protection claim: "usual and customary" pricing and how her insurance copayments were calculated. McAfee worked at BlueCross/BlueShield of Arizona for approximately five years in the late-1960s/early-1970s, including in the claims-processing department for a period of time. Ex. G (Deposition of Darlene McAfee (Sept. 25, 2019) ("McAfee Dep.")) at 22:2–23:13. From that experience, McAfee gained exposure to the concept of "usual and customary prices." *Id.* at 105:13–106:13. When she revealed this fact at her deposition, defense counsel pressed her to admit that she was not an expert in "what constitutes a usual and customary price;" she resisted making such an admission and, instead, articulated that a "[u]sual and customary usually is the cash price, and each pharmacy sometimes can have a different one." *Id.* at 126:21–25.

McAfee "always reads" her insurance documents. From that practice she knew, in 2010, the particular formula by which her prescription copayments were supposed to be calculated. *See id.* at 109:25–110:9 ("Q: . . . [Y]ou didn't know in 2010 the formula pursuant to which your copayments were calculated? A: I'm sure I knew in 2010. I just don't remember today. Q: Okay. You – you know with certainty that you knew how your copayment was calculated in 2010? A: I read about it, I'm sure. Because I always read that stuff they send me."). Although she no longer recalls that formula today, if one accepts as accurate Plaintiffs' position—that CVS's U&C price set a ceiling on McAfee's (and class members') copayments—then McAfee knew "with certainty" in 2010 that her

---

[11] In 2011, the standard HSP price increased to $11.99.

insurance copayment was not to exceed CVS's U&C price. Given these facts, McAfee's claim accrued and the limitations period started running on August 6, 2010, the date she should have known that CVS was not reporting its HSP prices as its usual and customary prices. Had CVS reported the HSP price as U&C, CVS would not have asked her for a copayment higher than the HSP price.

No Plaintiff in this lawsuit asserted a claim under the ACFA until October 14, 2015, more than five years after McAfee's claim accrued. *See* First Am. Compl. (Oct. 14, 2015) (Dkt. No. 43) at 81–82. McAfee may argue that she had no reason to believe she was overcharged until August 9, 2019, when a friend of the family (a plaintiff-side class action lawyer) contacted McAfee about joining this case. Ex. G (McAfee Dep.) at 58:21–61:15.[12] Such an argument is not persuasive for multiple reasons.

*First*, the relevant question for the ACFA's statute of limitations is when "with reasonable diligence could [McAfee] have discovered the [alleged] fraud." *Theodosakis*, 2016 WL 1295182, at *4 (internal quotation marks omitted). Since CVS's fraud is its supposed disregard of the contractual definitions of U&C prices—and thereby charging customers copayments higher than the HSP price—then McAfee was on notice of her claim, or certainly had reason to investigate further, as of August 6, 2010. Because the HSP price was a publicly-displayed price in August 2010, she should have known that the HSP price was lower than the copayment she paid, and investigated why that was the case. McAfee had familiarity with usual and customary prices as well as specific knowledge how her copayment was calculated, making crystal clear why, with any diligence, she could have discovered CVS's non-submission of HSP prices as U&C prices by August 6, 2010.

*Second*, although McAfee denies knowing the HSP program existed until a plaintiffs' lawyer recruited her to this lawsuit two months ago, the program was certainly knowable to a person in her position. When Walmart's $4 program was launched in 2006, McAfee performed online research about the $4 program to see if she could benefit. Ex. G (McAfee Dep.) at 33:2–22. Had she similarly searched CVS's website after HSP's launch, she would have learned about HSP and seen that its pricing was potentially lower than her insurance copayment. Moreover, she has been a CVS customer

---

[12] https://www.whafh.com/team/betsy-c-manifold/. In the deposition transcript, Ms. Manifold's name is misspelled "Manafort."

continuously since 2006, shopping there more than once a month.  *Id.* at 57:24–58:5.  She had ample

opportunity to inquire from the pharmacist about any cost-savings programs that CVS offered, which

she never did.  The HSP enrollment forms were also available in CVS stores.  CVS had no duty

affirmatively to bring HSP to McAfee's attention. *Cf. Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d

970, 989 (N.D. Cal. 2016) (holding CVS had no duty to disclose "matters of drug pricing" to

customers).  But insofar as McAfee was not aware of HSP in 2010, it is because she failed to

investigate.

