UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER CORCORAN, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**CVS PHARMACY, INC.,**<br><br>Defendant. | Case No.  4:15-cv-3504-YGR<br><br>**PRETRIAL ORDER NO. 4 INCLUDING OBJECTIONS TO DEPOSITION DESIGNATIONS; MOTION TO STRIKE; MOTION TO EXCLUDE; MOTION TO SUPPLEMENT**<br><br>Re: Dkt. Nos. 485, 494, 496, 502 |

Currently pending are the parties' objections to deposition designations (Dkt. No. 494), CVS's Motion to Strike Dr. Schafermeyer's New Opinions (Dkt. No. 485), plaintiffs' Motion to Exclude Deposition Testimony Obtained by CVS in Other Litigation and Witnesses Not Timely Disclosed (Dkt. No. 496), and plaintiffs' Motion for Leave to Supplement Dr. Schafermeyer's Expert Disclosures (Dkt. No. 502).  The Court addresses each in turn.

As a preliminary note, the parties are advised that during jury selection, given the occupancy restrictions in the courtroom, each side is limited to three persons total in the courtroom.  The Court will discuss logistics at a later date.

**1. OBJECTIONS TO DEPOSITION DESIGNATIONS** (Dkt. No. 494)

The Court has reviewed and considered the parties' objections to deposition designations.  The Court's rulings are listed in Exhibit A attached hereto.[1]

**2. CVS'S MOTION TO STRIKE NEW OPINIONS OF DR. SCHAFERMEYER** (Dkt. No. 485)[2]

---

[1] The Court **GRANTS IN PART AND DEFERS IN PART** CVS's motion to seal excerpts from three Rule 30(b)(6) depositions in the *Sheet Metal* litigation.  (Dkt. No. 493.)  To the extent that the Court defers ruling on the deposition designations, the motion to seal is also **DEFERRED**.  To the extent that the Court granted the motion to exclude, and the evidence will not be admitted at trial, the motion to seal is **GRANTED**.  There is no need for the information to be in the public record and the Court will honor the parties' designation of confidentiality.

[2] The Court has determined that the motion is appropriate for decision without oral

On February 11, 2021, the Court exercised its discretion and reluctantly allowed plaintiffs to substitute their expert Dr. Joel Hay with a new expert Dr. Kenneth Schafermeyer. (Order Granting in Part and Denying in Part Motion for Substitution, Dkt. No. 471.) In order to address the prejudice for such a late substitute, the Court explicitly ordered that "Dr. Schafermeyer may not issue a new report but may only adopt or reject opinions and/or statements in Dr. Hay's three prior declarations and two expert reports. Dr. Schafermeyer shall take such declarations and reports, and by using a strikethrough function, identify those statements/opinions with which he does not agree." (*Id.* at 3.) The markups are filed with the Court. (Notice Pursuant to Substitution Order, Dkt. No. 474.) CVS now moves to strike two opinions of Dr. Schafermeyer on the grounds that they modify opinions that Dr. Hay previously offered in his December 9, 2016 expert report. (December 2016 Report, Dkt. No. 474-1.)

**First**, CVS raises Dr. Schafermeyer's "new opinion" concerning usual and customary prices. Dr. Hay previously opined that "CVS's prices properly should be considered CVS's true U&C prices." (*Id.* ¶ 10 (Opinion 2); *see also id.* ¶¶ 36–45 (explaining basis for Opinion 2).) In stating the basis for this opinion, Dr. Hay provided: "In the pharmacy context, Usual & Customary (U&C) price is the cash price for which a drug is sold." (*Id.* ¶ 37.) Dr. Schafermeyer marked up this statement as follows: "In the pharmacy context, Usual & Customary (U&C) price is the cash price for which a drug is ~~sold~~." In striking through the word "sold," Dr. Schafermeyer wrote in a comment bubble:

> To be more accurate, I would change the word "sold" to "offered for sale to cash-paying customers (i.e., those paying without insurance)." I am not disagreeing with the previous expert; I am simplying [sic] being more precise.

(*Id.*)[3]

---

argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 728–29 (9th Cir. 1991). Accordingly, the Court VACATES the hearing set for May 4, 2021.

[3] None of the annotations, *i.e.*, the text of the comment bubbles, have been provided to the Court in a non-electronic form. In other words, one must be in the electronic document and hover over the comment bubble to read it. Accordingly, the Court ORDERS plaintiffs to file a copy of all the text in the comment bubbles contained in Dr. Schafermeyer's markups within **five business**

CVS's motion with respect to this markup is **GRANTED**. The Court agrees with CVS that Dr. Schafermeyer attempts to modify Dr. Hay's definition of usual and customary prices in this report from "the cash price for which a drug is sold" to the price "offered for sale to cash-paying customers (i.e., those paying without insurance.)." As the Court previously ordered, Dr. Schafermeyer may either adopt or reject Dr. Hay's definition here, but he cannot modify it. The Court does not view this modification as a distinction without a difference. If it is, then there is no prejudice in Dr. Schafermeyer maintaining Dr. Hay's language here.

Accordingly, CVS may rely on the definition of usual and customary prices that Dr. Hay provided in his report. To address a potential issue at trial, the Court will explain to the jury that Dr. Schafermeyer is a substitute expert and that, in the interest of fairness, he is only able to adopt the prior experts opinions to the extent he agreed with them. In this regard, ***and if necessary***, Dr. Schafermeyer may indicate that he agrees with the definition and, while he may have used different words, that modification is not relevant because it was not offered by the prior expert. Counsel shall not ask for clarification, nor shall Dr. Schafermeyer volunteer.

