1  Enu Mainigi (*Pro Hac Vice*)
   Craig D. Singer (*Pro Hac Vice*)
2  Grant A. Geyerman (*Pro Hac Vice*)
   WILLIAMS & CONNOLLY LLP
3  725 Twelfth Street, N.W.
   Washington, DC 20005
4  Telephone: (202) 434-5000
   Facsimile: (202) 434-5029
5
   Edward W. Swanson (State Bar No. 159859)
6  August Gugelmann (State Bar No. 240544)
   SWANSON & McNAMARA LLP
7  300 Montgomery Street, Suite 1100
   San Francisco, CA 94104
8  Telephone: (415) 477-3800
   Facsimile: (415) 477-9010
9
   Attorneys for CVS Pharmacy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CARL WASHINGTON, et al., | No. 15–CV–03504–YGR |
| Plaintiffs, | CLASS ACTION |
| v. | **CVS PHARMACY, INC.'S RESPONSE TO PLAINTIFFS' SUBMISSION RE: PUNITIVE DAMAGES** |
| CVS PHARMACY, INC., | |
| Defendant. | Date: June 23, 2021<br>Time: 8:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Yvonne Gonzalez Rogers |

If the case proceeds to Phase II, Plaintiffs want to introduce "evidence of related lawsuits and regulatory actions demanding that CVS report HSP prices as U&C." Dkt. No. 606 ("Brief" or "Br."). The Court should not permit such evidence, because it is not relevant to any issue that the jury needs to decide concerning punitive damages, and it would be unfairly prejudicial to CVS.

The Court has already decided this issue once in CVS's favor.  *See* Pretrial Order No. 1 re: Motions *in Limine* at 6–7.  There is no reason to change course at this late-stage of trial.

## I. THE LAW DOES NOT SUPPORT INTRODUCING EVIDENCE OF CVS'S OTHER HSP-RELATED LEGAL PROCEEDINGS.

### A. The Current Rules Governing this Case.

In CVS's Motion *in Limine* #1, the company sought the exclusion of CVS's other HSP-related lawsuits and government investigations.  Dkt. No. 433-1.  As explained in that motion, a defendant's other legal proceedings are generally not admissible evidence at trial, whether under Rule 401, 402, or 403.  *See Bd. of Trs. AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254–55 (S.D.N.Y. 2012) (excluding "evidence of the existence of similar lawsuits" and noting that "courts generally exclude evidence of other related lawsuits"); *see also Apple iPod iTunes Antitrust Litig.*, 2014 WL 12719192, at *3 (N.D. Cal. Nov. 18, 2014) (excluding as irrelevant evidence regarding "regulations, investigations, or other actions"); *Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 46997, at *7 (N.D. Cal. Jan. 6, 2014) (evidence of other similar lawsuits excluded as "irrelevant to the issues in the present case").

The fact that this case may now move into a punitive damages phase does not change the analysis.  *See*, *e.g.*, *Sadler v. Advanced Bionics, LLC*, 2013 WL 1340350, *4 (W.D. Ken. Apr. 1, 2013) ("the Court agrees with Defendant that evidence of other lawsuits, pending or settled, generally is not admissible for purposes of punitive damages.  Due process requires that punitive damages be based on the defendant's conduct and/or potential harm to the plaintiff, and not on the harm and/or potential harm to nonparty victims.") (citing *Phillip Morris USA v. Williams*, 549 U.S. 346, 35 –55 (2007)); *In re Wright Med. Tech., Inc.*, 2015 WL 6690046, *9 (N.D. Ga. Oct. 30, 2015) ("The Court rejects Plaintiff's theory of admissibility of other litigation on the issue of punitive damages.").  Under the Constitution, CVS has a right of due process not to be punished for harm caused to non-parties to this lawsuit, *Phillip Morris*, 549 U.S. at 354, and to permit the jury to hear about CVS's other lawsuits or government investigations risks having them punish CVS for harm to entities or individuals who are not before this Court.