  ***Third***, McAfee's claim is time-barred *even if* the limitations period did not start on August 6,

2010, but only after public accusations later arose of CVS charging third-party payors and their

members more than the HSP price.  During the HSP program's lifetime, there were multiple instances

in which individuals and/or organizations publicly threatened or filed claims accusing CVS of fraud or

overcharging because it was not submitting HSP program prices as usual and customary prices.  Three

such instances are identified below, which all occurred more than one year before Oct. 14, 2015, the

date the complaint here was amended to assert an ACFA claim.  These accusations could have put

McAfee on notice of CVS's alleged fraud:

  <u>Feb. 3, 2010</u>: A group of labor unions operating under the name "Change to Win"

released a study criticizing CVS for selling generic prescriptions through the HSP program at prices

below the amounts collected from federal employees insured through the Federal Employee Program

("FEP").  The scathing study—titled "CVS Caremark's Generic Rip Off"—detailed how "[a]ny person

who enrolls in the [HSP] generic discount program offered at CVS's retail pharmacies can purchase

hundreds of prescription drugs for significantly lower prices than CVS Caremark charges the

government and federal employees in the FEP for those same drugs . . . ."  Ex. H (CVS Caremark's

Generic Rip Off (Feb. 2010)) at 1.  Media outlets such as Bloomberg, Business Wire, and others

covered the study.  Ex. I (BusinessWire Article (Feb. 3, 2010)); Ex. J (Bloomberg Article (Feb. 3,

2010)); Ex. K (NCPA Article (Feb. 8, 2010)).

  <u>June 22, 2010</u>:  The Attorney General of Connecticut announced an investigation into

CVS's failure to report its HSP price as the usual and customary price to the Connecticut Medicaid

program.  Ex. L (Conn. Attorney General's Office, Press Release (June 22, 2010)).  The investigation

1   received coverage over the ensuing weeks and months by the Wall Street Journal, the Associated

2   Press, and the International Business Times, among other sources.  Ex. M (Wall Street Journal Article

3   (June 23, 2010)); Ex. N (A.P. Business News Article (June 23, 2010)); Ex. O (Int'l Business Times

4   Article (June 23, 2010)).  "The press release and resulting media coverage dwelt, with conspicuous

5   clarity, upon CVS's persistent practice of not giving [Connecticut] Medicaid the HSP price."  *United

6   States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 209 (1st Cir. 2016).

7           Aug. 11, 2014:  The United States District Court for the District of Massachusetts

8   unsealed *United States ex rel. Winkelman v. CVS Caremark Corp.*, No. 11-cv-11398, a qui tam

9   complaint alleging that CVS's failure to submit its HSP prices as usual and customary prices caused

10  federal healthcare programs and state Medicaid program across the country to overpay on pharmacy

11  claims and violated the Federal False Claims Act.  *See* 118 F. Supp. 3d 412, 418 (D. Mass. 2015)

12  (identifying date), *aff'd*, 827 F.3d 201.  The complaint alleged that CVS's non-submission of HSP

13  prices as U&C prices was a nationwide practice.  Ex. P (*Winkelman* Second Amended Complaint

14  (June 5, 2014)) ¶¶ 2–3.[13]

15          Whether the one-year statute started running in 2010 when McAfee made her at-issue

16  purchase, or only upon these public accusations of overcharges, McAfee's one-year period expired

17  before any plaintiff in this case asserted a claim under the ACFA.