**Second**, CVS raises Dr. Schafermeyer's "new opinion" concerning cash transactions. Dr. Hay described his understanding of plaintiffs' allegations in the introduction of the same report:

> Plaintiffs allege that CVS knowingly and intentionally overcharged pharmacy customers for general prescription drugs by submitting to patients and third-party payors claims for payment at prices that CVS fraudulently inflated far above its true U&C prices. *I understand that CVS created the "Health Savings Pass" ("HSP") program to remain competitive* in the face of similar standardized generic pricing programs from other national pharmacy retail chains such as Walmart and Kmart. *The HSP program allowed cash-paying patients to purchase generic prescriptions for competitive prices* (e.g., $9.99 for a 90-day prescription for most drugs from November 2008 through 2010, and $11.99 for a 90-day prescription for most drugs in the program from 2011 until CVS discontinued the program in February 2016). According to Plaintiffs' allegations, *rather than recognizing that the HSP price should be included in its determination of the U&C price for drugs available under the program, CVS charged*

---

**days** of this Order.

3

> *insured patients inflated prices* based on an artificial and inflated U&C price.

(December 2016 Report ¶ 2 (emphasis supplied) (footnotes omitted).)

Prior to Dr. Schafermeyer's deposition, plaintiffs served CVS with his "Notes Regarding Previous Expert's Reports and Declarations," on which Dr. Schafermeyer purportedly relied in aid of his testimony. Referring to the aforementioned paragraph in the report, Dr. Schafermeyer described the transactions made through Health Savings Program as follows:

> ¶ 2. *More correctly: CVS needed to offer discounted cash prices to remain competitive but HSP was not necessary to do so.* According to Mr. Thomas Morrison (CVS retired Vice President for Payer Relations and Business Development): "I had to come up with a pricing structure . . . that did not impact my insured contracts. That was a show stopper." [Morrison depo, 141:29–142:2]. HSP, therefore, was designed to offer discounts *to cash customers (i.e., those not being used with insurance)* but avoid representing them as U&C. See also, Sep. 21, 2008, *New Health Savings Pass Pharmacy Team Huddle Guide*. "[HSP] [c]annot be used in conjunction with prescription insurance." [CVSC-0001803]. *Rxs are either cash or insurance; this is not insurance.*

(Deposition Notes, Dkt. No. 479-1, Note 7 for December 2016 Report.)

According to CVS, Dr. Hay had defined a "cash" customer "to mean a patient who purchased a prescription at CVS without using *any form* of prescription benefit, not just someone who purchased the prescription without insurance. Dr. Hay's definition of 'cash transactions' thus excluded, among other things, purchases using cash discount cards (i.e., AARP cards or GoodRX)." (Motion to Strike at 4 (citations omitted).) Conversely, "Dr. Schafermeyer's definition of 'cash' expressly *includes* cash discount cards—and any other 'non-insurance' transactions—thereby (1) changing the types of transactions CVS allegedly should have considered in submitting its U&C price to Plaintiffs' PBMs, and (2) invalidating all of the 'cash'-based calculations previously offered by Dr. Hay (and rebutted by CVS's expert, Brett Barlag)." (*Id.*) Plaintiffs do not specifically defend Dr. Schafermeyer's bright-line distinction between cash and insurance transactions but rather focus their argument on Dr. Hay leaving open the possibility that cash discount cards *could* be considered cash transactions. (*See*, *e.g.*, Opposition to Motion to

4

Strike at 8 ("Dr. Hay's full deposition testimony—rather than CVS's selective quotations—shows he expressly allowed for the possibility that other third party discount cards, if offered to the general public, could involve cash transactions eligible to be considered a pharmacy's U&C price.").)

Plaintiffs correctly point out that Dr. Hay did not "render a written opinion" as to whether cash discount cards involve cash transactions. (*Id.* at 7.) Thus, CVS's assertion that Dr. Hay defined "[i]n his opinions" a cash transaction as not involving "any form of prescription benefit" is not accurate. (Motion to Strike at 4.) However, in his *calculations*, Dr. Hay did, in fact, exclude cash discount cards as cash transactions. Plaintiffs concede as much. (Opposition to Motion to Strike at 9 ("Dr. Hay did *not* use third-party discount card prices as CVS's true U&C in *any* of his analyses[.]").) Thus, while Dr. Hay did allow that certain discounts could be cash transactions, it is ultimately not the definition that he used for his analysis.

Accordingly, Dr. Schafermeyer may not, through his testimony, draw a clear-cut distinction between cash and insurance transactions, a line not explicitly drawn by Dr. Hay.[4] CVS's motion in this regard is also **GRANTED**. Given that this issue does not impact an opinion, the issue may be of no event. That said, and again, ***if necessary***, Dr. Schafermeyer may indicate that Dr. Hay's description is one way to view cash transactions, and while he may conceive of other ways, they are not relevant because it was not offered by the prior expert. Counsel shall not ask for clarification, nor shall Dr. Schafermeyer volunteer.

3. **PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY** (Dkt. No. 496.)

Plaintiffs seek to exclude deposition and trial testimony obtained by CVS in other litigation as well as third-party witnesses purportedly not timely disclosed. The Court will begin with the latter category.

---

[4] In other words, Dr. Schafermeyer may not definitively categorize cash discount cards as cash transactions since Dr. Hay did not explicitly opine in this regard and, in fact, conducted his analysis to the contrary.

5

**First**, plaintiffs moves the Court under Federal Rules of Civil Procedure ("FRCP") 37(c) to preclude CVS from offering testimony of non-party corporate representatives for three pharmacy benefit managers ("PBMs") Express Scripts, Caremark, and OptumRX on the ground that CVS did not timely identify these corporate representatives in its initial disclosures or any supplements thereto.[5] Specifically, plaintiffs complain that "[n]ot until April 7, 2021, in a supplemental filing ordered by the Court did CVS identify" Adam Stacy, Brian Correia, and Joseph Zavalishin as corporate representatives for the respective PBMs. (Motion to Exclude at 3.) However, CVS asserts that it, in fact, "served amended disclosures that identified, *by name*, both the PBMs at issue in this case and their specific employees whom CVS understood were knowledgeable" (Opposition to Motion to Exclude at 3):

> 19. Caremark, L.L.C. – Numerous current or former Caremark personnel may have discoverable information regarding Plaintiffs, third-party reimbursement to CVS pharmacies, and/or Caremark's administration of the HSP program, including but not limited to Brian Correia, John Lavin, and Wendy Walker.
> \* \* \*
> 22. Express Scripts, Inc. – Numerous current or former Express Scripts personnel may have discoverable information regarding Plaintiffs, third-party reimbursement to CVS pharmacies, and/or the HSP program, including Amber Compton and Chuck Kneese.
> \* \* \*
> 26. OptumRx, Inc. – Numerous or current former OptumRx personnel may have discoverable information regarding Plaintiffs, third-party reimbursement to CVS pharmacies, and/or the HSP program, including Michael Reichardt and Joseph Zavalishin.