The matter before the Court is the only HSP case in which *customers* at CVS pharmacies claim that CVS's non-submission of HSP prices caused them to pay higher copayments. It is limited to insured customers in six specific states, all of whom had purchases using their private insurance adjudicated by one of five specific PBMs. All the other HSP matters discussed in Plaintiffs' brief have concerned statutes, regulations, or contracts that are not at issue here, and the plaintiffs in the other matters always have been third-party payors (or their proxies), rather than customers. In addition, none of the other matters has resulted in any admission or determination of liability. That other matters exist demonstrates only that other parties, like Plaintiffs, have made unsupported allegations against CVS.

### B.     Plaintiffs' Authorities Do Not Warrant Departing from the Current Rule.

Plaintiffs' brief misconstrues the law insofar as it suggests that a defendant's other legal proceedings are presumptively admissible during the punitive damages phase of a trial. The leading case cited in the brief—*TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993)—addressed a question presented that is not at issue here: whether a West Virginia jury's punitive damages award "violates the Due Process Clause of the Fourteen Amendment, either because its amount is excessive or because it is the product of an unfair procedure." *Id*. at 446. The only reference in the case to introducing prior legal proceedings appeared in dicta in a footnote, where the Court (without citation) wrote that "typically" evidence of "net worth" and "wrongdoing in other parts of the country" are "considered" when punitive damages are involved.

The brief also cites cases from the six class states that do not support Plaintiffs' position in this case. The relevant question here—whether to allow in Phase II the plaintiff to introduce the defendant's prior legal matters—was specifically left undecided in *Saccameno v. Ocwen Loan Serv., LLC*, 2018 WL 10609877, *1 n.2 (N.D. Ill. Mar. 20, 2018) (noting the defendant's "separate" unresolved motion "to bar evidence of the regulatory actions and other lawsuits" during the punitive phase of the case). The only other case cited from **Illinois** was a personal injury case involving a defectively designed and manufactured stool. *Collins v. Interroyal Corp*.,

4666 N.E. 2d 1191, 1193 (Ill Ct. App. 1984). The case's holding—that "[e]vidence of substantially similar prior lawsuits against defendant are admissible to show . . . notice of the [product] defect before plaintiff was injured," *id*. at 1200—has no application to CVS's situation. From the very beginning of HSP, CVS has "known" it was not submitting its HSP price as U&C prices. That is not in dispute.

The only case cited from Arizona supports CVS's position, not Plaintiffs' position, because it held the trial court had abused its discretion by compelling the defendant to disclose evidence of his prior settlements. *See Miller v. Kelly*, 130 P.3d 982, 986 (Ariz. 2006).

The three **California** cases are not persuasive either. The first case—*Johnson v. Ford Motor Co.*, 113 P.3d 82, 91 (Cal. 2005)—is cited for the irrelevant proposition that "a civil defendant's recidivism remains pertinent to an assessment of culpability." Nobody is claiming that CVS is a "recidivist." And the second and third cases do not concern a party attempting to introduce the opposing party's prior legal proceedings. Rather, one is discovery-dispute case, and neither involved a party trying to introduce evidence of the other party's legal proceedings at trial. *Nickerson v. Stonebridge Life Ins. Co.*, 5 Cal. App. 5th 1 (2016); *Kaiser v. BMW of N. Am., LLC*, 2013 WL 1856578 (N.D. Cal. May 2, 2013)

The only **New York** case—*Sanders v. Gardner*, 7 F. Supp. 2d 151 (E.D.N.Y. 1998)—arose out of a securities arbitration in which the arbitration panel imposed an award that included punitive damages. The same concerns about inciting the passions and prejudices of the fact-finder are not the same in a jury trial and an arbitration.

Finally, the one **Massachusetts** case that Plaintiffs cite addresses the purpose of the state's multiple-damages provision, but not the propriety of introducing in a jury trial evidence of the defendant's other legal proceedings. *See Heller v. Silverbranch Constr. Corp.*, 382 N.E. 2d 1065 (Mass. 1978).

## II. THE THREE GOVERNMENT INVESTIGATIONS REFERENCED IN THE MOTION ARE NOT RELEVANT TO THE ISSUES IN PHASE II AND WOULD ONLY WASTE TIME AND RISK PREJUDICING CVS.