18
            **2.      Arizona's recognizing the discovery rule shows why common issues do not
19                  predominate and a class should not be certified.**

20          The discovery rule available to individuals suing under Arizona's statute provides a further

21  reason the Court should decline to certify an Arizona class.  Where a statute of limitations is tolled

22  until the time "when the defrauded party discovers or with reasonable diligence could have discovered

23  the fraud," *Theodosakis*, 2016 WL 1295182, at *4 (internal quotation marks omitted), facts specific to

24  any particular class member's situation may affect whether that individual's claim is time-barred.  For

25  this reason, courts decline to certify classes when the statute of limitations analysis turns on facts

26  specific to individual class members because individual issues predominate.  *See, e.g.*, *Broussard v.*

27
28  _____
    [13] The United States Department of Justice and each state named as nominal plaintiffs in *Winkelman*
    declined to intervene after conducting their mandatory post-filing investigation.  The case was
    dismissed under the FCA's public disclosure bar.  118 F. Supp. 3d 412.

---

*Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342–43 (4th Cir. 1998) (decertifying class where, *inter alia*, "tolling the statute of limitations on each of plaintiffs' claims [including consumer protection claims] depends on individual[] showings that are non-typical and unique to each [class member]"); *Dongelewicz v. PNC Nat'l Ass'n*, 104 F. App'x 811, 816 (3d Cir. 2004) (affirming decertification disposition based on "injury discovery rule" requiring "the court [to] determine when each lot purchaser, by the exercise of diligence, should have discovered she was injured").[14]  Under the holdings of *Broussard* and *Dongelewicz*, the Court should deny certification of an Arizona class here.

## III.   THE COURT SHOULD NOT CERTIFY A NEW YORK CLASS FOR OTHER REASONS UNIQUE TO SULLIVAN.

Stephen Sullivan is not a viable class representative for New York for three independent reasons: (1) according to his testimony, Sullivan's wife, rather than he, likely made the purchases from CVS at issue in the case; (2) if one accepts as true Sullivan's testimony that Cigna was his insurance provider, then he cannot satisfy the class definition because none of the five relevant PBMs adjudicated prescriptions for Cigna members during the relevant period; and (3) Sullivan's shocking unfamiliarity with the issues in the case means he is not an "adequate" class representative.  These circumstances each negate one or more requirements that the Court must find in order to certify a class of New York customers under Rule 23(b)(3).

### A.   Sullivan Did Not Purchase the At-Issue Prescriptions Himself.

Class Counsel offers Sullivan based on 14 prescriptions associated with his name between March 2010 and February 2015.  Ex. B (Sullivan's Amended Objs. & Resps. to CVS's Interrogatories) (Oct. 15, 2019) at 8–9. At his deposition, Sullivan testified that his wife likely went to the pharmacy to fill these prescriptions, and he could not testify that he himself made the purchases.

In his family, Sullivan's wife fills the prescriptions.  Asked "Did you ever fill prescriptions on your own," Sullivan answered "Actually, no."  Ex. Q (Deposition of Stephen Sullivan (Oct. 14, 2019)

---

[14] *Cf. Abed v. A.H. Robins Co. (In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.*), 693 F.2d 847, 853 (9th Cir. 1982) (noting factors weigh against class certification when affirmative defenses, such as statute of limitations, "depend on facts peculiar to each plaintiff's case"), *abrogated on unrelated grounds in Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996).

("Sullivan Dep.")) at 128:6–8.  He testified consistently that he could not answer counsel's questions about the 14 prescriptions because the normal practice was for his wife to determine at which pharmacy to fill their prescriptions, and she picked-up and paid for them.  *See id.* at 102:20–23 ("As far as I don't know, *my wife normally takes care of the prescriptions, where I pick up and I don't have any say in that*."); *id.* at 102:24–103:3 ("Q. You don't have any say in what prescriptions you fill?  A. Yeah, *my wife normally takes care of that for me*."); *id.* at 129:3–6 ("Q. But you filled prescriptions at Stop & Shop Pharmacy, or your wife did?  A. *My wife did so I can't answer that*.").  He generally does not accompany his wife to the pharmacy when she fills his prescriptions.  *Id*. at 128:11–22 ("Q. But you didn't fill prescriptions on your own?  A. I can't say, maybe I did one or [two] of them on my own, but I just gave the information, my paper, and that's it.  Q. You gave your information to your wife? A. The prescription that the doctor leaves, and I gave it to her, and she takes it to the pharmacy.  Q. So you didn't go?  A. Not at the time.).  Notably, Sullivan confirmed that he lacked personal knowledge concerning each of the prescription purchases on which he is being offered as a class representative, *see id.* at 137:14–149:14, which comports with his testimony suggesting he personally "never went to CVS" to fill prescriptions (as opposed to purchase non-pharmacy items), *id*. at 128:9-10.