(*Id.* (citing Defendants' Updated Rule 26(a)(1) Disclosures dated February 24, 2017, Dkt. No. 504-2).) Thus, CVS did not first identify corporate representative testimony in its April 7, 2021 filing. Accordingly, plaintiffs' motion to exclude in this regard is **DENIED**.

Plaintiffs' rebuttal that the amended disclosures were "served at the end of the day on the discovery cut-off date" and thus "prejudices [p]laintiffs" does not persuade. (Reply IFSO Motion to

---

[5] FRCP 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Exclude at 4–5.) More than four years has passed since the February 24, 2017 discovery cut-off. Had there been any prejudice, plaintiffs had ample time to seek relief.

Further, the Court is not persuaded by plaintiffs' arguments that the PBMs designated other witnesses for testimony, namely, Express Scripts' Amber Compton, who plaintiffs only deposed in her individual capacity; Caremark's John Lavin; and OptumRx's Michael Reichardt, who plaintiffs also only deposed as an individual. With respect to Express Scripts and OptumRX, plaintiffs purposely declined to proceed with their noticed corporate depositions. As this Court previously noted, plaintiffs' strategic decisions not to pursue FRCP 30(b)(6) evidence cannot be used now as a basis to exclude corporate representative testimony from Express Scripts and OptumRX, if otherwise admissible.[6] With respect to Caremark, although plaintiffs deposed Mr. Lavin as its corporate representative, CVS advised plaintiffs of Caremark's designation of Mr. Correia as its corporate representative and, as such, he may be cross-examined with deposition testimony. (Opposition to Motion to Exclude at 5.) This apparently "prompt[ed] [p]laintiffs to request (and receive) nearly 18 months ago Mr. Correia's deposition from other HSP litigation." (*Id.*) Moreover, plaintiffs list Mr. Correia on their own trial witness list. (Plaintiffs' Witness List, Dkt. No. 483 at 4.) Plaintiffs do not rebut these points. *See also* Wright & Miller, Federal Practice and Procedure, § 2103 ("[A]s with any other party statement, [FRCP 30(b)(6) deposition statements] are not 'binding' in the sense that the corporate party is forbidden to call *the same or another witness* to offer different testimony at trial.") (emphasis supplied). Thus, the Court will permit CVS to offer testimony of corporate representatives from Express Scripts, Caremark, and OptumRX.[7]

**Second**, plaintiffs move the Court to preclude CVS from offering FRCP 30(b)(6) deposition testimony from Ms. Compton (on behalf of Express Scripts and Medco) and Mr. Zavalishin (on behalf

---

[6] The Court understands that Mr. Stacy may request to testify via remote transmission given health issues as it relates to the current COVID-19 pandemic. The parties shall meet and confer on the topic and provide the Court with update. The Court has agreed to accommodate another witness in an upcoming live bench trial.

[7] Plaintiffs' request in the alternative that these witnesses be ordered to appear for a deposition on shortened notice is **DENIED**.

of OptumRX) obtained in *Sheet Metal Worker Local No. 20 Welfare and Benefit Fund v. CVS Pharmacy, Inc.* No. 16-CV-46 (WES) (PAS) (D.R.I.). Likewise, plaintiffs seek to exclude deposition testimony from former CVS employees Thomas Gibbons and Thomas Morrison obtained in *State of Texas ex rel. Winkelman v. CVS Health Corp.* No. D1-CV-14-00038 (353rd Dist. Ct. Travis Cnty. Tex.). Plaintiffs move for exclusion on the ground that such testimony is inadmissible hearsay to which Federal Rule of Evidence ("FRE") 804(b)(1) and FRCP 32(a)(8) does not apply. CVS disagrees, arguing that the deposition testimony complies with both rules.

FRE 804(b)(1) provides a hearsay exception for former testimony:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1). In addition, FRCP 32(a)(8) provides for the use of depositions taken in an earlier action involving the same subject matter and the same parties:

> A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Fed. R .Civ. P. 32(a)(8).

The Court's analysis of the motion is guided by the principles underlying FRCP 30 and 32 governing oral depositions and their use in court proceedings. "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard*, 102 F.2d 467 (2nd Cir. 1939) (Learned Hand, J.); *see also* Wright & Miller, Federal Practice and Procedure, § 2146 ("[T]he rules are based on the premise that live testimony is more desirable than a deposition. If a nonparty witness is available to testify, the deposition cannot be used in lieu of live testimony (although it is available to impeach).") (footnotes omitted). This fundamental concept is reiterated in FRCP 32 itself which requires that "on motion and notice, that exceptional circumstances make it desirable – in the interest of justice and with due regard to the importance of live testimony in open court – to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(E).

8

Here, it is the Court's understanding that representatives for Express Scripts and Medco are available to testify live. CVS represents that it "does not anticipate playing [Express Scripts' and Medco's 30(b)(6)] testimony at trial given that other witnesses—namely Bill Strein (Medco) and Adam Stacy (Express Scripts)—have committed to appearing." (Opposition to Motion to Exclude at 7.) Because any 30(b)(6) testimony provided by way of deposition for these corporations appears duplicative and could create confusion for a juror, the Court is not inclined to allow it. *See*, *e.g.*, *Beem v. Providence Health & Servs.*, No. 10-CV-37 (TOR), 2012 WL 13018728, at *2 (E.D. Wash. April 19, 2012) ("Although an adverse party may use the deposition of a party even when the party is available to offer live testimony (*Pursche v. Atlas Scraper and Engineering*, 300 F.2d 467 (9th Cir. 1962)), such use can be unnecessarily repetitious."). Accordingly, plaintiffs' motion to exclude Ms. Compton's deposition testimony from the *Sheet Metal* case is **GRANTED**.