Large corporations often face investigations or litigation in multiple jurisdictions. References to the three other legal proceedings mentioned in the brief are irrelevant, invite a "trial within a trial," and are unfairly prejudicial. The Court should bar Plaintiffs from calling a witness during Phase II to discuss these matters. *See, e.g.*, *Hicks v. Ass'n of Apartment Owners of Makaha Valley Plantation*, 2016 WL 3676106, at *2 (D. Haw. July 7, 2016) ("information relating to other housing lawsuits or legal disputes is not relevant in this case and would be highly prejudicial"); *Reddy v. Nuance Commc'ns, Inc.*, 2015 WL 4648008, at *2 (N.D. Cal. Aug. 5, 2015) (in non-bifurcated trial involving punitive damages, "information regarding Reddy's unrelated suits and vexatious litigant designations . . . would be and highly prejudicial. However incredible her previous suits may have been, they do not sufficiently bear on the circumstances here to warrant the obvious prejudice Reddy will suffer").

### A. The Investigations are Not Relevant.

#### 1. Department of Justice Investigation / *U.S. ex. rel. Winkelman* (D. Mass.)

The first legal proceeding concerning HSP referenced in Plaintiffs' brief is *United States ex rel. Winkelman v. CVS Caremark Corp.*, No. 11-11398-DJC (D. Mass.), a federal false claims matter that ultimately was dismissed in CVS's favor at the Rule 12 stage. *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412, 425 (D. Mass. 2015), *aff'd*, 827 F.3d 201 (1st Cir. 2016).[1] After that case was filed (under seal) by the relator, as required by statute, the Department of Justice commenced an investigation into Health Savings Pass on or about January 23, 2012. After investigating for more than two and one-half years, on December 8, 2014, the Government notified it was declining to intervene in the case, a fact directly at odds with Plaintiffs' argument that the investigation "put CVS on notice that its conduct was illegal."

---

[1] Incidentally, the case before this Court was filed on the exact same day as the district court's order dismissing *Winkelman* was docketed on ECF.

Br. 4.[2]  *See also, e.g.*, *Apple iPod iTunes Antitrust Litig.*, 2014 WL 12719192, at *3 (excluding as irrelevant evidence regarding "regulations, investigations, or other actions"); *Sadler*, 2013 WL 1340350, *4.  The investigation could serve no proper purpose in Phase II of this case.

**2.  Connecticut Attorney General Investigation**

Effective May 7, 2010, the Connecticut legislature amended a state statute concerning usual and customary prices for prescription drug claims submitted to Connecticut's Medicaid program.[3]  On May 27, 2010, CVS wrote the State that it believed the change in law was insufficient to require HSP prices to be reported to Connecticut Medicaid but, because the State disagreed with that position, CVS would cancel HSP in Connecticut to avoid any continuing dispute:

> Although we strongly believe that the new legislation is inapplicable to the HSP program, given the conclusion in your May 18, 2010 letter that the legislation applies to the HSP program as of May 7, we are left with no choice but to suspend the HSP program in Connecticut as soon as operationally possible.  We will provide notice to existing HSP customers in Connecticut that the program is being suspended for Connecticut stores, and will refund those members' 2010 annual fees as appropriate.

Ex. 1 (E. Wingate Ltr to J. McCormick (May 27, 2010)).  The following month, Connecticut's Governor rebuked CVS for its "threatened cancellation of its Health Savings Pass pharmacy discount program," and referred the matter to the Connecticut Attorney General to consider "appropriate legal action on behalf of the State of Connecticut and its residents."  Ex. 2 (M.J. Rell Ltr to R. Blumenthal (June 18, 2010)).  Four days later, the Attorney General announced he was investigating CVS's "threat to terminate a consumer discount drug program."  Ex. 3 (Press Release (June 22, 2010)).  The thrust of the investigation was not, as Plaintiffs claim, whether the

---

[2] Trial Exhibit 336, a letter from the Department of Justice to CVS cited in the Brief, is dated June 19, 2012, approximately five months into the investigation. In the letter, the Government advised CVS that "[w]e have not completed our review of pertinent information . . . ."

[3] The amended statute made explicit reference to "any member of the general public who participates in the pharmacy provider's savings or discount program."

HSP price fit within the language of the amended definition of usual and customary, but rather whether CVS was legally required to continue operating a program it wanted to stop.