These facts impact class certification on at least two levels:

**First**, Sullivan does not meet the class definition.  The proposed class consists of "CVS customers in New York . . . who . . . *purchased* one or more generic prescription drugs that were offered through CVS's Health Savings Pass [and] . . . *paid* CVS an out-of-pocket payment . . . greater than the HSP program price . . . ."  Mot. at 2.  Sullivan did not purchase the prescriptions; his wife did. He could not even testify to being physically present in the store when his prescriptions were filled. Instead, his wife was the person at the pharmacy who the pharmacy staff presented with the copayment due, who paid that allegedly inflated copayment, and who had any conversations with the staff relevant to the price being paid or the HSP program.  Sullivan was not involved in any of this.

**Second**, Sullivan's non-involvement means he is an "atypical" class representative.  *See, e.g.*, *Carnegie v. H&R Block, Inc.*, 703 N.Y.S.2d 27, 29 (N.Y. App. Div. 2000) (noting in Section 349 claim based on allegedly misleading advertising "plaintiff, who admitted at her deposition that she did not recall seeing any Block advertising before visiting Block's office, would be atypical of the class");

CVS Opp. to Revised Mot. to Substitute and
For Cert. of New York and Arizona Classes
18
CASE NO. 15-CV-03504-YGR

1   *Egan v. Telomerase Activation Scis., Inc.*, 8 N.Y.S.3d 175, 177 (N.Y. App. Div. 2015) (finding

2   plaintiff atypical because he was never exposed to a misleading statement and instead "simply

3   purchased a bottle of the produce upon the recommendation of a friend"); *cf. Bank of Am., N.A. v. Jill*

4   *P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536 (D. Md. 2011) (granting summary judgment for

5   defendant in consumer protection case where plaintiff "relied exclusively on [her spouse] to deal with

6   the [defendant] Bank" concerning the allegedly deceptive loan).  Unlike the class members he seeks to

7   represent, Sullivan likely was not even physically present at the CVS pharmacy that filled his

8   prescriptions, did not pay the supposedly inflated price, and did not interact with the pharmacy staff or

9   otherwise see the information available in-store about the price of his prescription or alternate ways of

10  obtaining the prescription at a potentially lower price, such as through the HSP program.

11          Insofar as Sullivan knows any information concerning the 14 prescriptions (he could not

12  identify any at his deposition), it would have come second-hand from his wife.  An individual is not a

13  typical class representative where his or her information comes exclusively from hearsay that is not

14  admissible at trial.

15          Because Sullivan did not make the purchases at issue, he neither meets the class definition nor

16  is a typical class representative, and the Court should decline to certify a New York class.

17          **B.      Sullivan's Identified Insurer – Cigna – Did Not Use a Class-Qualifying PBM.**

18          The proposed class members are CVS customers "insured for [their] purchase(s) through a

19  third-party payor plan administered by one of the following five pharmacy benefit managers:

20  Caremark, Optum/Prescription Solutions . . ., Express Scripts, Medco, or MedImpact."  Mot. at 2.  A

21  customer whose insurer did not use one these "Class PBMs" is, by definition, outside the class.

22          Sullivan does not meet this aspect of the class definition, or is otherwise atypical, because his

23  testimony, if believed, precludes finding that a Class PBM adjudicated any of the 14 at-issue

24  prescriptions.  In response to CVS's Interrogatory No. 2, Sullivan identified "Cigna" as his "Third-

25  Party Health Insurance Plan."  Ex. B (Sullivan's Amended Objs. & Resps. to CVS's Interrogatories)

26

27

28

---

1  (Oct. 15, 2019) at 3.[15]  At his deposition, Sullivan insisted that Cigna was "the drug prescription plan

2  that I had," Ex. Q (Sullivan Dep.) at 79:6–11; was his plan from 2006 through 2015, *id.* at 100:7–18;

3  and "paid all the prescription" costs except for his deductible, *id.* at 79:12–16.