The Court **DEFERS** ruling on the remainder of the motion until issues of availability are resolved either at the time of trial or by agreement. *See Hartman v United States,* 538 F2d 1336, 1345 (8th Cir. 1976) (conditions required under FRCP 32(a)(4) should be evaluated at time deposition is offered at trial); *see also* Wright & Miller, Federal Practice and Procedure, § 2146 ("The existence of the condition[s set out in FRCP 32(a)(4) for unavailability] is a question to be determined by the trial court at the time the deposition is offered in evidence."). Specifically, the Court will delay ruling on the motion as to Mr. Zavalishin's deposition testimony in the *Sheet Metal* case in the event that he or a corporate representative from OptumRX becomes available before trial. Likewise, the Court will defer ruling as to deposition testimony of Messrs. Morrison and Gibbons in the Texas *qui tam* case.[8] CVS represents that "Mr. Morrison, who is in his 70s, advised [ ] that he is not willing to travel from his home in Massachusetts to Oakland because of the pandemic conditions" and that it "currently is attempting to confirm if Mr. Gibbons, who resides in Arizona, will appear at trial, but to this point has no such commitment." (Opposition to Motion to Exclude at 12 (citations omitted).)[9]

---

[8] The parties did not include any disputed designations of Mr. Gibbons' deposition testimony from the Texas case.

[9] The Court **GRANTS IN PART AND DEFERS IN PART** CVS's motion to seal exhibits in support of its opposition to plaintiffs' motion to exclude testimony to the same extent it grants in

9

**4. PLAINTIFFS' MOTION TO SUPPLEMENT EXPERT DISCLOSURES** (Dkt. No. 502.)

Plaintiffs move to supplement the expert disclosures of Dr. Schafermeyer to: "(1) exclude certain condor codes prior to 2011 in accordance with a prior ruling of this Court; (2) implement 'exception pricing' for certain drugs dispensed in California for a subset of the class period; and (3) provide an updated total damages figure by incorporating statutory minimums into Dr. Schafermeyer's corrected damages calculation." (Notice of Motion to Supplement Expert Disclosures.)  CVS does not oppose parts (1) and (2).  (Opposition to Motion to Supplement at 1 n.1.)  Accordingly, the motion is **GRANTED** as to these parts of the motion.  Plaintiffs are permitted to supplement Dr. Schafermeyer's disclosures with respect to the Aetna 15800 Claims, BC Rochester 7434 Claims, or CA Exception Pricing Claims as they are defined in the Motion to Supplement.

The remainder of plaintiffs' motion seeks leave to supplement Dr. Schafermeyer's disclosures "to provide an updated total damages figure by incorporating statutory minimums into [his] corrected damage calculations."  (Notice of Motion to Supplement.)  According to Dr. Schafermeyer, the revised class damages reflecting incorporation of the statutory minimums is $60,666,500.50 for Massachusetts (compared to $32,852,026.90 without incorporation of the statutory minimum) and $66,765,069.99 for New York (compared to $20,385,008.30).  (Expert Declaration of Dr. Schafermeyer, Dkt. No. 502-2, ¶¶ 11 (Revised Table 3), 13 (Revised Table with Statutory Damages).)[10]

---

part and defers in part CVS's motion to seal discussed in note 1, as both sealing motions concern excerpts for the same three deposition transcripts.  (Dkt. No. 503.)

[10] Massachusetts' Consumer Protection Act provides that plaintiffs can recover the greater of actual damages or $25.  Mass. Gen Laws Ann. Ch. 93A, § 9.  New York's General Business Law provides for the greater of actual damages or $50.  N.Y. Gen. Bus. Law § 349(h).

**Revised Table 3: Class Damages by State and Class PBM**

| State | Caremark | Express Scripts | Medco | MedImpact | Optum | Total |
|---|---|---|---|---|---|---|
| Arizona | $2,277,963.20 | $844,873.62 | $982,003.67 | $264,755.72 | $1,788,092.78 | $6,157,688.99 |
| California | $13,496,233.93 | $4,197,118.88 | $3,645,422.99 | $601,993.49 | $7,669,158.82 | $29,609,928.12 |
| Florida | $8,031,642.00 | $2,328,001.65 | $5,565,255.55 | $280,418.67 | $6,105,461.63 | $22,310,779.50 |
| Illinois | $4,238,473.46 | $792,053.99 | $2,943,445.93 | $785,348.03 | $1,344,172.96 | $10,103,494.37 |
| Massachusetts | $13,960,091.97 | $9,188,196.07 | $2,883,244.97 | $5,541,220.33 | $1,279,273.56 | $32,852,026.90 |
| New York | $6,012,382.74 | $2,553,969.20 | $7,328,563.69 | $522,743.40 | $3,967,349.27 | $20,385,008.30 |
| TOTAL | $48,016,787.30 | $19,904,213.41 | $23,347,936.80 | $7,996,479.65 | $22,153,509.02 | $121,418,926.18 |

**Revised Class Damages by State Applying Statutory Minimum Damages to Massachusetts and New York Class Members**

| State | Total |
|---|---|
| Arizona | $6,157,688.99 |
| California | $29,609,928.12 |
| Florida | $22,310,779.50 |
| Illinois | $10,103,494.37 |
| Massachusetts | $60,666,500.50 |
| New York | $66,765,069.99 |
| TOTAL | $195,613,411.47 |

Plaintiffs contend that "CVS has been on notice of [their] intent to seek statutory damages since at least April 2016, when [they] filed their Third Amended Complaint seeking statutory damages under Massachusetts and New York consumer protection statutes." (Motion to Supplement at 1.) Moreover, plaintiffs argue, they previously disclosed to CVS their prior expert's calculation of the total damages figure reflecting incorporation of these statutory minimums by way of a mediation brief exchanged in November 2019. (*Id.* at 5.) Citing their duty to supplement an expert's disclosures under FRCP 26(e)(1), plaintiffs seek relief under FRCP 16(b)(4) from the Court's prior March 1, 2021 deadline for Dr. Schafermeyer's markups of the prior expert's disclosures. Alternatively, plaintiffs contend that supplementation would be permissible under FRCP 37(c)(1) because the proposed adjustments are substantially justified and do not unduly prejudice CVS.