The dispute received significant media attention. After several months, CVS ultimately relented and agreed to continue offering the HSP program in Connecticut. In addition, without conceding that the amended statute in fact required HSP pricing to be submitted for Medicaid as usual and customary, the parties agreed that going-forward CVS would send Connecticut Medicaid quarterly "reconciliation" payments equal to the amount that the Medicaid program's payments for HSP-eligible drugs exceeded the HSP price. The two exhibits cited in the Brief—Trial Exhibits 94 and 206—are simply the parties' correspondence from October 2010 hashing out how mechanically CVS would go about passing that value onto the State.[4]

The incident with Connecticut does not remotely "demonstrate the state of mind needed to prove punitive damages." Br. 4. If anything, it proves the opposite: CVS was responsive when a payor changed its definition of usual and customary to (allegedly) encompass membership programs.

### 3. Texas Attorney General Investigation

Finally, the Brief alludes one other matter that CVS had with the Texas Attorney General, although it misstates the facts in doing so. The Brief suggests that the State of Texas intervened in the federal false claims case discussed above; it did not. Instead, one and one-half years after the *Corcoran* lawsuit was filed, on January 4, 2017, the Texas Attorney General intervened in and unsealed a separate qui tam lawsuit concerning Health Savings Pass that was pending in Texas state court.[5]

That lawsuit, including the pre-suit investigation, are not probative of any issue the jury would have to decide on punitive damages in this case. Mere unsubstantiated allegations by the Texas Attorney General regarding different parties, a different U&C regulation (Texas

---

[4] For example, Trial Exhibit 94 reflects the parties' continued disagreement.

[5] The relator in the state court action—Myron Winkelman—was the same relator who filed the federal action.

Medicaid), and claims under the Texas false claims act are not probative of whether CVS willfully violated the consumer laws in states other than Texas or breached the five PBM contracts.  *Sadler*, 2013 WL 1340350, *4.

**B. The Investigations are Prejudicial and Waste Time.**

It violates Rule 403 for Plaintiffs to make references to the above proceedings, for two reasons.

*First*, it would unfairly prejudice CVS for Plaintiffs to suggest to the jury that it may punish CVS for conduct that occurred in a different state by a different entity involving different agreements or definitions of "usual and customary."  This is improper. *See, e.g.*, *Gillis v. Murphy-Brown, LLC*, 2018 WL 5831994, at *2 (E.D.N.C. Nov. 7, 2018) ("The danger of allowing evidence of other lawsuits is obvious—a jury might be tempted into punishing a defendant for behavior for which it is not on trial."); *In re Homestore.com, Inc.*, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) ("reference to or evidence of [party's] involvement in other litigation prior to this Action is also irrelevant and carries with it a high risk of prejudice"); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 2019 WL 7185548, at *3 (C.D. Cal. Dec. 9, 2019) (excluding evidence of other lawsuit as "highly likely" to "invit[e] the jury to speculate and base its decision on improper considerations").

*Second*, now is not the time to expose the jury to random vignettes about other proceedings that will require CVS to respond with the surrounding context of each proceeding, resulting in minitrials.  *See, e.g.*, *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008) (affirming exclusion of "no-fault" settlement because "it was irrelevant and would have been unduly prejudicial, confusing, and misleading"); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 2019 WL 7185548, at *3 (granting motion *in limine* to exclude evidence of other litigation because the evidence "invites a trial-within-a trial, and would likely cause confusion and waste time—concerns that run afoul of Fed. R. Evid. 403"). The jury has heard enough about CVS's conduct over last two weeks to decide for themselves whether CVS's conduct was willful and wanton.

| | | |
|---|---|---|
| 1 | Dated: June 23, 2021 | Respectfully submitted, |
| 2 | | |
| 3 | | By: /s/ *Grant A. Geyerman* |
| | | Enu Mainigi (*Pro Hac Vice*) |
| 4 | | Craig D. Singer (*Pro Hac Vice*) |
| | | Grant A. Geyerman (*Pro Hac Vice*) |
| 5 | | WILLIAMS & CONNOLLY LLP |

Edward W. Swanson (State Bar No. 159859)
August Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP

Attorneys for CVS Pharmacy, Inc.