4  Cigna did not use a Class PBM to adjudicate its members' prescriptions between March 2010

5  and February 2015, the period of Sullivan's at-issue prescriptions.  From at least November 2008

6  through June 2013, Cigna operated an in-house PBM to adjudicate Cigna-member prescriptions.  Ex.

7  R (Deposition of Edward Stacey (Cigna's Rule 30(b)(6) designee) (Mar. 13, 2019) at 15:21–16:11.  In

8  June 2013, Cigna retained Catamaran, an outside PBM, and transitioned PBM functions outside its

9  organization.  *Id.* at 16:12–24.  Although Optum would later acquire Catamaran, the acquisition was

10  not finalized until July 2015, three months after Sullivan's last at-issue prescription.  *See* Ex. S (Optum

11  July 23, 2015, Press Release "OptumRx, Catamaran Complete Combination"); Ex. B at 9 (Sullivan's

12  response to Interrogatory No. 11).  Thus, if one accepts as true Sullivan's testimony that Cigna

13  provided his prescription drug coverage, Sullivan is subject to the defenses that he cannot meet the

14  class definition, as Cigna did not use a class PBM during the time of his at-issue prescriptions.

15  To be sure, Sullivan has produced documents in the case bearing the "CVS/Caremark" logo

16  and Plaintiffs' expert Dr. Hay opines that the 14 transactions bear an indicia – a "Condor Code" –

17  associated with a Caremark-adjudicated transaction.  CVS previously has explained why using the

18  Condor Code imprinted on a transaction record is not a sufficient or reliable way of determining which

19  CVS/PBM contract governed the transaction.  CVS Opp. to Plfs. Mot. for Class Certification (Nov. 21,

20  2016) (Dkt. No. 184) at 17–18.  But even setting aside the unreliability of Condor Codes for that

21  purpose, for evaluating Sullivan's ability to serve as a class representative, Sullivan's own testimony

22  about Cigna provides fertile ground for cross-examination, supports a finding that Sullivan is not a

23  member of the proposed class, or at a minimum challenges the credibility of his testimony.  An

24  individual subject to a unique defense is not a proper class representative.  *See, e.g.*, *Hanon v.*

25  *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[A] named plaintiffs' motion for class

26  certification should not be granted if there is a danger that absent class members will suffer if their

27

28  ———————————
[15] The interrogatory answer also identified "Caremark," although Caremark is a PBM.  Class Counsel agrees that Caremark is not an insurance company or "third-party payor" as that term appears in the proposed class definition.

representative is preoccupied with defenses unique to it." (internal quotation marks omitted)); *Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008) ("When a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, she cannot serve as a class representative." (internal quotation marks omitted)).[16]  The Court should decline to certify a class based on Sullivan's insistence that Cigna was his insurer.

## C.   Sullivan is Not an Adequate Class Representative.

Finally, Sullivan is not an "adequate" class representative.  Fed. R. Civ. P. 23(a).  The adequacy requirement of Rule 23 considers the "involvement and knowledge of a prospective class representative."  *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991) ("[A] party who is not familiar with basic elements of its claim is not considered to be an adequate representative for the class because there is no sense that there is an actual party behind counsel's prosecution of the action.").  In this particular case, an adequate representative must at least "understand[] the allegations that CVS charged [him] inflated copays for generic prescription drugs, and . . . participate[] in the litigation by reviewing complaints, attending depositions, and producing documents."  *Corcoran*, 2017 WL 1065135, at 9.