CVS strenuously opposes the request to supplement Dr. Schafermeyer's expert disclosures with a statutory damages opinion on multiple grounds: (1) the statutory damages analysis "adds an opinion on a subject – statutory damages – that Dr. Hay never addressed, though the information

11

was 'available at the time'"; (2) the motion does not explain why Dr. Hay did not calculate how many class members in Massachusetts or New York qualified for statutory damages in any of his five expert reports and declarations; (3) the new statutory damages calculation would increase the claimed damages by $73 million and therefore significantly prejudice CVS; and (4) plaintiffs did not disclose any opinion or calculation on statutory damages *from Dr. Hay* in their November 2019 mediation statement. (Opposition to Motion to Supplement at 3–6.)

At the outset, the Court cannot ignore the glaring fact that plaintiffs, for some unknown reason, never updated their damages calculations to include statutory damages for Massachusetts and New York. Indeed, none of their disclosures or the opinions or calculations previously offered by Dr. Hay, including those in one of his more recent declarations dated June 14, 2017, incorporated statutory damages. (June 2017 Addendum to Amended & Supplemented Expert Declaration, Dkt. No. 474-4.) Plaintiffs maintain that, in November 2019, they "disclosed in a mediation submission shared with CVS that the prior expert had calculated damages incorporating these statutory minimums and disclosed the total damages figure reflecting application of these minimums." (Motion to Supplement at 9.) However, the 8-page supplemental mediation statement reflects the purported "disclosure" as follows: "Applying just the $50 minimum statutory damages to the New York class, and the $25 minimum damages to the Massachusetts class, increases the total damages for all six classes to **$204 million** (if the statutory damages are calculated per person) or **$617 million** (if the statutory damages are calculated per transaction." (Plaintiffs' Supplemental Mediation Submission dated November 13, 2019, Dkt. No. 508-2.) Plaintiffs provided no actual analysis or methodology other than this ballpark reference. Thus, CVS could not analyze these figures nor was it required to prepare an opposition given the vacuum.[11]

---

[11] Plaintiffs' "argument that [the third amended] complaint sufficed to put [CVS] on notice of [the statutory] damages [they] was seeking is legally incorrect. The required disclosures under Rule 26 are intended to help crystallize the issues in the litigation[.]" *Creswell v. HCAL Corp.*, No. 04-CV-388 (BTM), 2007 WL 628036, at *2 (S.D. Cal. Feb. 12, 2007); *see also* 6 Moore's Federal Practice, § 26.22[4][c][i] ("Failure to provide damage computation documents may result in exclusion of damage calculation evidence or expert testimony regarding damage calculations at

Moreover, plaintiffs provide no justification for this failure. Notably absent from plaintiffs' motion is any explanation or substance to the argument that they were "substantially justified" in failing to formally disclose the statutory damages amount, failing to update their FRCP 26 disclosures, and failing to provide a supplemental report with their original expert. Rather than providing the Court with a straightforward request and explanation for these omissions, plaintiffs obfuscated the briefing by claiming to "supplement" Dr. Schafermeyer's expert disclosures.

Further, plaintiffs did not adequately explain how Dr. Schafermayer calculated the statutory damages. Even after the Court requested the mathematical formula used to calculate the revised damages amounts, the Court itself had to unravel the record to discern the formula used to calculate the difference between the total damages amounts for the Massachusetts and New York classes before and after the incorporation of statutory minimums. The Court independently isolated the portion of the total damages amount attributed to qualifying class members by subtracting the portion attributed to non-qualifying class members in records <u>not</u> identified by plaintiffs. Only by comparing this isolated damages figure to the corresponding amount incorporating statutory minimums did the difference between the total damages amounts become apparent.[12]

Plaintiffs' motion not only suffers from the lack of disclosure, justification, and transparency but also significantly prejudices CVS. The impact of the requested change is an additional $73 million. *Compare* June 2017 Addendum to Amended & Supplemented Expert Declaration, Dkt. No. 474-4, Table 3 at 4 (Dr. Hay's calculation of $54 million for New York and Massachusetts classes) *with* Expert Declaration, Dkt. No. 502-2, ¶ 13 (Dr. Schafermeyer's calculation of $127 million for same classes). Plaintiffs downplay the harm of their failure to disclose by arguing that CVS "has long been in possession of the data and methodology trial.").

---

[12] Plaintiffs' counsel are cautioned against wasting limited judicial resources. Transparency is the better course.

13

underlying Dr. Schafermeyer's calculation." (Reply IFSO Motion to Supplement at 8.) However, this claim only underscores how equally long plaintiffs have been sitting on their own damage computations yet waited until this late stage to request "supplementing" their expert disclosures without affording CVS the opportunity to develop rebuttal evidence.