Although this standard is "not high," Sullivan does not meet it.  *Id.* at 9 (citing *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004)).  **First**, unlike the other class representatives in the case, Sullivan did not read the key allegations in the complaint.  *See* Ex. Q (Sullivan Dep.) at 166:17–21 (no review of key allegations flagged by Class Counsel); 167:6–9 (HSP program allegations); 168:20–21 (New York class definition); 169:4–15 (other subclass definitions highlighted by Class Counsel); 169:16–170:7 (NYGBL Section 349); 170:13–174:9 (CVS's alleged deceptive acts);

---

[16] *See also*, *e.g.*, *Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865, 870 (N.D. Ohio 2017) ("His actions [of spoliating evidence] have made him an atypical member of the class by giving FCA numerous possible defenses against him that would not apply to the class as a whole."); *Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155, at *2–3 (C.D. Cal. Oct. 9, 2014) ("[U]nlike other class members, [Plaintiff] would also be required to overcome any adverse inference a jury might draw as a result of her sale of the vehicle. Thus, as a result of the adverse inference evidentiary sanction, her claim is atypical and she is an inadequate class representative."), *overruled on other grounds*, *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576 (9th Cir. 2016).

---

165:22–25 (Sullivan: "[I] would have to review [the complaint]").[17]  **Second**, although Sullivan sat for a deposition and documents have been produced on his behalf, it was actually Sullivan's wife—not him—who actually gathered and produced his documents, attended his deposition, attempted to answer a question on one occasion at the deposition, and was consulted by Sullivan when defense counsel asked him an important question.  *See id.* at 28:10–20; 113:24–115:3; 115:17–116:2; 178:19– 179:22.  His wife also attended Sullivan's deposition preparation and annotated Sullivan's interrogatory answers with notes like "MOST IMPORTANT" to guide his deposition preparation.  *See id.* at 179:24–181:9.

*Third*, when asked to explain "[W]hat is your understanding of what this litigation is about," Sullivan's answer mentioned nothing about generic drugs, the HSP program, insurance copayments, or the concept of "usual and customary prices."  All he could say was "My understanding is that CVS customers filled out prescriptions being overcharged."  *Id.* at 50:3–8.  When asked to elaborate on the nature of the "overcharge," Sullivan simply said, "Well from the CVS, I have a plan, and they still were overcharging me, that's my money.  I guess that's all I can say on that."  *Id.* at 50:9–14.  When asked to identify the source of the lower prices he allegedly should have received, Sullivan stated, "I don't know" and admitted Class Counsel said that he "was overcharged by the expert[]" who "knows about what the prices for the prescriptions are."  *Id.* at 50:15–18, 50:25–51:11.  He answered "I don't know" to no less than 92 questions during his four-hour deposition.

Because Sullivan is "'startlingly unfamiliar'" with the basic issues in this case, *Corcoran* 2017 WL 1065135, at 9 (quoting *Moeller*, 220 F.R.D. at 611), and it is actually his wife – more than he – who is involved in this litigation, the Court should find Sullivan is not an adequate class representative and decline to certify a New York class.  *See Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (the adequacy requirement "serve[s] the necessary role of checking the otherwise unfettered discretion of counsel in prosecuting the suit." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the Court should deny the Revised Motion to Substitute Class

---

[17] At one point in his deposition, Sullivan implied he had looked at the complaint, just not "page by page."  *Id.* at 164:24–165:3.

1    Representatives and for Certification of New York and Arizona Classes.

2    Dated: October 21, 2019                          Respectfully submitted,

3

4                                                     By: *Grant A. Geyerman* _____

5                                                     Enu Mainigi (admitted *pro hac vice*)
6                                                     Grant A. Geyerman (admitted *pro hac vice*)
                                                      WILLIAMS & CONNOLLY LLP
7                                                     725 Twelfth Street, N.W.
                                                      Washington, DC 20005
8                                                     Telephone: (202) 434-5000
                                                      Facsimile: (202) 434-5029
9

10                                                    Edward W. Swanson (Cal. Bar No. 159859)
11                                                    August Gugelmann (Cal. Bar No. 240544)
                                                      SWANSON & MCNAMARA LLP
12                                                    300 Montgomery Street, Suite 1100
                                                      San Francisco, CA 94104
13                                                    Telephone: (415) 477-3800
                                                      Facsimile: (415) 477-9010
14

15                                                    *Attorneys for Defendant CVS Pharmacy, Inc.*
16

17

18

19

20

21

22

23

24

25

26

27

28