Given the lack of a disclosed opinion, the dearth of information evidencing justification, and the significant prejudice to CVS, the Court would not allow the additional opinion this late hour from Dr. Hay, much less from a new expert who the Court allowed to stand in Dr. Hay's shoes. Accordingly, plaintiffs' motion to supplement Dr. Schafermeyer's expert disclosures in this regard is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 30, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

# EXHIBIT A

| No. | Disputed Designation | Objection [Party π / Δ] | Ruling |
|---|---|---|---|
| 1 | Compton (Corcoran) 13:15-14:1 | 802, 402 (P) – Exemplar of all testimony discussing hearsay declaration [π] | Overruled. |
| 2 | Compton (Corcoran) – 40:4-11, 13-19, 21-25; 41:2-7, 9-13, 16-18, 21-25; 42:1-25; 43:1-7, 10-11; 45:2-10 *[CD to Δ's Desig. 43:12-45:1]* | All except for 45:2-10: not valid "completeness" [Δ] | Sustained. |
| 3 | Compton (Corcoran) – 66:20-67:2; 67:5-9, 12-14; 69:13-16, 19-25; 70:1-17; 70:20-74:17; 74:20-23; 75:1-2, 5-7, 9-13, 15-25; 76:1-7, 9-15; 76:18-25; 77:1-9, 11, 15-17, 19-25; 79:16-80:11; 80:14-23; 81:1-5 *[CD to Δ's Desig. 65:5-66:19]* | All except for 66:20-67:2; 67:5-9 and 67:12-14: not valid "completeness" [Δ] | Sustained. |
| 16 | Corum – 91:24-92:12 | Foundation; Hearsay [Δ] | Sustained. |
| 17 | Corum – 92:16-19 | Foundation; Hearsay [Δ] | Sustained. |
| 18 | Corum – 92:24-94:2 | Foundation; Hearsay [Δ] | Sustained. |
| 19 | Corum – 94:5-7 | Foundation; Hearsay [Δ] | Sustained. |
| 20 | Corum – 94:10-11, 94:14-15 | Foundation; Hearsay [Δ] | Sustained. |
| 21 | Corum – 113:11-19 | 402 (att'y speech) [Δ] | Sustained. |
| 22 | Corum – 114:2-5, 7-12 | 402 (att'y speech) [Δ] | Sustained. |
| 23 | Dudley 30b6 35:15-36:2; 36:3-8; 36:11-14; 36:17-23; 38:4-20; 64:24-65:9; 68:3-23 *[CD to π Desig. 80:5-81:3]* | Not for completeness, 802, Improper under FRCP 32, 402, 403 - Exemplar for all Δ C-Ds [π] | See note at end. |
| 24 | Edmunds – 149:1-8 | Hearsay (Caremark doc) [Δ] | Overruled. |
| 25 | Edmunds – 150:14-20; 151:13-15, 24-25; 152:1-3, 12-25; 153:1-8, 11-12, 25; 154:1-20 | Hearsay; Foundation [Δ] | Sustained. |
| 26 | Gibbons (Corcoran) – 40:25-41:19 | 701- Legal Concl. [π] | Overruled. |
| 27 | Gibbons (Corcoran) – 58:13-25 | 802 [π] | Overruled. |
| 28 | Gibbons (Corcoran) – 59:22-60:1 | 802 [π] | Overruled. |
| 29 | Gibbons (Corcoran) – 60:10-60:23 | 802 [π] | Overruled. |
| 30 | Gibbons (Corcoran) – 91:15-16; 91:19-92:5 | 402/403 (price-matching not the claim) [Δ] | Overruled. |
| 31 | Gibbons (Corcoran) – 92:17-93:7 | 402/403 (price-matching not the claim) [Δ] | Sustained. |
| 32 | Gibbons (Corcoran) – 102:6-103:12; 104:19-105:15; 105:18-107:7; 108:5-24; 109:10-111:25 *[CD to π Desig. 103:23-104:18]* | Not for completeness, 105:18-107:7 – 802, 106:20-107:7 - Non-Resp. [π] | Overruled. |

| # | Designation | Objection | Ruling |
|---|---|---|---|
| 33 | Gibbons (Corcoran) – 105:18-107:7 | 802 [π] | Overruled. |
| 34 | Gibbons (Corcoran) – 108:5-24 | 602 [π] | Overruled. |
| 35 | Gibbons (Corcoran) – 126:4-127:8; 127:11-13 | Foundation; Speculation [Δ] | Sustained. |
| 36 | Gibbons (Corcoran) – 133:3-14, 17-22 | Foundation; Speculation [Δ] | Sustained. |
| 37 | Gibbons (Corcoran) – 126:4-127:8; 127:11-13 | Foundation [Δ] | Sustained. |
| 38 | Gibbons (Corcoran) – 137:6-138:6; 138:10 | CVS MIL#1 (137:25-138:6, 138:10) [Δ] | Overruled as to 137:6–24. Otherwise, sustained. |
| 39 | Gibbons (Corcoran) – 144:22-145:9 *[CD to π Desig. 103:23-104:18]* | Not for completeness [π] | Sustained. |
| 40 | Gibbons (Corcoran) – 154:11-16, 19-22 | Foundation; 403 [Δ] | Sustained as to 154:20–22. Otherwise, overruled. |
| 41 | Gibbons (Corcoran) – 187:25-188:2 *[CD to π Desig. 103:23-104:18]* | 602 [π] | Sustained. |
| 42 | Gibbons (Corcoran) – 208:25-209:5, 209:8-17, 216:21-217:12 *[CD to Δ's Desig. 208:6-208:24]* | CVS MIL#1 & 403 (208:25-209:5; 209:8-17) [Δ] | Overruled. |
| 43 | Gibbons (Corcoran) – 217:16-218:12; 218:24-219:17; 219:20-22, 25 | 402; 403; Foundation; Speculation; Incomplete (219:12-17) [Δ] | Sustained as to 219:12–17. Otherwise, overruled. |
| 44 | Gibbons (Corcoran) – 225:1-25, 226:1-5, 8-19 | Legal conclusion; Foundation; Speculation [Δ] | Overruled. |
| 45 | Greenwood – 110:8-111(1) | 402/403 (not a class PBM's definition) [Δ] | Sustained as to 110:24–111:1. Otherwise, overruled. |
| 46 | Greenwood – 227:12-20 | Foundation; Hearsay (exhibit) [Δ] | Sustained. |
| 47 | Greenwood – 231:12-25, 232:1-11 | Hearsay; Foundation; Speculation [Δ] | Sustained. |
| 48 | Greenwood – 232:22-25, 233:1-2, 5-13, 16-25; 234:1-2 | Foundation; Hearsay; Speculation [Δ] | Sustained. |

| | | | |
|---|---|---|---|
| 49 | Greenwood – 239:19-25, 240:1-25, 241:1-18, 21-25; 242:1-4, 7-11 | Foundation; Hearsay; 403 [Δ] | Sustained except as to 241:7–15 and 241: at end of 25 – 242:1–4, 7–11. |
| 50 | Greenwood – 257:1-11, 13-25; 258:1-8, 11-14 | Foundation; Hearsay; 403 [Δ] | Sustained. |
| 51 | Greenwood – 260:9-10, 12-25; 261:4-10, 13, 16-25; 262:4-6 | Foundation; Hearsay; 403; Misstates record (261:22-25) [Δ] | Sustained except as to 261:22–25 and 262:4-6. |
| 52 | Greenwood – 275:14-21, 24 | Foundation; Speculation [Δ] | Sustained. |
| 53 | Harlam – 32:5-15 | 402; 403 (refers to a different CVS "HSP" program not at issue here) [Δ] | Sustained. |
| 54 | Harlam – 61:3-6, 8-14; 61:22-62:23 | Foundation [Δ] | Sustained. |
| 55 | Harlam – 105:12-106:17, 107:21-108:5 | Foundation [Δ] | Sustained. |
| 56 | Harlam – 151:4-23 | 402; 403 (price-matching not the claim) [Δ] | Sustained. |
| 57 | Harlam – 152:20-153:5 | 402; 403 (price-matching not the claim) [Δ] | Sustained. |
| 58 | Harlam – 154:5-7, 154:12-155:1 | 402 [Δ] | Overruled. |
| 59 | Harlam – 155:14–156:13 | 402 [Δ] | Overruled. |
| 60 | Harlam – 162:24–165:10 | 402 [Δ] | Overruled except as to 162:24–163:8 and 164:12–22. |
| 61 | Lavin – 15:11-19 | 802 | Overruled. |
| 62 | Lavin – 99:10-18 | 701- Legal Concl., 802 [π] | Overruled. |
| 63 | Lavin – 100:4-101:9 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 64 | Lavin – 104:19-106:12 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 65 | Lavin – 106:18-107:6 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 66 | Lavin – 107:16-23 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 67 | Lavin – 114:13-114:25 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 68 | Lavin – 116:5-117:3 | 602, 701- Legal Concl., 116:17-117:3 - 802 [π] | Overruled. |
| 69 | Lavin – 121:23-122:8 | 602, 802 [π] | Overruled. |

| 70 | Lavin – 127:9-16 | 602, 701- Legal Concl., 802 [π] | Overruled. |
|---|---|---|---|
| 71 | Lavin – 128:19-129:1 | 602, 802 [π] | Overruled. |
| 72 | Lavin – 132:4-9 | 602, 802 [π] | Overruled. |
| 73 | Lavin – 134:19-135:3 | Non-Resp., 103, 602 [π] | Overruled. |
| 74 | Lavin – 140:3-141:10 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 75 | Lavin – 142:21-145:9 | 602, 802 [π] | Overruled. |
| 76 | Lavin – 147:1-15 | 602, 802 [π] | Overruled. |
| 77 | Lavin – 149:2-13 | 602, 802 [π] | Overruled. |
| 78 | Lavin – 158:13-163:1 | 402, 403, 602, 701- Legal Concl. [π] | Overruled. |
| 82 | Morrison (Corcoran) – 74:7-11, 14-16, 20-22 | Foundation, 403, assumes facts [Δ] | Sustained. |
| 83 | Morrison (Corcoran) 140:20-142:18 | 802, 701- Legal Concl., 403 [π] | Overruled. |
| 84 | Morrison (Corcoran) 145:18-146:7 | 802, 701- Legal Concl., 403 – Exemplar of improper legal conclusion [π] | Sustained. |
| 85 | Morrison (Corcoran) – 243:9-10, 13-18; 244:10-20; 245:2-11 | Foundation [Δ] | Overruled. |
| 86 | Reichardt – 76:7-77:4 *[CD to Δ's Desig. 76:13-25]* | Incomplete hypothetical & Speculation (76:7-12) [Δ] | Overruled. |
| 87 | Reichardt – 16:23-19:6 | 602, 18:3-19:6 – 802 [π] | Overruled. |
| 88 | Reichardt – 38:15-25 | 602, 701- Legal Concl., 802 – Exemplar of all testimony discussing hearsay declaration [π] | Overruled. |
| 89 | Reichardt – 64:1-22 | 602, 64:16-22 - 802 [π] | Overruled. |
| 90 | Reichardt – 71:11-20 | 802 [π] | Overruled. |
| 91 | Reichardt – 98:24-100:7; 101:17-24 *[CD to Δ's Desig. 98:12-23]* | 101:17-24 (not "completeness"; 402/403) [Δ] | Sustained. |
| 92 | Reichardt – 109:19-110:9; 112:11-13:10 *[CD to Δ's Desig. 109:5-18]* | 112:11-13:10 (not valid "completeness") [Δ] | Sustained. |
| 93 | Reichardt – 139:12-17; 142:15-143:24; 145:8-146:7; 147:15-149:6 *[CD to Δ's Desig. 138:12-139:11]* | All except for 139:12-17: not valid "completeness" [Δ] | Sustained. |
| 94 | Reichardt – 149:7-18 | 402, 602, 701- Legal Concl., 802 [π] | Overruled. |
| 95 | Reichardt – 202:12-25 | Incomplete, 602, 701- Legal Concl., 802 [π] | Overruled. |
| 96 | Reichardt – 203:15-204:14 | 602, 701- Legal Concl., 802 [π] | Overruled. |
| 97 | Reichardt – 205:3-208:1 | Incomplete, 602, 701- Legal Concl., 205:2-207:24 - 802 [π] | Overruled. |

| 98 | Reichardt – 208:6-17 | 402, 602, 701- Legal Concl., 802 [π] | Overruled. |
|---|---|---|---|
| 99 | Reichardt – 217:2-15 | 402, 602, 611c, 701- Legal Concl., 802 [π] | Overruled. |
| 100 | Reichardt – 249:6-250:10 | 602, 701- Legal Concl., 249:24-250:10 - 802 [π] | Overruled. |
| 101 | Reichardt – 257:19-25 | 602, 611c, 702, 802 [π] | Overruled. |
| 102 | Sullivan – 8:25-9:17 | 402, 403 (P) –Exemplar: prior participation in mass tort case [π] | Missing. |
| 103 | Sullivan – 95:18-96:12 | 402, 403 – Exemplar – Mail prescriptions [π] | Overruled. |
| 104 | Sullivan – 150:18-151:12 *[Δ Desig]*; 151:12-152:8, 159:15-160:10, 160:13-17, 161:5-12, 162:16-21, 163:2-8 *[CD to π Desig 151:13-22]* | 701- Legal Concl.– Exemplar – does not have knowledge of CVS's deception, only knows he was overcharged [π] | Overruled. |
| 105 | Tierney 25:19-26:23; 31:1-32:15; 33:17-35:14; 44:19-45:12; 68:13-20; 69:1-70:3; 70:14-71:12; 122:11-124:15 *[CD to π Desig 21:16-22:16]* | Exemplar - Not for completeness; 68:13-20 - Incomplete, Non-Resp., 402, 403, 602; 69:1-70:3 - Incomplete, Non-Resp., 402, 403; 70:14-71:12 - 402, 403; 122:11-124:15 - 802, 402, 403 [π] | Overruled. |
| 106 | Tierney – 68:13-20 | Non-Resp., 402, 403, 602 [π] | Overruled. |
| 107 | Tierney – 69:1-70:3 | Non-Resp., 402, 403, 602 [π] | Overruled. |
| 108 | Tierney – 70:14-71:12 | 402, 403 [π] | Overruled. |
| 109 | Tierney – 94:4-95:6 | Non-Resp., 602, 402, 403 [π] | Overruled. |
| 110 | Tierney – 110:22-111:13; 111:18 | Hearsay (exhibit) [Δ] | Sustained. |
| 111 | Tierney – 115:2-15 | Hearsay [Δ] | Sustained. |
| 112 | Tierney – 122:11-124:15 | 802, 602, 402, 403 [π] | Overruled. |
| 113 | Tierney – 163:17-164:6, 164:9-165:10, 165:12-165:14 | Foundation; Speculation; 403 (jury confusion); Compound [Δ] | Overruled. |
| 114 | Tierney – 174:6-175:6, 176:22-177:6, 177:9-10, 12-18 | Foundation; Speculation [Δ] | Overruled. |
| 115 | Tierney – 179:18-182:20 | Foundation (179:18-180:23) [Δ] | Sustained as to 179:18–180:23. Otherwise, overruled. |
| 116 | Zavalishin (Corcoran) 54:25-56:10 | 54:25-55:25 - 802 – Exemplar of all testimony discussing hearsay declaration [π] | Overruled. |
| 117 | Zavalishin (Corcoran) 72:2-15 | 802; 602 [π] | Overruled. |

| | | | |
|---|---|---|---|
| 118 | Zavalishin (Corcoran) 74:9-78:11 | 77:2-78:11 - 802; 602 [π] | Overruled. |
| 119 | Zavalishin (Corcoran) 85:6-86:2 | 802, 402, 403 [π] | Overruled. |
| 120 | Zavalishin (Corcoran) 86:15-89:11 | 802, 402, 403, Non-Resp. [π] | Overruled. |
| 121 | Zavalishin (Corcoran) 93:22-94:3 | 402, 403, 802 [π] | Sustained. |
| 122 | Zavalishin (Corcoran) 94:17-23 | 802 [π] | Sustained. |
| 125 | Zevzavadjian – 57:3-8, 11-19 | Speculation; 402/403 (fraud not the claim) [Δ] | Sustained. |
| 126 | Zevzavadjian – 58:18-22, 24-25; 59:1-5 | Legal conclusion; Speculation; Foundation [Δ] | Overruled. |
| 127 | Zevzavadjian – 79:24-25, 80:1-10, 81:5-16 | 402/403 (PBM claw-backs/DataRx not at issue) [Δ] | Sustained. |
| 128 | Zevzavadjian – 85:2-15 | 402/403 (PBM claw-backs/DataRx not at issue) [Δ] | Sustained. |
| 129 | Zevzavadjian – 89:17-25; 90:1-3, 6-11 | 402/403 (PBM claw-backs/DataRx not at issue) [Δ] | Sustained. |
| 130 | Zevzavadjian – 111:6-18, 112:6-18 | Foundation [Δ] | Overruled. |
| 131 | Zevzavadjian – 115:15-20 | Foundation [Δ] | Overruled. |
| 132 | Zevzavadjian – 146:25, 147:1-2, 4, 7-19 | Ambiguous; Assumes facts; 402 [Δ] | Overruled. |
| 133 | Zevzavadjian – 176:4-25 | Hearsay [Δ] | Overruled. |
| 134 | Zevzavadjian – 180:16-21, 24-25; 181:17-21, 24-25; 182:3-25, 183:1; 188:22-25, 189:1-6 | Hearsay (non-CVS doc); Incomplete (188:1-6) [Δ] | Sustained as to 181:17–21, 24–25, 182:1. Otherwise, overruled. |
| 135 | Zevzavadjian – 190:9-13, 16-20; 196:6-18; 199:17-25; 200:1-3, 6 | Foundation [Δ] | Overruled. |
| 136 | Zevzavadjian – 209:12-17, 21-23 | Foundation; Hearsay (non-CVS doc) [Δ] | Overruled. |
| 137 | Zevzavadjian – 209:24-25; 210:1-2, 5-12 | 402/403 (most-frequent price no longer the theory) [Δ] | Overruled. |

**Note** re 23 (Dudley): The Court cannot discern the issue with respect to this designation. Within **five business days** of this Order, the parties shall submit a letter brief not to exceed three pages total with respect to the noted designation.